**IN UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:24-cv-02164-DDD-SBP

GREENLATINOS,
350 COLORADO, and
SIERRA CLUB,

  Plaintiffs,

v.

SUNCOR ENERGY (U.S.A.) INC.,

  Defendant.

---

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

---

# <u>TABLE OF CONTENTS</u>

Table of Contents ................................................................................................... i

Table of Authorities ............................................................................................. iii

Table of Exhibits ................................................................................................ viii

I.    Introduction ...............................................................................................1

II.   Facts ..........................................................................................................2

III.  Clean Air Act Citizen Enforcement Provision............................................5

IV.   GreenLatinos Have Standing .....................................................................6

A.    GreenLatinos Have Suffered Injuries from Suncor's Pollution.................6

B.    GreenLatinos' Injuries Are Traceable to Suncor's Violations of the Clean Air Act.........11

V.    The Diligent Prosecution Bar Does Not Apply .........................................12

A.    The Diligent Prosecution Bar is Not Jurisdictional ..................................13

B.    GreenLatinos Adequately Alleged that Neither EPA nor CDPHE Were Prosecuting An Action in Court and the Twenty-Year-Old Consent Decrees Are Insufficient ...............................................................................13

C.    The Consent Decrees Do Not Enforce the Same Emissions Limitations as the Amended Complaint ..............................................................................16

      1.    Diligent Prosecution Only Applies to the Same, Not "Similar," Standards ..........16

      2.    Suncor Waived its Argument because it Does Not Connect Standards between the Consent Decrees and GreenLatinos' Claims ....................................17

      3.    The Consent Decrees Did Not Enforce the Same Emissions Limitations as GreenLatinos' Claims ..............................................18

D.    Any Prosecution of the Consent Decrees is Not Diligent..........................19

VI.   GreenLatinos Adequately Alleged Claim 25 .............................................20

A.    GreenLatinos Alleged that A NOx Emission Limit Applies to Heater H-2101 ...............20

B.    GreenLatinos Plausibly Alleged that Claim 25 is Timely ..........................20

VII.    Conclusion ........................................................................................................21

Certificate of Compliance with Type-Volume Limitations ...........................................23

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                          **Page(s)**

*Adkins v. VIM Recycling, Inc.*,
    644 F.3d 483 (7th Cir. 2011) ................................................................................13

*Arbaugh. N. Mill St., LLC v. City of Aspen*,
    6 F.4th 1216 (10th Cir. 2021) .............................................................................13

*Arbaugh v. Y&H Corp.*,
    546 U.S. 500 (2006).............................................................................................13

*Bazile v. Fin. Sys., Inc.*,
    983 F.3d 274 (7th Cir. 2020) .................................................................................9

*Benham v. Ozark Materials River Rock, LLC*,
    885 F.3d 1267 (10th Cir. 2018) .............................................................................8

*Cebollero-Bertran v. Puerto Rico Aqueduct & Sewer Auth.*,
    4 F.4th 63 (1st Cir. 2021).....................................................................................19

*Citizens for a Better Env't-California v. Union Oil Co.*,
    83 F.3d 1111 (9th Cir. 1996) ...............................................................................14

*City of Fairborn, v. U.S. Env't Prot. Agency*,
    No. 3:22-CV-102, 2024 WL 555929 (S.D. Ohio Feb. 12, 2024) .........................19

*Cmtys. for a Better Env't v. Cenco Refining Co.*,
    180 F. Supp. 2d 1062 (C.D. Cal. 2001) .................................................................6

*Concrete Works of Colorado, Inc. v. City & Cnty. of Denver*,
    321 F.3d 950 (10th Cir. 2003) .............................................................................17

*Conservation Council v. Costanzo*,
    505 F.2d 498 (4th Cir. 1974) .................................................................................9

*Dodge v. Mirant Mid-Atl., LLC*,
    732 F. Supp. 2d 578 (D. Md. 2010).........................................................15, 16, 17

*Env't Integrity Project v. Mirant Corp.*,
    No. CIV JFM-06-2249, 2007 WL 62619 (D. Md. Jan. 3, 2007) .........................17

*Env't Tex. Citizen Lobby Inc. v. ExxonMobil Corp.*,
    123 F.4th 309 (5th Cir. 2024) ................................................................................7

*Food & Drug Admin v. All. for Hippocratic Med.*,
    602 U.S. 367 (2024)................................................................................6

*Friends of the Earth, Inc. v. Laidlaw Env't Serv.*,
    528 U.S. 167 (2000)................................................................................7

*Friends of Milwaukee's Rivers v. Milwaukee Metro. Sewerage Dist.*,
    382 F.3d 743 (7th Cir. 2004) .................................................14, 15, 16, 19

*Frilling v. Vill. of Anna*,
    924 F. Supp. 821 (S.D. Ohio 1996) ........................................................16

*Glazer v. Am. Ecology Env't Serv. Corp.*,
    894 F. Supp. 1029 (E.D. Tex. 1995).......................................................18

*Group Against Smog & Pollution, Inc. v. Shenango Inc.*,
    810 F.3d 116 (3d Cir. 2016).............................................................15, 16

*Ham v. Lenovo (United States) Inc.*,
    664 F. Supp. 3d 562 (S.D.N.Y. 2023).....................................................10

*Karr v. Hefner*,
    475 F.3d 1192 (10th Cir. 2007) .....................................................15, 17, 19

*Kazarinoff v. Wilson*,
    No. 22-CV-02385-PAB-SKC, 2024 WL 98385 (D. Colo. Jan. 9, 2024) ...............17

*LaFleur v. Whitman*,
    300 F.3d 256 (2d. Cir. 2002)..................................................................9

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)............................................................................6, 8

*Mass. v. Env't. Prot. Agency*,
    549 U.S. 497 (2007)................................................................................6

*Nat. Res. Def. Council, Inc. v. Train*,
    510 F.2d 692 (D.C. Cir. 1974)..................................................................5

*Nat. Res. Def. Council v. Vilsack*,
    No. 08-CV-02371, 2011 WL 3471011 (D. Colo. Aug. 5, 2011).....................7, 8, 9

*Naturaland Tr. v. Dakota Fin. LLC*,
    41 F.4th 342 (4th Cir. 2022) .................................................................13

*OCA-Greater Houston v. Texas*,
   867 F.3d 604 (5th Cir. 2017) .................................................................9

*Ohio Valley Env't Coal. v. Bluestone Coal Corp.*,
   No. CV 1:19-00576, 2020 WL 2949782 (S.D. W. Va. June 3, 2020) ....................19

*Oviedo Town Ctr. II, L.L.L.P. v. City of Oviedo*,
   No. 616CV1005ORL37GJK, 2016 WL 6996124 (M.D. Fla. Nov. 30, 2016) ........10

*Paper, Allied-Industrial Chemical And Energy Workers International Union v.*
   *Continental Carbon Co.*,
   428 F.3d 1285 (10th Cir. 2005) .............................................................13

