# EXHIBIT 19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS


UNITED STATES OF AMERICA,      )
                                       )
        Plaintiff,        )
    v.                      )     CIVIL ACTION NO.
                                         )
CONOCO Incorporated,         )
                                       )
        Defendant.       )
_____)

### COMPLAINT

The United States of America, by the authority of the Attorney General of the United States and through the undersigned attorneys, acting at the request of the Administrator of the United States Environmental Protection Agency ("EPA"), alleges:

### NATURE OF ACTION

1. This is a civil action brought against Conoco Incorporated, ("Conoco" or "Defendant"), pursuant to Section 113(b) of the Clean Air Act ("CAA" or the Act), 42 U.S.C. § 7413(b), for alleged environmental violations at four petroleum refineries owned and operated by Conoco. One or more of the refineries have been and are in violation of EPA's regulations implementing the following Clean Air Act statutory and regulatory requirements applicable to the petroleum refining industry: Part C of Title I of the Act, 42 U.S.C. §

7470-7492, Prevention of Significant Deterioration ("PSD");

Section 173 of Part D of the Act, 42 U.S.C. §§ 7503-7515, New

Source Review ("NSR"); New Source Performance Standards

("NSPS"), 40 C.F.R. Part 60, Subparts J and QQQ; Leak

Detection and Repair ("LDAR"), 40 C.F.R. Parts 60 and 63;

National Emission Standards for Hazardous Air Pollutants

("NESHAP") for Benzene, 40 C.F.R. Part 61; and the Colorado,

Louisiana, Montana, and Oklahoma state implementation plans

("SIPs") which incorporate and/or implement the above-listed

federal regulations.

    2.   The United States seeks an injunction ordering

Defendant to comply with the above statutes and the laws and

regulations promulgated thereunder, and civil penalties for

Defendant's past and ongoing violations.

<u>**JURISDICTION AND VENUE**</u>

    3.   This Court has jurisdiction over the subject matter

of this action pursuant to 28 U.S.C. §§ 1331, 1345 and 1355;

Section 113(b) of the CAA.

    4.   Venue is proper in this District pursuant to 28

U.S.C. § 1391(c) and Section 113(b) of the CAA, 42 U.S.C.

§ 7413(b) because the Defendant is located and is doing

business in this district.

**NOTICE TO STATE**

5.   Notice of the commencement of this action has been
given to the States of Colorado, Louisiana, Montana, and
Oklahoma as required under Section 113(b) of the CAA, 42
U.S.C. § 7413(b).

**DEFENDANTS**

6.   Conoco owns and operates four (4) domestic petroleum
refineries located as follows:

Commerce City, Colorado ("Denver Refinery")

Westlake, Louisiana ("Lake Charles Refinery")[1]

Billings, Montana ("Billings Refinery")

Ponca City, Oklahoma ("Ponca City Refinery")

7.   The Defendant is a "person" as defined in Section
302(e) of the CAA, 42 U.S.C. §7602(e), and the federal and
state regulations promulgated pursuant to these statutes.

8.   The petroleum refining process at the Defendant's
four refineries results in emissions of significant quantities
of regulated air pollutants, including nitrogen oxides
("NOx"), carbon monoxide ("CO"), particulate matter ("PM"),
sulfur dioxide ("SO2"), as well as volatile organic compounds
("VOCs") and hazardous air pollutants ("HAPs"), including

---

[1] This facility includes the Excel Paralubes facility
operated and partly owned by Conoco.

benzene. The primary sources of these emissions are the fluid
catalytic cracking units ("FCCUs"), process heaters and
boilers, the sulfur recovery plants, the wastewater treatment
system, fugitive emissions from leaking components, and flares
throughout the refinery.