*Piney Run Pres. Ass'n v. Carroll Cnty.*,
   523 F.3d 453 (4th Cir. 2008) ...............................................................15

*Pub. Int. Rsch. Grp. of New Jersey, Inc. v. GAF Corp.*,
   770 F. Supp. 943 (D.N.J. 1991) ...........................................................14

*Pub. Int. Rsch. Grp. v. Magnesium Elektron*,
   123 F.3d 111 (3d Cir. 1997) ..................................................................9

*S. River Watershed All., Inc. v. DeKalb Cnty., Georgia*,
   484 F. Supp. 3d 1353 (N.D. Ga. 2020) ................................................15

*S. River Watershed All., Inc. v. Dekalb Cnty., Georgia*,
   69 F.4th 809 (11th Cir. 2023) ...........................................12, 13, 15, 16

*Sec. & Exch. Comm'n v. Kokesh*,
   884 F.3d 979 (10th Cir. 2018) .............................................................20

*Sierra Club v. Cedar Point Oil Co.*,
   73 F.3d 546 (5th Cir. 1996) .................................................................11

*Sierra Club v. City & Cnty. of Honolulu*,
   No. 04-00463, 2008 WL 1968317 (D. Haw. May 7, 2008)........................14, 19

*Sierra Club v. Franklin Cnty. Power of Illinois, LLC*,
   546 F.3d 918 (7th Cir. 2008) .................................................................6

*Sierra Club v. Oklahoma Gas & Electric Co.*,
   816 F.3d 666 (10th Cir. 2016) .........................................................6, 20

*Sierra Club v. Two Elk Generation Partners, Ltd. P'ship*,
   646 F.3d 1258 (10th Cir. 2011) .......................................................12, 14

v

*Sierra Club v. U.S. Env't Prot. Agency*,
　964 F.3d 882 (10th Cir. 2020) ...................................................................7

*Sizova v. Nat. Inst. of Standards & Tech.*,
　282 F.3d 1320. (10th Cir. 2002) ...............................................................10

*Snyder v. Beam Techs., Inc.*,
　No. 20-CV-03255-NYW, 2021 WL 4947295 (D. Colo. Aug. 16, 2021) ...............17

*Speech First, Inc. v. Shrum*,
　92 F.4th 947 (10th Cir. 2024) ...................................................................6

*Texans United for a Safe Econ. Educ. Fund v. Crown Cent. Petroleum Corp.*,
　207 F.3d 789 (5th Cir. 2000) ...................................................................6

*United States v. Cemex, Inc.*,
　864 F. Supp. 2d 1040 (D. Colo. 2012) .......................................................21

*Utah Physicians for a Healthy Env't v. Diesel Power Gear, LLC*,
　21 F.4th 1229 (10th Cir. 2021) .......................................................5, 6, 11, 20

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
　894 F.3d 1030 (9th Cir. 2018) ...................................................................16

*WildEarth Guardians v. Colorado Springs Utils. Bd.*,
　No. 17-CV-00357, 2018 WL 317469 (D. Colo. Jan. 8, 2018)...........................7, 11

*WildEarth Guardians v. Mountain Coal Co.*,
　No. 20-CV-01342, 2021 WL 1186669 (D. Colo. Mar. 30, 2021) .......................21

*Wildearth Guardians v. Pub. Serv. Co. of Colorado*,
　No. 09-CV-01862, 2010 WL 1568574 (D. Colo. Apr. 15, 2010)...........................8

*Wildearth Guardians v. Salazar*,
　880 F. Supp. 2d 77 (D.C. Cir. 2012)............................................................7

*Wildearth Guardians v. Utilities Bd.*,
　No. 11-CV-00742, 2012 WL 1059981 (D. Colo. Mar. 29, 2012) .............13, 14, 19

**Statutes**

33 U.S.C. § 1319(g)(6) ...............................................................................14

42 U.S.C. § 7412(b)(1) ...............................................................................3

42 U.S.C. § 7604(a)(1)...............................................................................5

42 U.S.C. § 7604(b) .................................................................................................5

**Rules**

DDD. Civ. P.S. III.D.1.a .........................................................................................1

Fed. R. Civ. P. 12(b)(1).........................................................................................1

Fed. R. Civ. P. 12(b)(6).........................................................................................1

**Regulations**

5 C.C.R. § 1001-5:C.III.C.4....................................................................................21

40 C.F.R. § 60.100a ...............................................................................................18

40 C.F.R. § 63.670 .................................................................................................18

40 C.F.R. § 70.5(c)(8)(iii)(C)..................................................................................20

## <u>TABLE OF EXHIBITS</u>

| Ex. No. | Document |
|---|---|
| 12 | Declaration of Daniel Price |
| 13 | Declaration of Harmony Cummings |
| 14 | Declaration of Li Mattson |
| 15 | Declaration of Renée Chacon |
| 16 | Declaration of Angela Garcia |
| 17 | Declaration of Anna McDevitt |
| 18 | Declaration of Aracely Navarro |
| 19 | Complaint filed December 20, 2001 in *United States v. Conoco Inc.*, Southern District of Texas (Houston), 4:01-cv-04430 (West Plant Complaint) |
| 20 | Complaint filed June 16, 2005 in *United States v. Valero Refining Co*., Western District of Texas (San Antonio), 5:05-cv-00569-OLG (East Plant Complaint) |
| 21 | *United States v. Valero Refining Co*., Western District of Texas (San Antonio), 5:05-cv-00569-OLG, Docket Report |
| 22 | *United States v. Conoco Inc.*, Southern District of Texas (Houston), 4:01-cv-04430, Docket Report |
| 23 | Plaintiff GreenLatinos et al.'s Responses to Defendant Suncor's Exhibit 4 |
| 24 | Suncor Plants 1&3 (West) 2024 Technical Review Document |

Plaintiffs GreenLatinos, 350 Colorado, and Sierra Club ("GreenLatinos") submit this opposition to Defendant Suncor Energy (U.S.A.) Inc. ("Suncor")'s January 21, 2025 Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), Dkt No. 27 ("Motion").

Pursuant to the Court's Civil Practice Standard III.D.1.b., GreenLatinos state the following:

1.  While the Motion does not "clearly enumerate each element" that Suncor is challenging, DDD. Civ. P.S. III.D.1.a, GreenLatinos believe that Suncor is challenging: the injury and traceability elements of standing; diligent prosecution; and, for Claim 25, "emission standard or limitation," (and raising an affirmative statute of limitations defense).

2.  Each element challenged by Suncor is DISPUTED by GreenLatinos, for the reasons described herein.

## I.   Introduction

As the Amended Complaint alleges, Suncor repeatedly violates its emission limits at its Commerce City Refinery, resulting in thousands of violations, and forcing surrounding communities to breathe that excess pollution. Still, actions by the state and EPA have failed to slow Suncor's violations. GreenLatinos filed suit to ensure Suncor's pollution limits are actually enforced.