### STATUTORY AND REGULATORY BACKGROUND
### <u>CLEAN AIR ACT REQUIREMENTS</u>

9. The Clean Air Act established a regulatory scheme
designed to protect and enhance the quality of the nation's
air so as to promote the public health and welfare and the
productive capacity of its population. Section 101(b)(1) of
the Act, 42 U.S.C. § 7401(b)(1).

10. <u>Prevention of Significant Deterioration</u>. - Section
109 of the Act, 42 U.S.C. § 7409, requires the Administrator
of EPA to promulgate regulations establishing primary and
secondary national ambient air quality standards ("NAAQS" or
"ambient air quality standards") for certain criteria air
pollutants. The primary NAAQS are to be adequate to protect
the public health, and the secondary NAAQS are to be adequate
to protect the public welfare, from any known or anticipated
adverse effects associated with the presence of the air
pollutant in the ambient air.

-4-

11.  Section 110 of the Act, 42 U.S.C. § 7410, requires each state to adopt and submit to EPA for approval a State Implementation Plan ("SIP") that provides for the attainment and maintenance of the NAAQS.

12.  Under Section 107(d) of the Act, 42 U.S.C. § 7407(d), each state is required to designate those areas within its boundaries where the air quality is better or worse than the NAAQS for each criteria pollutant, or where the air quality cannot be classified due to insufficient data.  These designations have been approved by EPA and are located at 40 C.F.R. Part 81.  An area that meets the NAAQS for a particular pollutant is classified as an "attainment" area; one that does not is classified as a "non-attainment" area.

13.  Part C of Title I of the Act, 42 U.S.C. §§ 7470-7492, sets forth requirements for the prevention of significant deterioration ("PSD") of air quality in those areas designated as attaining the NAAQS standards.  These requirements are designed to protect public health and welfare, to assure that economic growth will occur in a manner consistent with the preservation of existing clean air resources and to assure that any decision to permit increased air pollution is made only after careful evaluation of all the consequences of such a decision and after public participation

-5-

in the decision-making process.  These provisions are referred
to herein as the "PSD program."

14.  Section 165(a) of the Act, 42 U.S.C. § 7475(a),
prohibits the construction and subsequent operation of a major
emitting facility in an area designated as attainment unless a
PSD permit has been issued.  Section 169(1) of the Act, 42
U.S.C. § 7479(1), defines "major emitting facility" as a
source with the potential to emit 250 tons per year ("tpy") or
more of any air pollutant.

15.  As set forth at 40 C.F.R. § 52.21(k), the PSD
program generally requires a person who wishes to construct or
modify a major emitting facility in an attainment area to
demonstrate, before construction commences, that construction
of the facility will not cause or contribute to air pollution
in violation of any ambient air quality standard or any
specified incremental amount.

16.  As set forth at 40 C.F.R. § 52.21(i), any major
emitting source in an attainment area that intends to
construct a major modification must first obtain a PSD permit.
"Major modification" is defined at 40 C.F.R. § 52.21(b)(2)(i)
as meaning any physical change in or change in the method of
operation of a major stationary source that would result in a
significant net emission increase of any criteria pollutant

-6-

subject to regulation under the Act. "Significant" is defined
at 40 C.F.R. § 52.21(b)(23)(i) in reference to a net emissions
increase or the potential of a source to emit any of the
following criteria pollutants, at a rate of emissions that
would equal or exceed any of the following: for ozone, 40 tons
per year of volatile organic compounds ("VOC"s); for carbon
monoxide ("CO"), 100 tons per year; for nitrogen oxides
("$NO_x$"), 40 tons per year; for sulfur dioxide ("SO2"), 100 tons
per year, (hereinafter "criteria pollutants").

17. As set forth at 40 C.F.R. § 52.21(j), a new major
stationary source or a major modification in an attainment
area shall install and operate best available control
technology ("BACT") for each pollutant subject to regulation
under the Act that would have the potential to emit in
significant quantities.