GreenLatinos' suit is a textbook Clean Air Act citizen suit. Suncor self-reported recurring emissions limit violations. GreenLatinos' members live, work, and recreate in the neighborhoods near Suncor. They breathe pollution from the Refinery and suffer harms consistent with that

1

exposure. State and federal regulators have not taken court action to enforce Suncor's violations

in over twenty years. Given these facts, GreenLatinos' suit is precisely what is imagined by the

Clean Air Act citizen suit provision.

For the reasons described below, the Court should deny Suncor's Motion.

## II.    Facts

Suncor has self-reported thousands of violations of its emission limits over the period

covered by the Amended Complaint, ECF 8 ("Am. Compl.") at 5, ¶ 2, emitting a variety of

harmful pollutants, *id*. at 5-6, ¶¶ 6-11. The emission limits Suncor violates were established by

federal and state regulations, consent decrees, and permits issued by the Colorado Department of

Public Health and Environment ("CDPHE"). *Id.* at 28-48, ¶ 73, ¶¶ 31-253. The limits apply to

pollutants from a variety of units at Suncor, including boilers, process heaters, and flares. *Id.* at

14-15, ¶ 57-58. The limits are detailed in Suncor's two Title V operating permits: the West Plant

Permit and the East Plant Permit. *Id*. at 17-18, ¶¶ 72-78.

Exposure to the excess pollutants emitted by Suncor causes a variety of injuries,

including:

| Injury | Amended Complaint Allegations About Pollutant Impacts |
|---|---|
| Breathing and smelling polluted air | $H_2S$ and $SO_2$ smell of rotten eggs. Am. Compl. at 19, ¶ 85<br>Hazardous air pollutants like benzene and hydrochloric cyanide have strong chemical odors. Am. Compl. at 5, ¶¶ 6-7, 10. |
| Adverse health effects, including respiratory ailments, asthma, headaches | Exposure to CO can cause impaired vision, headaches, dizziness, and abdominal pain. Am. Compl. at 20, ¶ 91.<br><br>Exposure to NOx, $SO_2$, and particulate matter can cause respiratory problems such as asthma, difficulty breathing, coughing, and bronchitis, as well as eye, |

| Injury | Amended Complaint Allegations About Pollutant Impacts |
|---|---|
| | throat, and skin irritation. Am. Compl. at 21-22, ¶¶ 92-108.<br><br>Hazardous air pollutants "are pollutants that cause or may cause cancer or other serious health effects such as reproductive . . . defects" and developmental disorders. 42 U.S.C. § 7412(b)(1); Am. Compl. at 24, ¶¶ 8, 113 |
| Seeing pollution and flaring | Opacity and particulate matter cause haze and are visible. Am. Compl. at 5 ¶ 7.<br><br>$H_2S$ is flammable and contributes to smoke. Am. Compl. at 50-51, ¶¶ 262-270. |
| Fear of explosion or accident | $H_2S$ is flammable. Am. Compl. at 50-51, ¶¶ 262-270 |

GreenLatinos alleged their members live, work, and recreate near the Refinery. *Id.* 8, ¶ 20. The GreenLatinos members' declarations, Exs. 12-18,[1] confirm that they live and/or work within two miles of the Refinery. *See e.g.*, Ex. 12 ¶8, ¶ 11 (lives and works within 1.5 miles from Refinery); Ex. 13 ¶ 8 (works 1.5 miles from Refinery); Ex. 14 ¶ 6 (lives 1.75 miles from Refinery).[2]

GreenLatinos' members suffer the effects of Suncor's excess pollution; they breathe its pollution, suffer health effects associated with those pollutants, and are concerned about the impacts that pollution on their health and enjoyment of the neighborhood, as detailed in the following chart:

---

[1] For the convenience of the parties and the Court, GreenLatinos continues the numbering of exhibits from Suncor's Motion.
[2] *See also* Ex. 16 ¶¶ 6-10; Ex. 15 ¶¶ 7-9; Ex. 17 ¶¶ 5-6; Ex. 18 ¶ 8-12.

| Injury | Amended Complaint Allegations | Declarant Statements |
|---|---|---|
| Breathing and smelling polluted air | Members breathe polluted air from the Refinery and smell odors. Am. Compl. at 8, ¶¶ 20, 23 | Ex. 15 ¶ 14 (rotten eggs); Ex. 13 ¶ 13 (petroleum smell); Ex. 16 ¶ 9 (chemical smell); Ex. 14 ¶ 13 (rotten eggs and metallic smells); Ex. 12 ¶ 20 (burning rubber) |
| Reduced time and enjoyment of area | Members "alter their recreation" spending less time outside near the Refinery. Am. Compl. at 8, ¶¶ 22, 23. | Declarants alter their recreational activities. Ex. 15 ¶¶ 19-23; Ex. 13 ¶¶ 16-19; Ex. 14 ¶¶ 24, 15; Ex. 17 ¶¶ 14, 18-20; Ex. 12 ¶¶ 17 |
| Adverse health effects, including respiratory ailments, asthma, headaches | Members suffer "headaches, stomach aches, allergies, other breathing issues such as asthma, and mental health impacts." Am. Compl. at 8, ¶ 20. | Ex. 15 ¶¶ 18-21 (headaches, difficulty breathing); Ex. 13 ¶¶ 13, 16 (headaches, difficulty breathing, asthma, eye irritation); Ex. 16 ¶¶ 9-14 (headaches, asthma and bronchitis, difficulty breathing, eye irritation); Ex. 14 ¶¶ 16-17 (abdominal pain, eye irritation); Ex. 17 ¶ 19 (difficulty breathing); Ex. 12 ¶ 24 (difficulty breathing); Ex. 18 ¶ 19 (fertility issues) |
| Threat or reasonable fear of harm | Members fear "the effects of the excess emissions from the refinery on their health." Am. Compl. at 8, ¶ 20. | Declarants have reasonable fears based on Suncor's emissions exceedances. Ex. 15 ¶ 11; Ex. 13 ¶ 15; Ex. 17 ¶ 14; Ex. 14 ¶¶ 12, 14, 15; Ex. 12 ¶ 43.; Ex. 18 ¶ 20. |
| Seeing pollution and flaring | Members "enjoy their property less" because they see "flares and the hazy views." Am. Compl. at 8-9, ¶ 23. | Declarants see haze, smoke, flaring, and pollution. Ex. 13 ¶¶ 13-14; Ex. 16 ¶¶ 8, 13; Ex. 17 ¶¶ 13, 17; Ex. 18 ¶ 12; Ex. 12 ¶¶ 17, 19 |
| Fear of explosion or accident | Members are concerned about the effects of emission and fear having to move. Am. Compl., at 8-9, ¶¶ 20, 23. | Declarants fear an explosion, fire, or other upset. Ex. 18 ¶ 27-28. |
| Economic impacts | Members worry about property values and needing to move Am. Compl. at 8-9, ¶¶ 20, 23. | Declarants spend money on medical issues and house upgrades, miss work to treat health ailments, and worry about their property values. Ex. 16 ¶ 12; Ex. 17 ¶ 10; Ex. 18 ¶ 22. |