18. Section 161 of the Act, 42 U.S.C. § 7471, requires
state implementation plans to contain emission limitations and
such other measures as may be necessary, as determined under
the regulations promulgated pursuant to these provisions, to
prevent significant deterioration of air quality in attainment
areas.

19. A state may comply with Section 161 of the Act
either by being delegated by EPA the authority to enforce the

federal PSD regulations set forth at 40 C.F.R. § 52.21, or by
having its own PSD regulations approved as part of its SIP by
EPA, which must be at least as stringent as those set forth at
40 C.F.R. § 51.166.

20.   Part D of Title I of the Act, 42 U.S.C. §§ 7501-
7515, sets forth provisions which direct States to include in
their SIPs requirements to provide for reasonable progress
towards attainment of the NAAQS in nonattainment areas.
Section § 172(c)(5) of the Act, 42 U.S.C.§ 7502(c)(5),
provides that these SIPs shall require New Source Review
("NSR") permits for the construction and operation of new or
modified major stationary sources anywhere in the
nonattainment area, in accordance with Section 173 of the Act,
42 U.S.C. § 7503, in order to facilitate "reasonable further
progress" towards attainment of the NAAQS.

21.   Section 173 of Part D of the Act, 42 U.S.C. § 7503,
requires that in order to obtain such a permit the source
must, among other things: (a) obtain federally enforceable
emission offsets at least as great as the new source*s
emissions; (b) comply with the lowest achievable emission rate
as defined in Section 171(3) of the Act, 42 U.S.C. § 7501(3);
and (c) analyze alternative sites, sizes, production
processes, and environmental control techniques for the

-8-

proposed source and demonstrate that the benefits of the proposed source significantly outweigh the environmental and social costs imposed as a result of its location, construction, or modification.

22.   As set forth in 40 C.F.R. § 52.24, no major stationary source shall be constructed or modified in any nonattainment area as designated in 40 C.F.R. Part 81, Subpart C ("nonattainment area") to which any SIP applies, if the emissions from such source will cause or contribute to concentrations of any pollutant for which a NAAQS is exceeded in such area, unless, as of the time of application for a permit for such construction, such plan meets the requirements of Part D, Title I, of the Act.

23.   A state may comply with Section 172 and 173 of the Act by having its own nonattainment new source review regulations approved as part of its SIP by EPA, which must be at least as stringent as those set forth at 40 C.F.R. § 51.165.

24.   <u>Flaring and New Source Performance Standards</u>. – Section 111 of the CAA, 42 U.S.C. § 7411, requires EPA to promulgate standards of performance for certain categories of new air pollution sources ("New Source Performance Standards" or "NSPS"). Pursuant to Section 111(b), 42 U.S.C. § 7411(b),

EPA promulgated general regulations applicable to all NSPS
source categories.  Those general regulations are set forth at
40 C.F.R. Part 60 Subpart A.

25.  EPA's NSPS regulations applicable to petroleum
refineries, including requirements for implementing and
utilizing good air pollution control practices at all times,
are set forth at 40 C.F.R. Part 60 Subpart J.  The NSPS
requirements establish an emission limit of 250 ppm of SO2
from the sulfur recovery plants, which represents a 99.9%
reduction of SO2.

26. <u>Leak Detection and Repair</u>. - Section 112 of the CAA,
42 U.S.C. § 7412, requires EPA to promulgate emission
standards for certain categories of sources of hazardous air
pollutants ("National Emission Standards for Hazardous Air
Pollutants" or "NESHAPs").  Pursuant to Section 112(d) of the
CAA, 42 U.S.C. § 7412(d), EPA promulgated national emission
standards for equipment leaks (fugitive emission sources).
Those regulations are set forth at 40 C.F.R. Parts 61 Subpart
J and V, and Part 63 Subparts F (National Emission Standards
for Organic Hazardous Air Pollutants from the Synthetic
Organic Chemical Manufacturing Industry), H (NESHAP for
Equipment Leaks)and CC (NESHAP for Petroleum Refineries) and
Part 60 Subparts VV and GGG.