Enforcement by EPA and CDPHE has failed to halt Suncor's violations. In 2002 and

2005, EPA filed suits against Suncor's predecessors as part of its "nationwide, broad-based

compliance and enforcement initiative involving the petroleum refining industry", Ex. 5 at 2,

resulting in two federal consent decrees: Ex. 5 ("West Plant Decree") and Ex. 6 ("East Plant

Decree"). Am. Compl. at 42, 43, ¶¶ 205, 215. The complaints filed in those actions alleged

violations of: (1) new source review requirements, (2) limits on the types of gases that can be

combusted in flares, and (3) leak detection and repair requirements. *See* Ex. 19 at 12-18, Ex. 20

at 16-23. None of these standards are alleged in GreenLatinos' Amended Complaint. The final

affirmative deadline in the Consent Decrees passed in 2012. *See* Ex. 6 ¶¶ 9, 55. Since the

Consent Decrees were entered, neither EPA nor CDPHE have asked the court to take any action

to enforce or substantively modify them. *See* Ex 21 (*United States v. Valero Refining Co.*,

Docket Report); Ex 22 (*United States v. Conoco Inc.*, Docket Report).

The only other enforcement actions against Suncor have been administrative actions,

including some administrative settlements and notices of violations from CDPHE and/or EPA.

Am. Compl. at 49-50, ¶¶ 254-60.

**III.     Clean Air Act Citizen Enforcement Provision**

The Clean Air Act allows any person with standing to sue to enforce certain violations of

the Act. 42 U.S.C. § 7604(a)(1). The purpose is to increase enforcement "when the government

lacks the resources or will to handle the entire task." *Utah Physicians for a Healthy Env't v.

Diesel Power Gear, LLC*, 21 F.4th 1229, 1243 (10th Cir. 2021). In adopting the provision,

Congress "took broad steps to facilitate the citizen's role in the enforcement of the Act." *Nat.

Res. Def. Council, Inc. v. Train*, 510 F.2d 692, 700 (D.C. Cir. 1974). A claim under this

provision must allege that: (1) defendant is violating or has repeatedly violated (2) an "emissions

standard or limitation" or a related order, (3) plaintiffs sent a 60-day notice letter before filing

suit, and (4) neither CDPHE or EPA "has commenced and is diligently prosecuting a civil action

in a court . . . to require compliance" with the same standards enforced by plaintiff.

§§ 7604(a)(1), (b).

## IV.    GreenLatinos Have Standing

The purpose of standing is to ensure that an individual has a personal stake in the

outcome, rather than being "mere bystanders" or "citizens who might 'roam the country'" in

search of wrongdoing. *Food & Drug Admin v. All. for Hippocratic Med.*, 602 U.S. 367, 379

(2024); *see also Mass. v. Env't. Prot. Agency*, 549 U.S. 497, 517 (2007). Organizations like

GreenLatinos have standing if, among other things, one of their members has standing. *Speech

First, Inc. v. Shrum*, 92 F.4th 947, 949 (10th Cir. 2024). To show standing, an individual must

have an "injury in fact," that is fairly traceable to the defendant's challenged conduct, and is

redressable by the court. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).[3] But alleged

injuries "need not be large;" rather, "an identifiable trifle will suffice." *Sierra Club v. Franklin

Cnty. Power of Illinois, LLC*, 546 F.3d 918, 925 (7th Cir. 2008).

GreenLatinos have a significant personal stake in the outcome of this case: members are

directly exposed to Suncor's harmful pollution and they suffer injuries consistent with that

exposure.

### A.    GreenLatinos Have Suffered Injuries from Suncor's Pollution

Courts recognize a range of cognizable injuries adequate for standing, *Cmtys. for a Better

Env't v. Cenco Refining Co.*, 180 F. Supp. 2d 1062, 1075 (C.D. Cal. 2001), including precisely

---

[3] GreenLatinos does not address the other elements of organizational standing or redressability
because they are not challenged by Suncor.

the injuries GreenLatinos alleges. The Tenth Circuit has recognized standing where plaintiffs

suffered "adverse health effects from elevated air pollution," including respiratory ailments like

asthma and headaches, or faced the threat or reasonable fear of injury. *Utah Physicians*, 21 F.4th

at 1241; *see also Sierra Club*, 564 F.3d at 925. In fact, courts also hold that plaintiffs are injured

by merely breathing or smelling polluted air. *See Texans United for a Safe Econ. Educ. Fund v.

Crown Cent. Petroleum Corp.*, 207 F.3d 789, 792 (5th Cir. 2000). Similarly, seeing smoke and

flaring is a sufficient injury. *Env't Tex. Citizen Lobby Inc. v. ExxonMobil Corp.*, 123 F.4th 309,

337-338 (5th Cir. 2024) (Davis, J., concurring). Other injuries courts have recognized include

reduced enjoyment and recreational value of an area, *Friends of the Earth, Inc. v. Laidlaw Env't

Serv.,* 528 U.S. 167, 183 (2000); *Nat. Res. Def. Council v. Vilsack*, No. 08-CV-02371, 2011 WL

3471011, at *4 (D. Colo. Aug. 5, 2011), and economic injuries, *Wildearth Guardians v. Salazar*,

880 F. Supp. 2d 77, 83 (D.C. Cir. 2012).

GreenLatinos' members suffer precisely these harms. *See* Section II (chart detailing

injuries). For example, Angela Garcia, who has lived less than two miles from Suncor for 32-

years, is "assaulted day and night by air pollution," suffering from asthma so debilitating she

cannot sleep, think, or function. Ex. 16 ¶ 6-13. "When the air pollution is bad, [Li Mattson's] son

often wakes up with swollen eyes and black soot in his eyes." Ex. 14 ¶ 17. Renée Chacon reports

she and her family suffer severe migraines, breathing difficulties, and nosebleeds—symptoms

that improve when they leave. Ex. 15 ¶ 18-20. Harmony Cummings, founder of the Greenhouse

Connection Center, located less than a mile from the Refinery, "worr[ies] about holding . . .

events at the Center," "hesitate[s] to breathe fully," and "immediately get[s] a slight headache

and irritation of [her] sinuses, throat, and eyes" because of air pollution." Ex. 13 ¶ 13-15.

GreenLatinos' injury allegations are squarely within precedent.