-10-

27. The focus of the LDAR program is the refinery-wide inventory of all possible leaking valves, the regular monitoring of those valves to identify leaks, and the repair of leaks as soon as they are identified.

28. Benzene Waste NESHAP. - The CAA requires EPA to establish emission standards for each "hazardous air pollutant" ("HAP") in accordance with Section 112 of the CAA, 42 U.S.C. § 7412.

29. In March 1990, EPA promulgated national emission standards applicable to benzene-containing wastewaters. Benzene is a listed HAP and a known carcinogen. The benzene waste regulations are set forth at 40 C.F.R. Part 61 Subparts FF, (National Emission Standard for Benzene Waste Operations). Benzene is a naturally-occurring constituent of petroleum product and petroleum waste and is highly volatile. Benzene emissions can be detected anywhere in a refinery where the petroleum product or waste materials are exposed to the ambient air.

30. Pursuant to the Benzene Waste NESHAP, refineries are required to tabulate the total annual benzene ("TAB") content in their wastewater. If the TAB is over 10 megagrams, the refinery is required to elect a control option that will

require the control of all waste streams, or control of certain select waste streams.

31. Pursuant to Section 113(b) of the CAA, 42 U.S.C. §7413(b), EPA may commence a civil action for injunctive relief and civil penalties for violations of the Act, not to exceed $25,000 per day of violation for violations of the CAA. Pursuant to Pub. L. 104-134 and 61 Fed. Reg. 69369, civil penalties of up to $27,500 per day per violation may be assessed for violations occurring on or after January 30, 1997.

## FIRST CLAIM FOR RELIEF
### PSD and NSR Requirements

32. Paragraphs 1 through 31 are realleged and incorporated by reference.

33. The Defendant owns and operates the 4 petroleum refineries identified in Paragraph 6. Petroleum refining involves the physical, thermal and chemical separation of crude oil into marketable petroleum products.

34. EPA has conducted investigations of one or more of the Defendant's petroleum refineries, which included site inspections, review of permitting history and emissions data, and analysis of other relevant information concerning Conoco's modification and operation of these facilities. The United

States alleges the following based on the results of EPA's investigation, information and belief:

35.  The Defendant's petroleum refining process results in emissions of significant quantities of criteria air pollutants, including nitrogen oxides ("NOx"), carbon monoxide ("CO"), particulate matter ("PM"), sulfur dioxide ("SO2"), as well as volatile organic compounds ("VOCs") and hazardous air pollutants ("HAPs"), including benzene.  The primary sources of these emissions are the fluid catalytic cracking units ("FCCUs"), process heaters and boilers, and the sulfur recovery plants ("SRPs").

36.  The Defendant's facilities are "petroleum refineries" in accordance with Section 169(1) of the CAA, 42 U.S.C. § 7479(1), which defines "major emitting facility" for certain listed stationary sources as a source with the potential to emit 100 TPY or more of any criteria air pollutant.  Conoco's petroleum refineries are major emitting facilities with the potential to emit in excess of 100 TPY of NOx, PM, and SO2, which are listed criteria air pollutants.

37.  At all times relevant to this Complaint, the following of the Defendant's refineries were located in an area that was designated as "Class II" under Section 162(b) of the Act, 42 U.S.C. § 7472(b), and that has attained the

National Ambient Air Quality Standards for Ozone, of which NOx
is a precursor, $SO_2$, and PM under Section 107(d) of the Act,
42 U.S.C. § 7407(d):  Denver, Lake Charles, Billings, and
Ponca City.

38.  At all times relevant to this Complaint, and on
numerous occasions since commencement of operations, the
Defendant has failed to fully and accurately identify the
emissions from its petroleum refineries of one or more
criteria pollutants.