GreenLatinos' injuries are more than an "identifiable trifle" and are exactly the kind of

allegations that survive a 12(b)(1) motion. *See, e.g., Sierra Club v. U.S. Env't Prot. Agency*, 964

F.3d 882, 888 (10th Cir. 2020) (declarations identifying health risks and diminished visibility

sufficient for injury-in-fact); *WildEarth Guardians v. Colorado Springs Utils. Bd.*, No. 17-CV-

00357, 2018 WL 317469, at *6 (D. Colo. Jan. 8, 2018) (injury adequate where plaintiffs live and

recreate near facility, are concerned about health effects, and "curtail outdoor activities near their

homes . . . for fear of excess emissions"); *Wildearth Guardians v. Pub. Serv. Co. of Colorado*,

No. 09-CV-01862, 2010 WL 1568574, at *2 (D. Colo. Apr. 15, 2010) (denying motion to

dismiss where plaintiff's "recreational, aesthetic, and economic interests" are impacted by the

defendant's excessive pollution); *Vilsack*, 2011 WL 3471011, at *4 (injury-in-fact established

from diminished experience in nature, lessened visibility and increased smog, concern about

health from breathing pollution, and harm to member's photography career).

Moreover, Suncor's assertion that GreenLatinos could not be harmed by the Refinery's

continual release of pollutants into their neighborhood simply ignores relevant pleading

standards and the extensive precedent in Clean Air Act citizens suits.

*First*, Suncor's facial attack—that GreenLatinos alleged only generalized and vague

allegations, Mot. 9—not only disregards relevant pleading standards, but also inaccurately

characterizes GreenLatinos pleadings. At the pleading stage, "general factual allegations of

injury resulting from the defendant's conduct" suffice to establish standing because they are

presumed to "embrace those specific facts that are necessary to support the claim." *Lujan*, 504

U.S. at 561; *see also Benham v. Ozark Materials River Rock, LLC*, 885 F.3d 1267, 1272 (10th Cir. 2018) (the plaintiff "bears the burden of establishing these elements . . . with the manner and degree of evidence required at the successive stages of the litigation"). Here, GreenLatinos more than meets this standard. As explained in Section IV.A, the Amended Complaint detailed various injuries suffered by GreenLatinos' members, and GreenLatinos' provided detailed facts in the member declarations.[4] *See Bazile v. Fin. Sys., Inc.*, 983 F.3d 274, 277 (7th Cir. 2020) (plaintiffs may attach standing declarations in response to a motion to dismiss).

*Second*, Suncor's factual challenge asserts that GreenLatinos were not injured because the ambient air quality near the Refinery does not exceed the NAAQS or other regulatory guidelines, and therefore, GreenLatinos could not possibly be harmed. Mot. 10-11. Suncor is wrong. Fundamentally, ambient air quality thresholds are immaterial to actual injury or a reasonable fear of injury. *See LaFleur v. Whitman*, 300 F.3d 256, 270 (2d. Cir. 2002) (recognizing standing "even if the ambient level of $SO_2$ remains within the NAAQS," explaining that "Congress has recognized that there are potentially adverse effects from air pollution at levels below the NAAQS."); *Vilsack*, 2011 WL 3471011, at *4 (rejecting argument that plaintiff lacked standing because pollution does "not violate applicable environmental standards."); *cf. OCA-Greater Houston v. Texas*, 867 F.3d 604, 612 (5th Cir. 2017) (recognizing "the injury in fact requirement . . . is qualitative, not quantitative in nature"); *Conservation Council v. Costanzo*, 505 F.2d 498, 501 (4th Cir. 1974) (stating the "claimed injury need not be based on medical or scientific evidence of probable consequences"). Suncor's citation of *Pub. Int. Rsch.*

---

[4] GreenLatinos also detailed the kinds of harms caused by the pollutants Suncor emits. Am. Compl. at 19-28, ¶¶ 81-130.

*Grp. v. Magnesium Elektron*, Mot. 12, is inapposite; there, plaintiffs alleged only a recreational

injury in the river, and the district court found that defendant's pollution did not impact the river.

123 F.3d 111, 121 (3d Cir. 1997). Here, GreenLatinos allege they were directly impacted by the

pollution.

Further, this argument fails to acknowledge the other forms of injury, explained above in

Section IV.A, that are not direct physical injury or reasonable fear of injury, such as breathing

and smelling polluted air, seeing smoke or flaring, and economic injuries. As a result, Suncor's

expert report, and its arguments based thereon, do not defeat Suncor's standing.

*Third*, Suncor's factual challenge also fails because the expert report on which it relies

makes the same erroneous assumptions that GreenLatinos cannot be injured, or reasonably fear

injury, unless regulatory ambient air pollution limits are exceeded, and also fails to address

GreenLatinos' other asserted injuries. *See, e.g.,* Ex. 1 at PDF 3-4. Thus, the report is "immaterial

because it does not contradict plausible allegations that are themselves sufficient to show

standing." *Ham v. Lenovo (United States) Inc.*, 664 F. Supp. 3d 562, 573 (S.D.N.Y. 2023). As a

result, Suncor's standing challenge must be based entirely on the pleadings. *See id; see also*

*Oviedo Town Ctr. II, L.L.L.P. v. City of Oviedo*, No. 616CV1005ORL37GJK, 2016 WL

6996124, at *2 (M.D. Fla. Nov. 30, 2016).

*However*, if the court determines that Suncor's expert report is material to the standing

analysis, GreenLatinos require jurisdictional discovery regarding the basis for the expert report

and its underlying conclusions, *see Sizova v. Nat. Inst. of Standards & Tech.*, 282 F.3d 1320,

1326. (10th Cir. 2002), as detailed in GreenLatinos' Motion for Jurisdictional Discovery, in the

Alternative, filed contemporaneously with this opposition brief.

**B.      GreenLatinos' Injuries Are Traceable to Suncor's Violations of the Clean Air Act**

When discussing traceability, Suncor misconstrues the Tenth Circuit's opinion in *Utah Physicians*, arguing that GreenLatinos must "make a separate showing of standing for each time a separate violation allegedly occurred." Mot. 11. On the contrary, while the court stated that traceability requires a plaintiff to "demonstrate that *each* of Defendants' violations caused or contributed to the kinds of injuries alleged," it also explained that "[a] plaintiff need not prove causation with absolute scientific rigor." *Utah Physicians*, 21 F.4th at 1242, 1248. Instead, it held that a plaintiff meets its burden when a defendant violates an emission limit and "emits the injurious pollutant in the geographic vicinity of where the person is injured," regardless of how many other sources emit the same pollutants. *Id*. at 1244-45 (surveying circuit court decisions).

In reaching this conclusion, the Tenth Circuit relied on factors in *Sierra Club v. Cedar Point Oil Co.*, 73 F.3d 546, 588 (5th Cir. 1996). *See id.* at 1244-45. Under *Cedar Point,* a plaintiff must show the defendant "(1) [emitted] some pollutant in concentrations greater than allowed by its permit (2) into [a geographically proximate area] in which the plaintiffs have an interest that is or may be adversely affected by the pollutant and that (3) the pollutant causes or contributes to the kinds of injuries alleged by the plaintiffs." 73 F.3d at 557; *see also Colorado Springs*, 2018 WL 317469, at *7 ("a plaintiff must merely show that a defendant discharges a pollutant that causes or contributes to the kinds of injuries alleged in the specific geographic area of concern"). GreenLatinos meet all three elements.