39.  During the time period relevant to this Complaint,
the Defendant has modified the FCCU's, heaters and boilers,
and SRPs at their respective petroleum refineries causing a
significant increase in emissions of NOx, PM, and $SO_2$, which
is defined as a "major modification" within the meaning of 40
C.F.R. § 52.21(b)(2).

40.  Since the major modification of its petroleum
refineries, the Defendant has been in violation of Section
165(a) of the CAA, 42 U.S.C. § 7475(a), and 40 C.F.R. § 52.21,
and the corresponding state implementation plans, by failing
to undergo PSD and NSR review, by failing to obtain all
appropriate permits, and failing to install the best available
control technology and/or the meet the lowest achievable
emission rate for the control of NOx, PM, and $SO_2$ emissions

-14-

from all FCCUs, process heaters and boilers, and sulfur
recovery plants.

41.    Unless restrained by an Order of the Court, these
violations of the CAA and the implementing regulations will
continue.

42.    As provided in 42 U.S.C. § 7413(b), the Defendant's
violations, as set forth above, subject it to injunctive
relief and civil penalties of up to $25,000 per day for each
violation of the Act prior to January 31, 1997, and $27,500
per day for each violation after January 30, 1997, pursuant to
the Federal Civil Penalties Inflation Adjustment Act of 1990,
28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701.

**SECOND CLAIM FOR RELIEF**
**<u>New Source Performance Standards Subpart J</u>**

43.  Paragraphs 1 through 31 are realleged and
incorporated by reference.

44.    EPA has conducted investigations of one or more of
the Defendant's petroleum refineries, which included site
inspections, review of permitting history and emissions data,
and analysis of other relevant information concerning Conoco's
modification and operation of these facilities.  The United
States alleges the following based on the results of EPA's
investigation, information and belief:

-15-

45. On one or more occasions, since December 31, 1996, the Defendant's refinery flares have emitted unpermitted quantities of $SO_2$, a criteria air pollutant, under circumstances that did not represent good air pollution control practices, in violation of NSPS, 40 C.F.R. § 60.11(d).

46. On one or more occasions, since December 31, 1996, the Defendant's refinery flares have been utilized for combustion of refinery fuel gas in violation of NSPS Subpart J, 40 C.F.R. §§ 60.104, et seq.

47. Unless restrained by an Order of the Court, these violations of the Act and the implementing regulations will continue.

48. As provided in 42 U.S.C. § 7413(b), the Defendant's violations, as set forth above, subject it to injunctive relief and civil penalties of up to $25,000 per day for each violation of the Act prior to January 30, 1997, and $27,500 per day for each violation after January 30, 1997, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701.

### THIRD CLAIM FOR RELIEF
### Leak Detection and Repair Requirements

49. Paragraphs 1 through 31 are realleged and incorporated by reference.

-16-

50.    EPA has conducted investigations of one or more of
the Defendant's petroleum refineries, which included site
inspections, review of permitting history and emissions data,
and analysis of other relevant information concerning Conoco's
modification and operation of these facilities.  The United
States alleges the following based on the results of EPA's
investigation, information and belief:

51.    The Defendant is required under 40 C.F.R. Part 60
Subpart GGG, to comply with standards set forth at 40 C.F.R.
§ 60.592, which in turn references standards set forth at 40
C.F.R. §§ 60.482-1 to 60.482-10, and alternative standards set
forth at 40 C.F.R. §§ 60.483-1 to 60.483-2, for certain of its
refinery equipment in VOC service, constructed or modified
after January 4, 1983,

52.    Pursuant to 40 C.F.R. § 60.483-2(b)(1), an owner or
operator of subject VOC valves must initially comply with the
leak detection monitoring and repair requirements set forth in
40 C.F.R. § 60.482-7, including the use of Standard Method 21
to monitor for such leaks.

53.    Pursuant to 40 C.F.R. Part 61 Subpart J, the
Companies are required to comply with the requirements set
forth in 40 C.F.R. Part 61, Subpart V, for certain specified
equipment in benzene service.