*First*, GreenLatinos alleged, and Suncor does not dispute, that Suncor exceeded its limits and emitted excess amounts of various harmful pollutants. Am. Compl. at 24, ¶ 113.

*Second*, GreenLatinos alleged their injuries arose in the vicinity of Suncor's excess emissions because members live, work, and recreate near the Refinery as described in Section II above. *Id*. ¶ 20. These allegations satisfy the geographic nexus requirement. *See Utah Physicians,* 21 F.4th at 1444-45

*Third*, the pollutants that Suncor emits during its violations are connected to the kinds of injuries that GreenLatinos allege, discussed in Sections II and IV.A, above. GreenLatinos' reasonable fears about the impacts of this pollution on themselves and their families, along with their decisions to limit time spent outdoors in the neighborhood, *see* Section IV.A, are directly connected to the pollutants Suncor emits and the harms associated with those pollutants.

Because Suncor's attacks on GreenLatinos' injuries and the traceability of those injuries to the Refinery's pollution are without merit, the court should deny the motion.

## V.    The Diligent Prosecution Bar Does Not Apply

The Clean Air Act's diligent prosecution bar balances the enforcement priorities of regulators with the public's interest in ensuring enforcement of the Act by barring plaintiffs from filing a complaint if "the [EPA] or State has commenced and is diligently prosecuting a civil action in a court of the United States or a State to require compliance with the standard, limitation, or order." *Sierra Club v. Two Elk Generation Partners, Ltd. P'ship*, 646 F.3d 1258, 1263 (10th Cir. 2011) (quoting § 7604(b)(1)(B)). Three elements must be met to trigger the diligent prosecution bar: (1) EPA or the State must be prosecuting an action in court at the time the complaint is filed, (2) the action must be enforcing the same "standard, order, or limitation" as the citizen suit, and (3) the prosecution must be "diligent." *S. River Watershed All., Inc. v. Dekalb Cnty., Georgia,* 69 F.4th 809, 823 (11th Cir. 2023).

### A.    The Diligent Prosecution Bar is Not Jurisdictional

As a threshold matter, the diligent prosecution bar is not jurisdictional and, therefore, a motion to dismiss is analyzed under Rule 12(b)(6) not 12(b)(1). The Supreme Court in *Arbaugh v. Y&H Corp.* clarified that statutory limits are only jurisdictional if Congress "clearly states." 546 U.S. 500, 515-16 (2006). Applying *Arbaugh*, every circuit court to directly address the question has concluded that the bar is a non-jurisdictional claims-processing rule. *See e.g., S. River*, 69 F.4th at 823 (collecting cases); *Adkins v. VIM Recycling, Inc.*, 644 F.3d 483, 492 (7th Cir. 2011); *Naturaland Tr. v. Dakota Fin. LLC*, 41 F.4th 342, 347 (4th Cir. 2022).

Contrary to Suncor's argument, Mot. 14, the Tenth Circuit's pre-*Arbaugh* opinion in *Paper, Allied-Industrial Chemical And Energy Workers International Union v. Continental Carbon Co.*, did not address the question. There, the court merely held that the district court could rely on outside evidence because it ruled under Rule 12(b)(1). 428 F.3d 1285, 1292-93 (10th Cir. 2005). This is the very type of "drive-by jurisdictional ruling[]" that the Tenth Circuit has distinguished since *Arbaugh*. *N. Mill St., LLC v. City of Aspen*, 6 F.4th 1216, 1228 n.10 (10th Cir. 2021); *see also Naturaland Tr.*, 41 F.4th at 347 (distinguishing its own pre-*Arbaugh* rulings).

### B.    GreenLatinos Adequately Alleged that Neither EPA nor CDPHE Were Prosecuting An Action in Court and the Twenty-Year-Old Consent Decrees Are Insufficient

GreenLatinos correctly alleged that the diligent prosecution bar does not apply because, at the time they filed the Complaint, neither EPA nor CDPHE had an active enforcement case in court. Am. Compl. at 49-50, ¶¶ 254-260. Suncor does not dispute the truth of these factual allegations, and this is all that GreenLatinos are required to allege. *See Wildearth Guardians v.*

*Utilities Bd.*, No. 11-CV-00742, 2012 WL 1059981, at *2 (D. Colo. Mar. 29, 2012) (denying

motion to dismiss because no court action pending).

Suncor relies on the *twenty-year-old* Consent Decrees to argue that regulators are

prosecuting an action in court, Mot. 15, but that argument flies in the face of the language and

purpose of the citizen suit provision. The bar is set in the present tense: it applies "only if the

'Administrator or State has commenced and *is diligently prosecuting*' an enforcement action."

*Two Elk,* 646 F.3d at1263-64 (emphasis in original) (quoting § 7604(b)(1)(B)). Congress could

have easily barred citizen suits where the state has previously prosecuted an action, but it did not

do so. *Pub. Int. Rsch. Grp. of New Jersey, Inc. v. GAF Corp.*, 770 F. Supp. 943, 949 (D.N.J.

1991). Consent decrees are final judgments and are not currently *being prosecuted in court*. *See

id.*; *Citizens for a Better Env't-California v. Union Oil Co.,* 83 F.3d 1111, 1118 (9th Cir. 1996).

Accepting Suncor's argument would allow regulators to "indefinitely continue an enforcement

action" and would "eviscerate the timely commencement requirement" for an enforcement action

to bar a citizen suit. *Friends of Milwaukee's Rivers v. Milwaukee Metro. Sewerage Dist.*, 382

F.3d 743, 753 n.5 (7th Cir. 2004).

The administrative enforcement actions Suncor cites, Mot. 17, are irrelevant because

"courts interpreting [the bar] have uniformly held that 'a civil action in court' means what it

says—an action in a court—and preemption does not arise where a state agency is undertaking

purely administrative enforcement efforts." *Lamar Utilities Bd.*, 2012 WL 1059981, at *2

(citations omitted). Administrative enforcement of a pre-suit consent decree cannot qualify as

diligent prosecution. *See Sierra Club v. City & Cnty. of Honolulu*, No. 04-00463, 2008 WL

1968317, at *5 (D. Haw. May 7, 2008).[5]

Despite the plain statutory language, Suncor cites four cases applying the bar to pre-suit

consent decrees,[6] Mot. 16-17, but even those cases recognize that a consent decree does not

"automatically immunize a polluter from all citizen suits." *S. River Watershed All., Inc. v.

DeKalb Cnty., Georgia*, 484 F. Supp. 3d 1353, 1368 (N.D. Ga. 2020). Instead, courts must

"probe . . . events transpiring post-entry of the Consent Decree." *Id.* The Consent Decrees here

are easily distinguishable from Suncor's cases.