-17-

54.  On one or more occasions since December 31, 1996, the Defendant failed to accurately monitor the subject VOC valves and other components at each of its refineries as required by Standard Method 21, to report the VOC valves and other components that were leaking, and to repair all leaking VOC valves and other components in a timely manner.

55.  On one or more occasions, since December 31, 1996, the Defendant failed to monitor all valves at its petroleum refineries in accordance with the above described requirements.

56.  The Defendant's acts or omissions referred to in Paragraphs 54 and 55 constitute violations of the LDAR.

57.  Unless restrained by an Order of the Court, the Defendant's violations of the Act and the implementing regulations will continue.

58.  As provided in 42 U.S.C. § 7413(b), the Defendant's violations, as set forth above, subject it to injunctive relief and civil penalties of up to $25,000 per day for each violation of the Act prior to January 30, 1997, and $27,500 per day for each violation after January 30, 1997, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701.

### FOURTH CLAIM FOR RELIEF
### New Source Performance Standards Subpart QQQ

59.  Paragraphs 1 through 31 are realleged and incorporated by reference.

60.  The Billings refinery operates individual drain systems and an oil water separator that are "affected facilities" pursuant to 40 C.F.R. §60.690(a)(2) and (a)(3).

61.  The Billings refinery operates a storm water sewer system as defined in 40 C.F.R. §60.691.

62.  As provided in EPA's regulations at 40 C.F.R. §60.692-1(d)(1), a storm water sewer system which is segregated from the process wastewater collection system is not subject to the requirements of NSPS Subpart QQQ.

63.  On August 11, 2000, Conoco reported to the State of Montana that it had process wastewater entering the storm water sewer system at the Billings refinery in violation of 40 C.F.R. §60.692-1(d)(1).

64.  Defendant's failure to segregate its storm water or to comply with the standards of performance set forth in Subpart QQQ constitutes a violation of the Standards of Performance for VOC Emissions From Petroleum Refinery Wastewater Systems.

65.    Unless restrained by an Order of the Court, the
Defendant's violations of the Act and the implementing
regulations will continue.

66.    As provided in 42 U.S.C. § 7413(b), the Defendant's
violations, as set forth above, subject it to injunctive
relief and civil penalties of up to $25,000 per day for each
violation of the Act prior to January 30, 1997, and $27,500
per day for each violation after January 30, 1997, pursuant to
the Federal Civil Penalties Inflation Adjustment Act of 1990,
28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, the United States, respectfully
requests that this Court:

1.    Order the Defendant to immediately comply with the
statutory and regulatory requirements cited in this Complaint,
under the Clean Air Act;

2.    Order the Defendant to take appropriate measures to
mitigate the effects of its violations;

3.    Assess civil penalties against the Defendant for up
to the amounts provided in the Clean Air Act; and

4.  Grant the United States such other relief as this

Court deems just and proper.


                        Respectfully submitted,


                        _____
                        JOHN CRUDEN
                        Acting Assistant Attorney General
                        Environment and Natural Resources
                                Division
                        U.S. Department of Justice


                        _____
                        DIANNE SHAWLEY
                        Senior Counsel
                        Environmental Enforcement Section
                        U.S. Department of Justice
                        P.O. Box 7611
                        Washington, D.C. 20044-7611
                        (202) 514-0096

Mervyn A. Mosbacker
United States Attorney


By: _____
Gordon M Speights Young
Assistant United States Attorney
Southern District of Texas
P.O. 61129
Houston, TX 77208


OF COUNSEL:

BRENDA MORRIS
Assistant Regional Counsel
U.S. Environmental Protection Agency
Region 8
Denver, Colorado


RUSTY HERBERT
Assistant Regional Counsel (6RC-EA)
U.S. Environmental Protection Agency
Region 6
1445 Ross Avenue
Dallas, Texas 75202-2733