*First*, Suncor's cases all involved recent consent decrees. The primary case Suncor

discusses*, Group Against Smog & Pollution, Inc. v. Shenango Inc.*, ("*GASP*")*,* based its

reasoning on the "recent consent decree" and its "ongoing vitality." 810 F.3d 116, 130 (3d Cir.

2016). All but one of Suncor's cases involved consent decrees issued within the previous three

years. *See id.* (suit filed one month after consent decree); *Piney Run Pres. Ass'n v. Carroll Cnty.*,

523 F.3d 453, 459-61 (4th Cir. 2008) (suit four months after consent decree); *Dodge v. Mirant

Mid-Atl., LLC*, 732 F. Supp. 2d 578, 580 (D. Md. 2010) (suit 2.5 years after consent decree); *but

see S. River*, 69 F.4d at 814-15 (suit eight years after consent decree). Here, by contrast, the

Consent Decrees are twenty years old. *See Friends,* 382 F.3d at 752 (holding twenty-five-year-

old decrees did not trigger bar).

---

[5] Notably, unlike the Clean Air Act, the Clean Water Act does include a bar applicable to
pending and completed administrative enforcement actions. 33 U.S.C. § 1319(g)(6).
[6] Suncor also cites *Karr v. Hefner*, but that case did not involve a pre-suit consent decree. 475
F.3d 1192, 1200 (10th Cir. 2007) (EPA suit was pending when citizen suit filed).

*Second*, the opinions are concerned about interfering with comprehensive plans to bring sources into compliance. *See S. River*, 69 F.4d at 816 (multi-year "comprehensive program" to rehabilitate sewer system); *Piney Run*, 523 F.3d at 458 ("multi-phase Environmental Project" with "various obligations and deadlines"); *Dodge*, 732 F. Supp. 2d at 587 (requiring plans to address noncompliance and study of control technologies). Here, no such program exists. The latest deadline in either Consent Decree passed in 2012, *see, e.g.,* Ex. 6 ¶ 55—more than a decade ago. *See Friends*, 382 F.3d at 752 (consent decrees cannot bar violations occurring after all work completed).

*Third*, the cases often involve further court actions to enforce violations, including multiple consent decrees or modification to the decree. *See GASP*, 810 F.3d at 120 (two consent decrees two years apart); *Dodge*, 732 F. Supp. 2d at 580 (two consent decrees three years apart); *S. River*, 69 F.4th at 827 (prosecution diligent because regulators recently modified consent decree to address violations). Here, Suncor cites no court actions taken to address the persistent non-compliance.

## C.     The Consent Decrees Do Not Enforce the Same Emissions Limitations as the Amended Complaint

Suncor's Motion should be denied because (1) Suncor makes no meaningful attempt to match the standards enforced by the Consent Decrees to GreenLatinos' Claims, and (2) the standards do not overlap.

### 1.     Diligent Prosecution Only Applies to the Same, Not "Similar," Standards

As a threshold matter, the diligent prosecution bar only applies to a claim to enforce "the *same* 'standard, limitation, or order' as the government enforcement action," *In re Volkswagen*

*"Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 894 F.3d 1030, 1039 (9th Cir. 2018)

(emphasis in original)—it does not apply to "similar" standards, *see Frilling v. Vill. of Anna*,

924 F. Supp. 821, 836 (S.D. Ohio 1996) ("citizen suits are barred only if they are based on the

*very* same standards"). Suncor's argument to the contrary, Mot. 14, cites no law regarding

"similar" standards. *See Karr*, 475 at 1196 (plaintiffs admitted standards were the same); *Env't*

*Integrity Project v. Mirant Corp.*, No. CIV JFM-06-2249, 2007 WL 62619, at *1 n.2 (D. Md.

Jan. 3, 2007) (same); *Dodge*, 732 F. Supp. 2d at 585-86 (holding standards were the same).

Therefore, the Court should deny the Motion to the extent it argues that "similar"

emissions limitations in the Consent Decrees bar GreenLatinos' Claims.

### 2. Suncor Waived its Argument because it Does Not Connect Standards between the Consent Decrees and GreenLatinos' Claims

Suncor has waived its diligent prosecution challenge because it fails to develop its

argument that GreenLatinos is enforcing the same standards as the Decrees. Suncor merely

asserts, without explanation, that they are the same. *See, e.g.,* Mot. 4. These types of

undeveloped arguments are waived. *See Snyder v. Beam Techs., Inc.*, No. 20-CV-03255-NYW,

2021 WL 4947295, at *16 n.16 (D. Colo. Aug. 16, 2021); *see also Kazarinoff v. Wilson*, No. 22-

CV-02385-PAB-SKC, 2024 WL 98385, at *5 (D. Colo. Jan. 9, 2024).

Suncor's reliance on its Exhibit 4 does not satisfy its burden. *First*, incorporating the

Exhibit by reference without argument is an improper attempt to bypass the Court's word limit.

*See Concrete Works of Colorado, Inc. v. City & Cnty. of Denver*, 321 F.3d 950, 979 n.14 (10th

Cir. 2003) (disapproving of bypassing word limits by incorporating documents). *Second*, the

Exhibit still does not explain how standards overlap; it simply cites Consent Decree paragraphs and claims they are the same or "similar" to GreenLatinos' claims.[7]

### 3. The Consent Decrees Did Not Enforce the Same Emissions Limitations as GreenLatinos' Claims

The complaints filed by EPA, Exs. 19, 20, demonstrate that the Decrees did not enforce the same emissions limits as GreenLatinos. When comparing a prior enforcement action to a citizen suit, "a comparison of the pleadings is sufficient." *Glazer v. Am. Ecology Env't Serv. Corp.*, 894 F. Supp. 1029, 1035 (E.D. Tex. 1995) ("Congress did not intend to overburden the courts by requiring protracted litigation regarding the similarities."). EPA alleged three claims related to the Refinery: (1) violations of new source review requirements, (2) violations of New Source Performance Standards ("NSPS") Subparts A and J limiting types of gases that can be combusted in flares; and (3) leak detection and repair violations. Ex. 19 at 12-18; Ex. 20 at 16-23. On their face, GreenLatinos' Claims do not overlap with the first and third EPA claims.

Like EPA's second claim, GreenLatinos' Claim 1 also alleges violations of NSPS Subpart J, but the claims differ substantially. *First*, most Claim 1 violations occur at boilers and heaters, not flares. Am. Compl. at 55-56, ¶¶ 300-14. *Second*, Claim 1 alleges violations of a specific $H_2S$ concentration limit, *id*. at 56, ¶¶ 312-13, while EPA alleged improper flaring in non-emergency situations. Ex. 19 at 16; Ex. 20 at 20.

The Decrees themselves confirm that they did not enforce the same standards as GreenLatinos. The Decrees never mention most standards in GreenLatinos' Claims, some of which did not even exist when the Decrees were entered. *See, e.g.,* Am. Compl. Claims 2 & 11

---

[7] If the Court chooses to consider Exhibit 4, Plaintiffs have provided a copy of the table with substantive responses in Exhibit 23, attached hereto.

(standards beginning in 2017, 40 C.F.R. § 60.100a); *id.* Claims 21, 23, and 28 (standards beginning in 2019, 40 C.F.R. § 63.670). The Decrees broadly state that NSPS Subpart J applies to certain units, *see* Ex. 5 ¶¶ 54, 156, 171; Ex. 6 ¶¶ 98, 231, but they do not address the specific numeric limits GreenLatinos allege were violated. *See* Am. Compl. Claims 1, 5, 10, and 17. Finally, Claims 13, 14, 16, and 25 enforce terms created by the Decrees themselves, which are always enforceable. *See, e.g., City of Fairborn, v. U.S. Env't Prot. Agency*, No. 3:22-CV-102, 2024 WL 555929, at *6 (S.D. Ohio Feb. 12, 2024) (consent decrees do not bar claims for violations of the decrees themselves).

### D.    Any Prosecution of the Consent Decrees is Not Diligent

Even if the other requirements were met, GreenLatinos have demonstrated that any prosecution is not diligent.

*First*, Suncor's long history of violations demonstrates that prosecution is not diligent. While continued violations "do[] not *necessarily* imply lack of diligence," *Karr*, 475 F.3d at 1197, "ongoing violations support the allegation of a lack of diligence," *Cebollero-Bertran v. Puerto Rico Aqueduct & Sewer Auth.*, 4 F.4th 63, 75 (1st Cir. 2021). When violations consistently persist or the consent decree cannot assure compliance, prosecution is not diligent. *Friends*, 382 F.3d at 764; *Ohio Valley Env't Coal. v. Bluestone Coal Corp.*, No. CV 1:19-00576, 2020 WL 2949782, at *8 (S.D. W. Va. June 3, 2020) (collecting cases); *Cf. Lamar*, 2012 WL 1059981, at *3 (rejecting mootness argument because violations continued despite prior consent orders). Here, Suncor's violations have persisted for years. Am. Compl. 5, ¶ 2, Exs. B-L.

*Second*, EPA and CDPHE's failure to seek court intervention in the last twenty years, despite Suncor's consistent violations, also shows a lack of diligence. *See Honolulu*, 2008 WL

1968317 at *7 (no diligent prosecution of ten-year-old consent decree where government never sought court enforcement).

## VI.    GreenLatinos Adequately Alleged Claim 25

### A.    GreenLatinos Alleged that A NOx Emission Limit Applies to Heater H-2101

GreenLatinos alleged that a NOx emission limit has applied to Heater H-2101 since it was first installed. Am. Compl. at 43, ¶¶ 213-14; 75 ¶¶ 479-83. Suncor argues that the limit is inapplicable because it was first added to Suncor's Title V permit on July 9, 2024, Mot. 19, but this argument is incorrect for two reasons.

*First*, CDPHE determined in Suncor's Title V Permit that the emissions limit has applied to Heater H-2101 since installation. *See, e.g.,* Ex. 24 (West Plant Permit TRD) at 160.

*Second*, a citizen suit can enforce any "emission standard or limitation," which includes "a requirement . . . which limits the quantity, rate, or concentration of emissions of air pollutants," *Utah Physicians*, 21 F.4th at 1250 (citations omitted)—not just Title V Permit conditions. The NOx concentration in Claim 25 meets that definition. Meanwhile, the permit's compliance schedule for the heater does not absolve Suncor from complying with the limit because "[a]ny such schedule of compliance shall not sanction noncompliance with, the applicable requirements on which it is based." 40 C.F.R. § 70.5(c)(8)(iii)(C).

### B.    GreenLatinos Plausibly Alleged that Claim 25 is Timely

GreenLatinos alleged that Heater H-2101 has violated the NOx emission limit each time that it is operated. Am. Compl. at 75, ¶ 483. That is sufficient to satisfy the statute of limitations. *See Sec. & Exch. Comm'n v. Kokesh*, 884 F.3d 979, 984 (10th Cir. 2018) (each act in violation enforceable under statute of limitations). Suncor's citation of *Sierra Club v. Oklahoma Gas &*

*Electric Co.*, Mot. 20, is inapposite because it found the violation was a one-time continuing violation. 816 F.3d 666, 672 (10th Cir. 2016). Here, each operation of the heater accrued discrete violations. *See WildEarth Guardians v. Mountain Coal Co.*, No. 20-CV-01342, 2021 WL 1186669, at *2 (D. Colo. Mar. 30, 2021) (distinguishing *Oklahoma Gas*).

Also, the limitations period is tolled because GreenLatinos could not have reasonably discovered the violation earlier. *See United States v. Cemex, Inc.*, 864 F. Supp. 2d 1040, 1046 (D. Colo. 2012). CDPHE first discovered that the emission limit applied during the 2024 permit renewal, Ex. 24 at 160, despite Suncor's duty to identify the limit in its permit applications, *see, e.g.,* 5 C.C.R. § 1001-5:C.III.C.4. GreenLatinos could not have reasonably discovered the violations earlier than CDPHE, so the limitations period is tolled.

## VII.  Conclusion

For the foregoing reasons, the Court should deny the Motion.

DATED: February 19, 2025

Respectfully submitted,

*/s/ Ian Coghill*

_____

**Ian Coghill**
**Rachael Jaffe**
Earthjustice
633 17th Street, Suite 1600
Denver, CO 80202
Telephone: (303) 996-4620
Email: icoghill@earthjustice.org
Email: rjaffe@earthjustice.org
Attorneys for Plaintiffs GreenLatinos, 350
Colorado, and Sierra Club

### CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1), as modified by the Court's January 14, 2025 Order, ECF 26.


_/s/ Ian Coghill_
Ian Coghill

## CERTIFICATE OF SERVICE

I hereby certify that on the 19th day of February, 2025, I served a true and complete copy of the foregoing document on all parties of record via the Court's electronic filing service:

*Attorneys for Suncor Energy (U.S.A.) Inc.*
Eric L. Robertson
Hugh Q. Gottschalk
Wheller Trigg O-Donnell LLP
370 17th Street, Suite 4500
Denver, CO 80202-5647
Robertson@wtotrial.com
gottschalk@wtotrial.com

*Attorneys for Suncor Energy (U.S.A.) Inc.*
John H. Bernetich
Carlos R. Romo
Williams Weese Pepple & Ferguson PC
1801 California St., Ste 3400
Denver, CO 80202
jbernetich@williamsweese.com
cromo@williamsweese.com

*/s/ Ian Coghill*

**Ian Coghill**
**Rachael Jaffe**
Earthjustice
633 17th Street, Suite 1600
Denver, CO 80202
Telephone: (303) 996-4620
Email: icoghill@earthjustice.org
Email: rjaffe@earthjustice.org
Attorneys for Plaintiffs GreenLatinos, 350
Colorado, and Sierra Club