# EXHIBIT 24

**TECHNICAL REVIEW DOCUMENT**
for
**RENEWAL / MODIFICATIONS TO OPERATING PERMIT 96OPAD120**

Suncor Energy (USA), Inc. – Commerce City Refinery, Plants 1 & 3 (West Plant)
Adams County
Source ID 0010003

Published: July 9, 2024

---

## Table of Contents:

**SECTION I - PURPOSE** ................................................................................................... 1

**SECTION II - DESCRIPTION OF SOURCE** ................................................................. 4

1. National Emission Standards for Hazardous Air Pollutant (NESHAP) Requirements ..................................................................................................... 5
2. New Source Performance Standards (NSPS) ....................................................... 7
3. Regulation No. 7 Requirements ............................................................................ 9
4. Regional Haze Requirements (Regulation No. 23) ............................................. 13
5. Compliance Assurance Monitoring (CAM) Requirements ................................... 14
6. Regarding Revisions to the Federal NAAQS for PM2.5 ...................................... 22

On February 7, 2024, the EPA promulgated a lowering of the PM2.5 annual NAAQS from 12.0 to 9.0 micrograms per cubic meter. Accordingly, the Division evaluated whether revisions to its modeling thresholds for PM2.5 were necessary. The Division published "Permitting Clarification on PM2.5 Modeling Thresholds Memorandum" on April 3, 2024 to address this NAAQS revision. Per that memo, none of the modifications included in this permit issuance require further PM2.5 modeling analyses. .......................................................................................... 22

**SECTION III - DISCUSSION OF MODIFICATIONS MADE** ....................................... 22

1. Source Requested Modifications .......................................................................... 23
   1.1 September 16, 2016 Renewal Application ..................................................... 23
   1.2 May 30, 2017 Modification (minor modification) – Tank T62 ........................ 28
   1.3 June 23, 2017 Modification (minor modification) – Install new sump and BWON controls at truck rack (Denver Terminal) ........................................... 29
   1.4 July 31, 2017 Modification (minor modification) – Upgrade the Hydrogen (H2) plant sewers to comply with NSPS QQQ ..................................................... 32
   1.5 September 12, 2017 Modification (minor modification) – Upgrade Plant 3 (Asphalt Unit) flare to comply with MACT CC ............................................... 36
   1.6 February 6, 2018 and September 12 and November 1, 2019 Modifications (minor modifications) – Upgrade gasoline benzene reduction (GBR) unit flare to comply with MACT CC and re-permit GBR Flare ....................................... 46
   1.7 March 6, 2018 Modification (minor modification) – Upgrade Plant 1 flare to comply with MACT CC ................................................................................... 56

1.8     March 28, 2018 Modification (minor modification) – Revise NO$_X$ emission factor for Boiler B4 ...................................................................................... 63

1.9     June 14, 2018 Modification (minor modification) – Replace Plant 1 Rail Rack Flare with a Vapor Combustion Unit (VCU) (Plant 1 Rail Rack RSR Compliance Project) ......................................................................................... 63

1.10    September 14, 2018 (construction permit) – Revise Hydrogen Cyanide (HCN) limit..................................................................................................... 72

1.11    November 5, 2018 Modification (minor modification) – No. 2 Hydrodesulfurizer (HDS) tier 3 ultra-low sulfur gasoline (ULSG) project....... 76

1.12    December 11, 2018 (additional information submittal) – Fluid Catalytic Cracking Unit (FCCU) resid jumper project ................................................... 81

1.13    February 20 and October 2, 2019 (administrative amendments) and October 3, 2019 and August 27, 2020 (additional information submittal) – Replace blowers for AIRS pt 634, zones 3 and 4 and AIRS pt 615 ........................... 84

1.14    May 30, 2019 (minor modification) – New Sand Creek air sparge/soil vapor extraction (AS/SVE) system .......................................................................... 85

1.15    June 4, 2019 (significant modification) – Ethanol unloading at Plant 1 rail rack VCU ............................................................................................................... 87

1.16    October 2, 2019 (minor modification) – Replace emergency air compressor engines.................................................................................................... 91

1.17    October 8, 2019 (minor modification) – Include P1 rail rack VCU operating parameter ................................................................................................. 93

1.18    January 22, 2020 (minor modification) – Tank T-4501 .................................. 94

1.19    March 31, 2020 (minor modification) – New Sand Creek air sparge/soil vapor extraction (AS/SVE) system .......................................................................... 94

1.20    September 25, 2020 (minor modification) P1 Main plant flare isolation valve project .................................................................................................... 97

1.21    October 13, 2020 (minor modification) – H-33 and H-37 Stack replacement project .................................................................................................... 98

1.22    January 14, 2021 (additional information submittal) No. 1 Crude Unit Turnaround Projects................................................................................... 109

1.23    August 4, 2021 (minor modification) – Plant 1 truck rack (Denver Terminal) flare tip replacement.................................................................................. 116

1.24    November 30, 2021 (minor modification) – Reformulated Gasoline (RFG) Project ..................................................................................................... 120

1.25    February 25, 2022 Additional Information Submittal for Tank Degassing Thermal Oxidizer ..................................................................................... 133

1.26    March 18, 2022 Additional Information Submittal – Remediation Systems . 137

1.27    Modification Summary................................................................................ 139

2.     Other Modifications............................................................................................ 140

3.     Regarding Ozone NAAQS Compliance Demonstration for Included Modifications 172

4.     Changes Made to Draft Permit and/or Technical Review Document Based on Comments Received During the Public Comment Period ................................. 173

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3    Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

# SECTION I - PURPOSE

This document establishes the basis for decisions made regarding the applicable requirements, emission factors, monitoring plan and compliance status of emission units covered by the renewal and modifications of the Operating Permit for the Suncor Commerce City Refinery – Plants 1 and 3 (West Plant and Asphalt Unit). The first renewal of the Operating Permit for this facility was issued on October 1, 2012 and it was last revised on February 22, 2018. The expiration date for the permit was October 1, 2017. However, since a timely and complete renewal application was submitted, under Colorado Regulation No. 3, Part C, Section IV.C all of the terms and conditions of the existing permit shall not expire until the renewal Operating Permit is issued and any previously extended permit shield continues in full force and operation. The source submitted a renewal application on September 16, 2016. Prior to and after submittal of the renewal application, the source submitted applications to modify their permit as indicated in the table below.

| Modification Applications | | |
|---|---|---|
| Date Received | Modification Type | Modification Description |
| 5/30/2017 | Minor Mod | Tank T62 |
| 6/23/2017 | Minor Mod | Install new sump and BWON controls at truck rack (Denver Terminal) |
| 7/31/2017 | Minor Mod | Upgrade the Hydrogen ($H_2$) Plant Sewers to comply with NSPS QQQ |
| 9/12/2017 | Minor Mod | Upgrade the AU (Plant 3) Flare to comply with the new MACT CC requirements. |
| 12/26/2017 | Minor Mod | Ethanol unloading at Plant 1 rail rack **Application cancelled 6/4/2019.** |
| 2/6/2018 | Minor Mod | Upgrade the gasoline benzene reduction (GBR) Flare to comply with the new MACT CC requirements. |
| 3/6/2018 | Minor Mod | Upgrade the Plant 1 Flare to comply with the new MACT CC requirements. |
| 3/28/2018 | Minor Mod | Revise NOx emission factor for Boiler 4 |
| 6/14/2018 | Minor Mod | Replace the Plant 1 rail rack flare with a vapor combustion unit (VCU) (Plant 1 rail rack Refinery Sector Rule (RSR) compliance project) |
| 9/14/2018 | Construction Permit | Revise the Fluid Catalytic Cracking Unit (FCCU) Hydrogen Cyanide (HCN) emission limit **(Submitted as a minor modification to the T5 permit, but has to be processed as a CP)** |
| 11/5/2018 | Minor Mod | No. 2 hydrodesulfurizer (HDS) Tier 3 Ultra Low Sulfur Gasoline (ULSG) Project Note: Copies rec'd 11/2/2018. Original rec'd 11/5/2018, which was used for log-in date. |
| 12/11/2018 | N/A[1] | FCCU Resid Jumper Project **No modifications to permit necessary for project.** |
| 2/20/2019 | Administrative Amendment | Replace Blower for AIRS pt 634, Zone 4 |

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3   Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

| Modification Applications | | |
|---|---|---|
| Date Received | Modification Type | Modification Description |
| 5/29/2019 | Administrative Amendment | Include operating parameter value for new P1 rail rack VCU in permit. **Application denied July 26, 2019 since it does not qualify as an admin. amendment.** |
| 5/30/2019 | Minor Mod | New Sand Creek AS/SVE System (East Burlington Ditch) |
| 6/4/2019 | Significant Mod | Ethanol Unloading at Plant 1 rail rack VCU Note an application addressing this project was submitted on 4/5/2019 but was rejected for lack of APEN fees. **(Application asks for 12/26/2017 application to be cancelled)** |
| 9/12/2019 11/1/2019 | Minor Modification | Re-permit GBR flare due to flow meter discrepancy **The 9/12/2019 submittal did not qualify as a minor modification but with the submittal of a revised APEN on 11/1/2019 to lower requested emissions, the application qualified as a minor modification.** |
| 10/2/2019 | Administrative Amendment | Replace Blower for AIRS pt 634, Zone 3 |
| 10/2/2019 | Minor Modification | Replace Emergency Air Compressor Engines |
| 10/8/2019 | Minor Modification | Include P1 Rail Rack VCU operating parameter |
| 1/22/2020 | Minor Modification | Revise VOC emission and throughput limits for Tank T-4501 |
| 3/31/2020 | Minor Modification | New Sand Creek AS/SVE system (West of Burlington Ditch) |
| 9/25/2020 | Minor Modification | P1 Flare Isolation Valve Project |
| 10/13/2020 | Minor Modification | H-33 and H-37 Stack Replacement Project |
| 1/14/2021 | Permitting Evaluation[2] | No. 1 Crude Unit Turnaround Projects **No modifications to permit necessary for project.** |
| 8/4/2021 | Minor Modification | Plant 1 truck rack (Denver Terminal) flare tip replacement |
| 11/30/2021 | Minor Modification | Reformulated (RFG) Gasoline Project |

[1]The source submitted this as a minor modification but no changes to the permit were necessary for this modification but since this project involved physical changes or changes to the method of operation, the emission increase from this project was assessed.

[2]The source submitted a permitting evaluation for this project, although no changes to the permit are necessary. Since this project involved physical changes or changes to the method of operation, the emission increase from this project were assessed and are discussed in the technical review document.

This document is designed for reference during review of the proposed permit by EPA and for future reference by the Division to aid in any additional permit modifications at this facility. The conclusions made in this report are based on the renewal application submitted on September 16, 2016, the modification applications listed in the above table, the additional information noted in the table below, previous inspection reports and various e-mail correspondence, as well as telephone conversations with the applicant. Please note that copies of the Technical Review Document for the original permit and any Technical Review Documents associated with subsequent modifications of the original Operating Permit may be found in the Division files as well as on the

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3   Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

Division's website at www.colorado.gov/cdphe/airTitleV. This narrative is intended only as an adjunct for the reviewer and has no legal standing.

| Additional Information Submittals | |
|---|---|
| Date Submitted | Description |
| August 28, 2017 | Install new sump and BWON controls at truck rack (Denver Terminal) |
| November 15, 2017 and July 18, 2018 | Upgrade $H_2$ Plant Sewer System to comply with NSPS QQQ |
| December 15, 2017 and April 13, 2018 | P3 Flare RSR Project |
| February 14, June 12, July 6 & 9 and August 3, 2018 | All Flare RSR Projects |
| April 13 and November 6 & 28, 2018 | GBR Flare RSR Project |
| April 13 and November 28, 2018 | P1 Flare RSR Project |
| September 14, October 12 and November 7, 2018 and January 4, 2019 | Replace P1 Rail Rack Flare with a VCU |
| December 18, 2018 | Revise HCN emission limit |
| January 18 & 30, 2019 | No. 2 HDS Tier 3 ULSG project |
| February 12, March 12 & September 27, 2019 | Net (lower) heating value of P1, P3 and GBR flare waste gas |
| May 21 and August 12, 2019 | P1 FCCU resid jumper project |
| July 10, 2019 | New Sand Creek AS/SVE (East Burlington Ditch) |
| October 3, 2019 | Replace AIRs pt 615 blower |
| October 23, 2019 | Re-permit GBR flare |
| February 3, 2020 | Replace emergency air compressor engines |
| March 5, 2020 | Tank T-4501 |
| August 27, 2020 | Replace AIRs pt 634 blower |
| November 19, 2020 and January 14 & 19, 2021 | H-33, H-37 Stack Replacement Project |
| December 9, 2021 and January 6, 2022 | No. 1 Crude Unit Turnaround Projects |
| October 12 and 19, 2021 | P1 Truck Rack (Denver Terminal) Flare Tip Replacement Project |
| January 5, 14 & 19 and February 9 & 11, 2022 | Reformulated gasoline (RFG) Project |
| February 25, 2022 | Tank degassing thermal oxidizer |
| March 18, 2022 | Remediation equipment |
| April 5, 2022 | Hydrogen plant heater H-2101 |

Any revisions made to the underlying construction permits associated with this facility made in conjunction with the processing of this operating permit application have been reviewed in accordance with the requirements of Regulation No. 3, Part B, Construction Permits, and have been found to meet all applicable substantive and procedural requirements. This operating permit incorporates and shall be considered to be a combined construction/operating permit for any such revision, and the permittee shall be allowed to operate under the revised conditions upon issuance of this operating permit without applying for a revision to this permit or for an additional or revised construction permit.

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3   Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

## SECTION II - DESCRIPTION OF SOURCE

This facility is classified as a petroleum refinery under Standard Industrial Code 2911. Plant 1 is the portion of the heritage Conoco facility located on the west side of Brighton Boulevard (formerly the West Plant) and Plant 3 is the portion of the heritage Conoco facility located on the east side of Brighton Boulevard (formerly the Asphalt Unit). The Plant 1 and 3 facilities form an integrated petroleum refinery producing a wide range of finished petroleum products, including gasoline, jet fuel, diesel fuel, fuel oil, LPG, vacuum residue and sulfur. Processes used at the facility include atmospheric and vacuum distillation, desalting, reforming, catalytic cracking, catalytic polymerization and hydrotreating. The facility processes both sweet and sour crude oils received via pipeline. Finished products primarily leave the refinery via rail and truck loading facilities.

The facility is located at 5801 Brighton Boulevard in Commerce City, CO. The Denver Metro Area, including Commerce City, is classified as attainment/maintenance for particulate matter less than 10 microns ($PM_{10}$) and carbon monoxide. Under that classification, all SIP-approved requirements for $PM_{10}$ and CO will continue to apply in order to prevent backsliding under the provisions of Section 110(l) of the Federal Clean Air Act. The Denver Metro Area is classified as nonattainment for ozone and is part of the 8-hour Ozone Control Area as defined in Regulation No. 7, Section II.A.1. The 8-hr Ozone Control Area was classified as a serious ozone non-attainment area effective January 27, 2020 and as a severe ozone non-attainment area effective November 7, 2022.

There are no affected states within 50 miles of the plant. Rocky Mountain National Park and Eagles Nest National Wilderness Area, both Federal Class I designated areas, are within 100 kilometers of the plant.

The summary of emissions that was presented in the Technical Review Document (TRD) for the first renewal permit has been modified to reflect the updated potential to emit (PTE) of criteria pollutants due to changes that may have occurred in emission units, emission factors and/or emission limitations since the previous permit was issued and to reflect actual emissions. Emissions in (tons/yr) at the facility are as follows:

**Potential To Emit (PTE)**

| Pollutant | Emissions (tons/yr) | | |
|---|---|---|---|
| | Plants 1 & 3 (96OPAD120) | Plant 2 (95OPAD108) | Total Emissions |
| PM/$PM_{10}$ | 158.65 | 53.34 | 211.99 |
| $PM_{2.5}$ | 139.61 | 53.34 | 192.95 |
| $SO_2$ | 301.54 | 389.73 | 691.27 |
| $NO_x$ | 478.70 | 266.41 | 745.11 |
| CO | 591.64 | 311.29 | 902.93 |
| VOC | 560.71 | 373.95 | 934.66 |

**Actual Emissions**

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3   Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

| Pollutant | Emissions (tons/yr)[1] |
|---|---|
| PM | 125.45 |
| $PM_{10}$ | 125.45 |
| $PM_{2.5}$ | 114.93 |
| $SO_2$ | 228.98 |
| $NO_X$ | 629.08 |
| CO | 482.99 |
| VOC | 447.01 |

[1]Actual emissions are from both Plants 1 and 3 (96OPAD120) and Plant 2 (95OPAD108) combined and are from the
Division's inventory system, data year 2020.

Detailed information on potential to emit (i.e., potential to emit by emission unit and
method to estimated potential to emit) for Plants 1 and 3 are shown on the tables
beginning on page 178. Potential to emit for Plant 2 (95OPAD108) shown in the above
tables is based on the information provided in the TRD for the Plant 2 renewal (issued
**July 9, 2024**), which also includes detailed information on those emissions (i.e.,
emissions per emission unit and method to estimate potential to emit).

It should be noted that the PTE totals shown in the above table are higher than the total
provided in the TRD for the Plant 2 renewal permit **[issued DATE]**. The TRD for the
Plant 2 renewal permit states the following beginning on page 4 (emphasis added):

> Potential to emit shown in the above tables <u>is based on the
> information provided in the TRD for the Plants 1 and 3 renewal
> (issued October 1, 2012)</u>, which also includes detailed information
> on those emissions (i.e., emissions per emission unit and method to
> estimate potential to emit).

Since Plants 1 and 3 renewal permit was issued October 1, 2012, additional equipment
(either new or existing) has been included in the Plants 1 and 3 permit with emission
limitations and/or emissions limits have been revised due to changes in emission
calculation methodology or changes in throughput or process rates.

1.    **National Emission Standards for Hazardous Air Pollutant (NESHAP)
      Requirements**

NESHAPs are included in 40 CFR Part 61 and 40 CFR Part 63. The requirements in 40
CFR Part 61 address a specific hazardous air pollutant (HAP), such as benzene, and
apply to sources that meet the applicability requirements. Significant changes were
made to the Federal Clean Air Act in 1990 with respect to HAP emissions and those
changes are reflected in the NESHAPs promulgated under 40 CFR Part 63. The
requirements in 40 CFR Part 63 apply to specific source categories, are technology
based and are frequently referred to as "MACT requirements".

**40 CFR Part 61 Requirements**

As indicated in the current permit (last revised February 22, 2018) the facility is subject
to the requirements in 40 CFR Part 61 Subpart FF, National Emission Standard for
Benzene Waste Operations, otherwise known as the "Benzene Waste Operations
NESHAP" or "BWON". There not have been revisions to the BWON requirements in 40

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3   Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

CFR Part 61 Subpart FF since December 4, 2003, therefore no revisions to the regulatory language is necessary.

**40 CFR Part 63 Requirements**

The facility is a major source for HAPs and as such the MACT requirements in 40 CFR Part 63 applies to specific equipment at the facility. The current permit (last revised February 22, 2018) includes the requirements from the following MACTs:

- 40 CFR Part 63 Subpart R (National Emission Standards for Hazardous Air Pollutants for Gasoline Distribution Facilities (Bulk Gasoline Terminals and Pipeline Breakout Stations))

- 40 CFR Part 63 Subpart CC (National Emission Standards for Hazardous Air Pollutants from Petroleum Refineries)

- 40 CFR Part 63 Subpart UUU (National Emission Standards for Hazardous Air Pollutants for Petroleum Refineries: Catalytic Cracking Units, Catalytic Reforming Units, and Sulfur Recovery Units)

- 40 CFR Part 63 Subpart ZZZZ (National Emission Standards for Hazardous Air Pollutants), 40 CFR Part 63 Subpart DDDDD (National Emission Standards for Hazardous Air Pollutants for Stationary Reciprocating Internal Combustion Engines),

- 40 CFR Part 63 Subpart DDDDD (National Emission Standards for Hazardous Air Pollutants from Industrial, Commercial, and Institutional Boilers and Process Heaters) and

- 40 CFR Part 63 Subpart GGGGG (National Emission Standards for Hazardous Air Pollutants: Site Remediation).

Note that the permit will be revised to indicate the version date of the requirements included and whether any revisions have been proposed. No other MACTs have been determined to apply at the facility. The status of the applicable MACTs are as follows:

Revisions have been made to 40 CFR Part 63 Subparts CC and UUU since the current permit was issued, thus these requirements will be updated to include the revisions and are discussed later in this document.

The requirements in Subpart R were revised on November 19 and December 4, 2020. The November 19, 2020 revisions were to reflect that the "once-in-always-in" policy no longer applies and the December 4, 2020 revisions reflected regulatory streamlining of fuels. Neither revision resulted in changes to permit language as discussed later in this document.

Revisions to MACT ZZZZ were made on February 27, 2014 (performance test methods), November 19, 2020 ("once-in-always-in" policy) and December 4, 2020 (fuel streamlining). Minor revisions were made to the permit as discussed later in this document.

Revisions were made to the language in Subpart DDDDD on November 19 and December 28, 2020. As previously mentioned, the November 19, 2020 revisions reflected the end of the "once-in-always-in" policy and the December 28, 2020 revisions

corrected some of the language in the November 19, 2020 notice. As discussed later in this document a minor change was made to one condition in the permit.

Except for the truck rack, the facility is exempt from the requirements in Subpart GGGGG and thus it is included in the permit shield for non-applicable requirements. The truck rack is subject to limited requirements in Subpart GGGGG, which are included in Section II.66 of the permit.

On May 13, 2016, EPA proposed to remove the exemption for site remediation required by an order under RCRA section 7003, which would make rest of the facility subject to the requirements in Subpart GGGGG. The Residual Risk and Technology Review (RTR) for the Site Remediation MACT was proposed on September 3, 2019. In the RTR EPA requests additional comments on how the Site Remediation MACT should be amended if the RCRA exemption were removed. EPA indicated in the September 3, 2019 proposal that they did not intend to take final action with respect to the exemption in the RTR but to gather information in anticipation of addressing this issue in a separate action. The RTR was finalized on July 10, 2020. These revisions did not result in any changes to the language in the permit as discussed later in this document.

## 2.   New Source Performance Standards (NSPS)

NSPS requirements generally only apply to new or modified equipment and the installation of new equipment and/or modifications to existing equipment that may trigger NSPS requirements are typically addressed in the modification applications. The current permit (last revised February 22, 2018) includes the requirements from the following NSPSs:

- 40 CFR Part 60 Subpart J (Standards of Performance for Petroleum Refineries)

- 40 CFR Part 60 Subpart Ja (Standards of Performance for Petroleum Refineries for which Construction, Reconstruction or Modification Commenced after May 14, 2007)

- 40 CFR Part 60 Subpart Kb (Standards of Performance for Organic Liquid Storage Vessels (Including Petroleum Liquid Storage Vessels) for which Construction, Reconstruction or Modification Commenced after July 23, 1984)

- 40 CFR Part 60 Subpart UU (Standards of Performance for Asphalt Processing and Asphalt Roofing Manufacture)

- 40 CFR Part 60 Subpart VV (Standards of Performance for Equipment Leaks of VOC in the Synthetic Organic Chemicals Manufacturing Industry for which Construction, Reconstruction, or Modification Commenced after January 5, 1981, and on or before November 7, 2006)

  Note that these requirements do not apply directly to the equipment at this facility but apply via 40 CFR Part 63 Subpart CC.

- 40 CFR Part 60 Subpart VVa (Standards of Performance for Equipment Leaks of VOC in the Synthetic Organic Chemicals Manufacturing Industry for which Construction, Reconstruction, or Modification Commenced after November 7, 2006)

Note that these requirements do not apply directly to the equipment at this facility but apply via 40 CFR Part 60 Subpart GGGa.

- 40 CFR Part 60 Subpart XX (Standards of Performance for Bulk Gasoline Terminals)

- 40 CFR Part 60 Subpart GGGa (Standards of Performance for Equipment Leaks of VOC in Petroleum Refineries for which Construction, Reconstruction or Modification Commenced after November 7, 2006)

-  40 CFR Part 60, Subpart QQQ (Standards of Performance for VOC Emissions from Petroleum Refinery Wastewater Systems)

- 40 CFR Part 60, Subpart IIII (Standards of Performance for Stationary Compression Ignition Internal Combustion Engines)

- 40 CFR Part 60, Subpart JJJJ (Standards of Performance for Stationary Spark Ignition Internal Combustion Engines)


Note that the permit will be revised to indicate the version date of the requirements included and whether any revisions have been proposed. No other NSPSs have been determined to apply at the facility. The status of the applicable NSPSs are as follows:

The requirements in Subparts VV, VVa, XX, GGGa and QQQ have not been revised since the permit was renewed (October 1, 2012). Therefore it is not anticipated that changes to the regulatory language will be necessary. Note that if revisions are made to any of these NSPS requirements included in the current permit (last revised February 22, 2018), they will be addressed later in this document.

Revisions to performance test methods on February 27, 2014 were made to NSPS UU, while the revision date will be listed in the permit, the February 27, 2014 revision corrected the PM emission limit in § 60.472(a)(ii), which does not apply to Tanks T2006 and T3201 and is not in the current permit.

Revisions were made to NSPS J and Ja on December 1, 2015 and November 26, 2018, respectively. The current permit (last revised February 28, 2018), includes the NSPS J provisions last revised on December 1, 2015 for fuel burning equipment and the NSPS Ja provisions last revised on July 13, 2016. The December 1, 2015 revisions to NSPS J applied to § 60.105(b), which has been updated in the current permit. The November 26, 2018 revisions affected NSPS Ja §§ 60.105a and 60.106a, which don't apply (these sections apply to FCCUs and sulfur recovery units (SRUs)) and are not in the current permit. Therefore, it is not anticipated that changes to the NSPS J or Ja regulatory language will be necessary. Note that if revisions are made to any of these NSPS requirements included in the current permit (last revised February 22, 2018), they will be addressed later in this document.

Revisions were made to NSPS Ka on January 19, 2021. The January 19, 2021 revisions allowed sources to choose to comply with the provisions in 40 CFR Part 63 Subpart WW as an alternative instead of complying with the requirements in NSPS Kb. The revisions did not affect language in the current permit (last revised February 22, 2018) but in order to be consistent with the Plant 2 permit, the January 19, 2021

revisions (60.110b(e)(5)) were included.

The current permit (last revised February 22, 2018) includes the NSPS IIII provisions last revised January 30, 2013. Revisions were made to NSPS IIII on February 27, 2014, July 7, 2016, July 5, 2019 and November 13, 2019. The July 5, 2019 revision was a direct final rule, with an accompanying proposed rule. On September 20, 2019, the July 5, 2019 direct final rule was withdrawn and the July 5, 2019 proposal was finalized on November 13, 2019. No changes to the NSPS IIII language in the permit are anticipated since the July 7, 2016 revisions applied to performance inducements for Tier 4 engines and criteria for defining remote areas of Alaska, the November 13, 2019 revisions address engines located in remote areas of Alaska and the February 27, 2014 revisions address performance testing, none of which are relevant to the engines in this permit. In addition, revisions were made to the NSPS IIII requirements on December 4, 2020 and June 29, 2021. The December 4, 2020 revisions were to streamline fuel requirements and the June 29, 2021 revisions addressed heavy-duty engine and vehicle test procedures. These revisions resulted in changes to the language in the permit, primarily due to changes to regulatory cites.

The current permit (last revised February 22, 2018) includes the NSPS JJJJ provisions last revised January 30, 2013.Revisions were made to NSPS JJJJ on August 30, 2016, October 7 and December 4, 2020. The August 30, 2016 and October 7, 2020 revisions addressed performance test methods and the December 4, 2020 revisions were to streamline fuel requirements. The August 30, 2016, October 7, 2020 and December 4, 2020 revisions to NSPS JJJJ affected Table 2, 60.4235 and 60.4245(d), none of which are included in the permit, since they don't apply to the NSPS JJJJ engine. In addition, revisions were made to the NSPS JJJJ requirements on June 29, 2021. The June 29, 2021 revisions addressed heavy-duty engine and vehicle test procedures. These revisions resulted in changes to the language in the permit, primarily due to changes to regulatory cites.

## 3.    **Regulation No. 7 Requirements**

Since the permit was renewed in 2012, revisions have been made to Regulation No. 7 and the applicability of those requirements with respect to Plants 1 and 3 is as follows:

Revisions to Regulation No. 7 were adopted by the Colorado Air Quality Control Commission (AQCC) on December 19, 2019 (effective February 14, 2020). The revisions included a reorganization of Regulation No. 7. The regulation was reorganized into parts and the various sections are renumbered and assigned to a part (e.g. Part B). Except for newly added sections and as otherwise noted, the below discussion utilizes the numbering prior to the December 19, 2019 revisions.

Also, as part of the December 19, 2019 revisions, two new sections were included that are applicable state-wide (Part D, Sections VI (requirements for natural gas transmission and storage facilities) and V (requirements for emission inventories from oil and natural gas operations)) but these sections do not apply to refineries.

Colorado Regulation No. 7, Section X.E – Control of Industrial Cleaning Solvent Operations

---

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3    Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

The provisions in Section X.E were adopted into Colorado Regulation No. 7 on November 17, 2016 (effective January 14, 2017) to address EPA's control technique guidelines (CTG) for industrial solvent cleaning operations. These requirements apply to sources that have total, combined, uncontrolled actual VOC emissions from industrial solvent cleaning operations of 3 tons/yr of VOC emissions on a calendar year basis.

During processing of the Plant 2 renewal permit, the Division requested information from the source to determine whether or not actual, uncontrolled VOC emissions from industrial solvent cleaning operations might exceed 3 tons in any calendar year. The source did not provide any emission information but it appears that industrial solvent cleaning operations during a turnaround (which occurs approximately every five years) may trigger these requirements.

In their response to the Division's query, the source noted that during a turnaround equipment is cleaned out using a solvent and then vented to the flare, as required by 40 CFR Part 63 Subpart CC (specifically the requirements for miscellaneous process vents in 63.343) and believes that the MACT CC requirements qualify the industrial solvent cleaning activities during a turnaround for an exemption. The Division considers that this does not qualify for the exemption, as the MACT CC requirements do not specifically apply to industrial solvent cleaning operations. In addition, the exemption language in Section X.E.4.a.(i), which exempted sources subject to a NESHAP, was removed in the revisions adopted November 15, 2018 (effective January 14, 2019).

Since the source has not provided any information indicating that the emissions are below the 3 ton/yr threshold, or that any industrial solvent cleaning operations are subject to an exemption, the requirements in Section X.E will be included in the permit.

<u>Colorado Regulation No. 7, Part C, Section II.F – General Solvent Use</u>

This was a new section included in the December 19, 2019 revisions adopted by the Colorado AQCC and in accordance with Section II.F.1.a applies to operations within the 8-hour ozone control area that use solvents with uncontrolled, actual VOC emissions greater than or equal to two (2) tons per year that existed at a major source of VOC emissions (50 tons/yr or greater) as of January 27, 2020 (date of reclassification to serious non-attainment). These requirements do not apply to operations that are subject to a solvent work practice or emission control requirement in another federally enforceable section of Regulation Number 7 that constitutes RACT (see Reg 7, Part C, Section II.F.2.a). Since the Division considers that the industrial cleaning solvent operations likely apply to the facility, the requirements in Part C, Section II.F would not apply.

<u>Colorado Regulation No. 7, Sections XII and XVIII – Requirements for Oil and Gas Operations in the 8-hour Ozone Control Area</u>

Oil refineries are specifically exempt from the requirements in Section XII as provided for in Section XII.A.2. The requirements in Section XVIII apply to pneumatic controllers actuated by natural gas and located at, or upstream of natural gas processing plants. While there is no language in Section XVIII that states that these requirements do not apply to oil refineries, these requirements were clearly not intended to apply to an oil refinery.

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3    Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

Section XVII – Statewide Requirements for Oil and Gas Operations

Oil refineries are specifically exempt from the requirements in Section XVII as provided for in Section XVII.B.4.

Colorado Regulation No. 7, Sections XVI - Requirements for Engines and Other Combustion Equipment in the 8-Hour Ozone Control Area and Section XIX – Control of Emissions from Specific Major Sources of VOC and $NO_X$

The requirements in Regulation No. 7, Section XVI previously applied to natural gas-fired engines located in the 8-hour ozone control area and set control requirements for engines greater than 500 hp. Non-road engines and emergency generators that are exempt from APEN requirements are not subject to the control requirements as provided in Section XVI.C.1 and 3. This facility is located in the 8-hour ozone control area but there are no natural gas-fired engines greater than 500 hp located at this facility, therefore the requirements in Section XVI do not apply.

The Colorado Air Quality Control Commission (AQCC) adopted provisions in Regulation No. 7 on November 17, 2016 (effective January 14, 2017) to address requirements that were triggered from the bump-up from Marginal to Moderate nonattainment for the 8-hour ozone control area (also referred to as the Denver Metro/North Front Range (DMNFR) area).

These revisions included combustion process adjustment requirements for combustion sources located at major sources of $NO_X$ in the 8-hour ozone control area in Section XVI.D, as well as requirements for major sources of $NO_X$ in Section XIX that apply to this facility since it is a major source of $NO_X$.

The combustion process adjustment requirements in Section XVI.D applies to boilers, duct burners, process heater, engines and combustion turbines thus these requirements applied to equipment at this facility. Under Section XIX.B, Suncor was required to submit a RACT analysis for the boilers located at both Plants 1 and 2 by December 31, 2017 and two emergency air compressor engines (AIRS pts 150 & 151) located at Plant 1 were required to comply with the requirements in 40 CFR Part 60 Subpart IIII, 40 CFR Part 60 Subpart JJJJ and/or 40 CFR Part 63 Subpart ZZZZ per Section XIX.D. (Note that equipment located at Plant 2 are addressed in 95OPAD108.) Suncor submitted the required RACT analysis for the Plants 1 and 2 boilers on November 1, 2017 and the current permit (last revised February 22, 2018) includes the appropriate requirements in 40 CFR Part 60 Subpart IIII and 40 CFR Part 63 Subpart ZZZZ for the Plant 1 emergency air compressor engines.

The AQCC adopted revisions in Regulation No. 7 on July 19, 2018 (effective September 14, 2018) to address the RACT analyses for combustion equipment that major sources submitted as required by Section XIX.B. As part of the July 19, 2018 revisions, Section XIX and XVI.D were revised.

Under Section XIX.A, the two emergency air compressor engines (AIRS pts 150 & 151) located at Plant 1 are required to comply with the requirements in 40 CFR Part 60 Subpart IIII, 40 CFR Part 60 Subpart JJJJ and/or 40 CFR Part 63 Subpart ZZZZ.

The requirements in Section XVI.D apply to stationary combustion equipment that existed at a major source of $NO_X$ as of June 3, 2016 located in the 8-hour ozone control

area. Sources subject to emission limitations in Section XVD.4 must comply with those limits by October 1, 2021. Section XVI.D also includes requirements for exemptions (XVI.D.2), compliance demonstrations (XVI.D.5), combustion process adjustment (XVI.D.6), recordkeeping (XVI.D.7) and reporting (XVI.D.8). This facility was a major source as of June 3, 2016 and has combustion equipment (boilers, process heaters and engines) that existed as of June 3, 2016, therefore, the requirements in Section XVI.D apply.

The equipment located at Plants 1 and 3 that are potentially subject to requirements in Section XVI.D include engines, boilers and process heaters. The emission limitations in Section XVI.D.4 apply to boilers and compression ignition engines but not process heaters. Specifically, the emission limits apply to boilers with a design heat capacity greater than or equal to 100 MMBtu/hr and to compression ignition engines with a power output greater than or equal to 500 hp. The boilers and the two emergency air compressors included in the current permit (last revised February 22, 2018) meet the applicability requirements (size and existed as of June 3, 2016) and are potentially subject to the emission limitations.

The combustion process adjustment requirements in Section XVI.D.6 apply to boilers (any size), process heaters and stationary reciprocating internal combustion engines (any size, not restricted to compression ignition engines) that existed at this facility as of June 3, 2016 and have actual, uncontrolled emissions greater than or equal to 5 tons per year. Note that although not specified in Section XVI.D.6, the Division considers that the emission trigger is based on calendar year emissions since the statement of basis indicates that the Commission intended sources to look to the current APENs to determine applicability (see discussion in Section XX.O regarding combustion process adjustment requirements).

The AQCC adopted revisions to Regulation No. 7 on November 15, 2018 (effective January 14, 2019) to include RACT requirements for breweries and wood furniture manufacturing, correct some EPA concerns regarding metal furniture surface coating, miscellaneous metal surface coating and industrial solvent cleaning operations. In addition, typographical, grammatical, and formatting errors were corrected. The November 15, 2018 revisions have minimal effect on the requirements for equipment at this facility.

No substantive changes were made to the Section XVI.D requirements that apply to the equipment at this facility in the December 19, 2019 revisions. The revisions expanded the applicability of these requirements to sources that existed at a major source of $NO_X$ (greater than or equal to 50 tons/yr of $NO_X$) as of the serious designation date [January 27, 2020].

In addition, the provisions in Section XIX.A that required the Plant 1 emergency air compressors (AIRS pts 150 & 151) to comply with the requirements in 40 CFR Part 60 Subpart JJJJ, 40 CFR Part 60 Subpart IIII, and/or 40 CFR Part 63 Subpart ZZZZ by January 1, 2017 was not changed in the December 19, 2019 revisions. However, as discussed in Section III.1.1.16 of this document, the emergency air compressors were replaced thus the requirements in Section XIX.A do not apply to the new emergency air compressors.

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3   Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

The AQCC adopted revisions to Regulation No. 7 on September 23, 2020 (effective November 14, 2020) to revise some of the oil and gas provisions in Part D, as well revisions to the requirements for natural gas-fired engines in Part E, Section I. The primary revisions to the engine requirements were to reduce emissions from natural gas-fired engines greater than 1,000 hp. The September 2020 revisions do not affect the equipment at this facility.

The AQCC adopted revisions to Regulation No. 7 on December 18, 2020 (effective February 14, 2021) to revise some of the oil and gas provisions in Part D, as well as revisions to major source RACT requirements for combustion equipment in Section II.A (formerly Section XVI.D) and to include RACT for foam product manufacturing. The substantive revisions to Part E, Section II.A were to revise the $NO_X$ emission limits for combustion turbines that commenced construction on or before February 18, 2005 and boilers $\geq$ 50 MMBtu/hr and < 100 MMBtu/hr located at major sources of $NO_X$ (greater than or equal to 50 tons/yr as of January 27, 2020). The December 2020 revisions do not affect the equipment at this facility.

The AQCC adopted revisions to Regulation No. 7 on February 18, 2021 (effective April 14, 2021) to revise requirements for pneumatic controllers associated with oil and gas operations in Part D, Section III. These revisions do not apply to the equipment at this facility.

The AQCC adopted revisions to Regulation No. 7 on July 16, 2021 (effective September 14, 2021) to address metal parts coating, pneumatic controllers (corrects a citation) and to include $NO_X$ emission limitations for process heaters. The process heater limits apply to process heaters that have a heat input rate greater than or equal to 5 MMBtu/hr. On a state-only basis, the emission limits for process heaters apply to process heaters that existed at sources that emit or have to the potential to emit $NO_X$ greater than or equal to 25 tons per year of $NO_X$. All of the process heaters at this facility existed at a major source of $NO_X$ (greater than or equal to 100 tpy $NO_X$) as of June 3, 2016 thus there are no process heaters at this facility that would be subject to the process heater $NO_X$ limits on a state-only basis.

The AQCC adopted revisions to Regulation No. 7 on December 17, 2021 (effective January 30, 2022) to address greenhouse gas (GHG) emissions from oil and gas operations (upstream and midstream) equipment addressed in Regulation No. 7, Part D. These revisions do not apply to the equipment at this facility.

The appropriate requirements from Section XVI.D (now numbered as Part E, Section II.A) will be included in the permit and are addressed more specifically later in this document.

## 4.    Regional Haze Requirements (Regulation No. 23)

In 1999, EPA promulgated the final Regional Haze Rule, which requires each state to submit a state implementation plan (SIP) to address regional haze (see 40 CFR Sections 51.300-51.309). Colorado submitted its Regional Haze (RH) SIP to EPA in 2008 and 2009. The Commission adopted revisions to the RH requirements in 2011, 2014, and 2016. The regional haze rule, Section 51.308(f), requires states to revise and

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3    Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

submit its regional haze SIP to EPA by July 31, 2021 (i.e., second implementation period). States must continue to make progress toward their reasonable progress goals.

To that end, Suncor was required to submit a Four-Factor Analysis for emission units that had annual average emissions of $NO_X$, $SO_2$ and PM greater than ten (10) tons per year during the period of 2016 – 2018.  A Four-Factor Analysis was submitted on December 4, 2019 addressing those emission unit/pollutant combinations identifies as having greater than 10 tons/yr of emissions. The Four-Factor Analyses were evaluated and appropriate requirements were included in Regulation No. 23 for the affected emission units. The AQCC adopted revisions to Regulation No. 23 on December 17, 2021 (effective January 30, 2022) that included RH emission limitations for Suncor equipment that met the applicability requirements. The affected units for the Plants 1 and 3 permit include the following:

- FCCU ($SO_2$, $NO_X$ and PM)
- SRU ($SO_2$)
- Plant 1 Main Plant Flare ($SO_2$)
- Process Heaters H-11, H-17, H-27, H-28, H-29, H-30, H-27 and H-2101 ($NO_X$)
- Boiler B-4 ($NO_X$)

The appropriate requirements from Regulation No. 23 will be included in the permit and are addressed more specifically later in this document.

It should be noted that the emission limitations included in Regulation No. 23 are state-only enforceable until approved by EPA into Colorado's Round 2 Regional Haze SIP.

## 5.    Compliance Assurance Monitoring (CAM) Requirements

CAM applies to any emission unit that is subject to an emission limitation, uses a control device to achieve compliance with that emission limitation and has potential pre-control emissions greater than major source levels.

CAM was addressed in the first renewal (issued October 1, 2012) and CAM only applied to the Fluid Catalytic Cracking Unit (FCCU), with respect to PM emissions (see discussion beginning on page 19 of the TRD prepared for the first renewal (issued October 1, 2012). CAM for the FCCU is based on the monitoring required for FCCUs under MACT UUU. Revisions to MACT UUU have been made since the first renewal permit was issued and these revisions affected the PM monitoring for FCCUs as discussed later in this section.

The CAM evaluations conducted for the first renewal relied on a major source level of 100 tons/yr. The CAM applicability level (potential pre-control emissions equal to or greater than the major source level) is based on the Title V major source threshold (major source as defined in Regulation No. 3, Part A, Section I.B.25), which includes a source that meets any of the definitions of major stationary source (defined in Regulation No. 3, Part D, Section II.A.25). The major stationary source threshold in a serious ozone nonattainment area is 50 tons/yr of $NO_X$ or VOC (see Regulation No. 3, Part D, Section II.A.25.b.(i)). The area in which the facility is located was bumped up to serious on January 27, 2020. The bump-up to serious means that the major stationary source threshold is reduced (source threshold changes from 100 tons/yr to 50 tons/yr).

In addition, the area in which the facility is located is anticipated to be bumped-up to severe prior to issuance of the permit. The bump-up to severe means that the major stationary source threshold is reduced (threshold changes from 50 tons/yr to 25 tons/yr).

Therefore, the CAM applicability analysis for $NO_X$ and VOC conducted for the first renewal (issued October 1, 2012) was re-evaluated with the lower major source threshold of 25 tons/yr.

**Updates to CAM Plans after Public Comment Period**

For four CAM plans (FCCU regenerator, P1 wastewater treatment system RTO and API headworks carbon canisters, rail loading rack and enclosed vapor combustion unit, truck loading rack and flare), the Division has updated the CAM justifications to no longer indicate either a reliance on "presumptively acceptable monitoring," (PAM) as defined in 40 CFR §64.4(b). The Division had historically misinterpreted the use of PAM, which requires that to qualify for the definition, all parameters monitored for the control device in the underlying federal NSPS or NESHAP must be included as indicators. For these CAM plans, the Division maintains that the CAM plans are sufficient to satisfy the requirements for CAM under 40 CFR Part 64, but do not meet the definition of PAM. Therefore, the engineering justifications for the included indicators has been revised; no other changes were made to these plans

Unlike the four CAM plans discussed above, the P3 & GBR Flares CAM Plan was updated to included additional monitoring indicators such that it meets the definition of PAM under 40 CFR §64.4(b). Three new indicators were added: visible emissions, flare tip velocity ($V_{tip}$), and net heating value dilution parameter ($NHC_{dil}$) (for the P3 flare only when receiving perimeter assist air). In addition to the existing two indicators (presence of a pilot flame(s) and net heating value of the flare combustion zone gas), the CAM plan now contains all monitoring indicators for these control devices as specified in 40 CFR Part 63, Subpart CC. The existing two measurement approaches, indicator ranges, data representativeness, QA/QC practices and criteria, monitoring frequency, and data collection procedures were also updated to be in-line with the requirements of MACT CC to ensure that the CAM plan clearly meets the intended definition of PAM. Where appropriate, the Division has provided specific citations to the underlying requirements of MACT CC in the CAM plan. It should also be noted that many of these same monitoring requirements appear in the MACT CC requirements in Section II of the permit associated with the operation of the Plant 3 and GBR flares.

Additionally, based on required WWTS RTO testing in Condition 23, Condition 60.4 and the applicable Appendix M CAM plan were updated to reflect the most recent March 13, 2024 testing to update the RTO combustion zone temperature to 1,573 °F, per the supplemental information provided to the Division on May 6, 2024.

Note that the updates described in this section regarding updates to CAM plans supersede some of the subsequent CAM discussion, below.

**Equipment Addressed in First Renewal (Issued October 1, 2012)**

<u>FCCU</u>

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3   Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

As discussed in the TRD for the first renewal (issued October 1, 2012), Suncor only indicated that the FCCU was subject to CAM with respect to PM emissions, they did not address any other emission units with control devices that might be subject to CAM.

The CAM discussion in the TRD for the first renewal (issued October 1, 2012) starts on page 19 of that document. The Division agreed that CAM applied to the FCCU for PM only. The TRD for the first renewal (issued October 1, 2012) indicated that any $NO_X$ or $SO_2$ reducing catalysts, if used in the FCCU, would not be considered a control device. Therefore, CAM only applies to the FCCU with respect to PM emissions.

Although the current permit (last revised February 22, 2018), does not include a CAM plan (as discussed on page 22 of the TRD to support the first renewal (issued October 1, 2012)), the Division considers that this was an error and is including a CAM plan in the permit. In addition, based on comments on the Plant 2 renewal permit, the Division determined that the CAM indicator in the current permit could not be justified. Therefore, the indicator has been revised to 20% opacity, on a 3-hr rolling average. The CAM plan, which has been included in an appendix of the permit explains the change to the indicator range.

SRUs

The TRD for the first renewal (issued October 1, 2012) also addressed potential CAM applicability for the sulfur recovery units (SRUs), which are equipped with a tail gas unit and a tail gas incinerator. The TRD noted that the CAM did not apply with respect to $SO_2$ emissions, as a CEMS was used for $SO_2$ emissions (exempt under § 64.2(b)(1)(vi) – continuous compliance determination method).

Rail and truck rack flares

The TRD for the first renewal (issued October 1, 2012) indicated that the rail and truck loading rack flares are not subject to CAM because the Title V permit already specifies a continuous compliance determination method (continuously monitor the presence of a flame) and is exempt under § 64.2(b)(1)(vi).

The Division made the same determination discussed above for the Plant 2 rail and truck racks regarding CAM for the Plant 2 renewal permit. During the EPA 45-day review period for the proposed Plant 2 renewal permit, EPA objected to the Division's justification for exempting the Plant 2 rail rack (flare) and Plant 2 truck rack (vapor combustion unit) from CAM. Therefore, the Division will revise the Plants 1 and 3 renewal permit to include CAM for the Plant 1 truck and rail racks.

CAM for the Plant 1 truck rack, which is equipped with a flare, will require monitoring for the presence of a flame in the flare. This is consistent with the monitoring in 40 CFR Part 63 Subpart R, which specifies that for gasoline loading racks equipped with flares meeting the requirements in § 63.11(b) a heat-sensing device, such as an ultraviolet beam sensor or a thermocouple, must be installed in proximity to the pilot light to indicate the presence of a flame (see 63.427(a)(4)).

The Plant 1 rail rack flare was replaced with a vapor combustion unit (VCU) as discussed in Section III.1.1.9 of this document. CAM for the Plant 1 rail rack will be monitoring the temperature in the combustion chamber. This is consistent with the monitoring in 40 CFR Part 63 Subpart R, which specifies that for combustion devices

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3   Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

other than a flare, a continuous parameter monitoring system (CPMS) capable of measuring temperature must be installed in the firebox or in the ductwork immediately downstream from the firebox in a position before any substantial heat exchange occurs (see 63.427(a)(3)). The source will be required to maintain the temperature at or above the temperature set during the latest performance test.

In accordance with 64.4(b)(4), presumptively acceptable monitoring includes "monitoring included for standards exempt from this part pursuant to 64.2(b)(1)(i) or (vi) to the extent such monitoring is applicable to the performance of the control device (and associated capture system) for the pollutant specific emission unit" (see 62.4(b)(4)). Since the monitoring that will be included in the CAM plans for the truck and rail rack are consistent with the monitoring in 40 CFR Part 63 Subpart R (MACT R) for loading racks equipped with flares and vapor combustion units, the Division considers that monitoring the flare for the presence of a flame and the vapor combustion unit temperature are appropriate.

It should be noted that both the Plant 1 truck and rail rack are subject to the requirements in MACT R either directly (truck rack) or via MACT CC (rail rack).

<u>Refinery flares – Plant 1, Plant 3 and GBR</u>

The TRD for the first renewal (issued October 1, 2012) did not include a discussion of CAM applicability for the refinery flares (Plant 1, Plant 3 (also referred to as Asphalt Unit (AU)) and gasoline benzene reduction (GBR) flares). The Plant 1 flare is not currently subject to emission limitations (due to construction which predates Colorado Construction Permit requirements; i.e., grandfathered from emission limitations), so CAM would not apply to that flare.

While the P3 and GBR flare are used to control VOC emissions from some equipment to meet certain regulatory requirements, the flares are not strictly a control device. Flares are used at the refinery for startup, shutdown and malfunction of process units and are more appropriately considered to be safety devices. Flares are listed as affected facilities under 40 CFR Part 60 Subpart J and Ja. Affected facilities are defined in 60.2 as "any apparatus to which a standard is applicable." Typically NSPS subparts do not include control devices as an affected facility, which seems to bolster the position that the flares are not primarily control devices.

Under CAM, control devices do not include inherent process equipment, which is defined as

> Equipment that is necessary for the proper or safe functioning of the process, or material recovery equipment that the owner or operator documents is installed and operated primarily for purposes other than compliance with air pollution regulations. Equipment that must be operated at an efficiency higher than that achieved during normal process operations in order to comply with the applicable emission limitation or standard is not inherent process equipment. For the purposes of this part, inherent process equipment is not considered a control device.

The Division considers that the Plant 3 and GBR flares are more appropriately considered inherent process equipment and thus not subject to CAM because they are not considered control devices.

The Division made the same determination discussed above for the Plant 2 refinery flare regarding CAM for the Plant 2 renewal permit. During the EPA 45-day review period for the proposed Plant 2 renewal permit, EPA objected to the Division's justification for exempting the Plant 2 refinery flare from CAM.

The Division considers that the refinery flares, those supporting the operation of refinery process units, have a primary purpose for safe operation of the plant, although by nature they reduce harmful gases that would otherwise be emitted. The CAM rule lists three criteria that would be used to distinguish inherent process equipment from control devices, as follows (see 62 FR  54913, October 22, 1997):

> (1) Is the primary purpose of the equipment to control air pollution?

> (2) Where the equipment is recovering product, how do the cost savings from the product recovery compare to the cost of the equipment?

> (3) Would the equipment be installed if no air quality regulations are in place?

Refinery flares have existed at Plants 1 and 3 since before 1950, well before any air quality regulations were in place. Refinery flares are used to safely regulate pressure and dispose of waste gases. There are certainly means to reduce flaring, such as the use of flare gas recovery devices, but there is no way to eliminate the need for a flare to safely operate equipment at a refinery. A flare would be installed at a refinery, even if there were no air pollution control requirements because flares are necessary to safely operate the refinery.

EPA itself notes that flares are critical safety equipment, as well as control devices, as indicated in in the preamble to the proposed RSR revisions (79 FR 36942, June 30, 2014):

> Flares are critical safety devices that effectively reduce emissions during startup, shutdown, and process upsets or malfunctions. In most cases, flares are the only means by which emissions from pressure relief devices can be controlled.

Nevertheless, based on EPA's objection to the Plant 2 permit, the Division will revise the renewal permit to include CAM for the P3 and GBR flares. It should be noted that the monitoring already required in the current permit (last revised February 22, 2018) for these flares will not change, but the monitoring will be identified as CAM and CAM plans will be included in the permit.

As discussed above, CAM applies to any pollutant specific emission unit (PSEU) that is subject to an emission limitation, uses a control device to achieve compliance with that emission limitation and has potential pre-control emissions greater than major source levels. EPA's objection letter considered the Plant 2 flare to be a control device.

In the case of the P3 and GBR flares, both flares are subject to VOC emission limits of 8.6 and 27.1 tons/yr, respectively. These limits include both waste gas and natural gas

from pilot and/or supplemental fuel. Since only emissions from PSEUs would be considered to determine CAM applicability, emissions from natural gas would be excluded in determining uncontrolled emissions. The P3 flare does not have a separate throughput limit for natural gas so no emissions were excluded but the GBR flare does and the adjusted controlled emissions from the GBR flare are 22.4 tpy.

The VOC emission limits for the flares are based on historic waste gas compositions and flow, and assume a 98% destruction and removal efficiency (DRE). Using the DRE and the VOC emission limits, uncontrolled VOC emissions from both flares would be above the current major source level (50 tons/yr of VOC).

There are multiple, possibly hundreds of process vents or pressure relief valves that may route to each flare header which could be considered an individual stream. However, in the absence of individual limits for each of the sources routed to the flare, the division assumes the PSEU is the aggregate of all the sources routed to the flare and since the aggregate limit is identified at the flare, the uncontrolled emissions at the flare will be used as the basis for determining uncontrolled emissions. Therefore the PSEU is considered to be the aggregate of the miscellaneous process vents, pressure relief valves and other flare tie-ins.

CAM will be consistent with the monitoring in 40 CFR Part 63 Subpart CC §§ 63.670 and 63.671, specifically monitoring for the presence of the pilot flame(s) and maintaining the net heating value in the combustion zone to 270 Btu.

**Equipment Included in Permit Since First Renewal**

Since the first renewal permit was issued, additional equipment has been incorporated into the Title V permit; specifically engines, cooling water towers, a thermal oxidizer for tank de-gassing and various remediation equipment.

<u>Engines</u>

None of the engines are equipped with control devices, therefore CAM does not apply to these engines.

<u>Thermal oxidizer</u>

The thermal oxidizer (TO) controls VOC emission from cleaning and degassing tanks at the facility and the thermal oxidizer is necessary to meet an annual VOC emission limit. The TO was included in the fourth modification to the first renewal, i.e. the current permit (last revised February 22, 2018). CAM applicability is based on a PSEU and permitted emissions from the thermal oxidizer are based on cleaning and degassing several tanks over the annual period. Therefore CAM applicability should be based on uncontrolled emissions from one tank. According to the TRD prepared to support the current permit, uncontrolled VOC emissions from cleaning and degassing one tank are 16,433 lbs (8.22 tons), thus CAM does not apply to the TO.

As discussed in Section III.1.1.25, at the request of the Division, the source submitted a revised APEN for the tank degassing thermal oxidizer to revise the emission calculation methodology and emission limits to be consistent with the Plant 2 permit. Requested, uncontrolled emissions from one tank are 31 tons/yr, which is above the major source threshold (25 tpy) when the area is reclassified as a severe ozone non-attainment area.

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3   Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

Therefore, when the area is reclassified, CAM will apply to the tank degassing thermal oxidizer. Since the bump-up to severe is expected to occur prior to permit issuance, CAM will be included for the tank degassing thermal oxidizer.

Plant 1 wastewater treatment system (WWTS)

At the time the Plant 1 WWTS was addressed in the first renewal permit, certain wastewater treatment equipment were controlled by carbon canisters, although the centrifuge system was controlled by two internal combustion engines. Apparently a CAM review was not conducted for the Plant 1 WWTS in the first renewal, as it appears that the API Lift station would have had uncontrolled emissions above the major source level (100 tpy of VOC) based on the emission calculation methodology used for the first renewal permit.

Since the first renewal permit was issued on October 1, 2012, changes have been made to the Plant 1 WWTS, including changes made to the calculation methods. A regenerative thermal oxidizer (RTO) was installed primarily to control the API headworks, although it was anticipated that other equipment that is currently controlled by carbon canisters may be routed to the thermal oxidizer. According to the current permit (last revised February 22, 2018), the following equipment is routed to the RTO (API headworks, API lift station, T60 lift station and the centrifuge. Emissions from the RTO were conservatively estimated using an inlet VOC concentration and the flow rate of the RTO. Using this method, uncontrolled VOC emissions are well above 100 tpy of VOC. This has been the basis for the VOC emission limit for the RTO since it was initially permitted in the June 25, 2013 revised permit to control emissions from the API headworks, thus at least one emission unit routed to the RTO has potential uncontrolled emissions above the major source level. Therefore, CAM applies to the WWTS RTO.

Carbon canisters are used to control other Plant 1 WWTS equipment and are also used as a back-up control for the equipment routed to the RTO. When routed to carbon canisters, emissions from the API headworks and the centrifuge were estimated using an assumed inlet VOC concentration and the flow rate of the carbon canisters. Based on these calculation methods uncontrolled VOC emissions from the API headworks are above the major source level. Thus CAM applies to the API headworks when routed to carbon canisters.

Emissions for other Plant 1 WWTS equipment were estimated using ToxChem to model emissions (previously emissions were estimated using EPA's Water9 program). Total uncontrolled emissions from sources using ToxChem for emission units controlled by carbon canisters is 5.45 tons/yr. Thus CAM does not apply to any other WWTS equipment routed to carbon canisters.

CAM monitoring for the RTO will be monitoring the temperature in the combustion chamber and for the carbon canister will be break through monitoring.

Plant 3 CPI Separator

The Plant 3 CPI separator is equipped with a carbon filter to reduce VOC emissions. VOC emission limits were included for the Plant 3 WWTS, including the CPI separator, in the first renewal permit (issued October 1, 2012). VOC Emission limits included in the first renewal permit were based on EPA's Water9 model and uncontrolled emissions

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3   Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

from the Plant 3 CPI in February 27, 2012 Water9 model were below the major source level. As discussed above, ToxChem was used at a later date to estimate emissions from the WWTS and based on the ToxChem model, uncontrolled VOC from the CPI separator were still below the major source level, so CAM does not apply to the Plant 3 CPI separator.

Remediation equipment

Most of the remediation air sparge/soil vapor extraction (AS/SVE) units are equipped with some type of control device and use that device to meet the combined annual VOC limit for all AS/SVE systems. The TRD for the third modification to the first renewal permit (issued February 1, 2016) addressed potential CAM applicability for the AS/SVE systems (see page 25 of the TRD to support the February 1, 2016 modification). The TRD for the February 1, 2016 revised permit indicated that uncontrolled VOC emissions from AIRS pts 617 and 618 were above 100 tons/yr, therefore, they were potentially subject to CAM. In addition, uncontrolled VOC emissions from AIRS pts 606, 625 and 615 are above 50 tons/yr, therefore, CAM potentially applies to these units.

The TRD for the February 1, 2016 revised permit indicated that CAM applies to a PSEU and considered a single SVE blower to be a PSEU to be evaluated for CAM applicability. Thus if a control device is shared by more than one PSEU, applicability would be based on the emissions from the individual PSEUs. Uncontrolled emissions from the pts 606, 615, 617, 618 and 625 are as follows:

| AIRS pt | Control Device | Total Uncontrolled VOC Emissions (tons/yr) | # of blowers | Uncontrolled VOC Emissions per Blower (tons/yr) |
|---|---|---|---|---|
| 606 | Carbon Canisters | 81.18 | 1 | 81.18 |
| 615 | Regenerative Thermal Oxidizer | 94.12 | 2 | 47.06 |
| 617 | Electric Catalytic Oxidizer | 120.01 | 2 | 60.0 |
| 618 | Carbon Canisters | 105.89 | 2 | 52.94 |
| 625 | | 81.18 | 1 | 81.18 |

As indicated in the above table, uncontrolled emissions from AIRS pts 606, 617, 618 and 625 blowers exceed the major source level (50 tons/yr), therefore, CAM applies to these emission units. In addition, emissions from AIRS pt 615 exceed the major source level (25 tpy) when the area is reclassified as a severe ozone non-attainment area.

The Division asked Suncor to evaluate emissions from the remediation equipment and to submit CAM plans for equipment with uncontrolled emissions that exceeded the new lower thresholds (both the current 50 tpy threshold and the expected lower threshold of 25 tpy). The source's response is discussed more completely in Section III.1.1.26, however, the source took lower limits for AIRS pts 606, 618 and 625 thus CAM does not apply to those units. The source submitted CAM plans for AIRS pts 615 and 617, which are equipped with a regenerative thermal oxidizer (RTO) and catalytic oxidizer. CAM for these units will be monitoring the combustion zone temperature (RTO) and catalyst inlet

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3   Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

temperature (catalytic oxidizer). These are appropriate parameters to monitor for these control devices.

Cooling towers

The cooling towers are equipped with drift eliminators which reduce PM emissions and the cooling towers are subject to annual emission limits for PM and $PM_{10}$. On their APENs submitted for the cooling towers, the source considered monitoring conducted under the provisions of MACT CC to be a control device. The cooling towers are also subject to VOC emission limits.

The Division considers that drift eliminators do not meet the definition of a control device. In 40 CFR Part 64, § 64.1, control device means "equipment other than inherent process equipment that is used to destroy or remove pollutants prior to discharge to the atmosphere…For purposes of this part, a control device does not include passive control measures, that act to prevent pollutants from forming, such as the use of seals, lids or roofs to prevent the release of pollutants". The Division considers that the drift eliminators are considered inherent process equipment and are passive devices and as such are not considered control equipment. In addition, work practice requirements, such as monitoring, would also not meet the definition of control device, as the definition applies to equipment, not work practices. Therefore, CAM does not apply to the cooling towers.

## 6.    Regarding Revisions to the Federal NAAQS for PM2.5

On February 7, 2024, the EPA promulgated a lowering of the PM2.5 annual NAAQS from 12.0 to 9.0 micrograms per cubic meter. Accordingly, the Division evaluated whether revisions to its modeling thresholds for PM2.5 were necessary. The Division published "Permitting Clarification on PM2.5 Modeling Thresholds Memorandum" on April 3, 2024 to address this NAAQS revision. Per that memo, none of the modifications included in this permit issuance require further PM2.5 modeling analyses.

## SECTION III -  DISCUSSION OF MODIFICATIONS MADE

The following discussion related to modifications is with respect to the current Title V permit (last revised February 22, 2018) and unless specifically noted as "new", the condition numbers identified in this document reflect the condition numbers in the current Title V permit (last revised February 22, 2018). Because some permit conditions in the current Title V permit (last revised February 22, 2018)  have been removed, reorganized and/or reformatted as part of this permitting process, the condition numbers discussed in this document may not reflect the condition numbers in the draft Title V permit.

Note that the changes discussed below, use the Regulation No. 7 numbering prior to the December 19, 2019 revisions (effective February 14, 2020), unless otherwise noted. The revised permit will include the numbering in the December 19, 2019 revision (effective February 14, 2020); however, unless otherwise noted, the TRD will continue to use the numbering convention from the previous Regulation No. 7 version (adopted November 15, 2018, effective January 14, 2019).

In general for permit modifications discussed in this section, the Division has discussed whether modeling was required for those modifications. Most of the modifications addressed in this document were submitted and processed as Title V minor modifications and was subject to the requirements in Colorado Regulation No. 3, Part C, Section X. Under the Title V minor modification procedures, specifically Regulation No. 3, Part C, Section X.I, "[a] source shall be allowed to make the changes proposed in its application for minor permit modification immediately after it files such application," and is not required to wait until issuance of the revised Title V permit in order to proceed with the proposed modification. As such, the previous permitting decisions, including whether or not modeling was required, were based on policies in place at the time and those policies were consistent with the practices in many states across the country and EPA's own major source modeling requirements. The Division's permitting policies have changed and are in the process of undergoing further analysis. Therefore, modifications submitted prior to March 15 and April 14, 2021 relied on either or both the Division's Modeling Guideline (which was withdrawn March 15, 2021) and PS Memo 10-01. The Division's Interim Modeling Guideline was published on October 25, 2021.

## 1.    Source Requested Modifications

The source's requested modifications were addressed as follows:

### 1.1    September 16, 2016 Renewal Application

The renewal application includes a list of changes, as well as a red-lined permit and notes modification applications that were submitted prior to the renewal application and that had not yet been incorporated into the permit. The current permit (last revised February 22, 2018) was issued after the renewal application was submitted and as a result some of the changes requested in the renewal application have already been addressed. The requested renewal changes and disposition of those are as follows:

The following changes requested in the renewal application were made in the February 22, 2018 modification (aka the current permit) and require no further action:

- Proposed changes to the table in Section I, Condition 5.1 and the tables in appendices B and C to remove the equipment (centrifuge thermal oxidizer and AIRs pt 626 AS/SVE) and to add miscellaneous process vents.

- Proposed changes to Section II.23 for the waste water treatment system to remove the centrifuge thermal oxidizer and associated permit conditions, update equipment controlled by the regenerative thermal oxidizer and correct the $SO_2$ limit for controlled sources.

- Proposed changes to Sections II.29, II.30 and II.31 (main (Plant 1), asphalt (Plant 3) and GBR flares) to indicate these flares are subject to the requirements for flares in MACT CC.

- Proposed changes to revise Section II.54 (Section II.53 in the current permit) to include the MACT CC revisions (December 1, 2015 and July 13, 2016). These revisions were made. Note that additional revisions were made to MACT CC

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3    Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

requirements and these will be included in the permit as discussed later in this
document.

- Proposed changes to Sections II.68 and II.70 (Sections II.67 and II.69 in current
  permit) to remove AIRS pt 626 AS/SVE and associated language.

- Proposed changes to include a "new" Section II.71 for maintenance vents. The
  current permit includes miscellaneous process vents in Section II.71.

- Proposed changes to include a "new" Section II.72 condition for 40 CFR Part 63
  Subpart WW (MACT WW), as this is required for tanks under the revisions to MACT
  CC. The MACT WW requirements are included in Section II.53 (MACT CC
  requirements), specifically in Condition 53.81).

The following changes requested in the renewal application will <u>NOT</u> be made:

- The renewal application indicated that the language regarding emission calculations
  for Tanks in Section II, Conditions 1.1, 2.1, 3.1, 4.1, 5.1, 6.1, 23.1.2 and 69.1.1
  (68.1.1 in the current permit) be revised to allow the use of either AP-42, Section 7.1
  or EPA TANKS. The permit currently requires that only the latest version of EPA
  TANKS be used. The Division will not make this change. As indicated on page 65 of
  the TRD to support the first renewal (issued October 1, 2012), the Division considers
  that the permit should only include one method to calculate emissions, as different
  methods may result in different emission estimates. If the source would like to rely
  on the AP-42, Section 7.1 emission factors, they may do so, but they must identify
  the appropriate AP-42 emission factors for each tank.

- The request to include a new permit condition (suggested as "new" Condition 22.14)
  for the FCCU to clarify the MACT UUU compliance requirements during startup will
  not be made as the language is not appropriate. The suggested language proposes
  a definition of startup, for the purposes of 63.1564(a)(5) (startup, shutdown and hot
  standby options for FCCUs). MACT UUU includes a definition of hot standby but
  does not include a definition of startup or shutdown, however, § 63.2 includes
  definitions of startup and shutdown. Since these terms are defined the Division
  cannot provide an alternate definition, therefore, the suggested new permit condition
  was not included.

- The request to update the CO emission factor and emission limit for the rail rack
  flare (Section II.24) will not be made as the rail rack flare was replaced with a vapor
  combustion unit in a June 14, 2018 modification application (see discussion later in
  this document under Section III.1.1.9).

- The request to update the CO emission factor and emission limit for the truck rack
  flare (Section II.25) was not made in accordance with the renewal application.
  However, the CO emission factor and emission limit was revised as requested in a
  modification application submitted on August 4, 2021 for the truck rack (see
  discussion later in this document under Section III.1.1.23)

- The renewal application indicated that no changes were proposed to Section II.27
  (process heater H-2101, serves the H$_2$ plant) but they would be submitting a

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3   Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

significant modification application to remove the $NO_X$ CEMS for the $H_2$ plant heater (H-2101, Section II.27). No application has been submitted and no changes were proposed with the renewal application, thus no changes will be made.

- The suggested changes to the Accidental Release Prevention Program language in Appendix C were not made because this is standard language in all permits.

- The suggested changes to Appendix H ($SO_2$ emissions calculation methodology) will not be made because the Appendix H requirements will be incorporated into Section II of the permit.

The following changes requested in the renewal application will be made:

- The request to remove the paragraph regarding the most recent version of EPA TANKS from Section II, Conditions 1.1, 2.1, 3.1, 4.1, 5.1, 6.1, 23.1.2 and 69.1.1 (68.1.1 in the current permit) will be removed.

- The request to include the new MACT UUU opacity limit, as well as the MACT UUU and NSPS J CO limits in the summary table for the FCCU (Section II.22) were included in the permit, although the source's suggested language was not used.

- The request to update the requirements in Section II.55 (Section II.54 in the current permit) to include revisions to MACT UUU were made. Note the following with respect to these requirements:

  Note that the below discussion addresses the requirements as they appear in the current permit (last revised February 22, 2018).

  Fairly significant revisions to the requirements in MACT UUU were made on December 1, 2015, thus this section has been revised to include the new requirements, as well as to more appropriately address the applicable requirements. Further revisions were made to the MACT UUU requirements on July 13, 2016, November 26, 2018, February 4, 2020 and November 19, 2020 and those revisions were included in the permit.

  Note that the requirements in 63.1560 (purpose of this subpart), 63.1561 (is the plant subject to this subpart) and 63.1578 (implementation and enforcement) were not included as they do not include actionable requirements. Except for the definition of "hot standby", the requirements in §63.1579 (definitions) were not included for the same reason.

  Section 63.1569 (bypass lines) and 63.1573 (monitoring alternatives) are not included in the current permit (last revised February 22, 2018), however, as discussed below they have been included in the draft renewal permit.

  o Added a statement to the beginning of this section, indicating which version of the rule is included and that the permittee is subject to the most recent version of the requirements.

  o 63.1562 (what parts of plant are covered). No requirements from 63.1562 are included in the current permit (last revised February 22, 2018). For the renewal it seemed appropriate to include the affected sources (63.1652(b)) and the relevant sources that are not affected (63.1652(f)(4) and (5)).

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3   Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

- o **63.1563 (compliance date).** No requirements from 63.1563 are included in the current permit (last revised February 22, 2018). Since new requirements were included in the December 1, 2015 revision, there are newer compliance dates. Although the permit will likely not be issued before the compliance dates, the new compliance date has been included (63.1563(d)(1)). The requirements in 63.1563(a) (initial compliance date for new sources), (b) (initial compliance date for existing sources), (c) (compliance extension for catalytic cracking units) and (e) (area sources increasing emissions) were not included since they do not apply, were not utilized or dates have passed.

- o **63.1564 (metal HAP emissions from FCCUs).** This section is included in the current permit (last revised February 22, 2018). Revisions were made to address any new or revised requirements or requirements that should have been included. Note that the paragraphs in Conditions 54.3 and 54.5 indicating the FCCU is not subject to any operating limits were removed because that is no longer the case. The requirements in 63.1564(b)(3) (set site specific operation limit) and 63.1564(b)(4) (initial compliance demonstration) were not included as they do not apply to sources subject to NSPS J and using option 1a to comply. The requirements in 63.1564(c)(3) and (c)(4) do not apply, as they apply to options 3 and 4, which the source is not relying on.

- o **63.1565 (organic HAP emissions from FCCUs).** This section is included in the current permit (last revised February 22, 2018). Revisions were made to address any new or revised requirements or requirements that should have been included. The paragraph in Condition 54.9 that indicated the FCCU is not subject to operating limits was removed.

- o **63.1566 (organic HAP emissions from catalytic reforming units):** This section is included in the current permit (last revised February 22, 2018). Revisions were made to address any new or revised requirements or requirements that should have been included. The provisions in 63.1566(b)(4) were not included because they don't apply (they apply to option 2 (emission limits), source complies with option 1(flare)). The requirements in 63.1566(b)(5) identifies sources that are not required to do a TOC performance test, since the source is not complying with a TOC emission limit (option 2) this was not included even though 63.1566(b)(5)(i) lists units venting to a flare (option 1).

- o **63.1567 (inorganic HAP emissions from catalytic reforming units):** This section is included in the current permit (last revised February 22, 2018). Revisions were made to address any new or revised requirements or requirements that should have been included.

- o **63.1568 (HAP emissions from sulfur recovery units):** This section is included in the current permit (last revised February 22, 2018). Revisions were made to address any new or revised requirements or requirements that should have been included. Operating limits (63.1568(2)) apply to certain startup and shutdown options, since the source did not indicate which option they would rely on, all options were included.

- o **63.1569 (Bypass lines):** This section is not included in the current permit (last

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3   Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

revised February 22, 2018). The bypass line requirements had been included in the original permit (issued August 1, 2004) but were removed in the first renewal (issued October 1, 2012), since the source had indicated there were no bypass lines. Since then the source has determined that there are two bypass lines (noted in the MACT UUU semi-annual report submitted on February 2, 2018). Therefore, the appropriate requirements were included in the permit. Note that the provisions in 63.1569(a)(2) (alternative option) were not included as the source is not relying on an alternative compliance method.

o   63.1570 (general requirements). This section is included in the current permit (last revised February 22, 2018). This section was revised to address any new or revised requirements or requirements that should have been included. Note that 63.1570(e) is "reserved" so there is nothing to include in the permit and there is no 63.1570(g), so Condition 54.38 (63.1570(g)) was removed from the permit.

o   63.1571 (performance test/initial compliance demonstrations). This section is included in the current permit (last revised February 22, 2018). This section was revised to address any new or revised requirements or requirements that should have been included. Note that the provisions in 63.1571(a)(3) and (4) were not included as they apply to new units. The provisions in 63.1571(a)(5)(i) were not included as the FCCU does not have a PM CEMS.

o   63.1572 (monitoring installation, operation and maintenance requirements). This section is included in the current permit (last revised February 22, 2018). This section was revised to address any new or revised requirements or requirements that should have been included.

o   63.1573 (Monitoring alternatives): This section is not included in the current permit (last revised February 22, 2018). The source indicated that the provisions in 63.1573(a)(1) apply, so these requirements were included in the permit.

o   63.1574 (notifications). This section is included in the current permit (last revised February 22, 2018). This section was revised to address any new or revised requirements or requirements that should have been included. Note that 63.1574(b), (c), and (e) were not included as they do not apply (requirements apply to new units or compliance extensions).

o   63.1575 (reports). This section is included in the current permit (last revised February 22, 2018). This section was revised to address any new or revised requirements or requirements that should have been included. Note that the requirements in 63.1575(h) and (j) have not been included since (h) is reserved and (j) does not apply (applies to FCCUs served by a wet scrubber).

o   63.1576 (records). This section is included in the current permit (last revised February 22, 2018). This section was revised to address any new or revised requirements or requirements that should have been included.

o   63.1577 (general provisions). This section is included in the current permit (last revised February 22, 2018). This section was revised to address any new or revised requirements or requirements that should have been included.

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3   Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

- The source requested revisions to the fuel monitoring requirements in Section II.59 (Section II.58 in the current permit). The Division does not agree with the language suggested for this condition. In lieu of using "engineering judgment", the Division has revised the language to specify that if a flow device is inoperable for 12 hours or less, the source shall substitute the average of the last recorded value and the value recorded after the flow device is operable again for any missing flow data. If the flow device is inoperable for more than 12 hours, the source shall substitute any missing flow data with the design heat input rate for the unit. In addition, the heat value for natural (city) gas will be based on the higher heating value (source suggestion is lower heating value) and the last sentence in this condition will be removed.

- The source requested that the MACT CC requirements be included in the permit shield for non-applicable requirements (Section III.1) for the truck rack. This change was made as requested.

- The source requested that the insignificant activity category in Appendix A for fuel dispensing in the ozone attainment area (Reg 3, Part C, Section II.E.3.ccc) be removed and the equipment listed under it be re-located to other categories. This change was made as requested. In the red-lined permit the source added two new tanks that dispense fuel, a 500 gal diesel tank and a 2,000 gallon rectangular tank with compartments for gasoline and diesel (1,000 gal). Based on the information in the renewal application, the tank does not qualify as an insignificant activity. However, in response to an information request from the Division, the source indicated that the tank has a 1,500 gal compartment for diesel and a 500 gal compartment for gasoline. Therefore, the tank does qualify as an insignificant activity and will be included in Appendix A.

- The source requested that the provisions in Appendix J (Plant 1 FCCU Opacity Plan) be revised to reflect the new opacity limit in MACT UUU.

## 1.2    May 30, 2017 Modification (minor modification) – Tank T62

Tank T62 is permitted to store Jet 50/kerosene. The purpose of this modification is to increase the throughput limit for this tank in order to accommodate periods when Plant 2 tanks T057 and T062, which also store jet fuel need to be taken out of service.

The application indicates that this change is not due to an increase in production of jet fuel and that loading operations are unaffected. The Division agrees with this assessment.

The increase in emissions is as follows:

| VOC Emissions (tons/yr) | | |
|---|---|---|
| Requested Emissions | Current Permitted | Change in Emissions |
| 0.13 | 0.09 | 0.04 |
| PSD/NANSR Significance Level (T5 Minor Mod Level)[1] | | 40 |

[1]Indicates the NANSR significance level on the date the complete minor modification application was submitted. Under the provisions of Colorado Regulation No. 3, Part X.I, a source is allowed to make the changes proposed in a complete minor modification application immediately after it is submitted (a construction permit is not required to construct or modify such source per Regulation 3, Part B, Section II.A.6). The area was classified as a serious ozone

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3    Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

non-attainment area on January 27, 2020 and for minor modification applications submitted on and after that date, the significance level drops to 25 tons/yr of VOC or NOx.

Revisions to Permit

The following changes were made to the permit to address this modification application:

Section II.4 – Tanks

- Revised the emission and throughput limits in Conditions 4.1 and 4.9.

## 1.3    June 23, 2017 Modification (minor modification) – Install new sump and BWON controls at truck rack (Denver Terminal)

The purpose of this modification is to control selected waste streams from the Plant 1 Truck Rack per the requirements in 40 CFR Part 61 Subpart FF (National Emission Standards for Benzene Waste Operations), otherwise referred to as "BWON." This allows the wastes associated with terminal operations to be designated as controlled sources and not considered in the 6 Mg/yr benzene limit established by BWON.

The modifications primarily address the management of truck pre-loading residual and meter proving wastes, which enter below grade sewers and flow to receiving tanks for subsequent collection and transfer by vacuum truck to the Plant 1 wastewater treatment system (WWTS).

The truck pre-loading residual wastes are generated mainly from switch loading operations, when residual gasoline must be drained from a truck prior to loading a diesel product. Existing drain funnels and area drains are uncontrolled. The two existing receiving tanks, for routine flows and overflows during storm events are uncontrolled. The receiving tank contents are currently pumped to an existing above-grade slop tank.

The following changes are proposed for this modification:

- Each of the five truck bays is equipped with a drain funnel with a steel lid. Each drain funnel will be upgraded with hinged, gasketed lids and the pipe from the funnel to the below-grade sewer will be equipped with a valve with a spring loaded handle to ensure it remains closed when not in use.

- Each of the five bays has an area drain. Area drains will be sealed by water-seal insert covers. Flows into area drains are primarily run-off from precipitation, with some hose washdown water.

- There are five catch basins and one area drain in the additive pad area of the truck rack. Although benzene is not expected in the additive area, a water seal will be installed in the sewer between the additive pad area and the main sewer line.

- A new 8,000 gallon underground horizontal storage tank, SU0001, will be used to receive all flows from the truck rack bay drain systems and the meter prover, as well as the additive slab drains. Contents from the new tank will be removed as needed by vacuum truck for transport to the Plant 1 WWTS. The existing 6,000 gallon aboveground slop oil tank will be taken out of service, cleaned and abandoned in place. The two existing receiving tanks will be demolished.

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3    Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

- A new carbon canister system (two carbon canisters in series) will control vapors from the new 8,000 gallon tank.

The application indicates that construction on the project is expected to begin in June 2017, with startup expected in the third of fourth quarter of 2017.

In response to questions from the Division, the source submitted additional information on August 28, 2017, with revised spreadsheets to update emissions from the drains. The response indicated the basis for the control efficiency used for piping components and based on further conversations, the source agreed with the Division that no control was appropriate for the piping components.

Note that with the exception of the new piping components, the changes to emissions associated with this project are generally decreases from current emissions, as some existing drains will be controlled and the replacement tank will be equipped with controls. However, emissions from this equipment have never specifically been identified in the permit. Emissions from the project are shown in the table below.

| Pollutant | VOC Emissions (tons/yr) | |
|---|---|---|
| | Uncontrolled | Controlled/Requested |
| Drains | 5.05 | 3.89 |
| New storage tank | 1.85 | 0.04 |
| Fugitive VOCs from new component[1] | 0.05 | 0.05 |
| Total | 6.95 | 3.98 |
| PSD/NANSR Significance Level (T5 Minor Mod Level)[2] | 40 | |

[1]Since emissions from the new components are less than the APEN de minimis level of 1 tpy VOC, an APEN is not required and was not submitted. Emissions from these components shall be reported on the plantwide fugitive VOC APEN (for components without permit limits).

[2]Indicates the NANSR significance level on the date the complete minor modification application was submitted. Under the provisions of Colorado Regulation No. 3, Part X.I, a source is allowed to make the changes proposed in a complete minor modification application immediately after it is submitted (a construction permit is not required to construct or modify such source per Regulation 3, Part B, Section II.A.6). The area was classified as a serious ozone non-attainment area on January 27, 2020 and for minor modification applications submitted on and after that date, the significance level drops to 25 tons/yr of VOC or $NO_X$.

Emissions from the drains are based on an emission factor of 1.54 lb/drain/day (from AP-42, Section 5.1, Table 5.1-4, dated April 2015). A control efficiency of 50% was provided for drains with water seals per EPA-450/3-85-001a, February 1985, "VOC Emissions from Petroleum Refinery Wastewater Systems – Background Information for Proposed Standards", page 4-9. A control efficiency of 23% is provided for drains with gasketed covers per EPA-450/3-85-001b, December 1987, "VOC Emissions from Petroleum Refinery Wastewater Systems – Background Information for Promulgated Standards", page 2-23.

Emissions from the tank are based on a TankESP_d run, using gasoline with an RVP of 15, a throughput level of 160,000 gallons/yr and assumes a liquid temperature of 88 °F year round. A control efficiency of 98% was applied for the carbon canisters. This is a conservative estimate and for that reason, the permit will allow the source to estimate emissions based on an emission factor of 0.023 lb/gal (based on the TankESP_d run divided by annual throughput).

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3   Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

Emissions from the new piping components are based on the following emission factors and component counts.

| Component Type | No. of Components | Service | Emission Factor (lb/component/hr) | Control Efficiency | Emission Factor Source | Emissions (lbs/yr) |
|---|---|---|---|---|---|---|
| Valves | 8 | gas | 2.87 x 10⁻⁵ | 0% | "Protocol for Equipment Leak Emission Estimates", EPA-453/R-95-017, November 1995, Table 2-3 (emission factors) | 8.3 |
| Flanges/ Connectors | 11 | gas | 9.26 x 10⁻⁵ | 0% | | 94.1 |
| | | | | | | |
| Total (lbs/yr) | | | | | | 102.4 |
| Total (tons/yr) | | | | | | 0.05 |

Regulatory Analysis

The application included a regulatory analysis. Those parts of the regulation analysis that either required further clarification or the Division disagreed with are discussed here.

NSPS Subpart QQQ. In the application, the source indicated that the NSPS QQQ did not apply, as the truck rack (Denver Terminal) does not meet the definition of refinery. Since the definition of refinery in NSPS Subpart QQQ and in the BWON (40 CFR Part 61, Subpart FF) are the same, and wastewater from the truck rack is subject to BWON requirements, this justification did not suffice. The definition of "wastewater system" in NSPS QQQ mean "any component, piece of equipment, or installation that receives, treats, or processes oily wastewater from petroleum refinery process units." Since the truck does not meet the definition of a refinery process unit, the provisions in NSPS QQQ do not apply.

Regulation No. 7 Requirements: In their application, the source indicated that the requirements in Sections III and IV do not apply to the new sump because it is not being operated as a storage tank. The Division agrees that the requirements in Section IV (storage of highly volatile organic compounds) do not apply but considers that the sump is a storage tank, thus the requirements in Section III.A apply.

The application indicated that the requirements in Section VI did not apply because the tank is storing waste which does not meet the definition of petroleum liquid in Section VI.A.2.g. The liquid waste includes petroleum liquids and other wastewater treatment tanks at this facility are subject to these requirements, therefore, the Division considers that these requirements potentially apply. The requirements in Section IV.A.1 apply. The requirements in Section VI.B (storage of petroleum liquid) potentially apply, Sections VI.C and D apply to gasoline loading and/or gasoline transport trucks and do not apply to the new tank. The requirements in Section VI.B.2 do not apply as the tank is less than 40,000 gallons. The requirements in Section VI.B.3 potentially apply, however, the requirements in Section VI.B.3.b and c (submerged fill requirements) do not apply since the tank does not receive liquid from a delivery vessel and the requirements in VI.B.3.c

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3   Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

thru h (vapor collection system or control equipment requirements) do not apply
because they only apply to gasoline dispensing facilities.

Revisions to Permit

The following changes were made to the permit to address this modification application:

Section I - General Activities and Summary

• Added the tank and drains to the table in Condition 5.1.

Section II.25 – Truck Loading Rack and Flare (R102)

• Included requirements for the drains and sump, which includes:

  o emission and throughput (sump) limits in Conditions 25.1 and 25.5.

  o Reg 7 requirements in "new" Condition 25.11 (sump).

  o BWON requirements in "new" Condition 25.12, breakthrough monitoring (sump)
    in "new" Condition 25.13 and BWON program enhancements (controlled drains)
    in "new" Condition 25.14.

Section II.65 – BWON Requirements

• Revised the requirements to indicate that the truck rack flare and associated piping
  from the meter prover to the flare, as well as the controlled drains, sump and carbon
  canister control system are subject to BWON requirements.

• Included the requirements in 61.349 that are associated with flares (61.349(a)(2)(iii),
  61.349(d), 61.354(c)(3) and 61.356(c)(7)).

Appendices

• Added the meter proving activity to the insignificant activity list in Appendix A, under
  the category "units with emissions less APEN de minimis – criteria pollutants."
  Actual, uncontrolled emissions from this activity are below the APEN de minimis
  level.

• Added the tank and drains to the tables in Appendices B and C.

## 1.4    July 31, 2017 Modification (minor modification) – Upgrade the Hydrogen (H2) plant sewers to comply with NSPS QQQ

The purpose of this modification is to configure the $H_2$ Plant sewer system to comply
with the requirements in 40 CFR Part 60 Subpart QQQ (NSPS QQQ). The project
involves installing water seal controls on twenty-five (25) existing drains and six (6)
existing catch basins. Solid and gasketed covers will be installed for one (1) existing
manhole and three existing clean-outs. Additionally one (1) process drain will be hard-
piped directly to the associated process equipment. No new sewer components will be
installed as part of this project.

At the time the $H_2$ plant sewer system was constructed it was anticipated that it would
receive no hydrocarbon containing materials. Upon the request of the Division, Suncor
conducted a third party audit that was intended, in part, to review the refinery's
compliance with the requirements in NSPS QQQ. During this audit, samples from the $H_2$

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3   Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

Plant sewer system indicated hydrocarbons above the detection level, thus Suncor considered that the NSPS QQQ requirements applied to the $H_2$ Plant sewer system as NSPS QQQ does not define a de minimis hydrocarbon level for applicability purposes.

For this project, the $H_2$ Plant sewer system will be routed to the Gasoline Benzene Reduction (GBR) Unit sewer system, which discharges to the Plant 1 wastewater treatment system. Prior to this project, the $H_2$ Plant sewer system was routed to the storm water management portion of the Plant 1 wastewater treatment system. According to the application, the source indicates that the overall emissions from the Plant 1 wastewater treatment system will not increase as a result of this project, although some equipment may see slight increases and others slight decreases due to the $H_2$ Plant sewer system entering the system at a different point.

Estimated emissions from the sewer system with controls are as follows:

| Component Type | No. of Components | Uncontrolled VOC Emission Factor (lb/hr) | % Control | VOC Emissions (tons/yr) | |
|---|---|---|---|---|---|
| | | | | Uncontrolled | Controlled/ Requested |
| Drains with water seals | 31 | 0.064 | 50% | 8.69 | 4.34 |
| Gasketed Manway Covers | 4 | 0.064 | 23% | 1.12 | 0.86 |
| Total | | | | 9.81 | 5.20 |
| PSD/NANSR Significance Level (T5 Minor Mod Level)[1] | | | | 40 | |

[1]Indicates the NANSR significance level on the date the complete minor modification application was submitted. Under the provisions of Colorado Regulation No. 3, Part X.I, a source is allowed to make the changes proposed in a complete minor modification application immediately after it is submitted (a construction permit is not required to construct or modify such source per Regulation 3, Part B, Section II.A.6). The area was classified as a serious ozone non-attainment area on January 27, 2020 and for minor modification applications submitted on and after that date, the significance level drops to 25 tons/yr of VOC or $NO_X$.

Emissions from the drains are based on an emission factor of 1.54 lb/drain/day (from AP-42, Section 5.1, Table 5.1-4, dated April 2015). Emissions from uncontrolled junction boxes are presumed to be the same as a drain per EPA-450/3-85-001a, February 1985, "VOC Emissions from Petroleum Refinery Wastewater Systems – Background Information for Proposed Standards", page 3-27. A control efficiency of 50% was provided for drains with water seals per that same document (see page 4-9). A control efficiency of 23% is provided for drains with gasketed covers per EPA-450/3-85-001b, December 1987, "VOC Emissions from Petroleum Refinery Wastewater Systems – Background Information for Promulgated Standards", page 2-23.

An error was found in the application and a corrected APEN was submitted for the $H_2$ Plant sewer system drains on November 15, 2017.

The $H_2$ Plant was initially constructed and installed as part of the Clean Fuels Project (CFP) in 2004. During the initial permitting process emissions from fugitive piping components and/or drains from the $H_2$ Plant were not included in the evaluation and no permit was issued. Presumably that was because it was expected that these emissions were below the APEN de minimis level. The CFP was permitted below the major stationary source significance level by netting out of PSD and/or NANSR for $NO_X$, $SO_2$

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3    Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

and VOC emissions and emissions from all pollutants were below the significance level,
i.e. the CFP was permitted as a minor source.

A minor source must undergo major stationary source permitting requirements if it
becomes a major stationary source or major modification by relaxing an enforceable
limit. These provisions are known as the source obligation provisions (cited as
52.21(r)(4) in the federal PSD regulations), and are included in Colorado Regulation No.
3, Part D, Sections V.A.7.b (nonattainment area) and VI.B.4 (PSD). These requirements
are commonly referred to as the relaxation restrictions. Therefore, in order to qualify as
a minor modification, emissions from the CFP, including VOC emissions from the $H_2$
Plant sewers addressed in this modification, must be below the significance level.

In order to keep emissions from the CFP below the significance level for VOC
emissions, the source has opted to reduce the VOC emission limit for cooling tower Y-3,
which was also part of the CFP. An APEN was submitted on July 18, 2018 to reduce the
VOC emission limit for the Y-3 cooling tower. Requested emissions for the Y-3 cooling
tower are based on a VOC concentration of 9.65 ppm. The overall change in permitted
emissions associated with this modification is shown in the table below:

| Emission Unit | VOC Emissions (tons/yr) | | |
|---|---|---|---|
| | Current Permitted | Requested | Change in Permitted Emissions |
| $H_2$ Plant Drain Systems | 0[1] | 5.20 | 5.20 |
| Y-3 Cooling Tower | 5.9 | 1.85 | -4.05 |
| Total | 5.9 | 7.05 | 1.15 |

[1]The $H_2$ Plant drains are not "new" but are not addressed in the current Title V permit. The purpose of this
modification is to control emissions from the drains so that they meet NSPS QQQ requirements, thus the above table
conservatively shows an increase in permitted emissions for the $H_2$ Plant Drain Systems.

Regulatory Analysis

The application included a regulatory analysis. Those parts of the regulation analysis
that either required further clarification or the Division disagreed with are discussed
here.

Regulation No. 7 Requirements The requirements in Section VI.B. apply to storage
tanks, the requirements in Section VI.C apply to gasoline terminals, bulk plants and
transport vehicles and the requirements in Section VI.D apply to gasoline transport
trucks and do not apply to the $H_2$ Plant sewer system (drains, junction boxes and
manholes). At the request of the Division, the source indicated that the requirements in
Section IV.A.1 do not apply as the drain system is gravity fed and does not use pumps
or compressors to convey liquids.

40 CFR Part 61 Subpart FF (BWON) Requirements At the request of the Division, the
source indicated that the $H_2$ Plant drain systems are not considered controlled for
purposes of BWON. Since the permit only specifically identifies BWON as a
requirement for controlled sources, the permit will not include the BWON requirements.

Miscellaneous

As discussed previously, the Division considers that the source obligation provisions in
Colorado Regulation No. 3, Part D, Section VI.B.4 (PSD) apply to the CFP, which
includes the $H_2$ Plant sewer (drain) system. The Division will include the source

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3    Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

obligation provisions in the permit and include a summary of the emissions analysis for this project, based on this application and the request to lower the Y-3 cooling tower VOC emission limit (APEN received July 18, 2018). The Division considers that the relaxation provisions should be included in the permit for all of the CFP equipment.

It should be noted that at the time the CFP was permitted (application submitted January 29, 2004, permits issues May 24, 2004), the area in which the facility is located was designated as attainment or attainment maintenance for all pollutants.

Revisions to Permit

The following changes were made to the permit to address this modification application:

Section I - General Activities and Summary

- Added the $H_2$ Plant individual drain systems to the table in Condition 5.1.

Section II.4 – Tanks with Unique Requirements

- Included the relaxation provisions for tanks T-52, T-774 and T-777 in "new" Condition 4.10

Section II.10 – Cooling Towers

- Revised the VOC emission limit in Condition 10.4 for the Y-3 cooling tower.

- Included the relaxation provisions for the Y-3 cooling tower in "new" Condition 10.8.

Section II.13 – Boilers B-6 and B-8

- Included the relaxation provisions for Boilers B-6 and B-8 in "new" Condition 13.13.

Section II.20 – Sulfur Recovery Units

- Included the relaxation provisions for the TGU Incinerator H-25 in "new" Condition 20.14.

Section II.21 – Heaters H-1716 and H-1717

- Included the relaxation provisions for heaters H-1716 and H-1717 in "new" Condition 21.11.

Section II.27 – Heater H-2101

- Included the relaxation provisions for heater H-2101 in "new" Condition 27.1.

Section II.34 - Fugitive VOC Equipment Leak Emissions with Permitted Limits

- Included the emission limit for the drains in Condition 34.1.

- Added language to Condition 34.2 (NSPS GGGa requirements) to indicate the $H_2$ Plant drains are not subject to these requirements.

- Added language to Condition 34.6 (NSPS QQQ) to indicate that the $H_2$ Plant drains are subject to these requirements.

- Included the relaxation provisions as "new" Conditions 34.10 and 34.10.2 for the fugitive VOC sources for the clean fuels project (F102 – Asphalt Unit Fugitives, F103 – No. 3 HDS Fugitives, F105 - No. 2 HDS Fugitives, F108 – Debutanizer Fugitives,

F109 – No. 4 HDS Fugitives, F110 – Amine System Fugitives, F111 - SWS System Fugitives, F112 – Tank Farm Fugitives and F204 $H_2$ Plant Drain Systems).

Section II.51 – NSPS QQQ

- Revised the language under Condition 51 to indicate that the $H_2$ Plant drains (F204) are subject to the requirements for drains.

Appendices B and C

- Added the $H_2$ Plant individual drain systems to the tables in Appendices B and C.

"New" Appendix L – Analyses of Emissions Increases Associated with Various Suncor Projects

Note that in the current permit (last revised February 22, 2018) Appendix L included PSD/NANSR applicability tests.

- Included the CFP emissions as of this July 17, 2017 application and the revised APENs submitted on July 18, 2018 for the Y-3 cooling tower.

**1.5    September 12, 2017 Modification (minor modification) – Upgrade Plant 3 (Asphalt Unit) flare to comply with MACT CC**

The purpose of this modification is upgrade the P3 flare in order to comply with the flare requirements in the December 1, 2015 Refinery Sector Rule (RSR) Revisions. The December 1, 2015 revisions primarily addressed revisions to the refinery MACTs (40 CFR Part 63 Subparts CC and UUU), although minor revisions were also made to the refinery NSPS requirements (40 CFR Part 60 Subparts J and Ja). The December 1, 2015 revisions to MACT CC included requirements for flares used as control devices for emission points addressed in MACT CC.

The new flare requirements in MACT CC are essentially an enhancement of the requirements in 40 CFR Part 63 Subpart A § 63.11(b) (operate with a flame present at all times, no visible emissions and exit velocity and flare gas Btu content requirements) by requiring monitoring to ensure the flares are properly operated to achieve the 98 percent reduction efficiency that was expected for flares used to comply with MACT CC requirements.

The December 1, 2015 MACT CC flare revisions primarily require additional monitoring requirements, thus there is no expectation that additional waste gases will be combusted by flares or that the operation of any of the refinery process units will be changed as a result of this project. However, under the MACT CC requirements, sources are required to maintain the net heating value of the flare combustion zone gas at or above 270 Btu/scf, determined on a 15-minute block period, when regulated material is routed to the flare for at least 15 minutes. While refinery flares were previously subject to requirements in either 40 CFR Part 60 Subpart A § 60.18 or 40 CFR Part 63 Subpart A § 63.11(b), which required that they be used only when the net heating value of gases combusted were at or above 300 Btu/scf (for steam- or air-assisted flares), §§ 60.18 and 63.11(b) did not specify any ongoing monitoring for this requirement. Since MACT CC requires continuous monitoring of the heat content of gases in the flare combustion zone, Suncor anticipates that supplemental gas will be

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3   Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

necessary to ensure that the flare can comply with the combustion zone gas heat content requirements, which will result in an increase in flare emissions. As part of the project, new piping components (i.e. flanges, valves, etc.) will be installed and result in a slight emissions increase.

In conjunction with this application, Suncor is also revising the VOC emission factor with this modification. Previously, Suncor utilized the VOC emission factor for flares in AP-42, Section 13.5. In fact the AP-42 VOC emission factor (0.66 lb/MMBtu) was used for the miscellaneous process vent (MPV) modification, which was submitted on February 10, 2017 and is addressed in the current Title V permit (last revised February 22, 2018). This application proposes a material balance-based emission factor.

In reviewing this application, the Division requested clarification, corrections or additional information regarding the information submitted. Responses to these information requests were submitted on December 15, 2017 and April 13, 2018.

According to the application, construction on this project is expected to begin in the fourth quarter of 2017. Startup of the P3 flare with the MACT CC compliant monitoring systems will be completed no later than January 30, 2019.

Modification Type

The source indicated that this modification qualifies as a minor modification. Colorado Regulation No. 3, Part C, Section X.A identifies those modifications that can be processed under the minor permit modification procedures. Specifically, minor permit modifications "are not otherwise required by the Division to be processed as a significant modification" (Colorado Regulation No. 3, Part C, Section X.A.6). The Division requires that "any change that causes a significant increase in emissions" be processed as a significant modification (Colorado Regulation No. 3, Part C, Section I.A.7.a). According to Part F of Regulation No. 3 (Section I.L, revisions adopted July 15, 1993, Subsection I.G for modifications) the Division considers that a significant increase in emissions is the potential to emit above the major stationary source significant level in Colorado Regulation No. 3, Part D, Section II.A.44.

The application indicates that based on the major stationary source applicability test conducted in accordance with the requirements in Colorado Regulation No. 3, Part D, Section I.B (actual-to-projected-actual emissions for existing equipment and actual-to-potential for new equipment), that increases from the project are below the significant level. The results of the applicability test are indicated in the table below:

| Emission Unit | Increase in Actual Emissions | | | | |
|---|---|---|---|---|---|
| | $PM/PM_{10}/PM_{2.5}$ | $SO_2$ | $NO_X$ | CO | VOC |
| Fugitive VOCs from New Components[1] | | | | | 0.11 |
| P3 Flare[2] | 0.17 | 16.89 | 1.04 | 4.74 | 5.66 [8.25] |
| **Total** | **0.17** | **16.89** | **1.04** | **4.74** | **5.66 [8.25]** |
| PSD/NANSR Significance Level (T5 Minor Mod Level)[3] | 25/15/10 | 40 | 40 | 100 | 40 |

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3   Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

Values in brackets [ ] are based on estimating baseline emissions using an emission factor specific to natural gas combustion only (see discussion on page 41).

[1]New Equipment. Emission increases are based on potential (requested) emissions (actual emissions = 0 for new equipment).

[2]Existing Equipment. Emission increases are based on the projected actual emissions minus baseline actual emissions. For the flares the applicability test is shown in Table 2 below (see page 42).

[3]Indicates the NANSR significance level on the date the complete minor modification application was submitted. Under the provisions of Colorado Regulation No. 3, Part X.I, a source is allowed to make the changes proposed in a complete minor modification application immediately after it is submitted (a construction permit is not required to construct or modify such source per Regulation 3, Part B, Section II.A.6). The area was classified as a serious ozone non-attainment area on January 27, 2020 and for minor modification applications submitted on and after that date, the significance level drops to 25 tons/yr of VOC or NOx.

In regards to whether a modification qualifies as a minor modification, in addition to the major stationary source applicability test, the Division reviewed the change in permitted emissions to see if that would also qualify as a minor modification.

| P3 Flare Change in Permitted Emissions | | | | | |
|---|---|---|---|---|---|
| | PM/PM$_{10}$/PM$_{2.5}$ | SO$_2$ | NO$_X$ | CO | VOC[2] |
| Requested - Flare | 0.2 | 16.9 | 1.6 | 7.2 | 8.6 |
| Current Permitted - Flare[1] | 0.13 | 16.9 | 1.2 | 5.43 | 11.6 |
| Change in Emissions | 0.07 | 0 | 0.4 | 1.77 | -3.0 |
| New Piping Components | | | | | 0.11 |
| | | | | | |
| **Total** | **0.07** | **0** | **0.4** | **1.77** | **-2.89** |
| PSD/NANSR Significance Level (T5 Minor Mod Level)[3] | 25/15/10 | 40 | 40 | 100 | 40 |

[1]Based on the emission limits included in the current Title V permit (last revised February 22, 2018).

[2]Although this modification results in an increase in throughput to the flare, permitted VOC emissions are lower due to the change in the VOC emission factor.

[3]Indicates the NANSR significance level on the date the complete minor modification application was submitted. Under the provisions of Colorado Regulation No. 3, Part X.I, a source is allowed to make the changes proposed in a complete minor modification application immediately after it is submitted (a construction permit is not required to construct or modify such source per Regulation 3, Part B, Section II.A.6). The area was classified as a serious ozone non-attainment area on January 27, 2020 and for minor modification applications submitted on and after that date, the significance level drops to 25 tons/yr of VOC or NO$_X$.

This application was submitted under the presumption that the various projects to bring the flares at this facility into compliance with the flare requirements in MACT CC are separate projects and should not be aggregated for purposes of determining whether major stationary source permitting requirements apply. After further review, as discussed below (beginning on page 43), the Division agreed that the various flare projects are separate. Note that as discussed in the P3 flare RSR application, the flares potentially subject to the MACT CC requirements are the Plant 1 main flare, P2 main flare, Plant 3 flare, gasoline benzene reduction unit (GBR) flare and the Plant 1 rail rack flare. Not mentioned in the application is the Plant 2 rail rack flare which is also potentially subject to the MACT CC requirements.

<u>Modeling Requirements</u>

A modeling analysis is generally conducted based on requested (permitted) emissions, thus a modeling analysis would be triggered based on the change in permitted emissions.

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3   Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

There is no increase in permitted VOC emissions as a result of this modification and the increase in permitted $NO_X$ emissions is 0.4 ton/yr. Although VOC is a precursor for ozone, in general accurate and cost effective methods for modeling ozone impacts from stationary sources are not available. Therefore, individual source ozone modeling is not routinely requested for permit modifications. The magnitude of the emission increase (VOC – 0 ton/yr and $NO_X$ – 0.4 ton/yr) is not at a level for which individual source ozone modeling would be required.

For the other pollutant emissions, the increase in permitted emissions are summarized below:

| Pollutant | Modeling Threshold[1] | | Change in Permitted Emissions[2] | |
|---|---|---|---|---|
| | Annual | Short-Term | Annual (ton/yr) | Short term[3] |
| $SO_2$ | 40 tons/yr | 0.46 lbs/hr | 0 | 0 lb/hr |
| $NO_2$ | 40 tons/yr | 0.46 lbs/hr | 0.4 | 0.09 lb/hr |
| CO | N/A | 23 lbs/hr | 1.77 | 0.40 lb/hr |
| $PM_{10}$ | N/A | 82 lbs/day | 0.07 | 0.38 lb/day |
| $PM_{2.5}$ | 5 tons/yr | 11 lbs/day | 0.07 | 0.38 lb/day |

[1]Per the Division's May 2018 draft Modeling Guidelines (page 22).

[2]Change in permitted emissions from table on page 38.

[3]The increase in emissions is based on supplemental fuel, not additional anticipated flaring, thus emissions are presumed to be relatively consistent, so short term emissions are based on annual emissions divided by either 8760 hours per year or 365 days per year.

Note that the increase in annual and short-term emissions for all pollutants is below the modeling thresholds, thus modeling is not warranted with respect to those pollutants.

<u>Discussion</u>

Except for new piping components, the unit affected by this modification, the P3 flare, is an existing emission unit. Therefore the major stationary source applicability test is based on a comparison of baseline actual emissions (BAE) to projected actual emissions (PAE).

Emissions from the new piping components are based on the following emission factors and component counts.

| Component Type | No. of Components | Service | Emission Factor (lb/component/hr) | Control Efficiency[1] | Emission Factor Source | Emissions (lbs/yr)[2] |
|---|---|---|---|---|---|---|
| Valves | 8 | gaseous | 0.05908 | 96% | "Protocol for Equipment Leak Emission Estimates", EPA-453/R-95-017, November 1995, Table 2-2 (emission factors) and Table 5-3 (control efficiencies) | 166 [4,140] |
| Flanges/ Connectors | 11 | Any | 0.00055 | 0% | | 53 |
| | | | | | | |
| Total (lbs/yr) | | | | | | 219 [4,193] |
| Total (tons/yr) | | | | | | 0.11 [2.10] |

[1]Control efficiencies are from the following sources. **Valves** - Table 5-3 of EPA's Protocol for Equipment Leaks (EPA-453/R-95-017) based on monitoring consistent with proposed HON NESHAP. With this application, the Division reconsidered the control efficiency previously allowed for flanges and connectors. Although Colorado Reg 7 requires

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3   Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

annual monitoring for flanges (per Section VIII.C.4.a.(i)(A)), the leak definition in Reg 7 (10,000 ppm) is higher than that in the HON NESHAP (500 ppm), thus the 81% control efficiency listed in Table 5-3 is not appropriate and no control efficiency was allowed for flanges. The Division would agree that some control may be appropriate for flanges due to annual monitoring, however, the source did not propose an alternative for this application. Note that NSPS GGGa includes similar monitoring for flanges/connectors as the HON NESHAP, however, these requirements have been stayed.

[2]Emissions in "[ ]" are uncontrolled. Note that the control efficiency, and subsequently controlled emissions are based on required monitoring.

An APEN was submitted for emissions from the new components, thus the requested VOC limit has been included in the permit.

Plant 3 flare - BAE

For the P3 flare, BAE is based on the period of January 1, 2013 through December 31, 2014 and BAE was adjusted to reflect changes to the CO and VOC emission factor for the flare that occurred after the baseline period. Rather than adjust VOC emissions to reflect the revised AP-42 emission factor, the source used an emission factor based on the actual composition of flared gases and a presumed destruction and removal efficiency (DRE). Although Colorado Regulation No. 3, Part D, Section II.A.4.b, only allows BAE to be adjusted downward to reflect emissions that were not in compliance with limits established during the baseline period or limits that currently apply, the Division considers that it is appropriate for BAE and PAE to be compared on the same basis, with the same emission factors, since the emission factors are unrelated to the project.

In addition, the revised emission factors indicate a better estimate of emissions from the flare and represents what emissions would have been during the baseline period, had those factors been available. Thus correcting BAE to reflect the revised emission factors is appropriate.

As specified in Colorado Regulation No. 3, Part D, Section II.A.4.b.(ii) BAE shall be adjusted downward to exclude any non-compliant emissions that occurred while the source was operating above an emission limitation that was legally enforceable during the baseline period. No adjustments to BAE were necessary to reflect non-compliant emissions.

BAE for this modification is from the same time period (January 1, 2013 through December 31, 2014) as the MPV modification (application submitted February 10, 2017) and thus it would be expected that BAE should be the same but this is not the case for the following reason.

The VOC emission factor used in the MPV modification was the emission factor from AP-42, Section 13.5 (dated 2/18), Table 13.5-2 (VOC = 0.66 lb/MMBtu). For this modification, the source opted to use a VOC emission factor based on the composition of the gases routed to the flare, assuming a DRE of 98% (0.3709 lb/MMBtu).

Note that typically the Division does not allow the use of a flare DRE or control efficiency above 95% for flares without requiring a performance test. However, in this case, the Plant 3 flare will be required to comply with additional monitoring requirements set forth in MACT CC by January 30, 2019. The purpose of the additional flare monitoring is to ensure flares achieve a 98% DRE as noted in 79 FR 36942 (June 30, 2014) so the Division considers it is acceptable to allow a 98% DRE.

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3    Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

The Division approves the use of the material balance-based emission factor in lieu of the AP-42 emission factor as it is considered to be more representative of actual emissions.

Emissions during the baseline period for the P3 flare were due to consistent flow from pilot and purge gas (monthly flow was based on assumed flow rates and hours of operation) and natural gas is used as pilot and purge gas. Although the Division did not question the use of the AP-42 flare emission factor for VOC emissions from pilot and purge gas, when the source used an emission factor based on material balance, the Division questioned the use of the factor for periods when it was highly likely that only natural gas was combusted in the flare. In addition, applications to address the flare RSR requirements for the P1 and GBR flares specifically relied on natural gas only emission factors when natural gas was combusted, either as pilot, purge or supplemental gas.

In their December 15, 2017 response to comments, the source indicated that the VOC emission factor was based on samples taken at times when process gases had broken through the flare seal drum and were being combusted by the flare. The source also noted that during these periods, pilot and purge gases would also be combusted by the flare.

In their April 13, 2018 response to comments from the Division, Suncor noted that since the flare did not have a flow monitor during the baseline period, that they could not say with certainty that only pilot and purge gases were combusted. In the April 13, 2018 response, Suncor did not revise the baseline VOC emissions to reflect that only natural gas was burned. It should be noted that the permit in effect during the baseline period stipulated that VOC emissions would be calculated using the emission factor in the permit (AP-42) for all gases combusted by the flare.

The Division considers that using an emission factor more appropriate for natural gas combustion during the baseline period would be conservative and appropriate. However, since requested (permitted) VOC emissions from this flare are below the significance level and the various flare RSR projects are being considered separate projects (see discussion beginning on page 43), the outcome of the analysis will not be affected if a less conservative, natural gas appropriate emission factor is used during the baseline period (the increase in VOC emissions will be below the significance level regardless of the emission factor). Nevertheless, the Division did look at the analysis with baseline VOC emissions based on an emission factor appropriate for natural gas combustion. The Division conducted a material balance analysis for natural gas based on 2017 natural gas composition data from Xcel Energy's Denver area high pressure gas line and assumed a DRE of 98%. The gas composition from December 2017 was used to determine the emission factor as that month had the highest VOC content. That emission factor ($3.95 \times 10^{-2}$ lb/MMBtu) is more conservative than the AP-42, Section 1.4 emission factor of $5.39 \times 10^{-3}$ lb/MMBtu (from Table 1.4-2 (dated 7/98), converted to lb/MMBtu based on a heat content of 1020 Btu/scf per footnote a) that the source used in other flare RSR project applications.

Plant 3 Flare - (PAE)

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3   Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

The source projected that actual emissions (PAE) for the Plant 3 flare would be based on current permitted levels plus the increased supplemental gas (and subsequent emissions) needed to meet the combustion zone heat content requirements.

The April 13, 2018 submittal included revised emission calculations (spreadsheets) for projected actual emissions using a natural gas emission factor for pilot and supplemental gas. However, in that same submittal, the source indicated that they would prefer to use the material balance emission factor proposed in the application, thus the Division is not relying on the information in the April 13, 2018 submittal for PAE. PAE for VOC emissions is based on the material balance emission factor and the requested flare throughput.

The estimated emissions and flow due to the additional supplemental fuel necessary to meet the heat content requirements for flares in MACT CC are as follows:

| Table 1 – Throughput and Emissions from Increased Supplemental Fuel for P3 Flare | | | | | | |
|---|---|---|---|---|---|---|
| Unit | Throughput (MBtu/yr) | Emissions (tons/yr) | | | | |
| | | CO | NO$_X$ | VOC[1] | PM/PM$_{10}$/ PM$_{2.5}$ | SO$_2$[2] |
| P3 Flare | 11,235,836 | 1.74 | 0.38 | 2.08 | 0.042 | $9.60 \times 10^{-3}$ |

[1]The VOC emission factor used to estimate emissions is the waste gas emission factor (0.371 lb/MMBtu), rather than the natural gas emission factor. As discussed above, the source opted to use the more conservative emission factor.
[2]SO$_2$ emissions are based on a throughput level of 12.21 MMscf, based on a natural gas heat content of 920 Btu/scf.

Plant 3 Flare – Adjustments to PAE

PAE may be adjusted downward to reflect emissions that the unit could have accommodated during the baseline period and that are unrelated to the project, including increased utilization due to demand growth.

During the baseline period, the P3 flare was generally operated at a consistent flow rate (emissions were from combustion of pilot and sweep gas) that was determined based on hours of operation. Therefore, the source estimated PM, PM$_{10}$, PM$_{2.5}$, NO$_X$, CO and VOC emissions that the P3 flare could have accommodated was based on the appropriate emission factors and the highest monthly flow rate divided by 31 and multiplied by 365.

SO$_2$ emissions that the P3 flare could have accommodated were based on the maximum monthly SO$_2$ emissions during the baseline period divided by 31 and multiplied by 365.

The resulting emission increases for the P3 flare, based on the applicability test are shown in the table below:

| Table 2 – Plant 3 Flare Change in Actual Emissions (Flare RSR Project) | | | | | |
|---|---|---|---|---|---|
| | P3 Flare Emissions (tons/yr) | | | | |
| | CO | NO$_X$ | VOC | PM/PM$_{10}$/ PM$_{2.5}$ | SO$_2$ |
| Baseline | 2.42 | 0.53 | 2.90 [0.31] | 0.06 | 0.01 |
| PAE | 7.16 | 1.57 | 8.56 | 0.17 | 16.9 |
| Capable of Accommodating | 2.42 | 0.53 | 2.90 [0.31] | 0.06 | 0.01 |

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3   Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

| Table 2 – Plant 3 Flare Change in Actual Emissions (Flare RSR Project) | | | | | |
|---|---|---|---|---|---|
| | P3 Flare Emissions (tons/yr) | | | | |
| | CO | NO$_x$ | VOC | PM/PM$_{10}$/ PM$_{2.5}$ | SO$_2$ |
| Excludable[1] | 0.00 | 0.00 | 0.00 [0.00] | 0.00 | 0.00 |
| Adjusted PAE[2] | 7.16 | 1.57 | 8.56 | 0.17 | 16.9 |
| **Change in Emissions**[2] | **4.74** | **1.04** | **5.66 [8.25]** | **0.11** | **16.89** |

Values in brackets [ ] were calculated using an emission factor specific to natural gas combustion only during the baseline period (see discussion on page 41).

[1]Excludable emissions equals capable of accommodating minus baseline emissions.

[2]Adjusted PAE equals PAE minus excludable emissions.

[3]Change in emissions is adjusted PAE minus baseline.

## Flare RSR Application Concerns

The September 12, 2017 application for the P3 flare RSR project indicated that Suncor initiated a single capital project to complete the necessary upgrades to the Plant 1, Plant 2, Plant 3, GBR and potentially the Plant 1 Oil Movements Division (OMD) loading dock flare (i.e., the P1 rail rack flare). Given that the applications for the projects would be submitted within a short time frame, the projects are funded as a single project and the overall plan involves upgrading all plant flares to meet the RSR requirements, the Division considered whether sufficient information was provided to justify that the various flare RSR projects are in fact separate projects.

The Plant 3 application included a justification for considering the various flare RSR projects separate, as well as justification to consider the MPV project and the various flare RSR projects separate. Suncor submitted an application for the P2 flare (to be addressed in a separate Title V permit (95OPAD108) for Plants 1 and 3) on July 10, 2017 and in general the justification for considering the various flare RSR projects separate was nearly identical to the Plant 3 flare application, except that the Plant 3 application included an explanation of why an irrelevant document was included in Appendix D of the application (see footnote 12 on page 4-6) and indicated on page 4-7 that "the flares are designed and operated to receive vent gases from specific, separate refinery process units and there is no overlap in the independent operation of these systems that would drive Suncor to complete upgrades to an additional flare (to serve, for example, solely as a compliant "backup" for another flare)."

While the applications note and the Division agrees that the flares are independent and that upgrades to one flare do not depend either technically or economically on upgrades to another flare, the Division still had concerns regarding treating the flares as separate projects. The Division sent an email expressing our concerns and Suncor responded with a memo on February 14, 2018 providing further justification for considering the flare RSR projects as separate projects.

Applications were submitted for the P1 and GBR flares on February 6 and March 6, 2018, respectively. These applications included a more robust discussion regarding why the flare RSR projects should be considered separately. In addition, unlike the P2 and P3 flare applications, the more recent applications indicated that the flare RSR projects were funded by three capital projects: one project to address the Plant 2 and Plant 3 flares, one project to address the Plant 1 and GBR flares and a third to address the

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3   Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

Plant 1 OMD rack (Plant 1 rail rack) flare. Since the information in these applications
was contrary to the information in previous applications, as well as the February 14,
2018 memo justifying the flare RSR projects as separate, which also indicated funding
was via a single capital project, the Division sought an explanation from the source for
this discrepancy.

The source submitted information on June 12, July 6 and July 9, 2018 to address the
Division's concerns regarding the discrepancy in the funding information from the flare
RSR applications submitted in 2017 (Plants 2 and 3) versus the applications submitted
in 2018 (Plant 1 and GBR). Based on that information, it was evident that the flare
projects had been funded under separate capital projects prior to submittal of the 2017
applications, nevertheless, the source included incorrect information in those
applications.

The Division expressed some remaining concerns that more than one flare may receive
waste streams from a specific refinery process unit, which appear to be contrary to the
claims in the Plant 3 RSR flare application which indicated that each flare receives vent
gases from specific, separate process units (see discussion on page 43). In response to
these concerns, the source submitted a memo on August 3, 2018 providing further
justification that the flare RSR projects should be considered separate projects. It
should be noted that the date on the memo submitted on August 3, 2018, is February
13, 2018, the same date as the memo submitted on February 14, 2018. This appears to
be an error on the part of the memo's author, as the August 3, 2018 memo is clearly
different.

Based on the February 14, 2018 memo submitted by the source, the information in the
2018 flare RSR applications, the source's responses to the Division's inquiries
regarding project funding, and the August 3, 2018 memo, the Division agrees that the
flare RSR projects (Plant 2, Plant 3, Plant 1, GBR and Plant 1 OMD rack (Plant 1 rail
rack)) are separate projects. The Division sent an email on August 17, 2018 to the
source indicating that we agreed that the flare RSR projects were separate. The various
flare RSR projects are independent and do not rely either technically or economically on
the other flare projects to be viable. The flare RSR projects are not expected to increase
the production at the refinery, nor is the refinery expected to receive any economic
benefit from the projects. The flare RSR projects are related only in that the projects
must be done in order to comply with the requirements in MACT CC.

The Plant 1 OMD loading rack (Plant 1 rail rack) application was submitted on June 14,
2018. The purpose of this application is to replace the flare with an enclosed combustor
which would not be subject to the MACT CC flare requirements. This application
included emission increases at the Plant 2 rail rack flare as project emissions since
Suncor plans to move gasoline loading from the Plant 2 rail rack to the Plant 1 rail rack.
In the January 30, 2019 application to cease loading gasoline at the Plant 2 rail rack
(which was submitted on January 30, 2019), the source indicated that since emissions
from the Plant 2 rail rack will decrease due to shifting gasoline loading to the Plant 1 rail
rack, that they were not required to include emissions from the Plant 2 rail rack in the
applicability analysis for the Plant 1 rail rack but were aggregating those emissions to be
conservative.

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3    Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

The September 12, 2017 application for the P3 flare RSR project indicates that the MPV project addressed a separate set of requirements from MACT CC which requires some previously exempt process vents to be controlled. MACT CC does not stipulate what type of control method must be used and routing these previously uncontrolled process vents to a flare did not trigger the new MACT CC flare requirements, as the flares were already controlling various process streams regulated by MACT CC. The Division accepted that the MPV and various flare RSR projects were in fact separate and did not ask for any additional justification.

<u>Miscellaneous</u>

Colorado Regulation No. 3, Part D, Section I.B.4 specifies that the information submitted for the applicability analysis shall be included in an appendix of the Title V permit for sources that conduct the actual-to-projected actual test for a project that requires a minor permit modification under Colorado Regulation No. 3, Part C, Section X. Regulation No. 3 requires that this information (i.e., the actual-to-projected-actual applicability test) be included in an appendix, presumably so that the Division can determine whether projected emissions predicted by the project are exceeded and pursue an investigation, if necessary, to determine if the increases above the projected level were caused by the project.

For this application, projected actual emissions for the P3 flare are the same as requested (permitted) emissions, thus including this information in an appendix would not be necessary.

<u>Revisions to Permit</u>

The following changes were made to the permit based on this modification:

<u>Section I – General Activities and Summary</u>

- Added components associated with the P3 flare RSR project (F210) to the table in Condition 5.1.

<u>Section II.30 – Plant 3 (P3) Asphalt Unit (AU) Flare</u>

- Revised the $SO_2$, VOC, $NO_X$ and CO emission limits in Condition 30.1 and added the PM, $PM_{10}$ and $PM_{2.5}$ emission factors (PM, $PM_{10}$ and $PM_{2.5}$ emissions to be calculated for APEN reporting).

- Revised the throughput limit in Condition 30.6.

- Removed Condition 30.8 (flare operating requirements – 60.18) as the draft permit will not be revised until after the MACT CC flare compliance date (January 30, 2019) and these requirements will no longer apply.

<u>Section II.34 – Fugitive VOC Equipment Leak Emissions with Permitted Limits</u>

- Added emissions limits and requirements for equipment leaks associated with the P3 flare RSR project (F210).

  Note that although an APEN was submitted for equipment leaks associated with the P3 flare RSR project (F210), draft permit language was not included in the application for this equipment. The Division is presuming that these components are

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3    Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

subject to the requirements in NSPS GGGa and MACT CC, as well as the Reg 7, Section VIII.C requirements. The refinery flare fugitives (F018) are subject to the requirements of NSPS GGGa and MACT CC, thus the Division believes these sources are subject to these requirements also.

Section II.47 – 40 CFR Part 60 Subpart GGGa

- Added F210 (equipment leaks associated with P3 flare RSR project) to the list of sources subject to these requirements.

Section II.53 – 40 CFR Part 63 Subpart CC

- Noted in Condition 53.43.2 that equipment leaks associated with this project (F210) fall under the overlap provisions for equipment leaks in 63.640(p)(2) (sources subject to NSPS GGGa only have to comply with NSPS GGGa).

- Added a note above Condition 53.87 (under the header for "Requirements for flare control devices (63.670)) that the P3 flare (F2) is subject to these requirements.

Section II.57 – Flare Requirements

- Revised this section to indicate that the P3 flare is no longer subject to these requirements.

Appendices B and C

- Added the components associated with the P3 flare RSR project (F210) to the tables.

**1.6    February 6, 2018 and September 12 and November 1, 2019 Modifications (minor modifications) – Upgrade gasoline benzene reduction (GBR) unit flare to comply with MACT CC and re-permit GBR Flare**

**February 6, 2018 Application – Upgrade GBR Flare to comply with MACT CC**

The purpose of this modification is to upgrade the GBR flare in order to comply with the flare requirements in the December 1, 2015 RSR Revisions. The December 1, 2015 revisions primarily addressed revisions to the refinery MACTs (40 CFR Part 63 Subparts CC and UUU), although minor revisions were also made to the refinery NSPS requirements (40 CFR Part 60 Subparts J and Ja). The December 1, 2015 revisions to MACT CC included requirements for flares used as control devices for emission points addressed in MACT CC.

The new flare requirements in MACT CC are essentially an enhancement of the requirements in 40 CFR Part 63 Subpart A § 63.11(b) (operate with a flame present at all times, no visible emissions and exit velocity and flare gas Btu content requirements) by requiring monitoring to ensure the flares are properly operated to achieve the 98 percent reduction efficiency that was expected for flares used to comply with MACT CC requirements.

The December 1, 2015 MACT CC flare revisions primarily require additional monitoring requirements, thus there is no expectation that additional waste gases will be combusted by flares or that the operation of any of the refinery process units will be

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3   Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

changed as a result of this project. However, under the MACT CC requirements, sources are required to maintain the net heating value of the flare combustion zone gas at or above 270 Btu/scf, determined on a 15-minute block period, when regulated material is routed to the flare for at least 15 minutes. While refinery flares were previously subject to requirements in either 40 CFR Part 60 Subpart A § 60.18 or 40 CFR Part 63 Subpart A § 63.11(b), which required that they be used only when the net heating value of gases combusted were at or above 300 Btu/scf (for steam- or air-assisted flares), §§ 60.18 and 63.11(b) did not specify any ongoing monitoring for this requirement. Since MACT CC requires continuous monitoring of the heat content of gases in the flare combustion zone, Suncor anticipates that supplemental gas will be necessary to ensure that the flare can comply with the combustion zone gas heat content requirements, which will result in an increase in flare emissions. As part of the project, new piping components (i.e. flanges, valves, etc.) will be installed and result in a slight emissions increase.

In conjunction with this application, Suncor is also revising the VOC emission factor with this modification. Previously, Suncor relied on a material balance based emission factor that assumed a 95% DRE for the flare (0.6185 lb/MMBtu). For this modification, the source is once again relying on a material balance based emission factor, however, they are assuming a DRE of 98% (VOC emission factor = 0.2549 lb/MMBtu). When the previous emission factor for this flare was approved, the Division would not approve of a 98% DRE, unless performance testing was conducted or the source agreed to more rigorous monitoring to ensure that the flare was operated properly. Beginning no later than January 30, 2019, the GBR flare will be required to comply with the rigorous monitoring requirements set forth in MACT CC. The purpose of the flare monitoring requirements is to ensure flares achieve a 98% DRE as noted in 79 FR 36942 (June 30, 2014) so the Division considers it is acceptable to allow a 98% DRE.

In reviewing this application, the Division requested clarification, corrections or additional information regarding the information submitted. Responses to this information request was submitted on April 13 and November 6 and 28, 2018.

## September 12 and November 1, 2019 Application – Re-permit GBR Flare

The purpose of this modification is to re-permit the GBR flare. In order to comply with the RSR (revised MACT CC) flare requirements, the source installed a new waste gas flow meter on the GBR flare. This flow meter is an OSI optical flow meter and was installed as the source did not believe the existing waste gas flow meter could meet the accuracy requirements specified in MACT CC. The source maintained operation of the existing waste gas flow meter (a GE ultrasonic flow meter) in order to ensure the new OSI flow meter was operating properly.

The new OSI flow meter indicates higher waste gas flow rates than the older GE flow meter. The source attributes these differences to the different measurement technologies used by the flow meters (optical vs. ultrasonic). Due to the higher measured waste gas flow rates, the source has requested an increase in the throughput and emission limits for the flare. Because higher waste gas flows are anticipated, this also means that that an increase in supplemental fuel is necessary in order to meet the combustion zone gas heat content requirements.

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3   Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

In addition, this application revised the material balance based VOC emission factor developed in the February 6, 2018 application. In the earlier application, the VOC emission factor was based on the higher heating value of all components, except for $H_2$ which was based on the lower heating value. In this application, the source used the higher heating value for all components and this resulted in a slightly lower VOC emission factor (0.2482 lb/MMBtu).

The initial application to re-permit the GBR flare was submitted on September 12, 2019; however, based on the requested emissions, the project did not qualify as a minor modification. The source submitted a revised APEN on November 1, 2019 to request lower emission and throughput levels and based on that information the application qualified as a minor modification. In response to questions from the Division on the September 12, 2019 application, the source submitted additional information on October 23, 2019.

The Division considers that the September 19 and November 1, 2019 application is essentially a correction to the February 6, 2018 application. Since the emissions increases associated with the later application are greater, the emission and throughput increases addressed in the discussion below are based on that submittal.

<u>Modification Type</u>

The source indicated that these modifications qualify as minor modifications. Colorado Regulation No. 3, Part C, Section X.A identifies those modifications that can be processed under the minor permit modification procedures. Specifically, minor permit modifications "are not otherwise required by the Division to be processed as a significant modification" (Colorado Regulation No. 3, Part C, Section X.A.6). The Division requires that "any change that causes a significant increase in emissions" be processed as a significant modification (Colorado Regulation No. 3, Part C, Section I.A.7.a). According to Part F of Regulation No. 3 (Section I.L, revisions adopted July 15, 1993, Subsection I.G for modifications) the Division considers that a significant increase in emissions is the potential to emit above the major stationary source significant level in Colorado Regulation No. 3, Part D, Section II.A.44.

The application(s) indicate that based on the major stationary source applicability test conducted in accordance with the requirements in Colorado Regulation No .3, Part D, Section I.B (actual-to-projected-actual emissions for existing equipment and actual-to-potential for new equipment), that increases from the project are below the significant level. The results of the applicability test are indicated in the table below:

| Emission Unit | Increase in Actual Emissions | | | | |
|---|---|---|---|---|---|
| | $PM/PM_{10}/PM_{2.5}$ | $SO_2$ | $NO_x$ | CO | VOC |
| Fugitive VOCs from New Components[1] | | | | | 0.38 |
| GBR Flare[2] | 1.25 | 0.18 | 11.42 | 49.80 | 17.05 |
| **Total** | **1.25** | **0.18** | **11.42** | **49.80** | **17.43** |
| PSD/NANSR Significance Level (T5 Minor Mod Level)[3] | 25/15/10 | 40 | 40 | 100 | 40 |

[1]New Equipment. Emission increases are based on potential (requested) emissions (actual emissions = 0 for new equipment).

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3   Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

[2]Existing Equipment. Emission increases are based on the projected actual emissions minus baseline actual emissions addressed in the September 12 and November 1, 2019 application for all pollutants except $SO_2$. The applicability test for the GBR flare is shown in Table 2 below (see page 55). Because the source requested a decrease in the $SO_2$ emission limit, the applicability test indicates a reduction in emissions. Therefore, the increase in $SO_2$ emissions is based on emissions from the project itself (see Table 1 on page 54).

[3]Indicates the NANSR significance level on the date the complete minor modification application was submitted. Under the provisions of Colorado Regulation No. 3, Part X.I, a source is allowed to make the changes proposed in a complete minor modification application immediately after it is submitted (a construction permit is not required to construct or modify such source per Regulation 3, Part B, Section II.A.6). The area was classified as a serious ozone non-attainment area on January 27, 2020 and for minor modification applications submitted on and after that date, the significance level drops to 25 tons/yr of VOC or $NO_X$.

In regards to whether the modifications qualified as minor modifications, in addition to the major stationary source applicability test, the Division reviewed the change in permitted emissions to see if that would also qualify as a minor modification.

### GBR Flare Change in Permitted Emissions

|  | PM/PM$_{10}$/PM$_{2.5}$ | SO$_2$ | NO$_X$ | CO | VOC[2] |
|---|---|---|---|---|---|
| Requested - Flare | 1.6 | 0.18 | 14.2 | 60.5 | 27.1 |
| Current Permitted - Flare[1] | 0.31 | 0.21 | 2.9 | 11.1 | 25.9 |
| Change in Permitted Emissions[3] | 1.29 | -0.03 | 11.3 | 49.4 | 1.2 |
| PSD/NANSR Significance Level (T5 Minor Mod Level)[4] | 25/15/10 | 40 | 40 | 100 | 40 |

[1]Based on the emission limits included in the current Title V permit (last revised February 22, 2018). Note that a limit was not included in the permit for PM, PM$_{10}$, PM$_{2.5}$ and SO$_2$, but those values were included on the APEN (received April 26, 2017).

[2]Although this modification results in an increase in throughput to the flare, the change in permitted VOC emissions is low due to the change in the VOC emission factor.

[3]Emissions from the new piping components are below the APEN de minimis level (1 tpy VOC), neither an APEN nor a permit is required. Therefore, emissions from the new piping components are not addressed in this analysis.

[4]Indicates the NANSR significance level on the date the complete minor modification application was submitted. Under the provisions of Colorado Regulation No. 3, Part X.I, a source is allowed to make the changes proposed in a complete minor modification application immediately after it is submitted (a construction permit is not required to construct or modify such source per Regulation 3, Part B, Section II.A.6). The area was classified as a serious ozone non-attainment area on January 27, 2020 and for minor modification applications submitted on and after that date, the significance level drops to 25 tons/yr of VOC or $NO_X$.

Finally, the GBR flare was installed and permitted in conjunction with the GBR process unit, collectively referred to as the GBR Project. The GBR process unit was installed to comply with the Mobile Source Air Toxics rule, which required refiners to reduce the benzene concentration in gasoline. The GBR process unit converts benzene in reformate to cyclohexane. The application for the GBR process unit was submitted on October 30, 2009.The initial application did not include the GBR flare, which was included in mid-2010. The GBR project was permitted as a minor source. A minor source must undergo major stationary source permitting requirements if it becomes a major stationary source or major modification by relaxing an enforceable limit. These provisions are known as the source obligation provisions (cited as 52.21(r)(4) in the federal PSD regulations), commonly referred to as the relaxation restrictions and are included in Colorado Regulation No. 3, Part D, Sections V.A.7.b (nonattainment area), and VI.B.4 (PSD). Therefore, in order to qualify as a minor modification, permitted emissions from the GBR project must be below the significance level with this

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3   Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

modification. As indicated in the table below, with this modification, permitted emissions from the GBR project are below the significance level.

| | Emissions (tons/yr) | | | | | |
|---|---|---|---|---|---|---|
| | PM | $PM_{10}$/ $PM_{2.5}$ | $SO_2$ | $NO_X$ | CO | VOC |
| Process Heater H-2410 (GBR unit reboiler) | 1.7 | 1.7 | 2.7 | 9.50 | 9.0 | 1.2 |
| GBR project fugitive VOC emissions from equipment leaks (F114)[1] | | | | | | 9.31 |
| GBR Project Flare (F3) | 1.6 | 1.6 | 0.18 | 14.2 | 60.5 | 27.1 |
| Boiler B-4[2, 3, 4] | 0.08 | 0.08 | 0.35 | 4.90 [0.65] | 0.9 | 0.06 |
| Boiler B-6[2] | 0.08 | 0.08 | 0.34 | 0.41 | 0.41 | 0.06 |
| Boiler B-8[2] | 0.08 | 0.08 | 0.34 | 0.42 | 0.42 | 0.06 |
| Y-3 Cooling Water Tower[2, 5] | 0.09 | 0.09 | | | | 0.39 |
| Process Heater H-2101 (Hydrogen Plant)[2] | 1.62 | 1.62 | 1.52 | 7.83 | 8.70 | 1.17 |
| | | | | | | |
| Total[6] | 5.25 | 5.25 | 5.43 | 37.26 [33.01] | 79.93 | 39.35 |
| Significance Level[7] | 25 | 15/10 | 40 | 40 | 100 | 40 |

[1]Suncor submitted additional info on May 23, 2011 indicating that additional components were installed due to a modification in the design, VOC emissions from the new components were estimated at 0.07 tons/yr. This was discussed in the TRD for the first renewal (issued October 1, 2012) but the emission limit for the piping components was not correct. The correction will be made with this renewal.

[2]GBR Project non-modified existing equipment at initial permitting (construction permits issued July 22 and August 13, 2010).

[3] $NO_X$ emissions are based on the emission factor (0.464 lb/MMBtu) from the February 22, 2018 performance test (see March 28, 2018 modification in Section II.1.8).

[4]Values in brackets reflect $NO_X$ emissions based on the emission factor (0.06 lb/MMBtu) relied upon in the Construction Permit (20AD0714) issued on November 23, 2020 for Boiler B-4. Ultra-low $NO_X$ burners (ULNB) were installed on Boiler B-4 to meet emission limits in Regulation No. 7 and Regulation No. 23.

[5]VOC emissions based on current emission calculation methodology for Y-3 cooling tower (El Paso Method, 9.65 ppmv VOC).

[6]Total VOC does not include emissions from new piping components identified in the February 6, 2018 application, as this is "new" equipment. The Division considers that the source obligation provisions apply to equipment installed for the initial permits. Nevertheless, if emissions from these components (0.38 tpy VOC) are included the total would still be below the significance level (39.73 tpy)

[7]Indicates the NANSR significance level on the dates the initial permits were issued for the GBR project and the complete minor modification application for this modification to the GBR flare was submitted. Under the provisions of Colorado Regulation No. 3, Part X.I, a source is allowed to make the changes proposed in a complete minor modification application immediately after it is submitted (a construction permit is not required to construct or modify such source per Regulation 3, Part B, Section II.A.6). The area was classified as a serious ozone non-attainment area on January 27, 2020 and for minor modification applications submitted on and after that date, the significance level drops to 25 tons/yr of VOC or $NO_X$.

The February 6, 2018 application was submitted under the presumption that the various projects to bring the flares at this facility into compliance with the flare requirements in MACT CC are separate projects and should not be aggregated for purposes of determining whether major stationary source permitting requirements apply. After further review, as discussed previously (beginning on page 43), the Division agreed that the various flare projects are separate. Since the September 12 and November 1, 2019 application is considered a correction to the February 6, 2018 application, the later application is also considered separate from the other flare RSR projects. Note that as

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3   Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

discussed in the February 6, 2018 GBR flare RSR application, the flares potentially subject to the MACT CC requirements are the Plant 1 main flare, P2 main flare, Plant 3 flare, GBR flare and the Plant 1 rail rack flare. Not mentioned in the application is the Plant 2 rail rack flare which is also potentially subject to the MACT CC requirements.

<u>Modeling Requirements</u>

A modeling analysis is generally conducted based on requested (permitted) emissions, thus a modeling analysis would be triggered based on the change in permitted emissions.

The increase in permitted VOC and $NO_X$ emissions as a result of these modifications are 1.2 and 11.3 tons/yr respectively. Although VOC is a precursor for ozone, in general accurate and cost effective methods for modeling ozone impacts from stationary sources are not available. Therefore, individual source ozone modeling is not routinely requested for permit modifications. The magnitude of the emission increase (VOC – 2.1 ton/yr and $NO_X$ – 11.3 ton/yr) is not at a level for which individual source ozone modeling would be required.

For the other pollutant emissions, the increase in permitted emissions are summarized below:

| Pollutant | Modeling Threshold[1] | | Change in Permitted Emissions[2] | |
|---|---|---|---|---|
| | Annual | Short-Term | Annual (ton/yr) | Short term[3] |
| $SO_2$ | 40 tons/yr | 0.46 lbs/hr | -0.03 | Negl. |
| $NO_2$ | 40 tons/yr | 0.46 lbs/hr | 11.3 | 2.58 lb/hr |
| CO | N/A | 23 lbs/hr | 49.4 | 11.3 lb/hr |
| $PM_{10}$ | N/A | 82 lbs/day | 1.29 | 7.06 lb/day |
| $PM_{2.5}$ | 5 tons/yr | 11 lbs/day | 1.29 | 7.06 lb/day |

[1]Per the Division's May 2018 draft Modeling Guidelines (page 22).

[2]Change in permitted emissions from table on page 49.

[3]The increase in emissions is based on supplemental fuel, not additional anticipated flaring, thus emissions are presumed to be relatively consistent, so short term emissions are based on annual emissions divided by either 8760 hours per year or 365 days per year.

Note that the increase in annual emissions for all pollutants and the increase in short-term emissions for all emissions, except $NO_2$, is below the modeling thresholds, thus modeling is not warranted with respect to those pollutants. The Division's Stationary Sources Program PS Memo 10-01 (begins on page 182) specifies that for minor sources with requested emissions below 40 tons/yr of $NO_X$ and $SO_2$, that a compliance demonstration is not required for the short-term (hourly) $SO_2$ and $NO_2$ national ambient air quality standard (NAAQS). Therefore a modeling analysis was not conducted for the 1-hr $NO_2$ NAAQS.

<u>Discussion</u>

Except for new piping components, the unit affected by this modification, the GBR flare, is an existing emission unit. Therefore the major stationary source applicability test is based on a comparison of baseline actual emissions (BAE) to projected actual emissions (PAE).

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3   Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

Emissions from the new piping components are based on the following emission factors and component counts.

| Component Type | No. of Components | Service | Emission Factor (lb/component/hr) | Control Efficiency[1] | Emission Factor Source | Emissions (lbs/yr)[2] |
|---|---|---|---|---|---|---|
| Valves | 34 | gaseous | 0.05908 | 96% | "Protocol for Equipment Leak Emission Estimates", EPA-453/R-95-017, November 1995, Table 2-2 (emission factors) and Table 5-3 (control efficiencies) | 704 [17,596] |
| Flanges/ Connectors | 13 | Any | 0.00055 | 0% | | 63 |
| | | | | | | |
| Total (lbs/yr) | | | | | | 767 [17,659] |
| Total (tons/yr) | | | | | | 0.38 [8.83] |

[1]Control efficiencies are from the following sources. **Valves** - Table 5-3 of EPA's Protocol for Equipment Leaks (EPA-453/R-95-017) based on monitoring consistent with proposed HON NESHAP. During the review of a previous application, the Division reconsidered the control efficiency previously allowed for flanges and connectors. Although Colorado Reg 7 requires annual monitoring for flanges (per Section VIII.C.4.a.(i)(A)), the leak definition in Reg 7 (10,000 ppm) is higher than that in the HON NESHAP (500 ppm), thus the 81% control efficiency listed in Table 5-3 is not appropriate and no control efficiency was allowed for flanges. The Division would agree that some control may be appropriate for flanges due to annual monitoring, however, the source did not propose an alternative for this application. Note that NSPS GGGa includes similar monitoring for flanges/connectors as the HON NESHAP, however, these requirements have been stayed.
[2]Emissions in "[ ]" are uncontrolled. Note that the control efficiency, and subsequently controlled emissions are based on required monitoring.

Emissions from the new components are estimated at less than 1 ton/yr of VOC (the APEN de minimis level) and therefore, a permit is not required for the components associated with this project.

## GBR flare - BAE

For the GBR flare, BAE is based on the period of January 1, 2016 through December 31, 2017 and BAE was adjusted to reflect changes to the CO and VOC emission factors for the flare that occurred after the baseline period.

As discussed previously, the source was using a material balance based VOC emission factor assuming a DRE of 95% but as part of this modification is using a DRE of 98%. In addition, a different gas composition data set was used for the VOC emission factor proposed as part of this application.

Although Colorado Regulation No. 3, Part D, Section II.A.4.b, only allows BAE to be adjusted downward to reflect emissions that were not in compliance with limits established during the baseline period or limits that currently apply, the Division considers that it is appropriate for BAE and PAE to be compared on the same basis, with the same emission factors, since the emission factors are unrelated to the project.

In addition, the revised emission factors indicate a better estimate of emissions from the flare and represents what emissions would have been during the baseline period, had those factors been available. Thus correcting BAE to reflect the revised emission factors is appropriate.

As specified in Colorado Regulation No. 3, Part D, Section II.A.4.b.(ii) BAE shall be adjusted downward to exclude any non-compliant emissions that occurred while the source was operating above an emission limitation that was legally enforceable during the baseline period. The two year average actual emissions (i.e. BAE) during the baseline period exceeded the annual emission limitations for all pollutants except $SO_2$, thus BAE was adjusted for these pollutants. Rather than adjust BAE to equal permitted emissions during the baseline period, the source adjusted BAE downward to ensure that the 12 month rolling totals were below the annual emission limit. This resulted in adjusting emissions downward for specific months and resulted in the two year average actual emissions (i.e. BAE) that were below the annual emission limits.

$SO_2$ emissions in 2017 exceeded the requested permit limits during the baseline period, however, the two year average actual emissions (i.e. BAE) were below the requested level. Since the two year average actual emissions were below the requested levels, the Division did not direct Suncor to adjust $SO_2$ emissions downward. Both BAE and PAE for $SO_2$ are well below the significance level, thus the adjustment is not considered necessary to ensure the project does not trigger major stationary permitting requirements.

GBR Flare – (PAE)

For all pollutants except $SO_2$, the source projected that actual emissions from the GBR flare would be based on current permitted levels plus the increased waste gas (and subsequent emissions) necessary to address the new flow meter readings and supplemental gas (and subsequent emissions) needed to meet the combustion zone heat content requirements.

In the February 6, 2018 application (upgrade flare to comply with MACT CC), the source only projected an increase in supplemental gas (natural gas). No change in the waste gas throughput was anticipated or requested. The September 12 and November 1, 2019 application (re-permit GBR flare) was submitted after the flare was complying with the MACT CC requirements. A new waste gas flow meter was installed, while the old one was kept in place. The new flare flow meter was indicating higher rates of waste gas flow then the old meter, thus an increase in waste gas throughput was requested plus additional supplemental fuel.

In the February 6, 2018 application, the source used separate VOC emission factors for waste gas and supplemental (natural) gas but for all other pollutants the same emission factors were used to estimate emissions from both waste and supplemental (natural) gas. The Division disagreed with the VOC emission factor used for supplemental (natural) gas and did not agree that the same emission factor for $SO_2$ and CO should be used for both waste and supplemental (natural) gas. The Division directed the source to revise the emission factors used for supplemental gas (natural gas) in the initial application and in the April 13, 2018 revisions. To that end, the Division relied on the following emission factors for supplemental (natural) gas: CO emission factor in AP-42 Section 13.5 (0.31 lb/MMBtu), the $SO_2$ emission factor Suncor typically uses for natural gas (1.57 lb/MMscf, based on 0.55 grains of sulfur per 100 scf) and a material balance based emission factor for natural gas assuming a 98% DRE (see page 41 for more

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3   Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

information on the natural gas VOC emission factor of 0.0395 lb/MMBtu). The source submitted revised spreadsheets on November 28, 2018 using these emission factors.

These same emission factors (except for a slight revision to the VOC waste gas emission factor) were used in the September 12 and November 1, 2019 application.

The estimated emissions and flow due to the increased waste gas throughput necessary to address the new flow meter readings and supplemental fuel (natural gas) necessary to meet the heat content requirements for flares in MACT CC are as follows:

| Table 1 – Throughput and Emissions from Increased Waste Gas and Supplemental Fuel for GBR Flare | | | | | | |
|---|---|---|---|---|---|---|
| Fuel | Throughput (MBtu/yr) | Emissions (tons/yr)[1] | | | | |
| | | CO | $NO_X$ | VOC | $PM/PM_{10}/PM_{2.5}$ | $SO_2$[2] |
| Waste Gas | 96,677,364 | 12.79 | 3.29 | 12.00 | 0.36 | $5.65 \times 10^{-4}$ |
| Supplemental Fuel | 236,069,389 | 36.6 | 8.03 | 4.66 | 0.88 | 0.18 |
| Total | 332,746,753 | 46.39 | 11.32 | 16.66 | 1.24 | 0.18 |

[1]Emission from all pollutants expect $SO_2$ are based on an emission factor and the gas throughput rate. Note that for CO and VOC, different emission factors are used for waste gas and supplemental gas.

[2]$SO_2$ emissions are based on a throughput level of 97.16 MMscf for waste gas (assumes heat content of 995 Btu/scf) and 231.44 MMscf (assumes a heat content of 1020 Btu/scf) and emission factors of 0.0116 lb/MMscf for waste gas and 1.57 lb/MMscf for natural gas.

## GBR Flare – Adjustments to PAE

PAE may be adjusted downward to reflect emissions that the unit could have accommodated during the baseline period and that are unrelated to the project, including increased utilization due to demand growth.

For the GBR flare, the source estimated PM, $PM_{10}$, $PM_{2.5}$, $NO_X$, CO and VOC emissions that could have been accommodated based on the emission factors and highest monthly throughput during the baseline period, annualized. In order to use this method, the monthly throughput would have to be consistently achievable for the annual period, i.e., the annualized throughput could not have exceeded any throughput or emission limitations that applied during the baseline period. The highest monthly throughput used was based on March 2017.

In the February 6, 2018 application and the April 13, 2018 revised spreadsheets, the source relied on the highest monthly $SO_2$ emissions (November 2017), annualized to determine $SO_2$ emissions that could have been accommodated. However, the unit could not have operated at that level for a full year without exceeding the throughput limit ($SO_2$ emissions were also well above the requested permitted emissions). The Division determined the highest monthly $SO_2$ emissions that could be annualized without exceeding the throughput limit was March 2017 and when this value was annualized, it is 0.20 tons/yr. The source submitted revised spreadsheets on November 28, 2018 to reflect the change in $SO_2$ emissions that could have been accommodated.

Emissions the GBR flare could have accommodated in the September 12 and November 1, 2019 application were estimated the same as described above, except for the adjustment made to the waste gas VOC emission factor.

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3   Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

The resulting emission increases for the GBR flare, based on the applicability test are shown in the table below:

| Table 2 – GBR Flare Change in Actual Emissions (Flare RSR Project) | | | | | |
|---|---|---|---|---|---|
| | GBR Flare Emissions (tons/yr) | | | | |
| | CO | NO$_X$ | VOC | PM/PM$_{10}$/ PM$_{2.5}$ | SO$_2$ |
| Baseline | 10.03 | 2.61 | 9.41 | 0.28 | 0.13 |
| PAE | 60.47 | 14.16 | 27.06 | 1.55 | 0.18 |
| Capable of Accommodating | 10.67 | 2.74 | 10.01 | 0.30 | 0.20 |
| Excludable[1] | 0.64 | 0.13 | 0.60 | 0.02 | 0.07 |
| Adjusted PAE[2] | 59.83 | 14.03 | 26.46 | 1.53 | 0.11 |
| **Change in Emissions[2]** | **49.80** | **11.42** | **17.05** | **1.25** | **-0.02** |

[1]Excludable emissions equals capable of accommodating minus baseline emissions.
[2]Adjusted PAE equals PAE minus excludable emissions.
[3]Change in emissions is adjusted PAE minus baseline.

Miscellaneous

Colorado Regulation No. 3, Part D, Section I.B.4 specifies that the information submitted for the applicability analysis shall be included in an appendix of the Title V permit for sources that conduct the actual-to-projected actual test for a project that requires a minor permit modification under Colorado Regulation No. 3, Part C, Section X. Regulation No. 3 requires that this information (i.e., the actual-to-projected-actual applicability test) be included in an appendix, presumably so that the Division can determine whether projected emissions predicted by the project are exceeded and pursue an investigation, if necessary, to determine if the increases above the projected level were caused by the project.

For these applications, projected actual emissions for the GBR flare are the same as requested (permitted) emissions, thus including this information in an appendix would not be necessary.

As discussed previously, the Division considers that the source obligation provisions in Colorado Regulation No. 3, Part D, Sections V.A.7.b (nonattainment area) and VI.B.4 (PSD) apply to the GBR project, which includes the flare. The Division will include the source obligation provisions in the permit and include a summary of the emissions analysis for this project, based on the September 19 and November 1, 2019 application. The Division considers that the relaxation provisions should be included in the permit for the GBR reboiler (H-2410), the GBR project fugitives (F114) and the GBR flare. The cooling tower (Y-3), boilers (B-4, B-6 and B-8) and hydrogen plant heater (H-2101) were existing equipment at the time the GBR project was permitted and only incremental increases in emissions for this equipment were evaluated, so the relaxation provisions don't apply to this equipment.

Revisions to Permit

The following changes were made to the permit to address this modification application:

Section II.28 – Process Heater H-2410

• Included the relaxation provisions as "new" Condition 28.11.

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3   Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

Section II.31 – GBR Flare

- Revised the $NO_X$, VOC and CO emission limits in Condition 31.1 and added an $SO_2$ emission limit and PM, $PM_{10}$ and $PM_{2.5}$ emission factors. PM and $PM_{10}$ emissions are to be calculated for APEN reporting purposes.

- Revised Condition 31.4.2 ($NO_X$, CO and $PM_{10}$ RACT) to rely on the MACT CC flare requirements, rather than the flare requirements in 60.18 (Condition 31.8)

- Revised the throughput limit in Condition 31.6.

- Removed Condition 31.8 (flare operating requirements – 60.18) as the revised permit will not be issued until after the MACT CC flare compliance date (January 30, 2019) and these requirements will no longer apply.

- Added a requirement to record hours of operation as "new" Condition 31.10 as this is required to determine the pilot and flow meter purge gas. Note that in the current permit (last revised February 22, 2018), Condition 31.10 includes the MACT CC requirements.

- Included the relaxation provisions as "new" Condition 31.11.

Section II.34 – Fugitive VOC Equipment Leak Emissions with Permitted Limits

- Included the relaxation provisions as "new" Conditions 34.10 and 34.10.1 for the GBR flare fugitives (F114).

Section II.53 – 40 CFR Part 63 Subpart CC

- Added a note above Condition 53.87 (under the header for "Requirements for flare control devices (63.670)) that the GBR flare (F3) is subject to these requirements.

Section II.57 – Flare Requirements

- Revised this section to indicate that the GBR flare is no longer subject to these requirements.

"New" Appendix L – Analyses of Emissions Increases Associated with Various Suncor Projects

Note that in the current permit (last revised February 22, 2018) Appendix K included PSD/NANSR applicability tests.

- Included the GBR project emissions as of the September 12 and November 1, 2019 application.

**1.7    March 6, 2018 Modification (minor modification) – Upgrade Plant 1 flare to comply with MACT CC**

The purpose of this modification is to upgrade the P1 flare in order to comply with the flare requirements in the December 1, 2015 RSR Revisions. The December 1, 2015 revisions primarily addressed revisions to the refinery MACTs (40 CFR Part 63 Subparts CC and UUU), although minor revisions were also made to the refinery NSPS requirements (40 CFR Part 60 Subparts J and Ja). The December 1, 2015 revisions to

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3    Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

MACT CC included requirements for flares used as control devices for emission points addressed in MACT CC.

The new flare requirements in MACT CC are essentially an enhancement of the requirements in 40 CFR Part 63 Subpart A § 63.11(b) (operate with a flame present at all times, no visible emissions and exit velocity and flare gas Btu content requirements) by requiring monitoring to ensure the flares are properly operated to achieve the 98 percent reduction efficiency that was expected for flares used to comply with MACT CC requirements.

The December 1, 2015 MACT CC flare revisions primarily require additional monitoring requirements, thus there is no expectation that additional waste gases will be combusted by flares or that the operation of any of the refinery process units will be changed as a result of this project. However, under the MACT CC requirements, sources are required to maintain the net heating value of the flare combustion zone gas at or above 270 Btu/scf, determined on a 15-minute block period, when regulated material is routed to the flare for at least 15 minutes. While refinery flares were previously subject to requirements in either 40 CFR Part 60 Subpart A § 60.18 or 40 CFR Part 63 Subpart A § 63.11(b), which required that they be used only when the net heating value of gases combusted were at or above 300 Btu/scf (for steam- or air-assisted flares), §§ 60.18 and 63.11(b) did not specify any ongoing monitoring for this requirement. Since MACT CC requires continuous monitoring of the heat content of gases in the flare combustion zone, Suncor anticipates that supplemental gas will be necessary to ensure that the flare can comply with the combustion zone gas heat content requirements, which will result in an increase in flare emissions. As part of the project, new piping components (i.e. flanges, valves, etc.) will be installed and result in a slight emissions increase.

In conjunction with this application, Suncor is also revising the VOC emission factor with this modification. Previously, Suncor utilized the VOC emission factor for flares in AP-42, Section 13.5. In fact the AP-42 VOC emission factor (0.66 lb/MMBtu) was used for the miscellaneous process vent (MPV) modification, which was submitted on February 10, 2017 and is addressed in the current Title V permit (last revised February 22, 2018). This application proposes a material balance-based emission factor.

In reviewing this application, the Division requested clarification, corrections or additional information on the information submitted. Responses to this information request were submitted on April 13, 2018. Revised spreadsheets were submitted on November 28, 2018.

<u>Modification Type</u>

The source indicated that this modification qualifies as a minor modification. Colorado Regulation No. 3, Part C, Section X.A identifies those modifications that can be processed under the minor permit modification procedures. Specifically, minor permit modifications "are not otherwise required by the Division to be processed as a significant modification" (Colorado Regulation No. 3, Part C, Section X.A.6). The Division requires that "any change that causes a significant increase in emissions" be processed as a significant modification (Colorado Regulation No. 3, Part C, Section I.A.7.a). According to Part F of Regulation No. 3 (Section I.L, revisions adopted July 15,

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3    Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

1993, Subsection I.G for modifications) the Division considers that a significant increase in emissions is the potential to emit above the major stationary source significant level in Colorado Regulation No. 3, Part D, Section II.A.44.

The application indicates that based on the major stationary source applicability test conducted in accordance with the requirements in Colorado Regulation No. 3, Part D, Section I.B (actual-to-projected-actual emissions for existing equipment and actual-to-potential for new equipment), that increases from the project are below the significant level. Therefore, this modification qualifies as a minor modification. The results of the applicability test are indicated in the table below:

| Emission Unit | Increase in Actual Emissions | | | | |
|---|---|---|---|---|---|
| | PM/PM$_{10}$/PM$_{2.5}$ | SO$_2$ | NO$_X$ | CO | VOC |
| Fugitive VOCs from New Components[1] | | | | | 0.47 |
| P1 Flare[2] | 0.13 | 1.71 | 1.25 | 5.69 | 0.83 |
| **Total** | **0.13** | **1.71** | **1.25** | **5.69** | **1.30** |
| PSD/NANSR Significance Level (T5 Minor Mod Level)[3] | 25/15/10 | 40 | 40 | 100 | 40 |

[1]New Equipment. Emission increases are based on potential (requested) emissions (actual emission = 0 for new equipment).

[2]Existing Equipment. Emission increases are based on the projected actual emissions minus baseline actual emissions. For the flares the applicability test is shown in Table 2 below (see page 62).

[3]Indicates the NANSR significance level on the date the complete minor modification application was submitted. Under the provisions of Colorado Regulation No. 3, Part X.I, a source is allowed to make the changes proposed in a complete minor modification application immediately after it is submitted (a construction permit is not required to construct or modify such source per Regulation 3, Part B, Section II.A.6). The area was classified as a serious ozone non-attainment area on January 27, 2020 and for minor modification applications submitted on and after that date, the significance level drops to 25 tons/yr of VOC or NO$_X$.

This application was submitted under the presumption that the various projects to bring the flares at this facility into compliance with the flare requirements in MACT CC are separate projects and should not be aggregated for purposes of determining whether major stationary source permitting requirements apply. After further review, as discussed previously (beginning on page 43), the Division agreed that the various flare projects are separate. Note that as discussed in the P1 flare RSR application, the flares potentially subject to the MACT CC requirements are the Plant 1 main flare, P2 main flare, Plant 3 flare, gasoline benzene reduction unit (GBR) flare and the Plant 1 rail rack flare. Not mentioned in the application is the Plant 2 rail rack flare which is also potentially subject to the MACT CC requirements.

Modeling Requirements

A modeling analysis is generally conducted based on requested (permitted) emissions, but the P1 flare is not subject to emission or throughput limits. The P1 flare commenced operation prior to February 1, 1972 and has not been modified with respect to the minor source permitting requirements in Colorado Regulation No. 3, Part B since then. Therefore, the P1 flare is not subject to annual emission or throughput limits. Although this modification indicates increased throughput to the flare due to supplemental gas combustion, an increase in the production rate of a source, if such increase does not exceed the design capacity of the sources and does not lead to emission in excess of

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3   Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

emission standards, is not considered a modification unless previously limited by
enforceable permit terms and conditions (see Reg 3, Part A, Section I.B.28). As a result
modeling is not required for this modification.

Discussion

Except for new piping components, the unit affected by this modification, the Plant 1
flare, is an existing emission unit. Therefore the major stationary source applicability test
is based on a comparison of baseline actual emissions (BAE) to projected actual
emissions (PAE).

Emissions from the new piping components are based on the following emission factors
and component counts.

| Component Type | No. of Components | Service | Emission Factor (lb/component/hr) | Control Efficiency[1] | Emission Factor Source | Emissions (lbs/yr)[2] |
|---|---|---|---|---|---|---|
| Valves | 43 | gaseous | 0.05908 | 96% | "Protocol for Equipment Leak Emission Estimates", EPA-453/R-95-017, November 1995, Table 2-2 (emission factors) and Table 5-3 (control efficiencies) | 890 [22,254] |
| Flanges/ Connectors | 11 | Any | 0.00055 | 0% | | 53 |
| | | | | | | |
| Total (lbs/yr) | | | | | | 943 [22,307] |
| Total (tons/yr) | | | | | | 0.47 [11.15] |

[1]Control efficiencies are from the following sources. **Valves** - Table 5-3 of EPA's Protocol for Equipment Leaks (EPA-453/R-95-017) based on monitoring consistent with proposed HON NESHAP. During the review of a previous application, the Division reconsidered the control efficiency previously allowed for flanges and connectors. Although Colorado Reg 7 requires annual monitoring for flanges (per Section VIII.C.4.a.(i)(A)), the leak definition in Reg 7 (10,000 ppm) is higher than that in the HON NESHAP (500 ppm), thus the 81% control efficiency listed in Table 5-3 is not appropriate and no control efficiency was allowed for flanges. The Division would agree that some control may be appropriate for flanges due to annual monitoring, however, the source did not propose an alternative for this application. Note that NSPS GGGa includes similar monitoring for flanges/connectors as the HON NESHAP, however, these requirements have been stayed.
[2]Emissions in "[ ]" are uncontrolled. Note that the control efficiency, and subsequently controlled emissions are based on required monitoring.

Emissions from the new components are estimated at less than 1 ton/yr of VOC (the
APEN de minimis level) and therefore, a permit is not required for the components
associated with this project.

P1 flare - BAE

For the P1 flare, BAE is based on the period of January 1, 2013 through December 31,
2014 and BAE was adjusted to reflect changes to the CO and VOC emission factor for
the flare that occurred after the baseline period. Rather than adjust VOC emissions to
reflect the revised AP-42 emission factor, the source used an emission factor based on
the actual composition of flared gases and a presumed destruction and removal
efficiency (DRE). Although Colorado Regulation No. 3, Part D, Section II.A.4.b, only
allows BAE to be adjusted downward to reflect emissions that were not in compliance
with limits established during the baseline period or limits that currently apply, the

Division considers that it is appropriate for BAE and PAE to be compared on the same basis, with the same emission factors, since the emission factors are unrelated to the project.

In addition, the revised emission factors indicate a better estimate of emissions from the flare and represent what emissions would have been during the baseline period, had those factors been available. Thus correcting BAE to reflect the revised emission factors is appropriate.

As specified in Colorado Regulation No. 3, Part D, Section II.A.4.b.(ii) BAE shall be adjusted downward to exclude any non-compliant emissions that occurred while the source was operating above an emission limitation that was legally enforceable during the baseline period. No adjustments to BAE were necessary to reflect non-compliant emissions.

BAE for this modification is from the same time period (January 1, 2013 through December 31, 2014) as the MPV modification (application submitted February 10, 2017) and thus it would be expected that BAE should be the same but this is not the case for the following reason.

The VOC emission factor used in the MPV modification was the emission factor from AP-42, Section 13.5 (dated 2/18), Table 13.5-2 (VOC = 0.66 lb/MMBtu). For this modification, the source opted to use a VOC emission factor based on the composition of the gases routed to the flare, assuming a DRE of 98% (0.2548 lb/MMBtu).

Note that typically the Division does not allow the use of a flare DRE or control efficiency above 95% for flares without requiring a performance test. However, in this case, the Plant 1 flare will be required to comply with additional monitoring requirements set forth in MACT CC by January 30, 2019. The purpose of the additional flare monitoring is to ensure flares achieve a 98% DRE as noted in 79 FR 36942 (June 30, 2014) and the Division considers it acceptable to allow a 98% DRE for flares meeting the new flare requirements in MACT CC.

In a letter dated June 23, 2017 the source requested an extension to the MACT compliance date, in conjunction with enforcement discretion from the MACT CC flare requirements for the P1 flare. The extension was requested in order for the source to replace the existing steam flow meter, with a steam flow meter that complies with the MACT CC requirements during the next turnaround (scheduled for some time between March and October 2021). Based on this request, the Division indicated to the source that the Division would not allow the use of 98% DRE if the MACT compliance date extension and enforcement discretion were granted. In a letter dated July 10, 2018, Suncor withdrew their request for a compliance extension and enforcement discretion. As a result, the Division has accepted the use of 98% DRE for the P1 flare VOC emission factor.

The Division approves the use of the material balance-based emission factor in lieu of the AP-42 emission factor as it is considered to be more representative of actual emissions.

<u>Plant 1 Flare (PAE)</u>

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3    Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

Since the Plant 1 flare has no permitted emission limits, the source projected PAE of PM, $PM_{10}$, $PM_{2.5}$, $NO_X$ and CO based on the emission factors and highest monthly throughput during the baseline period (August 2014), annualized, i.e., multiplied by twelve plus the projected throughput from the MPV modification (application submitted February 10, 2017, addressed in the current permit (last revised February 22, 2018)) and the increased flow rate anticipated due to the supplemental fuel necessary to meet combustion zone heat content requirements.

For $SO_2$ emissions from the Plant 1 flare, projected PAE is based on highest monthly $SO_2$ emissions (February 2014) during the baseline period, annualized plus the projected $SO_2$ emissions from the MPV modification and this modification (increased flow rate (and subsequent emissions) anticipated due to the supplemental fuel necessary to meet combustion zone heat content requirements).

In the initial application and the April 13, 2018 revisions, the source used the VOC emission factor from AP-42, Section 1.4 to estimate emissions from supplemental gas (natural gas) consumption. The Division had previously indicated that the VOC AP-42 emission factor in Section 1.4 was not appropriate. The Division relied on a material balance based VOC emission factor for natural gas assuming a 98% DRE (see page 41 for more information on the natural gas VOC emission factor of 0.0395 lb/MMBtu). The source submitted revised spreadsheets on November 28, 2018 to us this same VOC emission factor for natural gas.

The estimated emissions and flow due to the additional supplemental fuel necessary to meet the heat content requirements for flares in MACT CC are as follows:

| 'Table 1 – Throughput and Emissions from Increased Supplemental Fuel for P1 Flare | | | | | | |
|---|---|---|---|---|---|---|
| Unit | Throughput (MBtu/yr) | Emissions (tons/yr) | | | | |
| | | CO | $NO_X$ | VOC | $PM/PM_{10}/PM_{2.5}$ | $SO_2$[1] |
| GBR Flare | 35,670,763 | 5.53 | 1.21 | 0.70 | 0.13 | 0.031 |

[1]$SO_2$ emissions are based on a throughput level of 38.77 MMscf, based on a natural gas heat content of 920 Btu/scf.

Flares – Adjustments to PAE

PAE may be adjusted downward to reflect emissions that the unit could have accommodated during the baseline period and that are unrelated to the project, including increased utilization due to demand growth.

For the P1 flare, the source estimated PM, $PM_{10}$, $PM_{2.5}$, $NO_X$, CO and VOC emissions that could have been accommodated based on the emission factors and highest monthly throughput (August 2014) during the baseline period, annualized. In order to use this method, the monthly throughput would have to be consistently achievable for the annual period, i.e., the annualized throughput could not have exceeded any throughput or emission limitations that applied during the baseline period.

For the P1 flare, the source estimated $SO_2$ emissions that could have been accommodated based on the highest monthly $SO_2$ emissions (February 2014) during the baseline period, annualized.

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3    Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

The resulting emission increases for the P1 flare, based on the applicability test are shown in the table below:

| Table 2 – P1 Flare Change in Actual Emissions (Flare RSR Project) | | | | | |
|---|---|---|---|---|---|
| | P1 Flare Emissions (tons/yr) | | | | |
| | CO | NO$_x$ | VOC | PM/PM$_{10}$/ PM$_{2.5}$ | SO$_2$ |
| Baseline | 39.12 | 8.58 | 32.16 | 0.94 | 36.42 |
| PAE | 102.05 | 22.38 | 80.03 | 2.45 | 167.55 |
| Capable of Accommodating | 96.36 | 21.14 | 79.20 | 2.32 | 165.84 |
| Excludable[1] | 57.24 | 12.55 | 47.04 | 1.38 | 129.42 |
| Adjusted PAE[2] | 44.81 | 9.83 | 32.99 | 1.07 | 38.13 |
| **Change in Emissions[2]** | **5.69** | **1.25** | **0.83** | **0.13** | **1.71** |

[1]Excludable emissions equals capable of accommodating minus baseline emissions.
[2]Adjusted PAE equals PAE minus excludable emissions.
[3]Change in emissions is adjusted PAE minus baseline.

Miscellaneous

Colorado Regulation No. 3, Part D, Section I.B.4 specifies that the information submitted for the applicability analysis shall be included in an appendix of the Title V permit for sources that conduct the actual-to-projected actual test for a project that requires a minor permit modification under Colorado Regulation No. 3, Part C, Section X. Presumably, Regulation No. 3 requires that this information (i.e., the actual-to-projected-actual applicability test) be included in an appendix, presumably so that the Division can determine whether projected emissions predicted by the project are exceeded and pursue an investigation, if necessary, to determine if the increases above the projected level were caused by the project. Therefore, the applicability analysis for this project was included in Appendix K of this permit.

Revisions to Permit

The following changes were made to the permit to address this modification application:

Section II.29 – Plant 1 Main Plant (MP) Flare

• Revised the VOC emission factor in Condition 29.1.

• Revised Condition 29.5 to provide more information on how the annual throughput is monitored.

• Revised Condition 29.6 of the summary table to reflect the monitoring method in MACT CC.

• Removed Condition 29.8 (flare operating requirements – 60.18) as the revised permit will not be issued until after the MACT CC compliance date (January 30, 2019) and these requirements will no longer apply.

• Added "new" Condition 29.8 to record hours of operation as this is necessary to determine flow for flow meter purge gas and pilot gas.

Section II.53 – 40 CFR Part 63 Subpart CC

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3   Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

- Added a note above Condition 53.87 (under the header for "Requirement for flare control devices (63.670)") that the P1 flare is subject to these requirements.

Section II.57 – Flare Requirements

- Revised this section to indicate that the GBR flare is no longer subject to these requirements.

**1.8    March 28, 2018 Modification (minor modification) – Revise NO$_X$ emission factor for Boiler B4**

The purpose of this modification is to revise the NO$_X$ emission factor for boiler B4. Boiler B4 began operation prior to 1963 and is grandfathered from the minor source construction permit requirements in Colorado Regulation No. 3, Part B. Revisions to Regulation No. 7 were made in July 2018 to include RACT requirements for major sources of NO$_X$ in the 8-hour ozone control area. The RACT requirements included emission limits for boilers and these limits will apply to boiler B4 in the future. The source conducted a performance test on February 22, 2018 to determine NO$_X$ emissions from boiler B4 and found that NO$_X$ emissions (0.464 lb/MMBtu) were above the level predicted by the AP-42 Section 1.4 emission factor (280 lb/MMscf or 00275 lb/MMBU). Therefore, the source requested that the NO$_X$ emission factor be revised. The source also requested that the CO emission factor be revised, but the Division denied the request to revise the CO emission factor.

There is no increase in permitted emission associated with this modification. There will be an increase in actual emission associated with this modification but the change in emissions is not due to a physical change or change in the method of operation but is due to recent and more appropriate information on emissions from this boiler. Since this boiler began operation prior to major stationary source permitting requirements (i.e., PSD and NANSR), the higher emission rate from this unit do not trigger any PSD and/or NANSR requirements.

Note that as discussed on page 152, a construction permit (20AD0714) was issued for Boiler B4 on November 23, 2020. The construction permit was issued in order to install ultra-low NO$_X$ burners (ULNB) on Boiler B4 to comply with upcoming Reg 7 and RH requirements. Thus while the requested change was made, additional revisions were made to supersede this change.

**1.9    June 14, 2018 Modification (minor modification) – Replace Plant 1 Rail Rack Flare with a Vapor Combustion Unit (VCU) (Plant 1 Rail Rack RSR Compliance Project)**

The purpose of this modification is to replace the plant 1 rail rack flare with a VCU. Beginning January 30, 2019 flares that are used as a control device for units regulated under MACT CC are required to meet additional monitoring requirements. Since Plant 1 rail rack loads gasoline, the existing flare would be subject to those requirements. The source considers that it will be more efficient to replace the flare with a VCU than to make the necessary changes to comply with the monitoring requirements.

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3   Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

At the time this application was submitted, the source planned to shift loading of
gasoline from the Plant 2 rail rack to the Plant 1 rail rack. The application notes that
since the project to replace the Plant 1 rail rack flare with a VCU will affect operations at
both the Plants 1 and 2 rail racks and considers that those changes are related, they
have conservatively included emissions from both loading racks in the application.

It should be noted that in the January 30, 2019 application submitted for the Plant 2 rail
rack to cease loading of gasoline at that rack, Suncor indicated that they did not
consider that emissions from both racks need to be included because there was not
expected to be an increase in emissions from the Plant 2 rail rack. The TRD prepared to
support the Plant 2 renewal permit issued **July 9, 2024** specifically noted the following
(see page 115):

> According to the January 30, 2019 [Plant 2] application, since the source
> will be shifting gasoline and distillate loading from one rail rack to another
> (all gasoline from Plant 2 to Plant 1, possibly one additional railcar of
> distillate from Plant 1 to Plant 2), that emissions from both loading racks
> were included. The January 30, 2019 application indicates that since actual
> emissions from the Plant 2 rail rack will decrease, it is not required to be
> included in the project emissions analysis. While it is true that emissions
> from gasoline loading [at the Plant 2 rail rack] will decrease as a result of
> the project, the source indicates that more distillate may be loaded at Plant
> 2, thus there will be an increase in emissions from distillate loading. Since
> emissions from gasoline loading are higher, it is expected that any increase
> in emissions from increased distillate loading [at the Plant 2 rail rack] would
> be offset by the decrease in gasoline loading, resulting in an overall
> decrease in emissions from petroleum product loading at the Plant 2 rail
> rack. LPG loading at the Plant 2 rail rack is not affected by this modification
> at all but is included in the evaluation since it is loaded at the Plant 2 rail
> rack and routed to the flare. The Division would agree that generally only
> emission units that are affected by the project and for which there is an
> emissions increase would be included in step one of the analysis to
> determine project emissions. Thus we agree that for the project to shift
> gasoline loading from the Plant 2 rail rack to the Plant 1 rail rack, only
> emission increases from the Plant 1 rail rack are required to be considered
> (emissions would not increase from the Plant 2 rail rack), although the
> permit [Plant 2 permit, 95OPAD108] would be modified to reflect that no
> gasoline would be loaded (this would be a change in the throughput limit
> and a decrease in permitted emissions).

In reviewing this application, the Division requested clarification, corrections or
additional information on the information submitted. Responses to these information
requests were submitted on September 14, October 12 and November 7, 2018 and
January 4, 2019.

Note that the June 14, 2018 application relied on projected actual emissions from a
separate application received on June 14, 2018 for the Plant 2 rail rack to revise the
emission calculation methodology. The Division expected that the source would request
slightly lower emissions from the Plant 2 rail rack but this request was not received until

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3   Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

January 30, 2019 and thus was not reflected in this application. More discussion on the June 14, 2018 application for the Plant 2 rail rack can be found in the TRD to support the Plant 2 renewal permit issued **July 9, 2024** beginning on page 102.

Modification Type

The source indicated that this modification qualifies as a minor modification. Colorado Regulation No. 3, Part C, Section X.A identifies those modifications that can be processed under the minor permit modification procedures. Specifically, minor permit modifications "are not otherwise required by the Division to be processed as a significant modification" (Colorado Regulation No. 3, Part C, Section X.A.6). The Division requires that "any change that causes a significant increase in emissions" be processed as a significant modification (Colorado Regulation No. 3, Part C, Section I.A.7.a). According to Part F of Regulation No. 3 (Section I.L, revisions adopted July 15, 1993, Subsection I.G for modifications) the Division considers that a significant increase in emissions is the potential to emit above the major stationary source significant level in Colorado Regulation No. 3, Part D, Section II.A.44.

The application indicates that based on the major stationary source applicability test conducted in accordance with the requirements in Colorado Regulation No. 3, Part D, Section I.B (actual-to-projected-actual emissions for existing equipment and actual-to-potential for new equipment), that increases from the project are below the significant level. The results of the applicability test that includes emission increases from both the Plants 1 and 2 rail racks are shown in Table 1 below. The results of the applicability test for just the Plant 1 rail rack are shown in Table 2 below. Note that as discussed above the source conservatively included the emission increases from both the Plant 1 and Plant 2 rail racks in the application, although the increases from Plant 2 were not required (actual emissions will not increase from the Plant 2 rail rack with this modification).

| Table 1 – Emission Increases from the Plant 1 and Plant 2 Rail Rack (P2 RR Flare RSR Project) | | | | | |
|---|---|---|---|---|---|
| | Emissions (tons/yr) | | | | |
| | $PM/PM_{10}/PM_{2.5}$ | $SO_2$ | $NO_X$ | CO | VOC |
| Projected Actual Emissions[1] | 0.36 | $1.73 \times 10^{-2}$ | 5.73 | 20.44 | 59.12 |
| Baseline Actual Emissions[2] | 0.12 | $1.94 \times 10^{-3}$ | 1.09 | 4.98 | 27.68 |
| Change in Emissions[3] | 0.24 | $1.54 \times 10^{-2}$ | 4.64 | 15.46 | 31.44 |
| New Equipment Leak Components (for Plant 1) | | | | | 2.13 |
| Total Emission Increase | 0.24 | $1.54 \times 10^{-2}$ | 4.64 | 15.46 | 33.57 |
| | | | | | |
| PSD/NANSR Significance Level (T5 Minor Mod Level)[4] | 25/15/10 | 40 | 40 | 100 | 40 |

[1]Projected actual emissions are also requested emissions. Note that projected actual emissions for the Plant 2 rail rack are based on requested emissions from the Plant 2 rail rack received on January 30, 2019 (see discussion on page 64).

[2]Baseline from January 1, 2015 through December 31, 2016. Baseline emissions from gasoline loading are based on the limit in 40 CFR Part 63, Subpart R § 63.422(b) 10 mg/l loaded (note that 40 CFR Part 63 Subpart CC, § 63.650(a) refers to Subpart R).

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3   Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

[3]The change in emissions is projected actual emissions minus baseline actual emissions.
[4]Indicates the NANSR significance level on the date the complete minor modification application was submitted.
Under the provisions of Colorado Regulation No. 3, Part X.I, a source is allowed to make the changes proposed in a
complete minor modification application immediately after it is submitted (a construction permit is not required to
construct or modify such source per Regulation 3, Part B, Section II.A.6). The area was classified as a serious ozone
non-attainment area on January 27, 2020 and for minor modification applications submitted on and after that date,
the significance level drops to 25 tons/yr of VOC or $NO_X$.

| Table 2 – Emission Increases from the Plant 1 Rail Rack Only (P2 RR Flare RSR Project) | | | | | |
|---|---|---|---|---|---|
| | Emissions (tons/yr) | | | | |
| | $PM/PM_{10}/PM_{2.5}$ | $SO_2$ | $NO_X$ | CO | VOC |
| Projected Actual Emissions[1] | 0.24 | $1.53 \times 10^{-2}$ | 4.63 | 15.44 | 21.32 |
| Baseline Actual Emissions[2] | 0.04 | $7.03 \times 10^{-4}$ | 0.36 | 1.63 | 3.13 |
| Change in Emissions[3] | 0.20 | $6.5 \times 10^{-4}$ | 4.27 | 13.81 | 18.19 |
| New Equipment Leak Components (for Plant 1) | | | | | 2.13 |
| Total Emission Increase | | | | | 20.32 |
| | | | | | |
| PSD/NANSR Significance Level (T5 Minor Mod Level) | 25/15/10 | 40 | 40 | 100 | 40 |

[1]Projected actual emissions are also requested emissions.
[2]Baseline from January 1, 2015 through December 31, 2016. Baseline emissions from gasoline loading are based on
the limit in 40 CFR Part 63, Subpart R § 63.422(b) 10 mg/l loaded (note that 40 CFR Part 63 Subpart CC, § 63.650(a)
refers to Subpart R).
[3]The change in emissions is projected actual emissions minus baseline actual emissions.
[4]Indicates the NANSR significance level on the date the complete minor modification application was submitted.
Under the provisions of Colorado Regulation No. 3, Part X.I, a source is allowed to make the changes proposed in a
complete minor modification application immediately after it is submitted (a construction permit is not required to
construct or modify such source per Regulation 3, Part B, Section II.A.6). The area was classified as a serious ozone
non-attainment area on January 27, 2020 and for minor modification applications submitted on and after that date,
the significance level drops to 25 tons/yr of VOC or $NO_X$.

The increase in emissions shown in both Tables 1 and 2 indicate that the increase in
actual emissions are below the significance level, therefore, this modification qualifies
as a minor modification.

In regards to whether the modifications qualified as minor modifications, in addition to
the major stationary source applicability test, the Division reviewed the change in
permitted emissions to see if that would also qualify as a minor modification. The t

| Table 3 - Change in Permitted Emissions for Plant 1 (tons/yr) | | | | | |
|---|---|---|---|---|---|
| | $PM/PM_{10}/PM_{2.5}$ | $SO_2$ | $NO_X$ | CO | VOC |
| Requested - Flare | 0.24 | 0.02 | 4.6 | 15.4 | 21.3 |
| Current Permitted - Flare | | | 1.97 | 10.72 | 7.01 |
| Change in Emissions | 0.24 | 0.02 | 2.63 | 4.68 | 14.29 |
| New Equipment Leak Components | | | | | 2.13 |
| **Total** | | **0.02** | **2.63** | **4.68** | **16.42** |
| | | | | | |
| PSD/NANSR Significance Level (T5 Minor Mod Level)[3] | 25/15/10 | 40 | 40 | 100 | 40 |

Modeling Requirements

A modeling analysis is generally conducted based on requested (permitted) emissions, thus a modeling analysis would be triggered based on the change in permitted emissions.

There is no increase in permitted emissions from the Plant 2 rail rack associated with this modification. Discussions on whether modeling was required for the Plant 2 rail rack are discussed in the TRD prepared to support the renewal permit issued **July 9, 2024**. Applications to address the Plant 2 rail rack were submitted on June 14, 2018 (to revise the emission calculation methodology) and January 30, 2019 (to cease loading gasoline and the discussions regarding whether modeling was required are included on pages 105 and 117, respectively.

There is an increase in permitted VOC emissions from the Plant 1 rail rack (see table 3 above). Although VOC is a precursor for ozone, in general accurate and cost effective methods for modeling ozone impacts from stationary sources are not available. Therefore, individual source ozone modeling is not routinely requested for permit modifications. The magnitude of the emissions increase (VOC 16.42 ton/yr) is not at a level for which individual source ozone modeling would be required.

For the other pollutant emissions, the increase in permitted emissions from the Plant 1 rail rack (see table 3 above) are summarized below:

| Pollutant | Modeling Threshold[1] | | Change in Permitted Emissions (tons/yr) |
|---|---|---|---|
| | Annual | Short-Term | |
| $SO_2$ | 40 tons/yr | 0.46 lbs/hr | 0.02 (40 lb/yr) |
| $NO_2$ | 40 tons/yr | 0.46 lbs/hr | 2.63 |
| CO | 100 tons/yr | 23 lbs/hr | 4.68 |
| $PM_{10}$ | 15 tons/yr | 82 lbs/day | 0.24 (480 lb/yr) |
| $PM_{2.5}$ | 5 tons/yr | 11 lbs/day | 0.24 (480 lb/yr) |

[1]Note that the Division's May 2018 draft Modeling Guidelines (page 22), indicate no annual threshold for $PM_{10}$ and CO.

Note that the increase in annual emissions for all pollutants is below the modeling thresholds, thus modeling is not warranted with respect to the annual emissions. The Division's Stationary Sources Program PS Memo 10-01 (begins on page 182) specifies that for minor sources with requested emissions below 40 tons/yr of $NO_X$ and $SO_2$, that a compliance demonstration is not required for the short-term (hourly) $SO_2$ and $NO_2$ national ambient air quality standard (NAAQS). Therefore a modeling analysis was not conducted for the 1-hr $SO_2$ and $NO_2$ NAAQS. With respect to the short-term CO, $PM_{10}$ and $PM_{2.5}$ NAAQS, it is not expected that the short-term increases in CO, $PM_{10}$ and $PM_{2.5}$ emissions would be above the modeling thresholds as the annual emission increases are low and are not expected to occur all at one time (i.e., all increases vent to a flare in an hour or day). In addition, the replacement of the control device would not affect the short-term emission rate of the loading rack. Therefore modeling was not warranted for short-term CO, $PM_{10}$ and $PM_{2.5}$ NAAQS.

Discussion

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3   Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

Except for new piping components, the units affected by this modification are existing emission units. Therefore the major stationary source applicability test is based on a comparison of baseline actual emissions (BAE) to projected actual emissions (PAE).

Emissions from the new piping components are based on the following emission factors and component counts.

| Component Type | No. of Components | Service | Emission Factor (lb/component/hr) | Control Efficiency[1] | Emission Factor Source | Emissions (lbs/yr)[2] |
|---|---|---|---|---|---|---|
| Valves | 34 | gaseous | 0.05908 | 96% | "Protocol for Equipment Leak Emission Estimates", EPA-453/R-95-017, November 1995, Table 2-2 (emission factors) and Table 5-3 (control efficiencies) | 725 [18,114] |
| Flanges/ Connectors | 13 | Any | 0.00055 | 0% | | 449 |
| Relief Valves | 1 | Gaseous | 0.35274 | 0% | | 3,090 |
| | | | | | | |
| Total (lbs/yr) | | | | | | 4,264 [21,653] |
| Total (tons/yr) | | | | | | 2.13 [10.83] |

[1]Control efficiencies are from the following sources. **Valves** - Table 5-3 of EPA's Protocol for Equipment Leaks (EPA-453/R-95-017) based on monitoring consistent with proposed HON NESHAP. During the review of a previous application, the Division reconsidered the control efficiency previously allowed for flanges and connectors. Although Colorado Reg 7 requires annual monitoring for flanges (per Section VIII.C.4.a.(i)(A)), the leak definition in Reg 7 (10,000 ppm) is higher than that in the HON NESHAP (500 ppm), thus the 81% control efficiency listed in Table 5-3 is not appropriate and no control efficiency was allowed for flanges. The Division would agree that some control may be appropriate for flanges due to annual monitoring, however, the source did not propose an alternative for this application. Note that NSPS GGGa includes similar monitoring for flanges/connectors as the HON NESHAP, however, these requirements have been stayed.

[2]Emissions in "[ ]" are uncontrolled. Note that the control efficiency, and subsequently controlled emissions are based on required monitoring.

The baseline period used in the analysis was January 1, 2015 through December 31, 2016. Colorado Regulation No. 3, Part D, Section II.A.4.b.(ii) specifies that baseline actual emissions (BAE) shall be adjusted downward to exclude any non-compliant emissions that occurred while the source was operating above an emission limitation that was legally enforceable during the baseline period. Emission calculations during the baseline period relied on the loading equation in AP-42, Section 5.2 which results in a higher VOC emission rate than the MACT CC limit for gasoline loading (10 mg/l), therefore, baseline emissions were adjusted downward for both the Plants 1 and 2 rail racks.

PAE for both the Plant 1 and Plant 2 rail racks were based on requested (permitted) emissions.

For the Plant 2 rail rack, both PAE and BAE were calculated using the new emission calculation methodology addressed in the June 14, 2018 application for that emission unit. More information on the Plant 2 rail rack emission calculation methodology can be found in the TRD to support the Plant 2 renewal permit issued **July 9, 2024** beginning on page 102.

For the Plant 1 rail rack, the source did not calculate PAE and BAE for $NO_X$ and CO using the methods specified in the Title V permit but relied on the proposed changes to

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3    Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

the emission calculation methodologies set forth in the application. The Division agrees that this is appropriate in order to compare emissions on the same basis, since these calculation changes are unrelated to the projected.

In addition, the source included emissions from ethanol deaerators in both PAE and BAE. The ethanol unloading pumps use deaerators located in the suction piping to allow separation of any entrained nitrogen from the ethanol streams. Nitrogen with entrained hydrocarbon is vented to the rail rack flare. The source quantified uncontrolled emissions from the deaerators using the HYSYS model results used to determine emissions from depressurization of ethanol rail cars and process knowledge. The HYSYS runs are discussed in more detail in Section II.1.15 for the June 4, 2019 application to route ethanol from rail car unloading to the rail rack flare. PAE is based on unloading 500 ethanol rail cars per year. Note that the source did include $SO_2$ emissions from the ethanol deaerators and the Division agrees, that there is unlikely to be $SO_2$ emissions from this activity.

As specified in Colorado Regulation No. 3, Part D, Section II.A.4.b.(ii) BAE shall be adjusted downward to exclude any non-compliant emissions that occurred while the source was operating above an emission limitation that was legally enforceable during the baseline period. To that end, emissions from gasoline loading from both racks were adjusted downward to reflect the VOC emission limit in MACT CC (via Subpart R) of 10 mg/liter. The source had previously estimated emissions using the loading loss equation in AP-42, Section 5.2 and assumed control efficiency but this method estimates emissions above the MACT CC/R emission limit.

Finally it should be noted that the June 14, 2018 application relied on a 98% control efficiency for the VCU, however, the Division indicated that we would not require a performance test to verify control efficiency if a 95% control efficiency was relied upon and directed Suncor to revise emissions to rely on a control efficiency of 95%. In the January 4, 2019 submittal, the source revised the emission calculations to rely on a 95% control efficiency for the VCU but indicated they reserved the right to test to verify that a higher control efficiency can be achieved.

Regulatory Analysis

The new VCU meets the definition of a fuel gas combustion device and since it commenced construction after May 14, 2007 it is subject to the requirements in NSPS Ja.

The application was silent regarding the regulatory requirements for the new piping components. The draft permit language submitted with the application simply included the piping components and emission limit in Section II.34. The Division considers that since the source relied on control efficiencies consistent with the proposed HON NESHAP that Suncor must be complying with the provisions in NSPS GGGa. Therefore, the permit will reflect that these requirements are subject to the provisions in NSPS GGGa.

Miscellaneous

Colorado Regulation No. 3, Part D, Section I.B.4 specifies that the information submitted for the applicability analysis shall be included in an appendix of the Title V

permit for sources that conduct the actual-to-projected actual test for a project that
requires a minor permit modification under Colorado Regulation No.3, Part C, Section
X. Presumably, Regulation No. 3 requires that this information (i.e., the actual-to-
projected-actual applicability test) be included in an appendix, presumably so that the
Division can determine whether projected emissions predicted by the project are
exceeded and pursue an investigation, if necessary, to determine if the increases above
the projected level were caused by the project.

For both the Plant 2 rail rack flare and the Plant 1 rail rack vapor combustion unit,
projected actual emissions are the same as requested (permitted) emissions, thus
including this information in an appendix would not be necessary.

<u>Revisions to Permit</u>

The following changes were made to the permit to address this modification application:

- The following changes were made to the table in Condition 5.1:
  o Revised the summary table to indicate that the rail rack is equipped with an
    enclosed VCU.
  o Included the fugitive VOC emissions from this project (F205).

<u>Section II.24 – Plant 1 rail loading rack and enclosed VCU (R101)</u>

- Revised the emission limits and calculation methodology in Condition 24.1.

- Revised Condition 24.2 to replace the NSPS J requirements (applied to the flare)
  with the NSPS Ja requirements (applies to the VCU).

- Revised the language in the summary table under "limitation" for Condition 24.5
  (MACT CC requirements) to more clearly indicate the MACT CC emission limit and
  monitoring requirements.

- Revised the language in Condition 24.4. (RACT) to address the ethanol deaerators
  and include the control requirements in Reg 3, Part B, Section VI.B.6 (formerly
  Regulation No. 7, Section VIII.B.6).

- Condition 24.6 was revised to include a throughput limit for ethanol, revise the
  throughput limit for distillate and replaced "jet naphtha (JP4)" with "jet fuel."

- Condition 24.7 was revised to remove the Reg 1 flare opacity limit (Section II.A.5)
  and include the Reg 1 opacity limits in Sections II.A.1 and 4. In addition added
  language to refer to the opacity monitoring language in Section II.35.

- Removed Condition 24.8 (flare requirements – 60.18).

- Included as "new" Condition 24.8, requirements to maintain the VCU at the
  temperature recorded during the performance test.

- Included "new" Condition 24.10 for a limit on pilot and supplemental fuel.

- Included "new" Condition 24.11 to record the number of ethanol rail cars unloaded
  monthly.

<u>Section II.34 – Fugitive VOC Equipment Leaks with Permitted Emissions</u>

- Added emission limits and requirements for equipment leaks associated with this project.

Section II.35 – Opacity

- Revised the opacity monitoring language in Condition 35.8 to reflect the VCU and remove references to the truck loading rack. The language is consistent with the opacity monitoring language for the truck rack VCU in the Plant 2 permit.

Section II.46 – 40 CFR Part 60 Subpart Ja Requirements (NSPS Ja)

- Indicated under Condition 46 that the Plant 1 rail rack VCU is subject to these requirements.

Section II.47 – 40 CFR Part 60 Subpart GGGa Requirements (NSPS GGGa)

- Added F205 (equipment leaks associated with this project) to the list of sources subject to these requirements.

Section II.50 – 40 CFR Part 60 Subpart XX Requirements (NSPS XX)

- Included the requirements in 60.503(a) through (d). Although the rail loading rack is not subject to the provisions in Subpart XX, the provisions in 40 CFR Part 63 Subpart R (which are referenced in 40 CFR Part 63 Subpart CC (MACT CC)) refer to test methods in Subpart XX.

  Note that the source's draft permit language removed the provisions in 60.503(e) (performance test not required for flares) but this paragraph was not removed as it applies to the Plant 1 truck rack flare.

Section II.52 – 40 CFR Part 63 Subpart R Requirements (MACT R)

- Added the provisions in 63.425(a), (b) and (c).

Section II.53 – 40 CFR Part 63 Subpart CC Requirements (MACT CC)

- Noted in Condition 53.43.2 that equipment leaks associated with this project (F205) fall under the overlap provisions for equipment leaks in 63.640(p)(2) (sources subject to NSPS GGGa only have to comply with NSPS GGGa).

  Note that the source's draft permit language indicated that the rail rack should be removed from the list of equipment leaks not subject to the overlap provisions in Condition 53.43.2 but this is not appropriate, as equipment leaks from the rail loading rack are not subject to the provisions in NSPS GGGa (transfer racks not included in the definition of process unit because it is stayed). The Division did however, clarify that the components addressed in this modification (F205) were subject to the overlap provisions.

Appendices

- Added fugitive VOC emissions from this project (F206) to the tables in Appendices B and C.

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3   Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

- Revised Appendices B and C to indicate that the rail rack is equipped with an enclosed VCU.

Suggested Draft Permit Language not Included in the Permit

- The Division did not revise the language in Condition 53.53 (MACT CC requirements, 63.650(d)), as this language is directly from the regulation and cannot be revised.

- The Division did not include the suggested changes to the NSPS general provisions (Section II.56) as the source commenced construction and operation of the VCU and conducted the performance test prior to permit issuance. Therefore, including the suggested requirements was not necessary.

### 1.10 September 14, 2018 (construction permit) – Revise Hydrogen Cyanide (HCN) limit

The purpose of the September 14, 2018 application was to revise the HCN emission limit for the FCCU. The source conducted a performance test in July of 2018, which indicated non-compliance with the HCN emissions limit and also indicated a higher HCN emission factor than the one included in the permit. If the performance test indicated an HCN emission factor higher than the one included the permit, the permit required the source to apply for a modification to the permit to reflect, at a minimum, the higher emission factor within 60 days of completion of the test. Therefore, the source submitted the September 14, 2018 application.

The September 14, 2018 application was submitted as a minor modification, however, the Division notified the source that the application did not qualify as a minor modification and indicated that the application should be processed as a construction permit. The Division has not yet acted on the September 14, 2018 application and will not do so in the renewal application.

After the July 2018 performance test, Suncor requested Division approval to use an HCN CEMS to conduct a 30-day test of HCN emissions, in order to better determine HCN emissions. The July 2018 performance test was based on a 3-hour test period, the longer test period would provide more data and give both Suncor and the Division a better idea on what the actual HCN emission rate may be. Suncor submitted the results of the 30-day test on December 18, 2018. The results of the 30-day performance test are shown in the table below, along with the results of the July 2018 test and permitted emissions.

| | HCN Emission Rates | | |
| --- | --- | --- | --- |
| | Average | Maximum | Minimum |
| Permit Limit – lb/hr[1] | 2.92 | | |
| July 2018 Test – lb/hr | 3.21 | 3.39 | 3.09 |
| 30-Day Test – lb/hr | 2.1 | 3.13 | 1.20 |
| | | | |
| Permit – lb/1,000 lb coke burn[2] | 0.15 | | |
| July 2018 Test - lb/1,000 lb coke burn | 0.245 | 0.256 | 0.231 |

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3   Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

| | HCN Emission Rates | | |
|---|---|---|---|
| | Average | Maximum | Minimum |
| 30-Day Test - lb/1,000 lb coke burn | 0.16 | 0.23 | 0.09 |

[1]The permit limit is 12.8 tons/yr, the lb/hr emission rate was determined by multiplying by 2,000 (lb/ton) and dividing by 8760 hrs/yr.

[2]Emission factor included in the permit.

Although the Division is not acting on the September 14, 2018 application to increase the HCN emission limit at this time, the Division is taking this opportunity to revise the HCN performance test requirements. The test frequency will remain at annual, but the Division will require that a CEMS be used for each performance test and that test duration will be 30 days. Compliance will be based on the average emission rate during the 30-day test. The Division considers that with this change, Suncor may opt to withdraw the September 14, 2018 application.

In addition, the Division is taking this opportunity to update the HCN modeling information that was provided in the TRD to support the February 22, 2018 revised permit.

<u>HCN Modeling Update</u>

The Division modeled HCN emissions in October 2017 to determine the levels of HCN that would be present at the fenceline, prior to responding to public comments and issuing the February 22, 2018 revised permit. The Division modeled HCN emissions at the requested levels for both the Plant 1 and Plant 2 FCCUs (12.8 ton/yr for P1 and 1.44 ton/yr for P2). The results of the modeling indicated that the maximum concentration of HCN that would be present at the fenceline was 0.005 ppm (1-hour average). The Division discussed these results in the TRD (see page 18) that supported the February 22, 2018 revised permit and noted that the levels were below several HCN safety levels.

On April 17, 2018, EPA received a petition from Earthjustice on behalf of a number of environmental and community groups on the February 22, 2018 revised permit. The petition objected to the HCN emission limit and noted that EPA set a health protective inhalation reference concentration (RfC) of 0.0008 mg/m$^3$ (0.0007 ppm) for chronic (long-term) exposure to HCN. This EPA RfC threshold for chronic (long-term) exposure was not one of those the Division used to compare the results of the HCN modeling analysis to and is lower than the short-term impacts predicted by the Division's modeling analysis.

Comparing a long-term standard (the EPA RfC value) to a short-term impact (the Division's October 2017 HCN modeling result) is not an appropriate comparison, therefore, the Division reviewed the modeling analysis conducted for the February 22, 2018 revised permit. During the review, the Division discovered that the emission rate used in the modeling analysis for the P1 FCCU was incorrect (an emission rate of 3.68 grams per second was used and it should have been 0.368 grams per second). In the revised modeling analysis, results were provided for both short-term (1-hr) and long-

term (annual) impacts. The short-term impacts are appropriate to compare to acute limitations and the long-term impacts are appropriate to compare to chronic limitations, such as EPA's RfC value.

The results of the Division's HCN modeling analysis were 0.611 parts per billion (ppb) on a one-hour average (acute exposure) and 0.0309 ppb on an annual average (chronic exposure). The one-hour (acute) concentration is 400 times lower than the acute health-based guideline listed in Table B below and the annual (chronic) concentration is 20 times lower than the chronic health-based guideline listed in Table B below.

On September 14, 2018, Suncor submitted an application to revise the HCN limit for Plant 1, as a required performance test indicated higher emission rates. The Division's modeling analysis was revised in June 2019 to consider the higher requested HCN limit for Plant 1 (19.9 tons/yr), and to model the Plant 2 FCCU at the same emissions level (19.9 tons/yr) as a conservative assumption. During the 2019 modeling process, the Division noted nearby structures may need to be included and asked Suncor to provide updated information on nearby structures and to verify stack parameters (height, temperature, diameter and flow). The results from the June 2019 modeling analysis are provided in Table A below.

Diagrams mapping the 5-year average short-term (1-hour) and long-term (annual) concentrations are provided on pages 184 and 185. The highest 1-hour impact (2.35 ppb) is 100 times lower than the short-term (acute) health-based guideline listed in Table B below and the highest annual impact (0.140 ppb) is five times lower than the chronic health-based guideline listed in Table B below.

| Table A – June 2019 HCN Modeling Results | | |
|---|---|---|
| | Maximum Impact (ppb) | |
| Met Data | 1-Hour (Acute) | Annual (Chronic) |
| Asarco 1993 | 2.22 | 0.140 |
| Asarco 1994 | 2.35 | 0.130 |
| Asarco 1998 | 2.18 | 0.126 |
| Asarco 1999 | 2.09 | 0.122 |
| Asarco 2000 | 2.15 | 0.110 |
| 5-Year Average | 2.20 | 0.126 |

| Table B – HCN Health-Based Guidelines | | |
|---|---|---|
| Source | Guideline | Guideline Type |
| California Office of Environmental Health Hazard Assessment (OEHHA)[1] | 303 ppb (340 µg/m$^3$) | Acute |
| EPA's Integrated Risk Information System (IRIS) Inhalation RfC[2] | 0.7 ppb (8 x 10$^{-4}$ mg/m$^3$) | Chronic |

[1] https://oehha.ca.gov/chemicals/hydrogen-cyanide
[2] https://cfpub.epa.gov/ncea/iris/iris_documents/documents/toxreviews/0060tr.pdf (see page 83)

The following charts depict a comparison of the results from both the April 2018 and June 2019 modeling results to the relevant health-based guidelines.

Case No. 1:24-cv-02164-DDD-SBP    Document 30-13    filed 02/19/25    USDC Colorado
pg 78 of 195

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3    Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal





Revisions to Permit

The following changes were made to the permit to revise the HCN performance test language:

Section II.22 – FCCU

- Revised the annual performance test requirement (Condition 22.14.2), as follows:

  o Specified that the test be conducted using a CEMS and that the test duration shall be 30 days.

  o Removed the paragraph regarding the deadline for the initial performance test, as that is no longer relevant.

  o Removed the requirement to submit an application to modify the permit if the

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3    Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

performance test indicates an emission factor higher than the one included in the permit.

o Revised the language regarding use of test results to assess compliance and information regarding the test protocol to be consistent with the language in the Plant 2 permit.

### 1.11 November 5, 2018 Modification (minor modification) – No. 2 Hydrodesulfurizer (HDS) tier 3 ultra-low sulfur gasoline (ULSG) project

The purpose of this modification is to meet Tier 3 ULSG requirements. On April 28, 2014 EPA finalized Tier 3 motor vehicle emission and fuel standards. Under the provisions of the rule, refineries are required to reduce sulfur in gasoline to 10 ppm, on an annual average and no more than 80 ppm sulfur, on a per-gallon basis. The Tier 3 standards took effect on January 1, 2017, although small refiners and small volume refineries did not have to comply until January 1, 2020. In a letter dated April 8, 2015, EPA confirmed that the facility met the definition of a small volume refinery per 40 CFR Part 80 § 80.1621 (included in Appendix F of the application) so compliance is not required until January 1, 2020.

The source evaluated various options to comply with the Tier 3 ULSG requirements and opted to do the following:

- Complete changes to the No. 2 HDS to increase the unit's design capacity from 12,000 to 15,000 barrels per day (bpd). The following physical modifications will be made:

  o The capacities of the P-269 Charge Booster Pump and P-739 Rerun Jet Pump will be increased;

  o The internals of the W-55 Rerun Fractionator will be modified;

  o The D-194 Rerun Overhead Reflux Drum and W-57 MDEA Adsorber relief valves will be replaced and piping modifications will be completed around the relief installations to increase pipe size and add isolation/bypass valves;

  o The X-193/194/195/196 HDS Reactor Feed vs Effluent Exchangers, X-258/259/263/264 Rerun Feed Exchangers, and XF-266 Rerun Overhead Condenser will be replaced with larger capacity units;

  o The existing X-125 Rerun Naphtha Cooler will be repurposed as the X-125 Jet Storage Cooler; and

  o Piping and flow control valves in the No. 2 HDS Unit will be modified and upsized, as needed.

- In-kind replacement of the existing variable frequency drive (VFD) on the C-1715 Recycle Gas Compressor in the No. 4 HDS. According to the application, the replacement is being conducted to allow the unit to continue to reliably operate in the same manner and will not increase the up-time or throughput for the No. 4 HDS.

- Implement the use of gasoline sulfur reducing (GSR) additive at one or both of the FCCUs, which will serve to reduce sulfur from the debutanized gasoline pool.

According to the application, construction on the No. 2 HDS upgrades are expected to

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3   Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

begin in November 2018, with startup of the modified No. 2 HDS to occur November 2019.

The November 5, 2018 application just addressed emissions increases associated with the physical modification to the No. 2 HDS, but did not address emissions increases associated with the replacement of the VFD for the No. 4 HDS, or the GSR additive in the FCCUs. The source submitted additional information on January 18 and 30, 2019 addressing emissions increases from these activities noted in the application.

According the January 18, 2019 submittal, the replacement of the VFD is considered a like-kind replacement and is not expected to increase emissions. The Division agrees.

Also in the January 18, 2019 submittal, the source estimated increased emissions from the SRUs due to the addition of GSR additives at the P1 and P2 FCCU, although they indicated that GSR additives are not expected to be used in the P1 FCCU. The January 30, 2019 submittal corrected a calculation error in the spreadsheet.

Existing emission units that are affected by this project, include the No. 2 HDS heaters (H-10 and H-22), the P1 and P2 SRUs, and the P1 boilers (B-4, B-6 and B-8). The source is not requesting a change to permitted emissions from any existing emissions unit. Fugitive VOC emissions from new piping components exceed the APEN and minor source permitting de minimis levels.

The increase in emissions from this project were based on the actual-to-projected-actual emissions test for existing equipment and actual-to-potential emissions for new equipment (piping components). Emission increases from this project are shown in the table below:

| Emission Unit | Emissions (tons/yr) | | | | | | |
|---|---|---|---|---|---|---|---|
| | CO | NOx | SO$_2$ | VOC | PM | PM$_{10}$ | PM$_{2.5}$ |
| **No. 2 HDS Heater (H-10)[1]** | | | | | | | |
| Baseline | 8.22 | 9.78 | 0.11 | 0.54 | 0.74 | 0.74 | 0.74 |
| Projected Actual Emissions (PAE) | 12.06 | 14.35 | 3.86 | 0.79 | 1.09 | 1.09 | 1.09 |
| Capable of Accommodating | 10.65 | 12.68 | 0.25 | 0.70 | 0.96 | 0.96 | 0.96 |
| Excludable[2] | 2.43 | 2.89 | 0.13 | 0.16 | 0.22 | 0.22 | 0.22 |
| Adjusted PAE[3] | 9.62 | 11.46 | 3.73 | 0.63 | 0.87 | 0.87 | 0.87 |
| **Emissions Increase[4]** | **1.41** | **1.67** | **3.62** | **0.09** | **0.13** | **0.13** | **0.13** |
| **No. 2 HDS Heater (H-19)[1]** | | | | | | | |
| Baseline | 3.51 | 5.12 | 0.05 | 0.23 | 0.32 | 0.32 | 0.32 |
| PAE | 5.15 | 7.50 | 1.84 | 0.34 | 0.47 | 0.47 | 0.47 |
| Capable of Accommodating | 4.28 | 6.24 | 0.09 | 0.28 | 0.39 | 0.39 | 0.39 |
| Excludable[2] | 0.77 | 1.13 | 0.04 | 0.05 | 0.07 | 0.07 | 0.07 |
| Adjusted PAE[3] | 4.38 | 6.38 | 1.80 | 0.29 | 0.40 | 0.40 | 0.40 |
| **Emissions Increase[4]** | **0.87** | **1.26** | **1.75** | **0.06** | **0.08** | **0.08** | **0.08** |
| **P1 SRUs, Tail Gas Unit (TGU) & TGU Incinerator (H-25)[1]** | | | | | | | |
| Baseline | 0.89 | 0.67 | 26.82 | 0.12 | 0.17 | 0.17 | 0.17 |
| PAE | 1.10 | 0.83 | 35.71 | 0.15 | 0.21 | 0.21 | 0.21 |
| Capable of Accommodating | 1.10 | 0.83 | 35.67 | 0.15 | 0.21 | 0.21 | 0.21 |
| Excludable[2] | 0.21 | 0.16 | 8.85 | 0.03 | 0.04 | 0.04 | 0.04 |

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3    Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

| Emission Unit | Emissions (tons/yr) | | | | | | |
|---|---|---|---|---|---|---|---|
| | CO | NOx | SO$_2$ | VOC | PM | PM$_{10}$ | PM$_{2.5}$ |
| Adjusted PAE[3] | 0.89 | 0.67 | 26.86 | 0.12 | 0.17 | 0.17 | 0.17 |
| **Emissions Increase[4]** | **0.00** | **0.00** | **0.04** | **0.00** | **0.00** | **0.00** | **0.00** |
| **P1 Boilers (B-4, B-6 and B-8)** | **0.18** | **0.57** | **0.09** | **0.02** | **0.02** | **0.02** | **0.02** |
| **P2 SRU** | -- | -- | **0.84** | -- | -- | -- | -- |
| **Fugitive VOCs from new components[5]** | -- | -- | -- | **1.14** | -- | -- | -- |
| | | | | | | | |
| **Total Emissions Increase (tpy)** | **2.45** | **3.51** | **6.33** | **1.31** | **0.23** | **0.23** | **0.23** |
| PSD/NANSR Significance Level (T5 Minor Mod Level)[6] | 100 | 40 | 40 | 40 | 25 | 15 | 10 |

[1]Not a modified emission unit and no increase in permit limits were requested. Increased emissions are from the projected increase in emissions due to increased utilization of equipment.

[2]Exludable emissions equal capable of accommodating minus baseline emissions

[3]Adjusted PAE is PAE minus excludable emissions

[4]Change in emissions (emissions increase) is adjusted PAE minus baseline or if PAE not adjusted, PAE minus baseline.

[5]New Equipment.

[6]Indicates the NANSR significance level on the date the complete minor modification application was submitted. Under the provisions of Colorado Regulation No. 3, Part X.I, a source is allowed to make the changes proposed in a complete minor modification application immediately after it is submitted (a construction permit is not required to construct or modify such source per Regulation 3, Part B, Section II.A.6). The area was classified as a serious ozone non-attainment area on January 27, 2020 and for minor modification applications submitted on and after that date, the significance level drops to 25 tons/yr of VOC or NOx.

Discussion

Except for the new piping components, the units affected by this modification are existing units. Therefore, the major stationary source applicability test is based on a comparison of baseline actual emissions (BAE) to projected actual emissions (PAE).

Emissions from the new piping components are based on the following emission factors and component counts:

| Component Type | No. of Components | Service | Emission Factor (lb/component/hr) | Control Efficiency[1] | Emission Factor Source | Emissions (lbs/yr)[2] |
|---|---|---|---|---|---|---|
| Valves | 64 | Light liquid | 0.02403 | 95% | "Protocol for Equipment Leak Emission Estimates", EPA-453/R-95-017, November 1995, Table 2-2 (emission factors) and Tables 5-1 and 5-3 (control efficiencies) | 673.6 [13,472] |
| | 14 | gaseous | 0.05908 | 96% | | 289.8 [7,245.6] |
| Flanges/ Connectors | 273 | Any | 0.00055 | 0% | | 1,317.7 |
| | | | | | | |
| Total (lbs/yr) | | | | | | 2,281.1 [22,035.3] |
| Total (tons/yr) | | | | | | 1.14 [11.0] |

[1]Control efficiencies are from the following sources. **Valves** - Table 5-3 of EPA's Protocol for Equipment Leaks (EPA-453/R-95-017) based on monitoring consistent with proposed HON NESHAP. During the review of a previous application, the Division reconsidered the control efficiency previously allowed for flanges and connectors. Although Colorado Reg 7 requires annual monitoring for flanges (per Section VIII.C.4.a.(i)(A)), the leak definition in Reg 7

---

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3   Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

(10,000 ppm) is higher than that in the HON NESHAP (500 ppm), thus the 81% control efficiency listed in Table 5-3 is not appropriate and no control efficiency was allowed for flanges. The Division would agree that some control may be appropriate for flanges due to annual monitoring, however, the source did not propose an alternative for this application. Note that NSPS GGGa includes similar monitoring for flanges/connectors as the HON NESHAP, however, these requirements have been stayed.

[2]Emissions in "[ ]" are uncontrolled. Note that the control efficiency, and subsequently controlled emissions are based on required monitoring.

BAE

Baseline actual emissions (BAE) are based on the period of January 1, 2012 through December 31, 2013. As specified in Colorado Regulation No. 3, Part D, Section II.A.4.b.(ii), BAE were adjusted downward to exclude non-compliant $SO_2$ emissions from the No. 1 and No. 2 SRU and the No. 2 HDS heaters (H-10 and H-19).

PAE

For the heaters, projected fuel consumption and heat input was estimated by increasing baseline fuel consumption and heat input by the ratio of the projected and baseline process rates, in bpd, for the No. 2 HDS. Projected emissions were based on the projected fuel and/or heat input and the emission factors included in the Title V permit. For $SO_2$ emissions, the $SO_2$ emission factor is based on the NSPS J $H_2S$ fuel limit (162 ppmv).

For the No. 1 and 2 SRU, projected actual emissions for all pollutants except $SO_2$ are based on the projected actual heat input rate for the tail gas incinerator (H-25) and the emission factors included in the Title V permit. The projected actual heat input rate is based on the maximum monthly heat input during the baseline period (August 2012) multiplied by 12 plus the incremental increase in heat input attributed to treating the additional throughput through the No. 2 HDS (3,000 bpd). Projected $SO_2$ emissions are based on the maximum monthly $SO_2$ emission rate during the baseline period (June 2012) multiplied by 12 plus the estimated incremental increase in $SO_2$ emissions due to treating the additional throughput through the No. 2 HDS (3,000 bpd), as well as using GSR additives in the P1 FCCU.

Adjustments for PAE

PAE may be adjusted downward to reflect emissions that the unit could have accommodated during the baseline period and that were unrelated to the project, including increased utilization due to demand growth.

Emissions that could have been accommodated were estimated for both the P1 SRU and the No. 2 HDS heaters (H-10 and H-19). For the P1 SRU, capable of accommodating for pollutants other than $SO_2$ were based on the maximum monthly heat input during the baseline period (August 2012) multiplied by 12 and the emission factors included in the Title V permit for those pollutants. $SO_2$ emissions are based on the maximum monthly $SO_2$ emission rate during the baseline period (June 2012) multiplied by 12. For heaters H-10 and H-19, emissions from all pollutants except $SO_2$ are based on the maximum monthly fuel consumption or heat input rate (March 2012 for H-10 and April 2013 for H-19) multiplied by 12 and the emission factors included in the Title V permit for those pollutants. $SO_2$ emissions are based on the maximum monthly $SO_2$ emission rate during the baseline period (January 2012 for both heaters) multiplied by 12.

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3    Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

Plant 1 Boilers and Plant 2 SRU

Incremental emissions were estimated from the boilers, due to the incremental increase in steam needed for the additional capacity for the No. 2 HDS. In addition, the incremental increase in $SO_2$ emissions from the Plant 2 SRU due to using GSR additives in the P2 FCCU was also included.

<u>Miscellaneous</u>

Colorado Regulation No. 3, Part D, Section I.B.4 specifies that the information submitted for the applicability analysis shall be included in an appendix of the Title V permit for sources that conduct the actual-to-projected actual test for a project that requires a minor permit modification under Colorado Regulation No.3, Part C, Section X. Regulation No. 3 requires that this information (i.e., the actual-to-projected-actual applicability test) be included in an appendix, presumably so that the Division can determine whether projected emissions predicted by the project are exceeded and pursue an investigation, if necessary, to determine if the increases above the projected level were caused by the project. Therefore, the applicability analysis will be included in an appendix of the permit.

<u>Modeling Requirements</u>

A modeling analysis is generally conducted based on requested (permitted) emissions, thus a modeling analysis would be triggered based on the change in permitted emissions. Because there are no increase in permitted emissions, modeling is not warranted.

<u>Revisions to Permit</u>

The following changes were made to the permit to address this modification application:

<u>Section I – General Activities and Summary</u>

- The following changes were made to the table in Condition 5.1:

  o Included the capacity of the No. 2 HDS and a description of the streams processed through it. No. 2 HDS information is included in the table with the heater descriptions (H-10 and H-19).

  o Included the fugitive VOC emissions from this project (F206).

<u>Section II.34 – Fugitive VOC Equipment Leaks with Permitted Emissions</u>

- Added emission limits and requirements for equipment leaks associated with this project.

<u>Section II.47 – 40 CFR Part 60 Subpart GGGa (NSPS GGGa)</u>

- Added F206 (equipment leaks associated with this project) to the list of sources subject to these requirements.

<u>Section II.53 – 40 CFR Part 63 Subpart CC (MACT CC)</u>

- Noted in Condition 53.43.2 that equipment leaks associated with this project (F206) fall under the overlap provisions for equipment leaks in 63.640(p)(2) (sources

subject to NSPS GGGa only have to comply with NSPS GGGa).

Appendices

- Added fugitive VOC emissions from this project (F206) to the tables in Appendices B and C.

- Added the applicability analysis to Appendix K.

## 1.12 December 11, 2018 (additional information submittal) – Fluid Catalytic Cracking Unit (FCCU) resid jumper project

The purpose of the December 11, 2018 submittal is to install a piping jumper to route vacuum resid from the No.1 crude unit to the Plant 1 FCCU feed drum. The source has indicated that this change is necessary in order to meet the PM and opacity requirements for FCCUs in MACT UUU. The December 11, 2018 submittal was submitted as a minor modification but the source indicated in the application that no permit revisions were necessary. The submittal indicates that the source expects to begin construction and operation by December 2018.

The Division reviewed the information in the December 11, 2018 submittal and made comments on the calculations and assumptions used in the December 11, 2018 application. Reponses to the comments and revised calculations were submitted via email on May 21 and August 12, 2019.

The increase in emissions from this project were based on the actual-to-projected-actual emissions test for existing equipment and actual-to-potential emissions for new equipment (piping components). The following items are important to note regarding this application:

- This project is expected to increase FCCU throughput (973 bpd) during three months (90 days) in the winter. The addition of resid feed to the P1 FCCU is expected to increase distillate products produced (1,963 bpd, diesel and/or jet fuel). Additional affected process units include the No. 4 HDS, the SRUs and the $H_2$ plant.

- Affected existing emission units include the FCCU, FCCU heater (H-22), the No. 4 HDS heaters (H1716 and H-1717), $H_2$ plant heater (H-2101), P1 boilers (B-4, B-6, and B-8), P1 truck loading rack and tanks T-74 and T-94.

- Increased utilization for the FCCU, FCCU heater (H-22) and additional steam demand for the FCCU are anticipated to occur for three months (90 days) in the winter. Increased utilization for the No. 4 HDS heaters (H1716 and H-1717), steam demand for the No. 4 HDS, $H_2$ plant heater (H-2101), P1 truck loading rack and tanks T-74 and T-94 are anticipated to occur year round (365 days).

- Projected actual emissions for tank T-94 exceed permitted emissions, however, the source did not request an increase in permitted emissions for tank T-94. The source indicates that although the entire expected increase in jet fuel was presumed to go through tank T-94, it is unlikely that this will occur (jet fuel may be routed to other tanks).

- Baseline period is January 1, 2016 through December 31, 2017. Baseline actual

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3   Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

emissions were adjusted downward for the FCCU regenerator, heaters (H-22, H-1716 and H-1717) and SRUs for non-compliant emissions. Baseline emissions were adjusted downward for the P1 truck rack to reflect the MACT CC limit (10 mg/l) for gasoline loading, since the emission calculation method listed in the permit estimates emissions above that level.

- The expected emissions increase from the P1 FCCU resid jumper project are included in the table below:

| Emission Unit | Emissions (tons/yr) | | | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- |
| | CO | NOx | SO$_2$ | VOC | PM[1] | PM$_{10}$[2] | PM$_{2.5}$[2] |
| **P1 FCCU (P103)[3]** | | | | | | | |
| Baseline | 5.83 | 48.51 | 25.11 | 24.56 | 55.81 | 76.75 | 75.11 |
| Projected Actual Emissions (PAE) | 20.46 | 94.93 | 47.31 | 29.41 | 75.79 | 104.22 | 101.99 |
| Capable of Accommodating | 20.23 | 93.87 | 46.78 | 29.08 | 74.95 | 103.06 | 100.86 |
| Excludable[4] | 14.40 | 45.37 | 21.67 | 4.51 | 19.13 | 26.31 | 25.75 |
| Adjusted PAE[5] | 6.05 | 49.56 | 25.64 | 24.89 | 56.66 | 77.91 | 76.25 |
| **Emissions Increase[6]** | **0.23** | **1.06** | **0.53** | **0.33** | **0.84** | **1.16** | **1.14** |
| **P1 FCCU Heater (H-22)[3]** | | | | | | | |
| Baseline | 9.82 | 11.69 | 0.21 | 0.64 | 0.89 | 0.89 | 0.89 |
| PAE | 13.11 | 15.61 | 0.44 | 0.86 | 1.19 | 1.19 | 1.19 |
| Capable of Accommodating | 12.96 | 15.43 | 0.43 | 0.85 | 1.17 | 1.17 | 1.17 |
| Excludable[4] | 3.14 | 3.74 | 0.22 | 0.21 | 0.28 | 0.28 | 0.28 |
| Adjusted PAE[5] | 9.97 | 11.86 | 0.22 | 0.65 | 0.90 | 0.90 | 0.90 |
| **Emissions Increase[6]** | **0.15** | **0.17** | **0.00** | **0.01** | **0.01** | **0.01** | **0.01** |
| **No. 4 HDS Heaters (H-1716 & H-1717)[3]** | | | | | | | |
| Baseline | 6.13 | 4.60 | 0.36 | 0.83 | 1.14 | 1.14 | 1.14 |
| PAE | 8.68 | 6.51 | 0.99 | 1.17 | 1.62 | 1.62 | 1.62 |
| Capable of Accommodating | 8.08 | 6.06 | 0.92 | 1.09 | 1.51 | 1.51 | 1.51 |
| Excludable[4] | 1.95 | 1.47 | 0.57 | 0.26 | 0.36 | 0.36 | 0.36 |
| Adjusted PAE[5] | 6.73 | 5.05 | 0.42 | 0.91 | 1.25 | 1.25 | 1.25 |
| **Emissions Increase [6]** | **0.60** | **0.45** | **0.07** | **0.08** | **0.11** | **0.11** | **0.11** |
| **SRUs, TGU & TGU Incinerator (H-25)[3]** | | | | | | | |
| Baseline | 0.90 | 0.67 | 18.31 | 0.12 | 0.17 | 0.17 | 0.17 |
| PAE | 1.16 | 0.87 | 29.11 | 0.16 | 0.22 | 0.22 | 0.22 |
| Capable of Accommodating | 1.14 | 0.85 | 28.61 | 0.15 | 0.21 | 0.21 | 0.21 |
| Excludable[4] | 0.24 | 0.18 | 10.31 | 0.03 | 0.05 | 0.05 | 0.05 |
| Adjusted PAE[5] | 0.92 | 0.69 | 18.81 | 0.12 | 0.17 | 0.17 | 0.17 |
| **Emissions Increase[6]** | **0.02** | **0.02** | **0.50** | **0.00** | **0.00** | **0.00** | **0.00** |
| **Tank T-74[3]** | | | | | | | |
| Baseline | -- | -- | -- | 0.50 | -- | -- | -- |
| PAE | -- | -- | -- | 0.68 | -- | -- | -- |
| **Emissions Increase[6]** | **--** | **--** | **--** | **0.18** | **--** | **--** | **--** |
| **Tank T-94[3]** | | | | | | | |
| Baseline | -- | -- | -- | 0.85 | -- | -- | -- |
| PAE | -- | -- | -- | 1.65 | -- | -- | -- |
| **Emissions Increase[6]** | **--** | **--** | **--** | **0.81** | **--** | **--** | **--** |
| **P1 Truck Rack (R102)[3]** | | | | | | | |
| Baseline | 16.38 | 3.59 | 0.06 | 19.48 | 0.39 | 0.39 | 0.39 |

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3   Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

| Emission Unit | Emissions (tons/yr) | | | | | | |
|---|---|---|---|---|---|---|---|
| | CO | NOx | SO$_2$ | VOC | PM[1] | PM$_{10}$[2] | PM$_{2.5}$[2] |
| PAE | 19.32 | 4.24 | 0.06 | 23.00 | 0.46 | 0.46 | 0.46 |
| Capable of Accommodating | 19.32 | 4.24 | 0.06 | 23.00 | 0.46 | 0.46 | 0.46 |
| Excludable[4] | 2.94 | 0.64 | 0.00 | 3.52 | 0.07 | 0.07 | 0.07 |
| Adjusted PAE[5] | 16.38 | 3.59 | 0.06 | 19.49 | 0.39 | 0.39 | 0.39 |
| **Emissions Increase[6]** | **0.00** | **0.00** | **0.00** | **0.00** | **0.00** | **0.00** | **0.00** |
| **Fugitive VOCs from new components[7]** | **--** | **--** | **--** | **0.03** | **--** | **--** | **--** |
| **P1 Boilers (B-4, B-6 & B-8) [3]** | **0.19** | **0.60** | **0.10** | **0.02** | **0.03** | **0.03** | **0.03** |
| **H$_2$ Plant Heater (H-2101)[3]** | **0.09** | **2.00** | **0.04** | **0.22** | **0.31** | **0.31** | **0.31** |
| | | | | | | | |
| **Total Emissions Increase** | **1.27** | **4.29** | **1.23** | **1.68** | **1.31** | **1.62** | **1.60** |
| PSD/NANSR Significance Level (T5 Minor Mod Level)[8] | 100 | 40 | 40 | 40 | 25 | 15 | 10 |

[1]Condensable PM is not included for purposes of PSD/NANSR applicability for the FCCU (not required, see footnote 2). PM emissions from fuel burning equipment includes condensable PM.

[2]Includes filterable plus condensable particulate matter. Per Reg 3, Part D, Section II.A.40.g condensable PM is included in PM$_{10}$ and PM$_{2.5}$ for purposes of PSD/NANSR applicability.

[3]Not a modified emission unit and no increase in permit limits were requested. Increased emissions are from the projected increase in emissions due to increased utilization of equipment.

[4]Exludable emissions equal capable of accommodating minus baseline emissions

[5]Adjusted PAE is PAE minus excludable emissions

[6]Change in emissions (emissions increase) is adjusted PAE minus baseline or if PAE not adjusted, PAE minus baseline.

[7]New Equipment.

[8]Indicates the NANSR significance level on the date the information was submitted. This submittal did not require a permit revision thus the source was not required to submit the applicability test (see Colorado Regulation No. 3, Part D, Section I.B.4). Sources that conduct an actual-to-projected-actual applicability test for a project that is not part of a major modification are required to document and maintain information related to the project as set forth in Colorado Regulation No. 3, Part D, Sections V.A.7.c.(i) and VI.B.5.a. The area was classifed as a serious ozone non-attainment area on January 27, 2020 and beginning on that date, the significance level drops to 25 tons/yr of VOC or NO$_X$.

Since emissions from the new components are less than the APEN de minimis level (1 ton/yr of VOC) and there were no requested changes to the emission or throughput limits for existing equipment associated with this project, no changes to the permit were necessary.

Colorado Regulation No. 3, Part D, Section I.B.4 specifies that the information submitted for the applicability analysis shall be included in an appendix of the Title V permit for sources that conduct the actual-to-projected actual test for a project that requires a minor permit modification under Colorado Regulation No.3, Part C, Section X. Although the source submitted this application as a minor permit modification, no permit revisions are necessary, therefore, the applicability analysis for this project will not be included in an appendix of the Title V permit.

Although the applicability analysis will not be included in an appendix of the Title V permit, the source is subject to monitoring and reporting requirements for projects that are not part of a major modification and for which the actual-to-projected-actual applicability test was used. These monitoring and reporting requirements are found in Colorado Regulation No. 3, Part D, Sections V.A.7.c and VI.B.5, which are included in the General Permit Conditions (Section IV, Condition 24 of the Title V permit).

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3   Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

Modeling Requirements

A modeling analysis is generally conducted based on requested (permitted) emissions, thus a modeling analysis would be triggered based on the change in permitted emissions. Because there are no increase in permitted emissions, modeling is not warranted.

Revisions to Permit

As discussed previously, no revisions to the permit were necessary for this submittal. The project and the emissions increases have been discussed in this document for informational purposes.

## 1.13    February 20 and October 2, 2019 (administrative amendments) and October 3, 2019 and August 27, 2020 (additional information submittal) – Replace blowers for AIRS pt 634, zones 3 and 4 and AIRS pt 615

The purpose of the February 2 and October 2, 2019 modifications is to replace two blowers for one of the remediation systems (AIRS pt 634, zones 3 and 4). The replacement blowers are similar, same manufacturer but different model numbers and each has a slightly higher flow rate (850 scfm vs. 800 scfm). The application notes that there will be a nominal increase in emissions with the higher throughput rate on the new blowers but no change in the emission limit is necessary.

The October 3, 2019 and August 27, 2020 submittals include APENs for blower replacements for two of the remediation systems (AIRS pt 615 and 634). Under the provisions in Section II, Condition 67.6.4, blowers can be replaced without a permit modification, provided the replacement blower is less than or equal to the capacity of the blower it is replacing. These blower replacements met that criteria and as required by Condition 67.6.4 APENs were submitted to provide the manufacturer, model and serial number of the blowers.

In addition, the August 27, 2020 APEN fixed some incorrect Model No. information that had been previously submitted for the AIRS pt 634 blowers in the February 20 and October 2, 2019 submittals.

Modification Type

The AIRS pt 634 replacement blowers are similar to the existing blowers, serve the same purpose and utilizes the same control devices, although the replacement units have a slightly higher capacity. No changes are necessary to emission limits. The only changes to the permit necessary are the model and serial number of the blowers and the blower capacity. The blower serial numbers are listed in Section I, Condition 5.2 (table) and the blower capacity is listed in Section I, Condition 5.2 (table) and Section II, Condition 67.6.2. The Division considers these changes are minor administrative changes and thus considers that the February 20 and October 2, 2019 modifications qualify as an administrative amendments and the source submitted the applications as administrative amendments.

Revisions to Permit

The following changes were made to the permit to address this modification application:

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3    Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

Section I – General Activities and Summary

• Revised the blower information for AIRS pts 634 and 615 in the Table in Condition 5.2.

Section II.67 – Sand Creek Remediation Project – AS/SVE and AS Systems

• Revised the blower capacity for AIRS pt 634 in Condition 67.6.2.

**1.14    May 30, 2019 (minor modification) – New Sand Creek air sparge/soil vapor extraction (AS/SVE) system**

The purpose of the May 30, 2019 modification is to construct a new AS/SVE system along the northwestern property boundary, east of the Burlington Ditch (referred to as "East Burlington Ditch AS/SVE"). The purpose of the new AS/SVE system is to enhance the remediation efforts in order to mitigate the movement of subsurface contamination to off-property locations.

The new AS/SVE system is to have two zones on Suncor property and two zones on Metro Wastewater property. Two air sparge compressor systems will inject air into a system of four horizontal wells. Soil vapors will be extracted by two blowers, each rated at 650 scfm and vapors from each blower will be routed to four carbon canisters (two sets of two canisters in series).

The new AS/SVE systems will be constructed from the AS/SVE systems for AIRS pts 621 and 622 (same blowers and same naming convention for the carbon canisters). According to the application, the AIRS pts 621 and 622 AS/SVE systems have not been operating since December 2017. APEN cancellation forms were submitted for AIRS pts 621 and 622 on July 10, 2019.

Modification Type

The source indicated that this modification would qualify as a minor modification.

Colorado Regulation No. 3, Part C, Section X.A identifies those modifications that can be processed under the minor permit modification procedures. Specifically, minor permit modifications "do not require or change a case-by-case determination of an emission limitation or other standard" and "are not otherwise required by the Division to be processed as a significant modification" (Colorado Regulation No. 3, Part C, Section X.A.3 and 6).

The Division considers that permit modifications that "require or change a case-by-case determination of an emission limitation or standard" (Regulation No. 3, Part C, Section X.A.3) can include modifications that establish and/or change RACT, BACT, LAER and/or BART limitations or standards. The definition of RACT in Colorado's Common Provisions regulation describes RACT as a technology that will achieve the maximum degree of emission control and that is reasonably available (technologically and economically feasible). Based on the definition, RACT is a technology which implies that in most cases, it does not include a "case-by-case determination of an emission limitation or other standard". However, there are situations where an emission limitation or standard may be set in conjunction with a RACT determination. Generally, the Division considers that a RACT determination that requires an add-on control device

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3    Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

could not be processed as a minor modification. However, in this situation the Division considers that RACT has been pre-established for other AS/SVE systems associated with the Sand Creek Remediation Project. Typically the Division considers that pre-established RACT includes requirements in Colorado Regulation No. 7. However, in this case the new AS/SVE will be equipped with carbon canisters as are the majority of the Sand Creek Remediation Project AS/SVE systems included in the current Title V permit (last revised February 22, 2018). Therefore, the Division considers that RACT for the Sand Creek Remediation Project AS/SVE systems has been pre-established in the Title V permit. Therefore the Division agrees that this modification can be processed as a minor modification.

Specifically, minor permit modifications "are not otherwise required by the Division to be processed as a significant modification" (Colorado Regulation No. 3, Part C, Section X.A.6). The Division requires that "any change that causes a significant increase in emissions" be processed as a significant modification (Colorado Regulation No. 3, Part C, Section I.A.7.a).  According to Part F of Regulation No. 3 (Section I.L, revisions adopted July 15, 1993, Subsection I.G for modifications) the Division considers that a significant increase in emissions is the potential to emit above the major stationary source significant level in Colorado Regulation No. 3, Part D, Section II.A.44.

Since this is a new, unpermitted SVE system, potential to emit is based on uncontrolled emissions and as indicated in the table below, both uncontrolled and controlled VOC emissions are below the significance level:

| Pollutant | Emissions (tons/yr)[1] | | PSD/NANSR Significance Level (T5 Minor Mod Level)[2] |
|---|---|---|---|
| | Uncontrolled | Controlled | |
| VOC | 30.59 | 0.61 | 40 tons/yr |

[1]Emissions are based on the measured VOC concentration (500 ppm), the total blower design rate (1300 scfm) and 8760 hours per year of operation. Controlled emissions are based a control efficiency of 98% for two carbon canisters in series.

[2]Indicates the NANSR significance level on the date the complete minor modification application was submitted. Under the provisions of Colorado Regulation No. 3, Part X.I, a source is allowed to make the changes proposed in a complete minor modification application immediately after it is submitted (a construction permit is not required to construct or modify such source per Regulation 3, Part B, Section II.A.6). The area was classified as a serious ozone non-attainment area on January 27, 2020 and for minor modification applications submitted on and after that date, the significance level drops to 25 tons/yr of VOC or $NO_X$.

<u>Discussion</u>

Although the East Burlington Ditch AS/SVE system is being permitted well after the initial remediation equipment was permitted, the provisions related to the Sand Creek remediation equipment still apply, including provisions to keep emissions from the remediation project below the significance level. To that end, the limit on VOC emissions from insignificant activities and provisions for relaxing emissions in Section II.69 would still apply.

The limit for insignificant activities has been revised to reflect permitted emissions from the remediation equipment as a result of this modification, which includes the removal of the AIRS pt 621 and 622 AS/SVE systems and the addition of the East Burlington Ditch AS/SVE. The limit was set in the same manner as discussed in the TRD (page 24) for the February 1, 2016 revised Title V permit. Specifically, VOC emissions from insignificant activities are based on 39.9 tons per year minus permitted VOC emissions.

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3    Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

With the removal of the AIRS pts 621 and 622 AS/SVE systems and the addition of the East Burlington Ditch AS/SVE system, permitted VOC emissions from the AS/SVE and AS systems, the tanks and tank loading is 27.69 tons/yr. Therefore VOC emissions from insignificant activities associated with the Sand Creek Remediation Project is 12.2 tons/yr.

<u>Revisions to Permit</u>

The following changes were made to the permit to address this modification application:

<u>Section I – General Activities and Summary</u>

- Included the new AS/SVE system info (East Burlington Ditch, AIRS pt 638) and removed the AIRs pt 621 and 622 AS/SVE systems from the tables in Conditions 5.1 and 5.2.

<u>Section II.67 – Sand Creek Remediation Project – AS/SVE and AS Systems</u>

- Removed the AIRS pts 621 and 622 AS/SVE systems and added the East Burlington Ditch (AIRS pt 638) to the list under the Section II.67.

- Revised Condition 67.1 to remove the emission limits for AIRS pts 621 and 622 and add the emission limit for the East Burlington Ditch system (AIRS pt 638).

- Revised Condition 67.6.2 to remove the AIRs pts 621 and 622 system information and add the East Burlington Ditch system (AIRS pt 638) system information.

<u>Section II.69 – Sand Creek Remediation Project – Project Wide Requirements</u>

- Revised the VOC emission limit for insignificant activities in Condition 69.1 to take into account changes to permitted VOC emissions.

- Revised the table in Condition 69.2 to remove AIRS pts 621 and 622, add AIRS pt 638 (East Burlington Ditch) and reflect current permitted VOC emissions of 27.7 tpy of VOC.

<u>Appendices B and C</u>

- Included the new AS/SVE system info (East Burlington Ditch, AIRS pt 638) and removed the AIRs pt 621 and 622 AS/SVE systems from the tables.

## 1.15    June 4, 2019 (significant modification) – Ethanol unloading at Plant 1 rail rack VCU

The purpose of this modification is to route vapors from depressurizing ethanol rail cars after unloading to the Plant 1 rail rack VCU.

On December 26, 2017, the Division received an application to permit ethanol emissions from rail car unloading at Plant 1. The application indicated that rail cars used to transport denatured ethanol are equipped with submerged fill pipes, that extend towards the bottom of the rail car. These fill pipes are also used to pump liquid out of the rail car. The unloaded ethanol is transferred to either Tanks 116 or 72878. The rail cars are pressurized with nitrogen ($N_2$) prior to unloading in order to push the ethanol up the submerged fill pipe in order to prevent loss of suction of the pumps used to transfer liquid to the respective storage tanks. After the ethanol is unloaded, the rail cars are

depressurized ($N_2$ is purged) and the $N_2$, along with entrained ethanol, is vented to atmosphere. The Division noted a number deficiencies in the initial application, including a required RACT analysis, and directed the source to address all the concerns in a single application and request cancellation of the December 26, 2017 application. As directed, the source submitted an application on June 4, 2019 to route vapors from depressurizing ethanol rail cars and requested that the December 26, 2017 modification application be cancelled.

In addition to routing vapors from ethanol railcar depressurization, the source has requested additional changes to the Plant 1 rail rack, including"

- Re-permitting VOC emissions based on a 98% control efficiency for the VCU,
- Revising the throughput limits for assist gas.
- Revising the $NO_X$ emission factor to reflect the performance test.

The Division received responses to questions regarding the application on August 16, 2019.

<u>Modification Type</u>

The application was submitted as a minor modification, however as discussed below it does not qualify as a minor modification.

Colorado Regulation No. 3, Part C, Section X.A identifies those modifications that can be processed under the minor permit modification procedures. Specifically, minor permit modifications "are not otherwise required by the Division to be processed as a significant modification" (Colorado Regulation No. 3, Part C, Section X.A.6). The Division requires that "any change that causes a significant increase in emissions" be processed as a significant modification (Colorado Regulation No. 3, Part C, Section I.A.7.a). According to Part F of Regulation No. 3 (Section I.L, revisions adopted July 15, 1993, Subsection I.G for modifications) the Division considers that a significant increase in emissions is the potential to emit above the major stationary source significant level in Colorado Regulation No. 3, Part D, Section II.A.44. As indicated in the table below, the change in permitted (requested) emissions are below the significance level. Note that since requested emissions are below the significance level, it was not necessary to conduct the applicability analysis (actual to projected-actual test), although the source did include such an analysis in their application.

| Change in **Permitted** (Requested) Emissions from Plant 1 Rail Rack VCU | | | | | |
|---|---|---|---|---|---|
| | PM/PM$_{10}$/PM$_{2.5}$ | SO$_2$ | NO$_X$ | CO | VOC |
| Requested Emissions | 0.23 | 0.01 | 5.53 | 15.1 | 12.5 |
| Current Emissions[1] | 0.24 | 0.02 | 4.6 | 15.4 | 21.3 |
| Change in Emissions | -0.01 | -0.01 | 0.93 | -0.3 | -8.8 |
| New Piping Components[2] | | | | | 0.41 |
| **Total** | **-0.01** | **-0.01** | **0.93** | **-0.3** | **-8.39** |
| PSD/NANSR Significance Level (T5 Minor Mod Level)[3] | 25/15/10 | 40 | 25 | 100 | 25 |

[1]Based on requested emissions from June 14, 2018 modification application discussed in Section III.1.1.9 of this document.

[2]As indicated later in this section, since emissions from new piping components are below the APEN de minimis level, an emission limit for these components will not be included in the permit.

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3   Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

[3]Indicates the NANSR significance level on the date the complete minor modification application was submitted. Under the provisions of Colorado Regulation No. 3, Part X.I, a source is allowed to make the changes proposed in a complete minor modification application immediately after it is submitted (a construction permit is not required to construct or modify such source per Regulation 3, Part B, Section II.A.6). The area was classified as a serious ozone non-attainment area on January 27, 2020 and for minor modification applications submitted on and after that date, the significance level drops to 25 tons/yr of VOC or $NO_X$.

In addition, minor permit modifications "do not require or change a case-by-case determination of an emission limitation or other standard" and "are not otherwise required by the Division to be processed as a significant modification" (Colorado Regulation No. 3, Part C, Section X.A.3 and 6).

The Division considers that permit modifications that "require or change a case-by-case determination of an emission limitation or standard" (Regulation No. 3, Part C, Section X.A.3) can include modifications that establish and/or change RACT, BACT, LAER and/or BART limitations or standards. The definition of RACT in Colorado's Common Provisions regulation describes RACT as a technology that will achieve the maximum degree of emission control and that is reasonably available (technologically and economically feasible). Based on the definition, RACT is a technology which implies that in most cases, it does not include a "case-by-case determination of an emission limitation or other standard". However, there are situations where an emission limitation or standard may be set in conjunction with a RACT determination. Generally, the Division considers that a RACT determination that requires an add-on control device could not be processed as a minor modification. Since RACT for depressurizing ethanol rail cars was determined to be use of the VCU, this application does not qualify as a minor modification and thus was considered a significant modification.

Modeling Requirements

A modeling analysis is generally conducted based on requested (permitted) emissions, thus a modeling analysis would be triggered based on the change in permitted emissions.

There is a decrease permitted VOC emissions (8.39 tons/yr) and a slight increase in $NO_X$ emissions (0.93 tons/yr). Although VOC is a precursor for ozone, in general accurate and cost effective methods for modeling ozone impacts from stationary sources are not available. Therefore, individual source ozone modeling is not routinely requested for permit modifications and would not be in the case, given the decrease in VOC emissions.

For all other pollutants, there is no increase in permitted emissions. The increase in $NO_X$ emission is well below the annual threshold (40 tons/yr) and when annualized (0.21 lbs/hr), is below the short-term threshold (0.46 lbs/hr) in the Division's May 2018 draft Modeling Guideline, thus modeling is not warranted.

Discussion

Except for new piping components, the unit affected by this modification, the Plant 1 rail rack, is an existing emission unit. Therefore the major stationary source applicability test is based on a comparison of baseline actual emissions (BAE) to projected actual emissions (PAE).

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3   Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

Emissions from the new piping components are based on the following emission factors and component counts.

| Component Type | No. of Components | Service | Emission Factor (lb/component/hr) | Control Efficiency[1] | Emission Factor Source | Emissions (lbs/yr)[2] |
|---|---|---|---|---|---|---|
| Valves | 27 | gaseous | 0.05908 | 96% | "Protocol for Equipment Leak Emission Estimates", EPA-453/R-95-017, November 1995, Table 2-2 (emission factors) and Table 5-3 (control efficiencies) | 559 [13,974] |
| Flanges/ Connectors | 54 | Any | 0.00055 | 0% | | 261 |
| | | | | | | |
| Total (lbs/yr) | | | | | | 820 [14,235] |
| Total (tons/yr) | | | | | | 0.41 [7.12] |

[1]Control efficiencies are from the following sources. **Valves** - Table 5-3 of EPA's Protocol for Equipment Leaks (EPA-453/R-95-017) based on monitoring consistent with proposed HON NESHAP. During the review of a previous application, the Division reconsidered the control efficiency previously allowed for flanges and connectors. Although Colorado Reg 7 requires annual monitoring for flanges (per Section VIII.C.4.a.(i)(A)), the leak definition in Reg 7 (10,000 ppm) is higher than that in the HON NESHAP (500 ppm), thus the 81% control efficiency listed in Table 5-3 is not appropriate and no control efficiency was allowed for flanges. The Division would agree that some control may be appropriate for flanges due to annual monitoring, however, the source did not propose an alternative for this application. Note that NSPS GGGa includes similar monitoring for flanges/connectors as the HON NESHAP, however, these requirements have been stayed.

[2]Emissions in "[ ]" are uncontrolled. Note that the control efficiency, and subsequently controlled emissions are based on required monitoring.

As discussed previously, since requested emissions from the Plant 1 rail rack VCU and the piping components are below the significance level, an applicability test was not necessary but was included in the application.

The baseline period used in the analysis was January 1, 2015 through December 31, 2016, which is the same as the June 14, 2018 application to replace the flare with the VCU.

Baseline actual emissions were estimated using the same methods in the June 14, 2018 modification application (Section III.1.1.9). Except for depressurizing rail cars, projected actual emissions were calculated using the same methods as described in the June 14, 2018 modification application except that a 98% control efficiency was relied upon for the VCU.

The source used the HYSYS model to estimate emissions from depressurizing rail cars after ethanol is unloaded and developed seasonal emission factors from the HYSYS data. The ethanol is denatured with natural gasoline, either at 1.9% or up to 3% by volume. In order to estimate emission factors, the source conducted 82 runs for each season – 41 cases with 1.9% natural gasoline and 41 case with 3.0% natural gasoline. Within each of the 41 cases, there was 1 case with the average concentration of all constituents and then 2 cases for each component listed at the minimum and maximum concentration. The maximum VOC emission rate (lb/rail car) for each season was used as the emission factor to estimate projected actual emissions.

Revisions to Permit

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3   Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

The following changes were made to the permit to address this modification application:

Section II.24 – Plant 1 rail loading rack and enclosed VCU (R101)

- Revised the emission limits in Condition 24.1 and the emission calculation methodology to change the $NO_X$ emission factor and rely on 98% control for the VCU. In addition, added language to calculate emissions from depressurizing ethanol rail cars after loading.

- Revised the language in Condition 24.4. (RACT) to address RACT for depressurizing ethanol rail cars.

- Included "new" Condition 24.12 to require that performance tests be conducted every five years to verify compliance with the MACT CC limit, as well as the 98% control efficiency. This is consistent with the Plant 2 permit which required ongoing performance testing for the Plant 2 truck rack vapor combustion unit.

Section II.46 – 40 CFR Part 60 Subpart Ja

- Added language to Condition 46.15 indicating that an exemption for the sulfur monitoring requirements was submitted for the VCU on September 5, 2018.

## 1.16  October 2, 2019 (minor modification) – Replace emergency air compressor engines

The purpose of this modification is to replace the existing diesel fuel-fired emergency air compressor engines with two new diesel fuel-fired emergency air compressor engines. The emergency air compressors are connected to the Plant 1 instrument air supply system. During normal operations, the engine are not used. If the refinery were to lose air pressure in the instrument air system, the engines will automatically turn on and supply the required amount of air pressure in order to prevent or minimize any unplanned shutdowns.

The existing engines are 575 hp engines that meet Tier 3 requirements, while the new engines are 525 hp engines that meet Tier 4 final requirements. Both the existing and new engines are subject to the requirements in 40 CFR Part 60 Subpart IIII and emergency engines of this size are only required to comply with Tier 3 requirements. Therefore emissions were estimated using the Tier 3 NSPS requirements for $NO_X$, CO and PM, the fuel sulfur limit of 15 ppm S and AP-42 emission factors for VOC.

Potential to emit for the emergency air compressor engines were estimated based on 500 hours per year of operation (in accordance with the September 6, 1995 EPA Memo, "Calculating Potential to Emit (PTE) for Emergency Generators") and are shown in the table below. Note that although the September 6, 1995 EPA memo addresses emergency generators, the Division considers that the provisions in this memo (PTE based on 500 hours per year) are applicable to any emergency engine.

| Scenario | $NO_X$ | CO | VOC | PM/PM$_{10}$/PM$_{2.5}$[1] | SO$_2$ |
|---|---|---|---|---|---|
| Emission Factor[2] (g/kW-hr) | 4.0 | 3.5 | | 0.20 | |
| Emission Factor (lb/Mgal)[3,] | | | | | 0.21 |

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3   Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

| Scenario | $NO_X$ | CO | VOC | $PM/PM_{10}/$ $PM_{2.5}$[1] | $SO_2$ |
|---|---|---|---|---|---|
| Emission Factor (lb/hp-hr)[4] | | | $2.5 \times 10^{-3}$ | | |
| Emissions (lb/hr) for one engine[5, 6] | 3.45 | 3.02 | 1.31 | 0.17 | $5.25 \times 10^{-3}$ |
| Emissions (tons/yr) at 500 hrs/yr for one engine[5, 6] | 0.86 | 0.76 | 0.33 | 0.09 | $1.31 \times 10^{-3}$ |
| Emissions (tons/yr) at 500 hrs/yr for both engines[5, 6] | 1.72 | 1.52 | 0.66 | 0.08 | $2.62 \times 10^{-3}$ |
| PSD/NANSR significance level (T5 Minor Mod Level)[7] | 40 | 100 | 40 | 25/15/10 | 40 |

[1]$PM = PM_{10} = PM_{2.5}$

[2] Emission factors are NSPS Subpart IIII limitations for emergency engines (Tier 3 requirements). Although the engines meet Tier 4 final requirements, the Tier 3 requirements were used as these engines are being permitted as emergency engines and avoid other requirements by being classified as such. The NSPS $NO_X$ limit is actually for non-methane hydrocarbons and $NO_X$ so it is conservative to consider this as an emission factor for $NO_X$ only.

[3]$SO_2$ emission factor based on 15 ppm S in fuel limit from NSPS Subpart IIII and fuel density of 7.05 lb/gal.

[4]VOC emission factors from AP-42, Section 3.3 (dated  10/96), Table 3.3-1 (TOC exhaust plus crankcase).

[5]Emissions from each engine are based on maximum design rates: 525 hp, 391.4 kW and 25 gal/hr.

[6]The engines are identical.

[7]Indicates the NANSR significance level on the date the complete minor modification application was submitted. Under the provisions of Colorado Regulation No. 3, Part X.I, a source is allowed to make the changes proposed in a complete minor modification application immediately after it is submitted (a construction permit is not required to construct or modify such source per Regulation 3, Part B, Section II.A.6). The area was classified as a serious ozone non-attainment area on January 27, 2020 and for minor modification applications submitted on and after that date, the significance level drops to 25 tons/yr of VOC or $NO_X$.

Emission units with actual, uncontrolled emissions below the APEN de minimis level (1 tpy of $NO_X$) are not required to file an APEN. Since potential emissions from each engine are below 1 tpy of $NO_X$, APENs are not required for these engines. Additionally, these engines are considered exempt from Colorado Regulation No. 3, Part B, construction permitting requirements, per Section II.D.1.a., and thus do not require a NAAQS modeling compliance demonstration under Section III.D.1.

In an email received February 3, 2020, the source submitted cancellation notices for the previous engines (AIRs pt 151 & 152) and indicated that the new emergency air compressors commenced operation on January 28, 2020. The source indicated that the new emergency air compressors were brought on site on January 28, 2020.

Regulatory Analysis

The new emergency air compressor engines are subject to the same requirements as the previous engines that are included in the current permit (last revised February 22, 2018). The current permit did not include the Regulation No. 7 requirements in Sections XVI.D or XIX.A that applied to the existing emergency air compressor engines.

As indicated in the Regulation No. 7 discussion in Section II.3 of this document, the requirements in Section XIX.A applied specifically the engines in AIRS pts 151 and 152, since these engines are being replaced they do not apply to the new emergency air compressors.

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3    Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

The requirements in Regulation No. 7, Part E, Section II.A (formerly Regulation No. 7, Section XVI.D) apply to combustion equipment that <u>existed</u> at major sources of $NO_X$ (greater than or equal to 100 tons/yr of $NO_X$) as of June 3, 2016) and to combustion equipment that <u>existed</u> at major sources of $NO_X$ (greater than or equal to 50 tons/y of $NO_X$) as of January 27, 2020. Since the emergency air compressor engines did not exist (i.e. in service, commenced operation) as of June 3, 2016 or January 27, 2020, the engines are not subject to the requirements in Regulation No. 7, Part E, Section II.A.

<u>Revisions to Permit</u>

The following changes were made to the permit to address this modification:

<u>Section I – General Activities and Summary</u>

- The table in Condition 5.1 was revised to remove the information for the existing air compressor engines and include information for the new air compressor engines. Note that the same emission unit number is used for the new engines.

<u>Section II.8 – Stationary Internal Combustion Engines</u>

- Revised the description in the table header for the emergency air compressor engines to reflect hp and kW ratings.

- Added a note under the summary table for the emergency air compressor engines to indicate they are APEN and minor source permit exempt and indicate hours of operation that would require an APEN.

- Removed the emission and throughput limits in Conditions 8.3 and 8.4, since these requirements are typically not included for equipment that is APEN exempt.

- Added a statement to Condition 8.8.2 indicating that the engines commenced operation on January 28, 2020.

## 1.17 October 8, 2019 (minor modification) – Include P1 rail rack VCU operating parameter

The purpose of this modification application is to include the Plant 1 rail loading rack VCU operating temperature into the permit. MACT CC, via MACT R, requires that temperature be continuously monitored for enclosed combustion devices. The VCU operating temperature was established during the April 2019 performance test. Suncor submitted the proposed temperature value and averaging time to EPA for approval in July 2019 and in a September 5, 2019 letter, EPA approved an operating temperature (minimum) of 1,299 °F on a 6-hr rolling average.

Note that prior to submittal of the October 8, 2019 application, an administrative amendment to include the VCU operating temperature was received on May 29, 2019, however, the application did not qualify as an administrative amendment.

<u>Revisions to Permit</u>

The following changes were made to the permit to address this modification:

<u>Section II.24 – rail loading rack and enclosed VCU (R101)</u>

- Included the VCU temperature in Conditions 24.5 and 24.8.

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3    Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

## 1.18   January 22, 2020 (minor modification) – Tank T-4501

The purpose of this modification is to revise the emission and throughput limits for tank T-4501. Tank T-4501 is part of the wastewater treatment plant and is currently permitted to store slop oil. According to the application, tank T-4501 had not stored slop oil for years but is currently storing sour water with a layer of diesel that floats on top. The modification is to allow for the tank to store wastewater with a layer of floating diesel in order to take tank T-60 out of service in order to conduct a required inspection. The application indicates that tank T-60 will be out of service for up to a year. Tank T-60, the equalization tank, is used to maintain an equal and steady volume of wastewater through the treatment system.

On March 5, 2020, the source submitted information to address questions the Division had regarding the January 22, 2020 application.

The source is requesting a throughput limit of for sour water and/or wastewater with a floating layer of diesel of 15,017,143 bbl/yr, in addition to the existing throughput limit for slop oil. Emissions were estimated using EPA TANKS, assuming the tank is storing distillate oil. The change in emissions, as well as requested emissions are below the VOC significant level (25 tons/yr), as shown in the table below:

| Source | VOC Emissions (tons/yr) |
|---|---|
| Tank T-4501 - Requested Emissions | 4.64 |
| Tank T-4501 - Current Emissions | 2.75 |
| Change in Emissions | 1.89 |
|  |  |
| PSD/NANSR Significance Level (T5 Minor Mod Level)[1] | 25 |

[1]Indicates the NANSR significance level for a serious ozone nonattainment area. The area was classified as a serious ozone nonattainment area on January 27, 2020.

There are no changes to the regulatory applicability for tank T-4501 associated with this modification.

Revisions to Permit

The following changes were made to the permit to address this modification:

Section I – General Activities and Summary

- Revised the description of the tank T-4501 in the Table in Condition 5.1 to indicate that the tank stores sour water and/or wastewater with a layer of floating diesel or slop oil.

Section II.23 – Plant 1 Wastewater Treatment System

- Revised the emission limit in the summary table (Condition 23.1) and in the text (Condition 23.1.2).

- Revised the throughput limit in the summary table and in the text (Condition 23.6).

## 1.19   March 31, 2020 (minor modification) – New Sand Creek air sparge/soil vapor extraction (AS/SVE) system

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3    Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

The purpose of the March 31, 202021 modification is to construct a new AS/SVE system along the west side of the Burlington Ditch on property owned by Metro Wastewater (referred to as "West of Burlington Ditch AS/SVE"). The purpose of the new AS/SVE system is to enhance the remediation efforts in order to mitigate the movement of subsurface contamination to off-property locations.

A total of two air sparge compressors will inject air into a system of three horizontal air sparge wells. The SVE portion of the system is intended to extract AS vapors after the air migrates upward through the groundwater column. Two horizontal SVE wells and six vertical SVE wells will be installed, and two blowers will be connected to the well systems and used to extract soil vapors from above the horizontal air sparge wells. The new system will incorporate two SVE blowers and two sets of carbon canisters series (CC-MET-10a (north) & 10b (south)).

Modification Type

The source indicated that this modification would qualify as a minor modification.

Colorado Regulation No. 3, Part C, Section X.A identifies those modifications that can be processed under the minor permit modification procedures. Specifically, minor permit modifications "do not require or change a case-by-case determination of an emission limitation or other standard" and "are not otherwise required by the Division to be processed as a significant modification" (Colorado Regulation No. 3, Part C, Section X.A.3 and 6).

The Division considers that permit modifications that "require or change a case-by-case determination of an emission limitation or standard" (Regulation No. 3, Part C, Section X.A.3) can include modifications that establish and/or change RACT, BACT, LAER and/or BART limitations or standards. The definition of RACT in Colorado's Common Provisions regulation describes RACT as a technology that will achieve the maximum degree of emission control and that is reasonably available (technologically and economically feasible). Based on the definition, RACT is a technology which implies that in most cases, it does not include a "case-by-case determination of an emission limitation or other standard". However, there are situations where an emission limitation or standard may be set in conjunction with a RACT determination. Generally, the Division considers that a RACT determination that requires an add-on control device could not be processed as a minor modification. However, in this situation the Division considers that RACT has been pre-established for other AS/SVE systems associated with the Sand Creek Remediation Project. Typically the Division considers that pre-established RACT includes requirements in Colorado Regulation No. 7. However, in this case the new AS/SVE will be equipped with carbon canisters as are the majority of the Sand Creek Remediation Project AS/SVE systems included in the current Title V permit (last revised February 22, 2018). Therefore, the Division considers that RACT for the Sand Creek Remediation Project AS/SVE systems has been pre-established in the Title V permit. Therefore the Division agrees that this modification can be processed as a minor modification.

Specifically, minor permit modifications "are not otherwise required by the Division to be processed as a significant modification" (Colorado Regulation No. 3, Part C, Section

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3    Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

X.A.6). The Division requires that "any change that causes a significant increase in emissions" be processed as a significant modification (Colorado Regulation No. 3, Part C, Section I.A.7.a).  According to Part F of Regulation No. 3 (Section I.L, revisions adopted July 15, 1993, Subsection I.G for modifications) the Division considers that a significant increase in emissions is the potential to emit above the major stationary source significant level in Colorado Regulation No. 3, Part D, Section II.A.44.

Since this is a new, unpermitted SVE system, potential to emit is based on uncontrolled emissions and as indicated in the table below, both uncontrolled and controlled VOC emissions are below the significance level:

| Pollutant | Emissions (tons/yr)[1] | | PSD/NANSR Significance Level (T5 Minor Mod Level)[2] |
|-----------|------------|-----------|--------------------------|
| | Uncontrolled | Controlled | |
| VOC | 23.53 | 0.47 | 25 tons/yr |

[1]Emissions are based on the measured VOC concentration (500 ppm), the total blower design rate (1000 scfm) and 8760 hours per year of operation. Controlled emissions are based a control efficiency of 98% for two carbon canisters in series.

[2]Indicates the NANSR significance level for a serious ozone nonattainment area. The area was classified as a serious ozone nonattainment area on January 27, 2020.

Discussion

Although the West of Burlington Ditch AS/SVE system is being permitted well after the initial remediation equipment was permitted, the provisions related to the Sand Creek remediation equipment still apply, including provisions to keep emissions from the remediation project below the significance level. To that end, the limit on VOC emissions from insignificant activities and provisions for relaxing emissions in Section II.69 would still apply.

The limit for insignificant activities has been revised to reflect permitted emissions from the remediation equipment as a result of this modification. The limit was set in the same manner as discussed in the TRD (page 24) for the February 1, 2016 revised Title V permit. Specifically, VOC emissions from insignificant activities are based on 39.9 tons per year minus permitted VOC emissions. With the addition of the West of Burlington Ditch AS/SVE system, permitted VOC emissions from the AS/SVE and AS systems, the tanks and tank loading is 28.16 tons/yr. Therefore VOC emissions from insignificant activities associated with the Sand Creek Remediation Project is 11.7 tons/yr.

Revisions to Permit

The following changes were made to the permit to address this modification application:

Section I – General Activities and Summary

• Included the new AS/SVE system info (West of Burlington Ditch, AIRS pt 639) in the tables in Conditions 5.1 and 5.2.

Section II.67 – Sand Creek Remediation Project – AS/SVE and AS Systems

• Added the West of Burlington Ditch (AIRS pt 639) to the list under the Section II.67.

• Revised Condition 67.1 to add the emission limit for the West of Burlington Ditch system (AIRS pt 639).

• Revised Condition 67.6.2 to add the West of Burlington Ditch system (AIRS pt 639)

system information.

Section II.69 – Sand Creek Remediation Project – Project Wide Requirements

- Revised the VOC emission limit for insignificant activities in Condition 69.1 to take into account changes to permitted VOC emissions.

- Revised the table in Condition 69.2 to add AIRS pt 639 (West of Burlington Ditch) and reflect current permitted VOC emissions of 28.2 tpy of VOC.

Appendices B and C

- Included the new AS/SVE system info (West of Burlington Ditch, AIRS pt 639) in the tables.

## 1.20   September 25, 2020 (minor modification) P1 Main plant flare isolation valve project

The purpose of this modification is to install valves, flanges and connectors in upstream units that vent waste gases to the P1 flare header. The purpose of the new piping components is to enable the installation of blinds in units that vent to the P1 flare header so that the flare gas recovery system (FGRS) first stage does not have to be taken offline during planned startups and shutdowns, which will reduce flaring. Suncor anticipates that the addition of this equipment may avoid two planned shutdowns of the FGRS every five years.

The application indicated that the project is expected to occur during the 2021 and 2026 Plants 1 and 3 turnarounds. Since Colorado Regulation No. 3, Part B, Section III.F.4 does not allow a gap in construction of 18 months or more, thus the Division is only approving the portion of the project that will occur during the 2021 turnaround.

Emissions from the new piping components are based on the following emission factors and component counts.

| Component Type | No. of Components | Service | Emission Factor (lb/component/hr) | Control Efficiency[1] | Emission Factor Source | Emissions (lbs/yr)[2] |
|---|---|---|---|---|---|---|
| Valves | 64 | gaseous | 0.05908 | 96% | "Protocol for Equipment Leak Emission Estimates", EPA-453/R-95-017, November 1995, Table 2-2 (emission factors) and Table 5-3 (control efficiencies) | 1,325 [33,123] |
| Flanges/ Connectors | 197 | Any | 0.00055 | 0% | | 951 |
| | | | | | | |
| Total (lbs/yr) | | | | | | 2,276 [34,074] |
| Total (tons/yr) | | | | | | 1.14 [17.0] |
| PSD/NANSR Significance Level (T5 Minor Mod Level)[3] | | | | | | 25 |

[1]Control efficiencies are from the following sources. **Valves** - Table 5-3 of EPA's Protocol for Equipment Leaks (EPA-453/R-95-017) based on monitoring consistent with proposed HON NESHAP. During the review of a previous application, the Division reconsidered the control efficiency previously allowed for flanges and connectors. Although Colorado Reg 7 requires annual monitoring for flanges (per Section VIII.C.4.a.(i)(A)), the leak definition in Reg 7 (10,000 ppm) is higher than that in the HON NESHAP (500 ppm), thus the 81% control efficiency listed in Table 5-3 is

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3    Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

not appropriate and no control efficiency was allowed for flanges. The Division would agree that some control may be appropriate for flanges due to annual monitoring, however, the source did not propose an alternative for this application. Note that NSPS GGGa includes similar monitoring for flanges/connectors as the HON NESHAP, however, these requirements have been stayed.

[2]Emissions in "[ ]" are uncontrolled. Note that the control efficiency, and subsequently controlled emissions are based on required monitoring.

[3]Indicates the NANSR significance level for a serious ozone nonattainment area. The area was classified as a serious ozone nonattainment area on January 27, 2020.

Revisions to Permit

The following changes were made to the permit to address this modification application:

Section I – General Activities and Summary

- Included the piping components (F208) in the table in Condition 5.1.

Section II.34 – Fugitive VOC Equipment Leaks with Permitted Emissions

- Added emission limits and requirements for equipment leaks (F208) associated with this project.

Section II.47 – 40 CFR Part 60 Subpart GGGa

- Added F208 (equipment leaks associated with this project) to the list of sources subject to these requirements.

Section II.53 – 40 CFR Part 63 Subpart CC

- Noted in Condition 53.43.2 that equipment leaks associated with this project (F208) fall under the overlap provisions for equipment leaks in 63.640(p)(2) (sources subject to NSPS GGGa only have to comply with NSPS GGGa).

Appendices

- Included the piping components in the tables in Appendices B and C.

## 1.21 October 13, 2020 (minor modification) – H-33 and H-37 Stack replacement project

The purpose of this modification is to replace the stacks on two of the No. 3 Crude Unit (CU) heaters, H-33 and H-37 in order to address draft issues with both of the heaters that cause safety problems, flame instability during high or shifting winds, inaccurate oxygen readings and reduced efficiency. In addition, the existing burners on H-37 will be replaced with ultra-low $NO_x$ burners (ULNB). The application indicates that the design heat input rate for H-37 will not change as a result of the ULNB installation. The application indicates that with this project, the No. 3 CU design rate will increase to the safe operating level of 38,540 barrels per day (bpd), note that the previous operating level of this unit was presumed to be 37,700 bpd. The incremental increase in the processing rate of the No. 3 CU is 2,798 bpd. This is based on the projected (38,540 bpd) minus baseline (35,742 bpd) processing rate.

The stack changes are shown in the Table below:

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3   Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

| | Current | | Proposed | |
|---|---|---|---|---|
| | Interior Diam, in. | Height[1], ft. | Interior Diam, in. | Height[1], ft. |
| H-33 | 25.5 | 70 | 30.5 | 90 |
| H-37 | 49.5 | 92.67 | 59.5 | 101 |

[1]Discharge height above ground level.

This project was initially planned to be implemented during the 2016 turnaround and was addressed in the February 1, 2016 revised permit and discussed in the TRD associated with that permit (discussion begins on page 51). Since the project was rescheduled until the 2021 turnaround, the provisions were removed in the February 22, 2018 revised permit.

Revised calculation spreadsheets were submitted on November 19, 2020 and on January 14, 2021. An explanation of the 2021 changes were provided in an email received on January 19, 2021.

Modification Type

The source indicated that this modification would qualify as a minor modification.

Colorado Regulation No. 3, Part C, Section X.A identifies those modifications that can be processed under the minor permit modification procedures. Specifically, minor permit modifications "are not otherwise required by the Division to be processed as a significant modification" (Colorado Regulation No. 3, Part C, Section X.A.6). The Division requires that "any change that causes a significant increase in emissions" be processed as a significant modification (Colorado Regulation No. 3, Part C, Section I.A.7.a). According to Part F of Regulation No. 3 (Section I.L, revisions adopted July 15, 1993, Subsection I.G for modifications) the Division considers that a significant increase in emissions is the potential to emit above the major stationary source significant level in Colorado Regulation No. 3, Part D, Section II.A.44.  As discussed later in this section II.1.21 under "Emissions Estimates", emissions from this project are below the significance level (see table on page 105), therefore, this modification can be processed as a minor modification.

In addition, the Division requires that "any change that is considered a modification under Title I of the Federal Act" be processed as a significant permit modification (Colorado Regulation No. 3, Part C, Section I.A.7.b). Part F of Regulation 3 Section I.L, revisions adopted July 15, 1993, Subsection I.G for modifications describes more specifically what constitutes a modification under Title I of the Federal Act and it indicates that a modification which triggers either Section 111 (new source performance standards (NSPS)) or 112 (national emission standards for hazardous air pollutant (NESHAP)) requirements is considered a Title I modification. The Division considers that modifications that trigger either NSPS or NESHAP requirements that are already included in the Title V permit for another emission unit may be processed as a minor modification, since the specific NSPS or NESHAP requirements are already addressed in the permit. As discussed later in this section II.1.21 under "Regulatory Review", this project does not trigger any new NSPS or NESHAP requirements for the new or physically changed equipment, therefore, this modification can be processed as a minor modification.

Modeling Requirements

---

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3   Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

The majority of the emissions associated from this project are from increased utilization of existing equipment at the facility and revisions to permitted emissions are not necessary in order to allow the increased utilization of equipment. Thus modeling the increases from the existing non-modified equipment is not warranted for this project.

The only new equipment at this facility are some new piping components associated with this project but VOC emissions from the new components are below the APEN de minimis level (1 ton/yr) and thus a permit is not required for the new components. Although VOC is a precursor for ozone, in general accurate and cost effective methods for modeling ozone impacts from stationary sources are not available. Therefore, individual source ozone modeling is not routinely requested for permit modifications.

Both Heaters H-33 and H-37 will be physically changed as part of this modification by replacing the stacks (the stacks will be rebuilt at the same location as the existing stacks). The height of the stacks for H-33 and H-37 will be increased by ~ 20 and 8 feet, respectively and the diameters will be increased by 5 and 10 inches, respectively. In addition, ULNB will be installed on H-37, thus $NO_x$ emissions after the project will be reduced. Since there is no increase in permitted emissions with this modification, modeling is not warranted. It should be noted that an increase in the stack height of an emissions unit generally lowers the impacts (concentrations) of pollutants modeled.

Emissions Estimates

**Emissions from New or Physically Changed/Modified Equipment**

Physical changes will be made to heater H-33 and H-37 as part of this modification. The stacks will be replaced on both heaters and H-37 will be equipped with ULNB. The design heat input rate for both heaters will not change, nor will the emission factors except for the $NO_x$ emission factor for H-37. The source has not requested an increase in the permitted fuel consumption rate for either heater, the throughput limits are based on the design heat input rate multiplied by 8760 hours per year of operation. No changes to permitted emissions have been requested, except that a lower $NO_x$ emission limit has been requested for H-37. Note that for purposes of determining whether this project qualifies as a minor modification, emissions from the project were estimated without considering $NO_x$ controls for H-37.

As part of this project, the only proposed new equipment is the new components associated with the project, which are a source of fugitive VOC emissions. Emissions from the new components were estimated using the following emissions factors and related component count.

| Component Type | No. of Components | Service | Emission Factor (lb/component/hr) | Control Efficiency[1] | Emission Factor Source | Emissions (lbs/yr) |
|---|---|---|---|---|---|---|
| Valves | 17 | Light liquid | 0.02403 | 95% | "Protocol for Equipment Leak Emission Estimates", EPA-453/R-95-017, November 1995, Table 2-2 (emission factors) and Table 5-3 (control efficiencies) | 179 [3,579] |
| | 5 | gaseous | 0.05908 | 96% | | 104 [2,588] |
| Flanges/ Connectors | 60 | Any | 0.00055 | 0% | | 290 |
| | | | | | | |
| Total (lbs/yr) | | | | | | 572 |

001-0003

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3   Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

| Component Type | No. of Components | Service | Emission Factor (lb/component/hr) | Control Efficiency[1] | Emission Factor Source | Emissions (lbs/yr) |
|---|---|---|---|---|---|---|
|  |  |  |  |  |  | [6,456] |
| Total (tons/yr) |  |  |  |  |  | 0.29 [3.23] |

[1]Control efficiencies are from the following sources. **Valves** - Table 5-3 of EPA's Protocol for Equipment Leaks (EPA-453/R-95-017) based on monitoring consistent with proposed HON NESHAP. During the review of a previous application, the Division reconsidered the control efficiency previously allowed for flanges and connectors. Although Colorado Reg 7 requires annual monitoring for flanges (per Section VIII.C.4.a.(i)(A)), the leak definition in Reg 7 (10,000 ppm) is higher than that in the HON NESHAP (500 ppm), thus the 81% control efficiency listed in Table 5-3 is not appropriate and no control efficiency was allowed for flanges. The Division would agree that some control may be appropriate for flanges due to annual monitoring, however, the source did not propose an alternative for this application. Note that NSPS GGGa includes similar monitoring for flanges/connectors as the HON NESHAP, however, these requirements have been stayed.

[2]Emissions in "[ ]" are uncontrolled. Note that the control efficiency, and subsequently controlled emissions are based on required monitoring.

Emissions from the new components are estimated at less than 1 ton/yr of VOC (the APEN de minimis level) and therefore, a permit is not required for the components associated with this project.

**Emissions from Non-Modified/Physically Changed Equipment (Increased Utilization)**

Emissions from increased utilization of non-modified equipment were included in project emissions to verify that emissions from the project are below the significance levels. The emissions increase for this equipment is based on the projected actual emissions minus the baseline actual emissions. Note that the definition of projected actual emissions in Colorado Regulation No. 3, Part D, Section II.A.38.b.(iii), specifies that sources:

> Shall exclude, in calculating any increase in emissions that results from the particular project, that portion of the unit's emissions following the project that an existing unit could have accommodated during the consecutive twenty-four month period used to establish the baseline actual emissions under Section II.A.4. of this part D and that are also unrelated to the particular project, including any increased utilization due to product demand growth

For this project, except for the FCCUs, the source did not exclude in calculating projected actual emissions, that portion of the unit's emissions that could have been accommodated during the baseline period and that are unrelated to the project, such as demand growth. Thus the emissions increases associated with the project are conservative.

Baseline actual emissions (BAE) are from the period of January 1, 2017 through December 31, 2018. BAE was adjusted downward for non-compliant emissions during the baseline period, as discussed under the various emission units.

The source used process knowledge and engineering models (LP model) to determine the impact on equipment downstream to determine the increased throughput through each process unit, utility unit and/or tank.

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3    Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

Consistent with the 2015 application, this application also indicates that there is no expected increase in utilization of the boilers, cooling towers, hydrogen plant or the No. 1 or 2 CUs as a result of this project.

Emissions from the non-modified units were estimated as follows:

Heaters

According to the application, emissions from heaters H-16 and H-18, both asphalt heaters and H-21 (FCCU preheater), which only runs during startup and hot standby are not expected to increase and were not included. It should also be noted that the application indicates that utilization of the No. 1 CU would not experience any increases in emissions due to the project, the source included in the No. 1 CU heaters (H-6, H11 and H-27) in their evaluation of emission increases. The following heaters were affected and were included in the source's evaluation of emissions:

| Emission Unit | Heater(s) |
|---|---|
| No. 3 Crude Unit | H-13, H-33[1], H-17 and H-37[1] |
| No. 1 Crude Unit[2] | H-6, H-11 and H-27 |
| Naphtha Splitter/Stabilizer | H-20 |
| No. 2 HDS | H-10 and H-19 |
| No. 3 HDS | H-31 and H-32 |
| No. 4 HDS | H-1716 and H-1717 |
| Plant 1 FCCU | H-22 |
| GBR Unit | H-2410 |
| Plant 1 Catalytic Reforming Unit | H28 thru H-30 |
| Plant 2 Catalytic Reforming Unit | H401 thru H-403 |
| Plant 2 FCCU | H-201 |

[1]Both H-33 and H-37 will be modified due to replacement of the stacks. In addition, ULNB will be installed on H-37, which will reduce $NO_x$ emissions and the source has requested that the $NO_x$ emission limit for H-37 be revised.
[2]The application indicates that no increases in emissions were expected from the No. 1 CU but these heaters were included in the analysis.

$SO_2$ emissions from the heaters during the baseline period were adjusted downward for periods when the fuel gas $H_2S$ limit (162 ppmv) was exceeded.

PAE from the heaters were estimated by multiplying either the baseline fuel consumption (Mscf) or heat input (MMBtu) by the ratio of the projected-to-baseline emission unit processing rate (in bpd) to get projected fuel consumption or heat input and then calculating emissions using the emission factors in the Title V permit. Note that for heaters without permit limits, the Btu correction factor noted in the current Title V permit (last revised February 22, 2018) in Section II.12 was not applied. Projected $SO_2$ emissions were estimated using the daily average $H_2S$ concentration in the fuel gas during the baseline period, which was 10 ppmvd for Plants 1 and 3 equipment and 21 ppmvd for Plant 2 and the projected fuel consumption.

Note that the analysis for the heaters differs from the 2015 application in that PAE for heaters H-33 and H-37 were based on the design throughput (MMBtu/hr) and 8760 hours per year of operation.

Sulfur Recovery Units

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3   Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

$SO_2$ emissions from both the Plants 1 and 3 SRUs (Nos. 1 and 2 SRU, H-25) were adjusted downward during the baseline period when the various $SO_2$ limits were exceeded.

PAE from all pollutants except $SO_2$ were based on multiplying the baseline heat input (MMBtu) by the ratio of projected-to-baseline sulfur processed (long ton per day) to get projected heat input and then calculating emissions using the emission factors in the Title V permit. Projected $SO_2$ emissions from the SRUs was estimated by multiplying the projected quantity of sulfur processed (long tons per day) by emission factors (lb $SO_2$/long ton sulfur) determined from baseline $SO_2$ emissions (measured by a continuous emission monitoring system) and sulfur processed during the baseline period.

<u>FCCUs</u>

CO emissions from both the Plants 1 and 3 FCCUs were adjusted downward during the baseline period when the CO limits were exceeded.

Projected actual emissions of CO, $NO_X$ and $SO_2$ from the FCCU were based on the maximum monthly emissions during the baseline period multiplied by 12 (which is also capable of accommodating (COA) emissions) plus the incremental increase in emissions due to the project. The maximum monthly emissions for the respective FCCUs are shown in the table below.

Projected VOC and PM, $PM_{10}$ and $PM_{2.5}$ emissions are based on the projected processing rate (bpd) or coke burn rate and the appropriate emission factors. The projected processing rate and/or coke burn rate is based on the maximum monthly rate multiplied by 12 (COA rate) plus the incremental process rate and/or coke burn rate. The incremental increase in bpd processed is based on the LP model. The maximum processing or coke-burn rate for the respective FCCUs are shown in the table below.

| | Month During Baseline Period with Maximum Value | | | | |
| --- | --- | --- | --- | --- | --- |
| | CO | $SO_2$ | $NO_X$ | Barrels | Coke Burn |
| P1 FCCU | Dec. 2018 | July 2017 | June 2018 | Oct. 2018 | Aug. 2017 |
| P2 FCCU | March 2017 | Aug. 2018 | Nov. 2018 | Aug. 2018 | Aug. 2018 |

Note that PM, $PM_{10}$ and $PM_{2.5}$ emissions were not estimated using the methods specified in the Title V permit. The Title V permit only provides emission factors for filterable PM and does not take into account the size variability.

Filterable PM emissions were broken down into the various fractions ($PM_{10}$ and $PM_{2.5}$) using EPA's emission calculator relying on the high efficiency cyclone as both the first and second stage controls. Filterable $PM_{10}$ and $PM_{2.5}$ emissions were determined to be 70% and 67.1%, respectively of filterable PM.

Condensable PM emissions were based on the performance tests conducted for the EPA 2011 information collection request (ICR). Ten different FCCUs were tested for condensable PM in the 2011 ICR. The Division took the average of eight of these tests and instructed the source to assume that condensable PM was 40.3% of total PM (filterable plus condensable), which is 0.675 lb of condensable PM per lb of filterable PM. The results for the Torrance and Whiting FCCUs were not included in the average

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3    Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

because the Torrance unit was unusually high (94% of total PM was condensable) and because the Whiting test only analyzed filterable $PM_{2.5}$ (there was no result for filterable PM).

Storage Tanks

The source estimated increases in emissions from diesel (T-72), crude (T-775 and T-776), light straight run (LSR) gasoline (T-67), gas oil (T-144), naphtha (T-777) and gasoline (T-2010) storage tanks were estimated. Although the permit requires that emission from tanks be estimated using EPA TANKS, the source estimated emissions using TankESP. The source provided a comparison of baseline emissions from the tanks using EPA TANKS and TankESP and overall estimated emissions were higher using TankESP, thus the change is considered to be conservative.

PAE from the tanks were based on baseline throughput plus the incremental increase for the product predicted by the model. It should be noted that the source indicated there would be no increase in throughput for tank T-775 (stores crude oil for the No. 1 CU) but did estimate an emissions increase. This could be due to the calculation method which assumes an equal quantity of throughput is stored each month, which does not reflect baseline operation, nor does it necessarily reflect future operation. Including an emission increase from tank T-775 when there is not expected to be any change in operation is conservative. In addition, projected actual emissions from Tank T-777 (naphtha) were slightly above the permitted emission limit. The source is not requesting an increase in permitted emission from this tank as it was assumed that the incremental increase in naphtha would all be routed through this tank, although this is unlikely to occur as the incremental increase may be routed through other storage tanks.

Tanks T-67, T-72, T-144, T-775, T-777 and T-2010 were also addressed in an application to produce reformulated gasoline submitted on November 30, 2021 and addressed in Section III.1.1.24 of this document. It should be noted that the source revised the emission calculation methodology for baseline and projected actual emissions for the RFG application. Those changes are not reflected in this application as it is not anticipated that the outcome would be affected, i.e. emissions from the project would still be below the significance level.

Product Loading

The source conservatively presumed product would be loaded through the P1 truck rack (Denver Terminal). Emissions were evaluated by calculating the emissions from the incremental increase in gasoline and diesel loaded. The calculation method is different than the methods specified in the current Title V permit. VOC emissions from gasoline loading were estimated using the MACT R emission limit of 10 mg total organic compounds (TOC)/liter loaded. Emissions from other pollutants were estimated using the loading loss equation in AP-42, Section 5.2 (dated July 2008), equation 1 and the appropriate relevant parameters. A 95% control efficiency was assumed for the flare in calculating VOC emissions from diesel loading.

Cat Poly Loading

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3   Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

Emission increases were estimated by multiplying baseline emissions by the ratio of projected-to-baseline cat poly unit processing rates (in bpd). Baseline emissions were estimated using the emission factors in the current Plant 2 permit (last revised June 15, 2009), Section II, Condition 4.1.

<u>Waste Water Treatment Plant (WWTP)</u>

For the WWTP, emissions increases from uncontrolled sources and sumps, projected actual emissions are assumed to be at permitted levels for uncontrolled sources and sumps (all sumps, except spider sump and other equipment) and other controlled sources with carbon canisters. BAE were estimated by multiplying PAE by the ratio of baseline-to-projected rates for the No. 1 and 3 CUs. Note that the application did note that no increases in emissions from the centrifuge system (controlled by a regenerative thermal oxidizer (RTO)) or Tank T4501 were expected but did not address whether any other equipment controlled by the RTO might see an increase in emissions.

The increase in actual emissions as a result of this project are shown in the table below:

| Emission Unit/ Value | H-33, H-37 Stack Replacement Emissions (tons/yr) | | | | | | |
|---|---|---|---|---|---|---|---|
| | CO | NOx | SO$_2$ | VOC | PM (f)[1] | PM$_{10}$ (t)[2] | PM$_{2.5}$ (t)[2] |
| | tpy | tpy | tpy | tpy | tpy | tpy | tpy |
| **No.1 FCCU** | | | | | | | |
| Baseline | 4.67 | 50.82 | 25.39 | 25.74 | 55.52 | 76.34 | 74.71 |
| PAE | 12.34 | 60.03 | 33.51 | 28.65 | 62.86 | 86.43 | 84.59 |
| Capable of Accommodating | 12.33 | 59.95 | 33.47 | 28.61 | 62.77 | 86.31 | 84.47 |
| Excludable[3] | 7.66 | 9.13 | 8.07 | 2.87 | 7.25 | 9.97 | 9.76 |
| Adjusted PAE[4] | 4.69 | 50.90 | 25.44 | 25.78 | 55.60 | 76.46 | 74.83 |
| **Emissions Increase[5]** | **0.02** | **0.08** | **0.05** | **0.04** | **0.08** | **0.12** | **0.11** |
| **No. 2 FCCU** | | | | | | | |
| Baseline | 3.37 | 26.78 | 12.36 | 9.53 | 19.14 | 26.32 | 25.76 |
| PAE | 9.25 | 33.41 | 19.79 | 11.33 | 23.16 | 31.85 | 31.17 |
| Capable of Accommodating | 9.06 | 32.73 | 19.39 | 11.10 | 22.69 | 31.20 | 30.54 |
| Excludable[3] | 5.69 | 5.96 | 7.03 | 1.57 | 3.55 | 4.88 | 4.78 |
| Adjusted PAE[4] | 3.56 | 27.46 | 12.76 | 9.76 | 19.61 | 26.97 | 26.39 |
| **Emissions Increase[5]** | **0.19** | **0.68** | **0.40** | **0.23** | **0.47** | **0.65** | **0.63** |
| **No. 1 and No. 2 SRU** | | | | | | | |
| Baseline | 0.93 | 0.69 | 17.02 | 0.12 | 0.17 | 0.17 | 0.17 |
| PAE | 0.99 | 0.74 | 18.38 | 0.13 | 0.18 | 0.18 | 0.18 |
| **Emissions Increase[6]** | **0.07** | **0.05** | **1.36** | **0.01** | **0.01** | **0.01** | **0.01** |
| **N0. 3 SRU** | | | | | | | |
| Baseline | 0.51 | 0.60 | 40.34 | 0.03 | 0.05 | 0.05 | 0.05 |
| PAE | 0.51 | 0.61 | 44.71 | 0.03 | 0.05 | 0.05 | 0.05 |
| **Emissions Increase[6]** | **0.01** | **0.01** | **4.37** | **0.00** | **0.00** | **0.00** | **0.00** |
| **Heaters[7]** | | | | | | | |
| Baseline[8] | 169.21 | 202.97 | 6.14 | 13.39 | 19.40 | 19.50 | 19.00 |
| PAE[8] | 175.75 | 212.54 [200.36] | 6.54 | 14.06 | 20.33 | 20.33 | 20.33 |
| **Emissions Increase[6, 7, 8]** | **6.54** | **9.57 [8.03]** | **0.41** | **0.67** | **0.93** | **0.93** | **0.93** |
| **Tanks[9]** | | | | | | | |

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3   Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

| Emission Unit/ Value | H-33, H-37 Stack Replacement Emissions (tons/yr) | | | | | | |
|---|---|---|---|---|---|---|---|
| | CO tpy | NOx tpy | SO$_2$ tpy | VOC tpy | PM (f)[1] tpy | PM$_{10}$ (t)[2] tpy | PM$_{2.5}$ (t)[2] tpy |
| Baseline | -- | -- | -- | 10.66 | -- | -- | -- |
| PAE | -- | -- | -- | 15.06 | -- | -- | -- |
| **Emissions Increase[6]** | **--** | **--** | **--** | **4.39** | **--** | **--** | **--** |
| **No. 1 Cat Poly** | | | | | | | |
| Baseline | -- | -- | -- | -- | 1.17 | 1.17 | 1.17 |
| PAE | -- | -- | -- | -- | 1.18 | 1.18 | 1.18 |
| **Emissions Increase[6]** | **--** | **--** | **--** | **--** | **0.01** | **0.01** | **0.01** |
| **No. 2 Cat Poly** | | | | | | | |
| Baseline | -- | -- | -- | -- | 1.86 | 1.86 | 1.86 |
| PAE | -- | -- | -- | -- | 1.87 | 1.87 | 1.87 |
| **Emissions Increase[6]** | **--** | **--** | **--** | **--** | **0.01** | **0.01** | **0.01** |
| **WWTP** | | | | | | | |
| Baseline | -- | -- | -- | 5.03 | -- | -- | -- |
| PAE | -- | -- | -- | 5.38 | -- | -- | -- |
| **Emissions Increase[6]** | **--** | **--** | **--** | **0.35** | **--** | **--** | **--** |
| **New Fugitive Emissions** | | | | | | | |
| **Emissions Increase** | **--** | **--** | **--** | **0.29** | **--** | **--** | **--** |
| **Plant 1 Truck Loading Rack** | | | | | | | |
| **Emissions Increase** | **0.65** | **0.14** | **0.00** | **0.74** | **0.00** | **0.00** | **0.00** |
| **Total Project Emissions Increase** | **7.47** | **10.53 [8.99]** | **6.59** | **6.73** | **1.52** | **1.73** | **1.71** |
| PSD/NANSR Significance Level (T5 Minor Mod Level)[10] | 100 | 25 | 40 | 25 | 25 | 15 | 10 |

[1]Condensable PM is not included for purposes of PSD/NANSR applicability for the FCCU (not required, see footnote 2). PM emissions from fuel burning equipment includes condensable PM.

[2]Includes filterable plus condensable particulate matter. Per Reg 3, Part D, Section II.A.40.g condensable PM is included in PM$_{10}$ and PM$_{2.5}$ for purposes of PSD/NANSR applicability.

[3]Excludable emissions equals capable of accommodating minus baseline.

[4]Adjusted PAE equals PAE minus excludable emissions.

[5]Change in emissions is adjusted PAE minus baseline.

[6]Change in emissions is PAE minus baseline.

[7]Values shown include PAE for H-37 as if ULNB were not installed. Values in brackets "[ ]" show emissions with ULNB installed on H-37.

[8]A detailed summary of BAE, PAE and the change in emissions for the heaters is included in Appendix K of the permit.

[9]Affected tanks are T-67, T-72, T-144, T-775, T-776, T-777 and T-2010.

[10]Indicates the NANSR significance level for a serious ozone nonattainment area. The area was classified as a serious ozone nonattainment area on January 27, 2020.

## Regulatory Analysis

Prior to this modification heaters H-33 and H-37 were subject to the requirements in NSPS Subpart J. NSPS Ja requirements would apply if any of the heaters are considered to be "modified" under the NSPS provisions (40 CFR Part 60 Subpart A § 60.14) or reconstructed (40 CFR Part 60 Subpart A § 60.14). As noted previously, this project was

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3   Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

initially projected to take place during the 2016 turnaround and was addressed in the February 1, 2016 revised permit. In the initial February 12, 2015 application, the source indicated that the NSPS Ja requirements had been triggered for both heaters. However, the Division's review of that application indicated that this was not necessarily the case (see the regulatory analysis beginning on page 48 of the TRD prepared for the February 1, 2016 revised permit for more information).

The definition of mod in 60.14(a) is as follows (emphasis added):

> Except as provided under paragraphs (e) and (f) of this section, any physical or operational change to an existing facility <u>which results in an increase in the emission rate to the atmosphere of any pollutant</u> to which a standard applies shall be considered a modification within the meaning of section 111 of the Act. <u>Upon modification, an existing facility shall become an affected facility for each pollutant to which a standard applies and for which there is an increase in the emission rate to the atmosphere.</u>

Note that as specified in the second underlined sentence, a modification does not trigger NSPS for all pollutants regulated under the NSPS but only those pollutants for which there is an increase in emissions.

The applicability test is on an "hourly basis" per 60.14(b) (see below) and as indicated in previous EPA determinations from EPA's Applicability Determination Index[1] (see ADI 9900074, 9700095 and 9700031) that test is based on the "maximum hourly emission rate".

> Emission rate shall be expressed as kg/hr of any pollutant discharged into the atmosphere for which a standard is applicable.

Exceptions to the definition of modification are included in 60.14(e) as noted below:

> The following shall not, by themselves, be considered modifications under this part:

> (e)(2) An increase in production rate of an existing facility, if that increase can be accomplished without a capital expenditure on that facility.

> (e)(5) The addition or use of any system or device whose primary function is the reduction of air pollutants, except when an emission control system is removed or is replaced by a system which the Administrator determines to be less environmentally beneficial.

The installation of ULNB on H-37 is not by itself a modification since its function is to reduce emissions as provided for under 60.14(e)(5).

The source has indicated the design heat input rate will not change with the installation of ULNB on H-37 and only the stack is being replaced on H-33, thus the design heat input rate will not change. So long as the design heat input, on an hourly basis, does not change, a modification would not be triggered for either $SO_2$ or $NO_x$. The hourly heat input

---

[1] Located at the following web address: http://cfpub.epa.gov/adi/

rate has not changed on paper, but if the heaters have been unable to achieve the maximum rate in practice, then this project could be considered a modification.

For the 2015 application, the source demonstrated that the maximum heat input rate had been achieved for H-37 but not for H-33, thus NSPS Ja was considered to apply for H-33 with respect to $SO_2$ emissions (NSPS Ja does not include $NO_X$ limits for heaters less than 40 MMBtu/hr) and was included in the February 1, 2016 revised permit.

In this current application, the source indicated that on a short-term basis H-33 has achieved a rate of 7.91 MMBtu/hr and H-37 has achieved a rate of 62.65 MMBtu/hr, both of which are above the design heat input rates (H-33 – 7.68 MMBtu/hr and H-37 – 57.24 lb/MMBtu) of the unit. Therefore, the Division agrees that none of the heaters will be modified for purposes of NSPS for this project.

A source is considered to be reconstructed if the fixed capital cost of the new components exceeds 50 percent of the fixed capital cost that would be required to construct a comparable entirely new facility (see 60.15(b)(1)). In their application the source submitted information demonstrating that that the stack replacements for both heaters and the installation of ULNB on H-37 did not meet this threshold. Therefore, the requirements in NSPS Ja do not apply to either heater.

<u>Miscellaneous</u>

Colorado Regulation No. 3, Part D, Section I.B.4 specifies that the information submitted for the applicability analysis shall be included in an appendix of the Title V permit for sources that conduct the actual-to-projected actual test for a project that requires a minor permit modification under Colorado Regulation No.3, Part C, Section X. Regulation No. 3 requires that this information (i.e., the actual-to-projected-actual applicability test) be included in an appendix, presumably so that the Division can determine whether projected emissions predicted by the project are exceeded and pursue an investigation, if necessary, to determine if the increases above the projected level were caused by the project. Therefore, the applicability analysis will be included in an appendix of the permit.

<u>Revisions to Permit</u>

The following changes were made to the permit to address this modification application:

<u>Section I – General Activities and Summary</u>

- The description in Condition 1.1 was revised to indicate the revised nominal capacity of the No. 3 CU.

- The following changes were made to the table in Condition 5.1:
  - o Revised the description of H-37 to indicate that ULNB will be installed.
  - o The heater descriptions for the No. 3 CU (H-13, H-33, H-17 and H-37) were revised to change the No. 3 CU nominal capacity.

<u>Section II.18 – Heaters H-33 and H-37</u>

- Added the new $NO_X$ emission limit for heater H-37 when ULNB is installed.

- Included "new" Condition 18.9 for a performance test on H-37 to verify the emission

factor and demonstrate compliance with the new NO$_X$ limit.

Appendices

- Added the applicability analysis to Appendix K.

## 1.22 January 14, 2021 (additional information submittal) No. 1 Crude Unit Turnaround Projects

The purpose of this modification is to replace the stack on one of the No. 1 Crude Unit (CU) heaters, H-6, in order to address draft issues that cause safety problems, flame instability during high or shifting winds, inaccurate oxygen readings and reduced efficiency. In addition, two control valves will be upsized and the packing and top trays of atmospheric tower W-4 will be replaced.

The stack changes are shown in the table below:

| Current | | Proposed | |
|---|---|---|---|
| Interior Diam, in. | Height[1], ft. | Interior Diam, in. | Height[1], ft. |
| 32 | 43 | 32 | 65 |

[1]Discharge height above ground level.

This project was initially planned to be implemented during the 2016 turnaround and was addressed in the February 1, 2016 revised permit and discussed in the TRD associated with that permit (discussion begins on page 37). Since the project was rescheduled until the 2021 turnaround, the provisions were removed in the February 22, 2018 revised permit.

This project differs from the initial project in that the atmospheric tower W-4 was to be replaced in its entirety and only one control valve was to be upsized. The upsizing of the No. 1 Crude Unit desalter back-pressure control valve was part of the initial project, while the upsizing of the flow control valve for lift steam to the W-16 Tar Stripper was not.

The changes made as part of this project will not change the design rate of the No. 1 Crude Unit (32,000 barrels per day) but there may be an increase in throughput/utilization of this unit after the change, which will increase utilization, and subsequently emissions from units downstream.

Modification Type

This application was submitted as an "air permitting evaluation" to address potential increases in actual emissions associated with a project that does not require a permit modification. Sources that conduct an actual-to-projected-actual applicability test for a project that is not part of a major modification are required to document and maintain information related to the project as set forth in Colorado Regulation No. 3, Part D, Sections V.A.7.c.(i) and VI.B.5.a. Sources are not required to submit the applicability test to the Division unless the emissions unit involved is an electric utility steam generating unit or the project requires a permit modification (see Colorado Regulation No. 3, Part D, Section I.B.4). In this case, since this project is not a major modification and does not require a permit application (no modifications to the permit are necessary), the source was not required to submit this information. Since the Division reviewed the submittal and discussion of the project and projected impacts are being addressed.

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3   Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

Modeling Requirements

The majority of the emissions associated from this project are from increased utilization of existing equipment at the facility and revisions to permits are not necessary in order to allow the increased utilization of equipment. Thus modeling the increases from the existing non-modified equipment is not warranted for this project.

There is no new equipment associated with this project. For the 2015 application, new piping components were identified as "new" equipment that was a source of fugitive VOC emissions. In response to questions from the Division, the source indicated in a December 9, 2021 submittal there was no net increase in piping components associated with this project.

Heater H-6 will be physically modified by replacing the stack (stack will be rebuilt at the same location as the existing stack). The height of the stack for H-6 will be increased by ~ 20 and the internal diameter will not be revised. Since there is no increase in permitted emissions with this modification, modeling is not warranted. It should be noted that an increase in the stack height of an emissions unit generally lowers the impacts (concentrations) of pollutants modeled.

Emissions Estimates

**Emissions from New or Physically Changed/Modified Equipment**

Physical changes will be made to heater H-6 as part of this modification to replace the stack. The design heat input rate for the heater will not change, nor will the emission factors and the source has not requested an increase in either permitted emissions or throughput.

**Emissions from Non-Modified/Physically Changed Equipment (Increased Utilization)**

Emissions from increased utilization of non-modified equipment were included in project emissions to verify that emissions from the project are below the significance levels.

As with the H-33, H-37 Stack Replacement Project there is no expected increase in utilization of the boilers, cooling towers or $H_2$ plant. In addition, there is no expected increase in utilization of the No. 2 or No. 3 Crude Units.

In the application, the source indicated that the base case for the No. 1 Crude Unit Turnaround Project was based on post-project projections for the H-33, H-37 stack replacement project in order to isolate the effects of the No. 1 Crude Unit Turnaround Project. Since the base case considers the No. 3 Crude Unit operating at maximum capacity (post H-33, H-37 Stack Replacement Project Rates), the naphtha splitter/stabilizer, No. 3 HDS, No. 1 FCCU and No. 1 Cat Poly Unit are operating at maximum rates, thus no increased utilization is expected from these units.

The emissions increases for these units is the same as discussed in Section III.1.1.21 under "Emissions Estimates" for the H-33, H-37 Stack Replacement Project), except as follows:

Heaters

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3   Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

As indicated previously, fewer process units are anticipated to see an increase in
utilization, thus fewer process heaters are affected. The affected process heaters for
this project that were included in the source's evaluation of emissions are shown in the
table below:

| Emission Unit | Heater(s) |
|---|---|
| No. 1 Crude Unit[1] | H-6, H-11 and H-27 |
| No. 2 HDS | H-10 and H-19 |
| No. 4 HDS | H-1716 and H-1717 |
| GBR Unit | H-2410 |
| Plant 1 Catalytic Reforming Unit | H28 thru H-30 |
| Plant 2 Catalytic Reforming Unit | H401 thru H-403 |
| Plant 2 FCCU | H-201 |

[1]Heater H-6 will be modified due to replacement of the stack. There will be not change to the H-6 burners and no
change to emission or throughput limit s for this unit.

Storage Tanks

The source indicated that there would be no expected increase in utilization of the No. 3
Crude Unit and no increase in distillate production as a result of this project so
increases in emissions from Tanks T-776 (No. 3 Crude Unit storage) and T-72 (diesel
storage) are not included.

Tanks T-67, T-72, T-144, T-775, T-777 and T-2010 were also addressed in an
application to produce reformulated gasoline submitted on November 30, 2021 and
addressed in Section III.1.1.24 of this document. It should be noted that the source
revised the emission calculation methodology for baseline and projected actual
emissions for the RFG application. Those changes are not reflected in this application
as it is not anticipated that the outcome would be affected, i.e. emissions from the
project would still be below the significance level.

Product Loading

As indicated previously, no increase in distillate production is expected with this project,
so only the increase in emissions from the incremental increase in gasoline production
was evaluated.

In response to questions from the Division, the source indicated that there was a
potential increase in liquefied petroleum gas (LPG) production, approximately 8.77
barrels per day or 3,201 barrels per year. In a December 9, 2021 submittal, Suncor
indicated that emissions from the project alone (the 3,201 barrels per year), was
equivalent to 4.2 rail cars per year. Emissions were estimated assuming LPG would be
loaded at the Plant 2 rail rack, which results in higher emissions. The source estimated
emissions from the project alone as follows;

| Plant 2 Rail Rack – Project Only Emissions (tons/yr) | | | | |
|---|---|---|---|---|
| $PM/PM_{10}/PM_{2.5}$ | $SO_2$ | $NO_X$ | CO | VOC |
| 4.56E-04 | 6.76E-04 | 3.94E-03 | 1.80E-02 | 1.36E-01 |

In addition, in the December 9, 2021 submittal, projected and baseline actual emissions,
as well as emissions that could have been accommodated during the baseline period

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3   Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

were determined for the Plant 2 rail rack. The analysis was the same as the analysis that was submitted with the initial application for the RFG modification (submitted on November 30, 2021), which is addressed in Section III.1.1.24 of this document. For that application, projected actual emissions were based on permitted emissions and the emissions the source could have excluded from projected actual emissions (those that could have been accommodated) were not appropriate. In addition, emissions corrections to baseline actual emissions were also necessary. Therefore, the Division relied on the Plant 2 rail rack applicability analysis approved for the RFG modification, rather than requiring the source to correct the analysis.

It was not completely clear why the source conducted the full applicability test, rather than relying on the incremental increase from an unmodified emission unit in the analysis as was done for the Plant 1 truck rack.  Nevertheless, the Division included both methods in assessing whether emissions from the project were below the significance level.

The increase in actual emissions as a result of this project are shown in the table below:

| Emission Unit/ Value | No. 1 Crude Unit Turnaround Project Emissions (tons/yr) | | | | | | |
|---|---|---|---|---|---|---|---|
| | CO | NOx | SO$_2$ | VOC | PM (f)[1] | PM$_{10}$ (t)[2] | PM$_{2.5}$ (t)[2] |
| | tpy | tpy | tpy | tpy | tpy | tpy | tpy |
| **No. 2 FCCU** | | | | | | | |
| Baseline | 3.37 | 26.78 | 12.36 | 9.53 | 19.14 | 26.32 | 25.76 |
| PAE | 9.09 | 32.86 | 19.46 | 11.14 | 22.78 | 31.32 | 30.65 |
| Capable of Accommodating Emissions | 9.06 | 32.73 | 19.39 | 11.10 | 22.69 | 31.20 | 30.54 |
| Excludable[3] | 5.69 | 5.96 | 7.03 | 1.57 | 3.55 | 4.88 | 4.78 |
| Adjusted PAE[4] | 3.41 | 26.90 | 12.43 | 9.57 | 19.23 | 26.44 | 25.88 |
| **Emissions Increase[5]** | **0.03** | **0.13** | **0.07** | **0.04** | **0.09** | **0.12** | **0.12** |
| **Plant 2 Rail Rack** | | | | | | | |
| Baseline | 3.34 | 0.73 | 0.00 | 24.71 | 0.08 | 0.08 | 0.08 |
| PAE | 5.00 | 1.10 | 0.00 | 37.80 | 0.13 | 0.13 | 0.13 |
| Capable of Accommodating Emissions | 3.73 | 0.82 | 0.00 | 26.99 | 0.09 | 0.09 | 0.09 |
| Excludable[3] | 0.39 | 0.09 | 0.00 | 2.27 | 0.01 | 0.01 | 0.01 |
| Adjusted PAE[4] | 4.61 | 1.01 | 0.00 | 35.53 | 0.12 | 0.12 | 0.12 |
| **Emissions Increase[5, 6]** | **1.27** | **0.28** | **0.00** | **10.81 [0.14]** | **0.03** | **0.03** | **0.03** |
| **No. 1 and No. 2 SRU** | | | | | | | |
| Baseline | 0.93 | 0.69 | 17.02 | 0.12 | 0.17 | 0.17 | 0.17 |
| PAE | 0.93 | 0.70 | 17.25 | 0.13 | 0.17 | 0.17 | 0.17 |
| **Emissions Increase[7]** | **0.01** | **0.00** | **0.23** | **0.00** | **0.00** | **0.00** | **0.00** |
| **No. 3 SRU** | | | | | | | |
| Baseline | 0.51 | 0.60 | 40.34 | 0.03 | 0.05 | 0.05 | 0.05 |
| PAE | 0.51 | 0.61 | 44.27 | 0.03 | 0.05 | 0.05 | 0.05 |
| **Emissions Increase[7]** | **0.00** | **0.00** | **3.92** | **0.00** | **0.00** | **0.00** | **0.00** |

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3   Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

| Emission Unit/ Value | No. 1 Crude Unit Turnaround Project Emissions (tons/yr) | | | | | | |
|---|---|---|---|---|---|---|---|
| | CO | NOx | SO$_2$ | VOC | PM (f)[1] | PM$_{10}$ (t)[2] | PM$_{2.5}$ (t)[2] |
| | tpy | tpy | tpy | tpy | tpy | tpy | tpy |
| **Heaters** | | | | | | | |
| Baseline[7] | 112.60 | 129.70 | 4.81 | 9.48 | 13.10 | 13.10 | 13.10 |
| PAE[7] | 117.07 | 136.16 | 5.02 | 9.91 | 13.69 | 13.69 | 13.69 |
| **Emissions Increase[7,8]** | **4.47** | **6.46** | **0.21** | **0.43** | **0.59** | **0.59** | **0.59** |
| **Tanks[9]** | | | | | | | |
| Baseline | -- | -- | -- | 10.66 | -- | -- | -- |
| PAE | -- | -- | -- | 14.94 | -- | -- | -- |
| **Emissions Increase[7]** | **--** | **--** | **--** | **4.28** | **--** | **--** | **--** |
| **No. 2 Cat Poly** | | | | | | | |
| Baseline | -- | -- | -- | -- | 1.86 | 1.86 | 1.86 |
| PAE | -- | -- | -- | -- | 1.86 | 1.86 | 1.86 |
| **Emissions Increase[7]** | **--** | **--** | **--** | **--** | **0.00** | **0.00** | **0.00** |
| **WWTP** | | | | | | | |
| Baseline | -- | -- | -- | 5.03 | -- | -- | -- |
| PAE | -- | -- | -- | 5.38 | -- | -- | -- |
| **Emissions Increase[7]** | **--** | **--** | **--** | **0.35** | **--** | **--** | **--** |
| **New Fugitive Emissions** | | | | | | | |
| **Emissions Increase** | | | | | | | |
| **Plant 1 Truck Loading Rack** | | | | | | | |
| **Emissions Increase** | **0.10** | **0.02** | **0.00** | **0.11** | **0.00** | **0.00** | **0.00** |
| **Total Project Emissions Increase** | **5.88** | **6.90** | **4.43** | **16.02 [5.35]** | **0.71** | **0.74** | **0.74** |
| PSD/NANSR Significance Level (T5 Minor Mod Level)[10] | 100 | 25 | 40 | 25 | 25 | 15 | 10 |

[1]Condensable PM is not included for purposes of PSD/NANSR applicability for the FCCU (not required, see footnote 2). PM emissions from fuel burning equipment includes condensable PM.

[2]Includes filterable plus condensable particulate matter. Per Reg 3, Part D, Section II.A.40.g condensable PM is included in PM$_{10}$ and PM$_{2.5}$ for purposes of PSD/NANSR applicability.

[3]Excludable emissions equals capable of accommodating minus baseline

[4]Adjusted PAE equals PAE minus excludable emissions.

[5]Change in emissions is adjusted PAE minus baseline.

[6]Emissions in "[ ]" are emissions from the project only, i.e. the incremental increase in LPG production. This is consistent with how the increase in emissions was estimated for the Plant 1 truck rack as discussed on page 112.

[7]Change in emissions is PAE minus baseline.

[8]A detailed summary of BAE and PAE for the heaters is included below.

[9]Affected tanks are T-67, T-144, T-775, T-777 and T-2010.

[10]Indicates the NANSR significance level for a serious ozone nonattainment area. The area was classified as a serious ozone nonattainment area on January 27, 2020.

## Heater Summary

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3   Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

Details on baseline actual emissions, projected actual emissions and the change in
actual emissions associated with the heaters are shown in the tables below:

**Combined Heater Baseline Actual Emissions (BAE), tons/yr**

| Heater | NOx | CO | VOC | PM | PM$_{10}$ | PM$_{2.5}$ | SO$_2$ |
|---|---|---|---|---|---|---|---|
| | tpy | tpy | tpy | tpy | tpy | tpy | tpy |
| H-6 | 1.12 | 1.88 | 0.12 | 0.17 | 0.17 | 0.17 | 0.04 |
| H-11 | 13.67 | 11.48 | 0.75 | 1.04 | 1.04 | 1.04 | 0.22 |
| H-27 | 35.83 | 30.09 | 1.97 | 2.72 | 2.72 | 2.72 | 0.58 |
| H-10 | 8.83 | 7.42 | 0.49 | 0.67 | 0.67 | 0.67 | 0.15 |
| H-19 | 5.74 | 3.92 | 0.26 | 0.36 | 0.36 | 0.36 | 0.09 |
| H-1716 | 2.54 | 3.39 | 0.46 | 0.63 | 0.63 | 0.63 | 0.16 |
| H-1717 | 1.93 | 2.58 | 0.35 | 0.48 | 0.48 | 0.48 | 0.13 |
| H-2410 | 4.51 | 4.30 | 0.58 | 0.80 | 0.80 | 0.80 | 0.20 |
| H-28/29/30 | 14.57 | 24.39 | 1.60 | 2.21 | 2.21 | 2.21 | 0.57 |
| H-401/402/403 | 37.60 | 20.05 | 2.70 | 3.73 | 3.73 | 3.73 | 2.47 |
| H-201 | 3.36 | 3.10 | 0.20 | 0.28 | 0.28 | 0.28 | 0.20 |
| Total | 129.70 | 112.60 | 9.48 | 13.10 | 13.10 | 13.10 | 4.81 |

**Combined Heater Projected Actual Emissions (PAE), tons/yr**

| Heater | NOx | CO | VOC | PM | PM$_{10}$ | PM$_{2.5}$ | SO$_2$ |
|---|---|---|---|---|---|---|---|
| | tpy | tpy | tpy | tpy | tpy | tpy | tpy |
| H-6 | 1.19 | 1.99 | 0.13 | 0.18 | 0.18 | 0.18 | 0.05 |
| H-11 | 14.47 | 12.15 | 0.80 | 1.10 | 1.10 | 1.10 | 0.24 |
| H-27 | 37.91 | 31.84 | 2.09 | 2.88 | 2.88 | 2.88 | 0.62 |
| H-10 | 8.85 | 7.43 | 0.49 | 0.67 | 0.67 | 0.67 | 0.14 |
| H-19 | 5.75 | 3.93 | 0.26 | 0.36 | 0.36 | 0.36 | 0.09 |
| H-1716 | 2.57 | 3.42 | 0.46 | 0.64 | 0.64 | 0.64 | 0.16 |
| H-1717 | 1.94 | 2.59 | 0.35 | 0.48 | 0.48 | 0.48 | 0.13 |
| H-2410 | 4.57 | 4.36 | 0.59 | 0.81 | 0.81 | 0.81 | 0.21 |
| H-28/29/30 | 14.58 | 24.40 | 1.60 | 2.22 | 2.22 | 2.22 | 0.57 |
| H-401/402/403 | 40.96 | 21.84 | 2.94 | 4.07 | 4.07 | 4.07 | 2.63 |
| H-201 | 3.38 | 3.11 | 0.20 | 0.28 | 0.28 | 0.28 | 0.19 |
| Total | 136.16 | 117.07 | 9.91 | 13.69 | 13.69 | 13.69 | 5.02 |

**Heaters - Change in Emissions (tons/yr)[1]**

| Heater | NOx | CO | VOC | PM | PM$_{10}$ | PM$_{2.5}$ | SO$_2$ |
|---|---|---|---|---|---|---|---|
| | tpy | tpy | tpy | tpy | tpy | tpy | tpy |
| H-6 | 0.07 | 0.11 | 0.01 | 0.01 | 0.01 | 0.01 | 0.00 |
| H-11 | 0.79 | 0.67 | 0.04 | 0.06 | 0.06 | 0.06 | 0.01 |
| H-27 | 2.08 | 1.75 | 0.11 | 0.16 | 0.16 | 0.16 | 0.04 |
| H-10 | 0.02 | 0.01 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| H-19 | 0.01 | 0.01 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| H-1716 | 0.03 | 0.04 | 0.01 | 0.01 | 0.01 | 0.01 | 0.00 |
| H-1717 | 0.01 | 0.01 | 0.00 | 0.01 | 0.01 | 0.01 | 0.00 |
| H-2410 | 0.06 | 0.06 | 0.01 | 0.01 | 0.01 | 0.01 | 0.01 |

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3   Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| H-28/29/30 | 0.01 | 0.01 | 0.00 | 0.01 | 0.01 | 0.01 | -0.01 |
| H-401/402/403 | 3.36 | 1.79 | 0.24 | 0.33 | 0.33 | 0.33 | 0.16 |
| H-201 | 0.02 | 0.01 | 0.00 | 0.00 | 0.00 | 0.00 | -0.01 |
| Total Change in emissions[1, 2] | 6.46 | 4.47 | 0.43 | 0.59 | 0.59 | 0.59 | 0.21 |

[1]Change in emissions is projected actual emissions (PAE) minus baseline emissions

[2]Does not include decreases in emissions (shown in red).

Regulatory Analysis

Currently heater H-6 is subject to the requirements in NSPS Subpart J. NSPS Ja requirements would apply if heater H-6 is considered to be "modified" under the NSPS provisions (40 CFR Part 60 Subpart A § 60.14) or reconstructed (40 CFR Part 60 Subpart A § 60.14). As noted previously, this project was initially projected to take place during the 2016 turnaround and was addressed in the February 1, 2016 revised permit. In the initial February 12, 2015 application, the source indicated that the NSPS Ja requirements had been triggered for heater H-6. However, the Division's review of that application indicated that this was not necessarily the case (see the regulatory analysis beginning on page 48 of the TRD prepared for the February 1, 2016 revised permit for more information).

As discussed in Section III.1.1.21 under "Regulatory Analysis" for the H-33, H-37 Stack Replacement Project, the NSPS modification test is based on whether there is an increase the "maximum hourly emissions rate." As indicated in the application, the burners will not be modified with this project, just the stack, so the design heat input rate for the unit will not change. So long as the design heat input, on an hourly basis, does not change, a modification would not be triggered for either $SO_2$ or $NO_X$. The hourly heat input rate has not changed on paper, but if the heaters have been unable to achieve the maximum rate in practice, then this project could be considered a modification.

For the 2015 application, the source demonstrated that the maximum design heat input rate had been achieved for heater H-6 and has done the same for this application. Therefore, the Division agrees that heater H-6 will not be modified for purposes of NSPS for this project.

A source is considered to be reconstructed if the fixed capital cost of the new components exceeds 50 percent of the fixed capital cost that would be required to construct a comparable entirely new facility (see 60.15(b)(1)). In their application the source submitted information demonstrating that that the stack replacement for heater H-6 does not meet this threshold. Therefore, the requirements in NSPS Ja do not apply heater H-6.

Discussion

As previously discussed, both the H-33, H-37 Stack Replacement and the No. 1 Crude Unit Turnaround Projects were to be completed during the 2016 turnaround and were addressed in the February 1, 2016 revised permit. Although the initial application (received on February 12, 2015) noted that the project included "two unrelated upgrades to the Crude Units", the application considered both projects together. As discussed in the TRD for the February 1, 2016 revised permit (see under "Discussion"

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3    Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

beginning on page 45), although the February 12, 215 application grouped both projects together, the Division agrees that the two projects are separate projects and are not required to be aggregated in order to determine PSD and/or NANSR applicability.

Even though the H-33, H-37 Stack Replacement and the No. 1 Crude Unit Turnaround Projects are considered separate projects, it should be noted that if emissions from these two project were aggregated, the increase in emissions is still below the significance level as indicated in the table below.

| Project | Emissions (tons/yr) | | | | | | |
|---|---|---|---|---|---|---|---|
| | $PM^1$ | $PM_{10}{}^2$ | $PM_{2.5}{}^2$ | $SO_2$ | $NO_X$ | CO | VOC |
| H-33, H37 Stack Replacement Project | 1.52 | 1.73 | 1.71 | 6.59 | 10.53 | 7.47 | 6.73 |
| No. 1 Crude Unit Turnaround Projects[3] | 0.71 | 0.74 | 0.74 | 4.43 | 6.90 | 5.88 | 16.02 [5.35] |
| Total | 2.23 | 2.47 | 2.45 | 11.02 | 17.43 | 13.35 | 22.75 [12.08] |
| Significance Level[3, 4] | 25 | 15 | 10 | 40 | 25 | 100 | 25 |

[1]Condensable PM is not included for purposes of PSD/NANSR applicability for the FCCU (not required, see footnote 2). PM emissions from fuel burning equipment includes condensable PM.

[2]Includes filterable plus condensable particulate matter. Per Reg 3, Part D, Section II.A.40.g condensable PM is included in $PM_{10}$ and $PM_{2.5}$ for purposes of PSD/NANSR applicability.

[3]Values in brackets "[ ]" are emissions from the project only, i.e. the incremental increase in LPG production. This is consistent with how the increase in emissions was estimated for the Plant 1 truck rack as discussed on page 112.

[4]Indicates the NANSR significance level for a serious ozone nonattainment area. The area was classified as a serious ozone nonattainment area on January 27, 2020.

## Miscellaneous

Colorado Regulation No. 3, Part D, Section I.B.4.d specifies that the information submitted for the applicability analysis shall be included in an appendix of the Title V permit for sources that conduct the actual-to-projected actual test for a project that requires a minor permit modification in accordance with Section X. of Part C, requires a significant permit modification in accordance with Section I.A.3. of Part C, a modification as defined in Section I.B.28. of Part A or that requires a minor source permit under Part B. The source submitted an applicability analysis for this project even though a permit modification was not necessary therefore, the applicability analysis for this project will not be included in an appendix of the Title V permit.

Although the applicability analysis will not be included in an appendix of the Title V permit, the source is subject to monitoring and reporting requirements for projects that are not part of a major modification and for which the actual-to-projected-actual applicability test was used. These monitoring and reporting requirements are found in Colorado Regulation No. 3, Part D, Sections V.A.7.c and VI.B.5, which are included in the General Permit Conditions (Section IV, Condition 24 of the Title V permit).

## Revisions to Permit

As discussed previously, no revisions to the permit were necessary for this submittal. The project and the emissions increases have been discussed in this document for informational purposes.

## 1.23   August 4, 2021 (minor modification) – Plant 1 truck rack (Denver Terminal)

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3   Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

**flare tip replacement**

The purpose of this modification is to replace the flare tips on the Plant 1 truck rack flare. In addition, to replacing the flare tips, the source is also requesting the use of a temporary flare for up to 2 weeks in any twelve month period, in the event that maintenance needs to be conducted on the permanent flares. The source is also taking this opportunity to revise the CO emission factor for the flare and make other revisions to the emission calculation methods specified in the current permit.

The application indicates that the purpose of the project is to perform necessary maintenance and modifications to the flare in order to ensure the safe and steady operation of the Terminal. This includes increasing the short-term loading rate of the Terminal from 4,400 gallons per minute (gpm) to 9,000 gpm. The application indicates the current flare system is designed to allow for loading rates of 7,200 gpm but design issues have limited that rate to 4,400 gpm.

The existing flare design system includes two flare stacks with two burner tips, one flare stack has two 6" burner tips and the second flare stack has a 6" burner tip and a 4" burner tip. The project includes replacing a 6" burner tip on each flare stack with a 10" burner tip and blinding off the remaining burner tip. After completion of the project, each flare stack will have one 10" burner tip.

For completion of the project, the source will use a temporary flare in order to allow the Terminal to operate during construction. The temporary flare can process 4,800 gpm and uses propane as a pilot fuel. The source has requested that the permit be revised to allow the use of a temporary flare for up to two weeks in any 12 month rolling period. The temporary flare used during construction will not be maintained on site but should the need for a temporary flare arise, the source will bring one onsite.

Construction on the project is scheduled to start September 2021 and be completed in October 2021. On October 19, 2021, the source submitted a revised APEN at the request of the Division to reflect the appropriate SIC code and to include requested emissions for all criteria pollutants. In the October 19, 2021 submittal, the source indicated that construction on the project would begin in early December 2021.

Modification Type

The source indicated that this modification would qualify as a minor modification.

Colorado Regulation No. 3, Part C, Section X.A identifies those modifications that can be processed under the minor permit modification procedures. Specifically, minor permit modifications "are not otherwise required by the Division to be processed as a significant modification" (Colorado Regulation No. 3, Part C, Section X.A.6). The Division requires that "any change that causes a significant increase in emissions" be processed as a significant modification (Colorado Regulation No. 3, Part C, Section I.A.7.a). According to Part F of Regulation No. 3 (Section I.L, revisions adopted July 15, 1993, Subsection I.G for modifications) the Division considers that a significant increase in emissions is the potential to emit above the major stationary source significant level in Colorado Regulation No. 3, Part D, Section II.A.44. As indicated in the tables below, the change in both permitted (requested) and actual emissions are below the significance

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3   Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

level. Therefore, the Division agrees that this project can be processed as a minor modification.

| | Change in **Permitted** (Requested) Emissions | | | | |
|---|---|---|---|---|---|
| | PM/PM$_{10}$/PM$_{2.5}$ | SO$_2$ | NO$_X$ | CO | VOC |
| Truck Rack Flare – Requested Emissions | 0.56 | 5.31 x 10$^{-3}$ | 5.1 | 23.3 | 26.6 |
| Truck Rack Flare – Current Emissions | N/A | N/A | 2.1 | 11.3 | 36.1 |
| Change in Truck Rack Flare Emissions | 0.56 | 5.31 x 10$^{-3}$ | 3.0 | 12.0 | - 9.5 |
| New Piping Components[1] | | | | | 4.68 x 10$^{-3}$ |
| **Total** | **0.56** | **5.31 x 10$^{-3}$** | **3.0** | **12.0** | **-9.5** |
| PSD/NANSR Significance Level (T5 Minor Mod Level)[2] | 25/15/10 | 40 | 25 | 100 | 25 |

N/A – Emissions were below the APEN de minimis level, so an emission limit for these pollutants was not included in the permit.

[1]As indicated later in this section, since emissions from new piping components are below the APEN de minimis level, an emission limit for these components will not be included in the permit.

[2]Indicates the NANSR significance level for a serious ozone nonattainment area. The area was classified as a serious ozone nonattainment area on January 27, 2020.

The application indicates that based on the major stationary source applicability test conducted in accordance with the requirements in Colorado Regulation No. 3, Part D, Section I.B (actual-to-projected-actual emissions or potential emissions for existing equipment and actual-to-potential for new equipment), that increases from the project are below the significant level. The results of the applicability test are indicated in the table below:

| | Change in **Actual** Emissions | | | | |
|---|---|---|---|---|---|
| | PM/PM$_{10}$/PM$_{2.5}$ | SO$_2$ | NO$_X$ | CO | VOC |
| Truck Rack Flare – Requested Emissions | 0.56 | 5.31 x 10$^{-3}$ | 5.1 | 23.3 | 26.6 |
| Truck Rack Flare – Baseline Actual Emissions | 0.35 | 4.13 x 10$^{-3}$ | 2.1 | 11.3 | 20.3 |
| Change in Truck Rack Flare Emissions | 0.21 | 1.18 x 10$^{-3}$ | 3.0 | 12.0 | 6.3 |
| New Piping Components[1] | | | | | 4.68 x 10$^{-3}$ |
| **Total** | **0.21** | **1.18 x 10$^{-3}$** | **3.0** | **12.0** | **6.3** |
| PSD/NANSR Significance Level (T5 Minor Mod Level)[2] | 25/15/10 | 40 | 25 | 100 | 25 |

[1]As indicated later in this section, since emissions from new piping components are below the APEN de minimis level, an emission limit for these components will not be included in the permit.

[2]Indicates the NANSR significance level for a serious ozone nonattainment area. The area was classified as a serious ozone nonattainment area on January 27, 2020.

As part of this project, the only proposed new equipment is new components associated with the project, which are a source of fugitive VOC emissions. Emissions from the new components were estimated using the following emissions factors and related component count.

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3   Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

Modeling Requirements

A modeling analysis is generally conducted based on requested (permitted) emissions, thus a modeling analysis would be triggered based on the change in permitted emissions.

As previously indicated, the increase in permitted (requested) emissions are less than 1 ton/year for $PM/PM_{10}/PM_{2.5}$ and $SO_2$, 3.0 ton/year for $NO_X$ and 12 ton/year for CO. There is a decrease in VOC emissions (9.5 ton/yr). Also as previously indicated, as part of this project, the short-term loading rate will increase by 4.43 lb/hr and 20.3 lb/hr respectively, for $NO_X$ and CO. For the temporary flare, the short-term loading rate will increase by 0.38 lb/hr for $NO_X$.

The Division withdrew Colorado's Modeling Guidelines March 15, 2021 and retired PS Memo 10-01 (shown on page 182) on April 14, 2021. At the time this application was processed, there was no written guidance to rely on for modeling decisions. Therefore, permitting staff requested that the Division's Modeling and Emissions Inventory Unit (MEIU) to determine whether modeling was required. In response to permitting staff's inquiry, MEIU staff modeled the short-term $NO_X$ emissions increase for both the flare, as well as the requested temporary flare. The modeling was based on parameters provided by the source on October 12, 2021 and the MEIU provided permitting staff with the results in an October 19, 2021 email. The MEIU's modeling analysis resulted in the following impacts:

| Suncor NAAQS 1-hr Impacts | | | | | | |
|---|---|---|---|---|---|---|
| Met Data Set and Scenario | Pollutant | Rank | Method | Impact, $\mu g/m^3$ | Significant Impact Level (SIL), $\mu g/m^3$ | % of SIL |
| ASARCO_POST_FLARE | $NO_2$ | H1H | Tier 1 | 2.533 | 7.5 | 33.78 |
| ASARCO_TEMP_FLARE | | | | 0.178 | | 2.38 |
| ASARCO_ADJU_POST_FLARE | | | | 2.745 | | 36.60 |
| ASARCO_ADJU_TEMP_FLARE | | | | 0.192 | | 2.57 |
| STAPLETON_POST_FLARE | | | | 2.112 | | 28.16 |
| STAPLETON_TEMP_FLARE | | | | 0.114 | | 1.52 |
| STAPLETON_ADJU_POST_FLARE | | | | 2.133 | | 28.44 |
| STAPLETON_ADJU_TEMP_FLARE | | | | 0.114 | | 1.52 |

Since impacts from the project were below the SIL, the project is not expected to have a significant impact on air quality and no further modeling is required.

Discussion

Except for new piping components, the unit affected by this modification, the Plant 1 truck rack (Denver Terminal) flare, is an existing emission unit. Therefore the major stationary source applicability test is based on a comparison of baseline actual emissions (BAE) to projected actual emissions (PAE), or alternatively to potential to emit (requested emissions).

Emissions from the new piping components are based on the following emission factors and component counts.

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3   Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

| Component Type | No. of Components | Service | Emission Factor (lb/component/hr) | Control Efficiency | Emission Factor Source | Emissions (lbs/yr) |
|---|---|---|---|---|---|---|
| Valves | 5 | gaseous | $2.87 \times 10^{-5}$ | 0% | "Protocol for Equipment Leak Emission Estimates", EPA-453/R-95-017, November 1995, Table 2-3 | 1.3 |
| Flanges/ Connectors | 10 | gaseous | $9.26 \times 10^{-5}$ | 0% | | 8.1 |
| | | | | | | |
| Total (lbs/yr) | | | | | | 9.4 |
| Total (tons/yr) | | | | | | $4.68 \times 10^{-3}$ |

Emissions from the new components are estimated at less than 1 ton/yr of VOC (the APEN de minimis level) and therefore, a permit is not required for the components associated with this project.

Plant 1 Truck Rack (Denver Terminal) Flare

For existing emission units, the applicability test is based on comparing either projected actual emissions or potential to emit to baseline actual emissions. In this case, the source has projected actual emissions at the current permitted throughput and has requested emissions at those levels. The baseline period relied upon is January 1, 2017 through December 31, 2018. Since the source is changing the emission calculation methodology (e.g., CO emission factor, heat rate of products and flare control efficiency) and those changes are unrelated to the project, the source calculated both baseline and projected actual emissions based on the new calculation methodology. The Division agrees that this is appropriate in order to compare emissions on the same basis, since these calculation changes are unrelated to the projected.

In addition, as specified in Colorado Regulation No. 3, Part D, Section II.A.4.b.(ii) BAE shall be adjusted downward to exclude any non-compliant emissions that occurred while the source was operating above an emission limitation that was legally enforceable during the baseline period. Using the revised calculation methodology, $NO_X$ and CO emissions would have exceeded the annual emission limits, therefore, baseline $NO_X$ and CO emissions were adjusted downward to the current permitted levels.

Revisions to Permit

The following changes were made to the permit to address this modification application:

Section II.25 – Truck Loading Rack and Flare (R102)

• Revised the emission limits and calculation methodology in Condition 25.1.

• Added a "new" Condition 25.10 to record hours of operation for use in calculating emissions from flare pilot gas consumption.

• Included provisions for the temporary flare in "new" Condition 25.15.

• Included "new" Condition 25.16 to include a stack height requirement for the flare.

**1.24    November 30, 2021 (minor modification) – Reformulated Gasoline (RFG) Project**

The purpose of this modification is to approve the necessary modifications to the facility to allow Suncor to produce reformulated gasoline (RFG). Since the DMNFR ozone non-attainment area is expected to be downgraded from serious to severe, Suncor will be required to meet the more stringent requirements for RFG during the ozone season (May 1 – September 15). RFG has a lower reid vapor pressure (RVP) than the current summer gasoline requirements and is expected to reduce VOC emissions in the DMNFR area.

The November 30, 2021 application indicated that physical changes would be made to both Plants 1 and 3 equipment and Plant 2 equipment but concluded that only modifications to the Plant 2 permit were necessary. As discussed in more detail below the Division determined that permit revisions were necessary for Plants 1 and 3, and Suncor submitted draft permit language and an APEN for new piping components at Plants 1 and 3 on January 14 and 19, 2022, respectively to address new piping components at Plants 1 and 3.

In order to meet the RFG requirements, Suncor will need to import more high quality, low RVP blend stocks and decrease the amount of higher RVP blend stocks. Suncor anticipates importing alkylate or iso-octane for blending and exporting light straight run (LSR) gasoline and n-butane. The application indicates that the alkylate/iso-octane would be bottom off-loaded at the Plant 2 rail rack using gravity and pumps, so there will be no venting of emissions to the atmosphere or the rail rack flare (emissions would be realized at the storage tank). Alkylate/iso-octane would be routed to Tank T-28 at Plant 2, transferred to the Plant 1 online blender system and then to one of the finished product storage tanks at Plant 1. A new alkylate/iso-octane pump would be installed to transfer the material to the Plant 1 online blender system, along with new near infrared analyzers to improve blending operations.

Modifications to the Plant 2 rail rack would be necessary to accommodate ten (10) alkylate/iso-octane unloading spots and would include the following physical changes:

- Add alkylate/iso-octane unloading capabilities to existing ethanol loading spots,

- Add new alkylate/iso-octane unloading spots and two (2) alkylate/iso-octane unloading pumps,
- Extend the exiting loading racks to accommodate the addition of the spots,
- Move/re-align two of the diesel loading spots,
- Permanently blind the diesel loading arms and all flare connections at the previous two spots,
- Relocate the two diesel loading and vapor recovery arms including drain piping, and
- Install new unloading arms for alkylate/iso-octane.

The application also indicates plans to install rail containment trays under the diesel, ethanol, iso-octane and alkylate loading and unloading locations for spill prevention, control and countermeasure and storm water purposes. The trays will drain to a new, open, concrete retention basin. New below grade storm water drainage piping will also be installed at the loading/unloading rack, which will also drain to the new concrete retention basin.

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3    Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

Since alkylate/iso-octane will be offloaded at the Plant 2 rail rack and ethanol tank capacity will decrease at Plant 2, a high-speed ethanol unloading pump will be installed at the Plant 1 truck rack to allow for increased ethanol unloading.

In addition, new piping components associated will be installed to accommodate the change of service for the tanks listed below.

| Plant | Tank ID No. | Current Service | Future Service |
|-------|-------------|-----------------|----------------|
| 1 | T34 | Gasoline | LSR Gasoline |
|   | T67 | LSR Gasoline | Slop/Intermediate/Transmix |
|   | T77 | Slop/Intermediate/Transmix | Gasoline |
| 2 | T24 | Out of Service | Ethanol |
|   | T25 | Gasoline | Ethanol |
|   | T28 | Ethanol | Alkylate/Iso-Octane |

As previously stated, in order to reduce the RVP of gasoline to meet the RFG requirements, LSR which is a higher vapor blend stock, may be exported during the ozone season. Suncor has indicated that they have leased a storage tank at a 3rd party terminal in the Commerce City area and will transport the LSR to that tank via pipeline during the ozone season. LSR would be returned from the leased storage tank via that same pipeline outside of the ozone season. Since the 3rd party terminal is a separate stationary source, emissions from the leased storage tank are not included in the emissions analysis to determine whether major stationary source permitting requirements apply. In processing this application, the Division asked Suncor to identify the 3rd party terminal and to provide an estimate of the emissions from the leased tank. Suncor cited confidentiality concerns as a reason to not name the terminal and indicated that the terminal owner/operator did not provide them with emissions estimates for the tank.

To accommodate the pipeline export of LSR to the 3rd party terminal leased tank, all LSR will be stored in Tank T-34 and an existing pipeline connection will be used to transport LSR to the leased tank. A new corrosion inhibitor injection pump and associated piping will be installed to export LSR.

As a back-up plan, although it is not anticipated to occur, LSR may be exported from the refinery through the Plant 1 truck rack. The application indicates if Suncor can import sufficient amounts of alkylate/iso-octane, the import of LSR via either pipeline or the Plant 1 truck rack, would not be necessary as it would be blended with the alkylate/iso-octane to meet the specifications for RFG.

Since Suncor is leasing a storage tank from a 3rd party, the application indicates that Suncor will use the additional tank capacity to produce low RVP gasoline in advance during January through March and export that material to the leased tank via pipeline. Utilizing the off-site storage tank, Suncor will be able to process an incremental amount of crude during January through March. Emissions increases associated with this incremental increase in the amount of crude processed have been included in the analysis.

The application indicates that no changes to allowable emission or throughput limits for existing equipment are necessary and has not requested any changes. The changes to permitted emissions are due to new piping components installed. Although Tank T24,

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3    Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

which had been previously removed from service, is considered a "new" emission unit for the applicability analysis, because the VOC potential to emit is below the APEN de minimis level, a VOC emission limit will not be included in the permit for this tank.

The final revised calculation spreadsheets were submitted on February 9, 2022. Responses to the Division's questions and concerns were submitted on January 5, 14 & 19 and February 9 & 11, 2022

Modification Type

The source indicated that this modification would qualify as a minor modification.

Colorado Regulation No. 3, Part C, Section X.A identifies those modifications that can be processed under the minor permit modification procedures. Specifically, minor permit modifications "are not otherwise required by the Division to be processed as a significant modification" (Colorado Regulation No. 3, Part C, Section X.A.6). The Division requires that "any change that causes a significant increase in emissions" be processed as a significant modification (Colorado Regulation No. 3, Part C, Section I.A.7.a). According to Part F of Regulation No. 3 (Section I.L, revisions adopted July 15, 1993, Subsection I.G for modifications) the Division considers that a significant increase in emissions is the potential to emit above the major stationary source significant level in Colorado Regulation No. 3, Part D, Section II.A.44. The change in permitted emissions is 3.02 tons/yr of VOC (from new piping components), with a change in permitted emissions for the Plants 1 and 3 permit at 0.81 tons/yr of VOC. As indicated in the table below, the change in actual emissions are below the significance level. Therefore, the Division agrees that this project can be processed as a minor modification.

| Emission Unit | RFG Project - Increase in Actual Emissions | | | | |
| --- | --- | --- | --- | --- | --- |
| | $PM/PM_{10}/PM_{2.5}$ | $SO_2$ | $NO_X$ | CO | VOC |
| P1/3 Fugitive VOCs from New Components[1] | | | | | 0.81 [0.95] |
| P2 Fugitive VOCs from New Components[1] | | | | | 2.21 [2.61] |
| Plant 2 rail rack[2] | 0.03 | 4.45E-04 | 0.28 | 1.27 | 10.81 |
| Plant 1 truck rack[2] | 0.21 | 7.31E-04 | 3.00 | 11.95 | 3.10 |
| Plant 1 FCCU[2] | 0.04 /0.06 /0.06 | 0.02 | 0.04 | 0.01 | 0.02 |
| Plant 2 FCCU[2] | 0.03 /0.04 /0.04 | 0.02 | 0.04 | 0.01 | 0.01 |
| Plant 2 SRU[2] | 1.66E-03 | 3.85 | 2.02E-03 | 0.00 | 1.11E-04 |
| Plant 2 Cat Poly Unit[2] | 1.17E-03 | | | | |
| Hydrogen Plant[2] | 0.38 | 0.04 | 9.68 | 0.05 | 0.33 |
| Tanks[2, 3] | | | | | 5.76 |
| Heaters[2, 4] | 0.18 | 0.05 | 1.15 | 1.16 | 0.13 |
| **Total** | **0.87 /0.90 /0.90** | **3.98** | **14.19** | **14.45** | **23.18 [23.72]** |
| PSD/NANSR Significance Level (T5 Minor Mod Level)[5] | 25/15/10 | 40 | 25 | 100 | 25 |

[1]New Equipment. Emission increases are based on potential (requested) emissions (actual emission = 0 for new equipment). Note that the source claimed a 100% control level for several pumps by installing technology beyond the requirements for NSPS GGGa, thus the values in brackets "[ ]" represent emissions based on controls estimated for the NSPS GGGa leak detection and control requirements.

[2]Existing Equipment. Emission increases are based on the projected actual emissions minus baseline actual emissions. A table showing the full applicability test can be found in Appendix K of the permit.

[3]Affected tanks are: Plants 1/3 - T34, T67, T72, T77, T144, T775, T777 and T2010. Plant 2 - T6, T24, T25 and T28.

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3   Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

[4]Affected heaters are Plants 1/3 – H-6, H-11, H-27, H-20, H-10, H-19, H-22, H-28, H-29, H-30 and H-2410. Plant 2 –
H-101, H-103, H-201 and H-782.

[5]Indicates the NANSR significance level for a serious ozone nonattainment area. The area was classified as a
serious ozone nonattainment area on January 27, 2020.

In addition, the Division requires that "any change that is considered a modification under Title I of the Federal Act" be processed as a significant permit modification (Colorado Regulation No. 3, Part C, Section I.A.7.b). Part F of Regulation 3 Section I.L, revisions adopted July 15, 1993, Subsection I.G for modifications describes more specifically what constitutes a modification under Title I of the Federal Act and it indicates that a modification which triggers either Section 111 (new source performance standards (NSPS)) or 112 (national emission standards for hazardous air pollutant (NESHAP)) requirements is considered a Title I modification. The Division considers that modifications that trigger either NSPS or NESHAP requirements that are already included in the Title V permit for another emission unit may be processed as a minor modification, since the specific NSPS or NESHAP requirements are already addressed in the permit. As discussed later in this section II.1.1.24 under "Regulatory Review", although the provisions in 40 CFR Part 63 Subpart EEEE (National Emission Standards for Hazardous Air Pollutants: Organic Liquids Distribution (Non-Gasoline), referred to as "OLD MACT" or "MACT EEEE") were triggered for Plant 2 equipment, only recordkeeping requirements apply. The Division considers that if a modification triggers a new NESHAP and only recordkeeping requirements apply, the project can be processed as a minor modification. Therefore, this modification can be processed as a minor modification.

<u>Modeling Requirements</u>

A modeling analysis is generally conducted based on requested (permitted) emissions, thus a modeling analysis would be triggered based on the change in permitted emissions.

As indicated previously, the source has not requested an increase in permitted emissions for any existing equipment.

The only new equipment associated with this project are sources of VOC emissions (fugitive VOC emissions from piping components and Tank 24). Permitted VOC emissions from the new piping components are 3.02 tons/yr and the VOC potential to emit for Tank 24 is 0.14 tons/yr – for a total of 3.16 tons/yr. Although VOC is a precursor for ozone, in general accurate and cost effective methods for modeling ozone impacts from stationary sources are not available. Therefore, individual source ozone modeling is not routinely requested for permit modifications. The magnitude of the emission increase (VOC – 0 ton/yr and $NO_X$ – 0.4 ton/yr) is not at a level for which individual source ozone modeling would be required.

The Division's Interim Modeling Guideline (published October 25, 2021) indicates that modeling may be required for projects for which there is no increase in permitted or allowable emissions. Therefore, Title V permit staff contacted the Modeling and Emission Inventory Unit (MEIU) to determine whether modeling would be required. MEIU deferred the decision to Division upper management. The deputy director of stationary sources (as of January 31, 2022) responded in an email received January 31, 2022 with the following:

"Q: Is modeling required for the RFG permit modification at Suncor?

A: No, air quality modeling is not required or justified for this permit action.

This modification authorizes certain changes to the refinery to enable Suncor to produce reformulated gasoline and that process generates an increase in volatile organic compounds (VOCs). The Division requires air pollution sources to conduct dispersion modeling to evaluate whether an increase in certain pollutants known as "criteria pollutants" might cause or contribute to an exceedance of the National Ambient Air Quality Standards. VOCs are not a criteria pollutant and there is no ambient standard for VOCs. However, emissions, including criteria pollutants and VOCs, from this facility are of paramount interest to the Division and hence the Division anticipates continuing to evaluate Suncor's potential impacts. In fact, the department is taking the lead on a technical assessment of emissions near and around this facility to ensure that Suncor is not impacting the NAAQS in the surrounding communities through a mix of modeling and ground-based monitoring. Additionally, the Division has convened an expert permit modeling Science Panel and if / when / and how permit modeling should be conducted are all topics of routine Panel discussions. Recommendations from this panel may inform future modeling actions at this and other industrial sources of air pollution."

Note that contrary to the above paragraph, VOC is a criteria pollutant in accordance with Colorado Regulation No. 3, Part A, Section I.B.17.

<u>Emissions Estimates</u>

**Emissions from New or Physically Changed/Modified Equipment**

As previously discussed, the only new equipment associated with this project are new piping components which are a source of fugitive VOC emissions. In addition, Tank 24 will be returned to service and considered a new tank. Finally, modifications will be made to the Plant 2 rail rack to accommodate the unloading of alkylate/iso-octane but as discussed previously, due to the unloading method (gravity and pumps), there will be no venting of emissions to the atmosphere or the rail rack flare (emissions would be realized at the storage tank). The source has not requested any changes to permitted emissions for the Plant 2 rail rack, so emissions from the rail rack are discussed in more detail below with the unmodified emission units.

As part of this project, the only proposed new equipment is the new components associated with the project, which are a source of fugitive VOC emissions and Tank 24 (which will be returned to service).

The VOC potential to emit for Tank 24 were estimated using TankESP. Throughput for Tank T24 was based on the maximum annual throughput for this tank plus 10% of the maximum increase in gasoline production resulting from this project. As discussed previously, since the VOC potential to emit from Tank 24 is below the APEN de minimis level (1 ton/yr), an emission limit has not been included in the permit.

Emissions from the new components were estimated using the following emission factors and related component count.

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3   Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

| Plants 1 and 3 | | | | | | |
|---|---|---|---|---|---|---|
| Component Type | No. of Components | Service | Emission Factor (lb/component/hr) | Control Efficiency[1, 2] | Emission Factor Source | Emissions (lbs/yr)[3] |
| Valves | 38 | Light liquid | 0.02403 | 95% | "Protocol for Equipment Leak Emission Estimates", EPA-453/R-95-017, November 1995, Table 2-2 (emission factors) and , Page 5-2 and Table 5-3 and page (control efficiencies) | 400 [7,999] |
| Flanges/ Connectors | 171 | Any | 0.00055 | 0% | | 825 |
| Pumps | 1 | Light liquid | 0.25133 | 100% {88%} | | 0 {264} [2,202] |
| | 1 | Heavy liquid | 0.04630 | 0% | | 406 |
| | | | | | | |
| Total (lbs/yr) | | | | | | 1,631 {1,895} [11,432] |
| Total (tons/yr) | | | | | | 0.81 {0.95} [5.72] |

| Plant 2 | | | | | | |
|---|---|---|---|---|---|---|
| Component Type | No. of Components | Service | Emission Factor (lb/component/hr) | Control Efficiency[1, 3] | Emission Factor Source | Emissions (lbs/yr) |
| Valves | 104 | Light liquid | 0.02403 | 95% | "Protocol for Equipment Leak Emission Estimates", EPA-453/R-95-017, November 1995, Table 2-2 (emission factors) and Table 5-3 (control efficiencies) | 1,095 [21,892] |
| | 17 | Gaseous | 0.05908 | 96% | | 352 [8,798] |
| | 18 | Heavy liquid | 0.00051 | 0% | | 80 |
| Flanges/ Connectors | 603 | Any | 0.00055 | 0% | | 2,911 |
| Pumps | 3 | Light liquid | 0.25133 | 100% {88%} | | 0 {793} [6,605] |
| | | | | | | |
| Total (lbs/yr) | | | | | | 4,438 {5,231} [40,286] |
| Total (tons/yr) | | | | | | 2.21 {2.61} [20.14] |

[1]Control efficiencies are from the following sources. **Valves** – Table 5-3 of EPA's Protocol for Equipment Leaks (EPA-453/R-95-017) based on monitoring consistent with proposed HON NESHAP. **Pumps** Table 5-3 for control efficiency in "{ }" based on monitoring consistent with proposed HON NESHAP. The 100% control efficiency for pumps is discussed further in footnote 2. During the review of a previous application, the Division reconsidered the control efficiency previously allowed for flanges and connectors. Although Colorado Reg 7 requires annual monitoring for flanges (per Section VIII.C.4.a.(i)(A)), the leak definition in Reg 7 (10,000 ppm) is higher than that in the HON NESHAP (500 ppm), thus the 81% control efficiency listed in Table 5-3 is not appropriate and no control efficiency was allowed for flanges. The Division would agree that some control may be appropriate for flanges due to annual monitoring, however, the source did not propose an alternative for this application. Note that NSPS GGGa includes similar monitoring for flanges/connectors as the HON NESHAP, however, these requirements have been stayed.

[2]Requested emissions are based on the source installing pumps with a dual mechanical seal with a pressurized barrier fluid. Per page 5-2 of EPA's leak protocol, the control efficiency for these pumps is 100%. The permit will specify that these types of pumps be installed and that the pumps meet the requirements in 40 CFR Part 60 Subpart VVa § 60.482-2a(d).

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3   Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

[3]Emissions in "[ ]" are uncontrolled. Except for certain pumps, the control efficiency, and subsequently controlled emissions are based on required monitoring. For the pumps with additional controls, the control efficiency based on the required monitoring was relied upon for emissions, in "{ }" using in the applicability analysis.

Note that although requested VOC emissions from piping components at Plants 1 and 3 are below the APEN de minimis level (1 ton/yr), emissions of 2,2,4-trimethylpentane (iso-octane), which is a non-criteria reportable pollutant are above the APEN de minimis level (250 lb/yr) and as such an APEN and permit are required as specified in Colorado Regulation No. 3, Part A, Section II.B.3.b and Part B, Sections II.A.1 and 6.

**Emissions from Non-Modified/Physically Changed Equipment (Increased Utilization)**

Emissions from increased utilization of non-modified equipment were included in project emissions to verify that emissions from the project are below the significance levels. The emissions increase for this equipment is based on the projected actual emissions minus the baseline actual emissions. Note that the definition of projected actual emissions in Colorado Regulation No. 3, Part D, Section II.A.38.b.(iii), specifies that sources:

> Shall exclude, in calculating any increase in emissions that results from the particular project, that portion of the unit's emissions following the project that an existing unit could have accommodated during the consecutive twenty-four month period used to establish the baseline actual emissions under Section II.A.4. of this part D and that are also unrelated to the particular project, including any increased utilization due to product demand growth

For this project, except for the Plant 2 rail rack, Plant 1 truck rack and FCCUs, the source did not exclude in calculating projected actual emissions, that portion of the unit's emissions that could have been accommodated during the baseline period and that are unrelated to the project, such as demand growth. Thus the emissions increases associated with the project are conservative.

Baseline actual emissions (BAE) are from the period of January 1, 2017 through December 31, 2018. BAE was adjusted downward for non-compliant emissions during the baseline period or for emissions that would have exceeded an emission limit for which the unit must currently comply with, as discussed under the various emission units.

The source used process knowledge and engineering models (LP model) to determine the impact on equipment downstream to determine the increased throughput through each process unit, utility unit and/or tank.

Emissions from the non-modified units were estimated as follows:

Plant 2 rail rack

Materials loaded out through the Plant 2 rail rack are routed to the rail rack flare. Projected actual emissions for the Plant 2 rail rack are presumed to equal permitted emissions and were used in the applicability test. However, the source did estimate emissions from the project itself based on the projected n-butane export rate of 858 barrels per day during the period of April 10th to September 15th (159 days), which

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3   Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

results in 136,422 barrels per year, which is equivalent to 180 rail cars loaded. Project emissions also include an additional volume of liquefied petroleum gas (LPG) produced as a result of the incremental increase in crude processed as a result of transferring low RVP gasoline to the 3rd party terminal storage tank during January through March. The incremental increase in LPG production is anticipated to be 5,633 barrels per year, which is equivalent to 7.4 rail cars. Emissions estimated for the project alone are shown in the table below:

| Plant 2 Rail Rack – Project Only Emissions (tons/yr) | | | | |
|---|---|---|---|---|
| PM/PM$_{10}$/PM$_{2.5}$ | SO$_2$ | NO$_X$ | CO | VOC |
| 1.10E-02 | 1.47E-04 | 0.10 | 0.43 | 3.31 |

Baseline actual emissions were adjusted downward to exclude emissions from gasoline loading. The Plant 2 rail rack is no longer permitted to load gasoline as of January 30, 2019 and because gasoline was loaded during the baseline period, these emissions must be excluded.

VOC emissions that the Plant 2 rail rack could have accommodated during the baseline period are based on the total number of barrels loaded during the annual period of August 2017 through September 2018 and the overall VOC emission factors in Table 6. For other pollutants, capable of accommodating emissions are based on emission factors and either the flare flow (MMscf) or flare heat load (MMBtu) during that same annual period (August 2017 through September 2018).

Plant 1 Truck Rack

Materials loaded out through the Plant 1 truck rack are routed to the truck rack flare. Projected actual emissions for the Plant 1 truck rack are presumed to equal permitted emissions and were used in the applicability test. However, the source did estimate emissions from the project itself based on the projected increase in gasoline production due to producing 9,300 barrels per day of low RVP gasoline during the period of April 10th to September 15th (159 days), which results in 1,478,700 barrels per year. Project emissions also include the incremental volume of distillate oil and gasoline as a result of the incremental increase in crude processed as a result of transferring low RVP gasoline to the 3rd party terminal storage tank during January through March. The incremental increases in gasoline and diesel production were estimated at 288,244 and 21,695 barrels per year, respectively. Emissions estimated for the project are shown in the table below.

| Plant 2 Truck Rack – Project Only Emissions (tons/yr) | | | | |
|---|---|---|---|---|
| PM/PM$_{10}$/PM$_{2.5}$ | SO$_2$ | NO$_X$ | CO | VOC |
| 0.08 | 7.31E-04 | 0.74 | 3.39 | 3.10 |

Both baseline and projected actual emissions were estimated using the methods specified in the Plant 1 truck rack flare tip replacement modification (see Section III.1.1.23). Using the revised calculation methodology, NO$_X$ and CO emissions would have exceeded the annual emission limits, therefore, baseline NO$_X$ and CO emissions were adjusted downward to the permitted levels during the baseline period.

The source excluded VOC emissions that it could have accommodated during the baseline period. Capable of accommodating emissions were based on annualizing (multiplying by twelve) July 2018 VOC emissions.

Heaters

Increased utilization of certain process heaters is due to the incremental increase in crude processed as a result of transferring low RVP gasoline to the 3rd party terminal storage tank during January through March. The application indicates incremental increases in the crude processed at the No. 1 (Plant 1) and No. 2 (Plant 2) Crude Units of 49 and 99 barrels per day, respectively. The following heaters were affected and were included in the source's evaluation of emissions:

| Emission Unit | Heater(s) |
|---|---|
| No. 1 Crude Unit | H-6, H-11 and H-27 |
| No. 2 Crude Unit | H-101 and H103 |
| Naphtha Splitter/Stabilizer | H-20 |
| No. 2 HDS | H-10 and H-19 |
| Plant 1 FCCU | H-22 |
| GBR Unit | H-2410 |
| Plant 1 Catalytic Reforming Unit | H28 thru H-30 |
| Plant 2 FCCU | H-201 |
| $H_2$ Plant[1] | H-2101 |

[1]The $H_2$ Plant heater is grouped here with the other heaters but is listed separately in the emission summary table shown on page 123 and in Appendix K of the permit.

$SO_2$ emissions from the heaters during the baseline period were adjusted downward for periods when the fuel gas $H_2S$ limit (162 ppmv) was exceeded. In addition, $NO_X$ emissions for the $H_2$ Plant heater (H-2101) were adjusted downward for periods when $NO_X$ emissions exceeded a Consent Decree limit of 0.04 lb/MMBtu, on a 3-hour rolling average.

PAE from all heaters, except H-2101 ($H_2$ Plant) were estimated by multiplying either the baseline fuel consumption (Mscf) or heat input (MMBtu) by the ratio of the projected-to-baseline emission unit processing rate (in bpd) to get projected fuel consumption or heat input and then calculating emissions using the emission factors in the Title V permit. Note that for heaters without permit limits, the Btu correction factor noted in the current Title V permit (last revised February 22, 2018) in Section II.12 was not applied. Projected $SO_2$ emissions were estimated using the daily average $H_2S$ concentration in the fuel gas during the baseline period, which was 10 ppmvd for Plants 1 and 3 equipment and 21 ppmvd for Plant 2 and the projected fuel consumption.

For the $H_2$ Plant Heater, the increase in process rate was calculated by adding the increase in $H_2$ gas production predicted to the baseline unit process rate. The projected firing rate and emissions were calculated by scaling the baseline rate up proportional to the increase in process rate. Note that projected actual emissions for the $H_2$ Plant heater (H-2101) were calculated using the unadjusted baseline emissions.

Sulfur Recovery Unit

Increased utilization of the Plant 2 SRU is due to the incremental increase in crude processed as a result of transferring low RVP gasoline to the 3rd party terminal storage

tank during January through March. $SO_2$ emissions from the Plant 2 SRU (No. 3 SRU, H-782) were adjusted downward during the baseline period when the fuel gas $H_2S$ limit (162 ppmv) was exceeded.

PAE from all pollutants except $SO_2$ were based on multiplying the baseline heat input (MMBtu) by the ratio of projected-to-baseline sulfur processed (long ton per day) to get projected heat input and then calculating emissions using the emission factors in the Title V permit. Projected $SO_2$ emissions from the SRU were estimated by multiplying the projected quantity of sulfur processed (long tons per day) by emission factors (lb $SO_2$/long ton sulfur) determined from baseline $SO_2$ emissions (measured by a continuous emission monitoring system) and sulfur processed during the baseline period.

FCCUs

Increased utilization of the FCCUs is due to the incremental increase in crude processed as a result of transferring low RVP gasoline to the 3rd party terminal storage tank during January through March. CO emissions from both the Plants 1 and 2 FCCUs were adjusted downward during the baseline period when the CO limits were exceeded.

Projected actual emissions of CO, $NO_X$ and $SO_2$ from the FCCU were based on the maximum monthly emissions during the baseline period multiplied by 12 (which is also capable of accommodating (COA) emissions) plus the incremental increase in emissions due to the project. The maximum monthly emissions for the respective FCCUs are shown in the table below.

Projected VOC and PM, $PM_{10}$ and $PM_{2.5}$ emissions are based on the projected processing rate (bpd) or coke burn rate and the appropriate emission factors. The projected processing rate and/or coke burn rate is based on the maximum monthly rate multiplied by 12 (COA rate) plus the incremental process rate and/or coke burn rate. The incremental increase in bpd processed is based on the LP model. The maximum processing or coke-burn rate for the respective FCCUs are shown in the table below.

|  | Month During Baseline Period with Maximum Value | | | | |
|---|---|---|---|---|---|
|  | CO | $SO_2$ | $NO_X$ | Barrels | Coke Burn |
| P1 FCCU | Dec. 2018 | July 2017 | June 2018 | Oct. 2018 | Aug. 2017 |
| P2 FCCU | March 2017 | Aug. 2018 | Nov. 2018 | Aug. 2018 | Aug. 2018 |

Note that PM, $PM_{10}$ and $PM_{2.5}$ emissions were not estimated using the methods specified in the Title V permit. The Title V permit only provides emission factors for filterable PM and does not take into account the size variability.

Filterable PM emissions were broken down into the various fractions ($PM_{10}$ and $PM_{2.5}$) using EPA's emission calculator relying on the high efficiency cyclone as both the first and second stage controls. Filterable $PM_{10}$ and $PM_{2.5}$ emissions were determined to be 70% and 67.1%, respectively of filterable PM.

Condensable PM emissions were based on the performance tests conducted for the EPA 2011 information collection request (ICR). Ten different FCCUs were tested for condensable PM in the 2011 ICR. The Division took the average of eight of these tests and instructed the source to assume that condensable PM was 40.3% of total PM

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3    Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

(filterable plus condensable), which is 0.675 lb of condensable PM per lb of filterable PM. The results for the Torrance and Whiting FCCUs were not included in the average because the Torrance unit was unusually high (94% of total PM was condensable) and because the Whiting test only analyzed filterable $PM_{2.5}$ (there was no result for filterable PM).

<u>Storage Tanks</u>

The following tanks were included in the analysis: Plants 1/3 – T34, T67, T72, T77, T144, T775, T777 and T2010 and Plant 2 – T6, T28, T25 and T-24. Although the permit requires for the most part that emissions from tanks be estimated using EPA TANKS, the source estimated emissions using TankESP. The source provided a comparison of baseline emissions from the tanks using EPA TANKS and TankESP and overall estimated emissions were higher using TankESP, thus the change is considered conservative.

Tanks T67, T72, T144, T775, T777 and T2010 were also included in the H-33, H37 Stack Replacement Project application and in the No. 1 Crude Unit Turnaround submittal and the same baseline period was relied upon in those submittals. However, baseline emissions were calculated differently for this RFG Project application. In general, the differences are primarily due to using measured values for the bulk liquid temperature rather than calculating it from meteorological data and tank color/conditions. For Tank T144, different tank contents were modeled: for the H-33, H-37 application, Plant 2 gas oil was used in the model and for the initial RFG application, No. 2 distillate oil was modeled. In response to comments from the Division, the source revised emission estimates for T144 using Plant 1 sour gas oil in the model. According to the source, tank T144 stored Plant 1 sour gas oil during the baseline period, thus it is appropriate. The RVP of Plant 1 sour gas oil is lower than both Plant 2 gas oil and No. 2 distillate oil, hence estimated emissions are lower.

PAE from the tanks were based on average monthly baseline throughput plus the incremental increases for materials stored due to either the blending process necessary to produce RFG during the ozone season and/or the incremental increase in crude processed as a result of transferring low RVP gasoline to the 3rd party terminal storage tank during January through March.

<u>Cat Poly Loading</u>

Increased utilization of the Plant 2 Cat Poly unit is due to the incremental increase in crude processed as a result of transferring low RVP gasoline to the 3rd party terminal storage tank during January through March. Emission increases were estimated by multiplying baseline emissions by the ratio of projected-to-baseline cat poly unit processing rates (in bpd). Baseline emissions were estimated using the emission factors in the current Plant 2 permit (last revised June 15, 2009), Section II, Condition 4.1.

<u>Regulatory Analysis</u>

The application discusses the applicability of 40 CFR Part 63 Subpart EEEE – Organic Liquids Distribution (non-gasoline) MACT to the Plant 2 rail rack and concludes that since the Plant 2 rail rack loads only distillate oil and LPGs into rail cars that the

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3    Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

provisions in Subpart EEEE do not apply. However, the provisions in Subpart EEEE apply to "all transfer racks at which organic liquids are loaded into or unloaded out of transport vehicles and/or containers" (see 63.2338(b)(2)). As indicated in the application, iso-octane would be unloaded at the Plant 2 rail rack and iso-octane contains a HAP (2,2,4-trimethylpentane) listed in Table 1 of Subpart EEEE. The provisions in Subpart EEEE also apply to storage tanks, equipment leak components and transport vehicles while loading or unloading.

In response to the Division's comments regarding the applicability of Subpart EEEE, the source indicated that alkylate/iso-octane is essentially gasoline, thus exempt from the provisions of Subpart EEEE (the definition of "organic liquid" in 63.2406 excludes gasoline) and cited an EPA applicability determination (ADI M030058). The Division disagreed with the source's position, as the EPA determination that Suncor relied upon was for a refinery that made isomerate and loaded out isomerate. The result of EPA's determination was that the isomerate produced by and loaded out of the refinery would be subject to requirements in MACT CC, which would not have applied were the isomerate not determined to be gasoline. In this situation, alkylate/iso-octane is not made by Suncor at the refinery, is loaded into the refinery and will be blended with other components to make gasoline, not sold by itself as gasoline. A determination that alkylate/iso-octane "is" gasoline would not trigger MACT CC requirements for this activity or for fugitive VOC emissions from equipment leaks associated with the loading and transfer of alkylate/iso-octane.

Equipment that is subject to requirements in another MACT standard are not subject to the requirements in MACT EEEE (see 63.2338(c)(1)). Since the Plant 2 rail rack no longer loads gasoline, it is no longer subject to the provisions in MACT CC, therefore it does not appear that the rack is excluded from the affected source as noted in 63.2338(c)(1). For the same reason, fugitive emissions from piping components at the Plant 2 rail rack are not subject to the requirements in MACT CC.

The Division considers that Tank T28, which will be used to store alkylate/iso-octane, is subject to MACT CC because it is associated with a refinery process unit. Blending alkylate/iso-octane (or ethanol) from an alkylate/iso-octane (or ethanol tank) into gasoline would qualify as processing an intermediate material (unblended gasoline) to manufacture an intended product (blended gasoline). As indicated in the examples of petroleum refining process units included with the definition in §63.641, blending operations are considered to be a process unit, since Tank T-28 is associated with the blending processing it would be subject to MACT CC.

The emission limitations, operating limitations and work practice requirements for equipment leaks are included in 63.2346(c). The last sentence in 63.2346(c) states that "this paragraph only applies if the affected source has at least one storage tank or transfer rack that meets the applicability criteria for control in Table 2 or 2b to this subpart". Organic liquids (alkylate/iso-octane) are only loaded in through the Plant 2 rail rack, thus is it not subject to control requirements, just recordkeeping requirements (see 63.2343(a)). Since Tank T28 is not subject to the provisions in Subpart EEEE, equipment leaks associated with the load-in and transfer of alkylate/iso-octane are also not subject to requirements in Subpart EEEE. Thus the Plant 2 permit need only include the provisions in 63.2343(a) of Subpart EEEE.

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3   Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

Miscellaneous

Colorado Regulation No. 3, Part D, Section I.B.4 specifies that the information submitted for the applicability analysis shall be included in an appendix of the Title V permit for sources that conduct the actual-to-projected actual test for a project that requires a minor permit modification under Colorado Regulation No.3, Part C, Section X. Regulation No. 3 requires that this information (i.e., the actual-to-projected-actual applicability test) be included in an appendix, presumably so that the Division can determine whether projected emissions predicted by the project are exceeded and pursue an investigation, if necessary, to determine if the increases above the projected level were caused by the project. Therefore, the applicability analysis will be included in an appendix of the permit.

Revisions to Permit

The following changes were made to the permit to address this modification application:

Section I – General Activities and Summary

- Included the piping components (F209) in the table in Condition 5.1.

Section II.34 – Fugitive VOC Equipment Leaks with Permitted Emissions

- Added emission limits and requirements for equipment leaks (F209) associated with this project.

Section II.47 – 40 CFR Part 60 Subpart GGGa

- Added F209 (equipment leaks associated with this project) to the list of sources subject to these requirements.

Section II.53 – 40 CFR Part 63 Subpart CC

- Noted in Condition 53.43.2 that equipment leaks associated with this project (F209) fall under the overlap provisions for equipment leaks in 63.640(p)(2) (sources subject to NSPS GGGa only have to comply with NSPS GGGa).

Appendices

- Included the piping components in the tables in Appendices B and C.
- Included the applicability analysis in Appendix K.

## 1.25 February 25, 2022 Additional Information Submittal for Tank Degassing Thermal Oxidizer

In 2015 Suncor submitted applications to include requirements to use a portable thermal oxidizer for combusting vapors during tank cleaning and degassing events. An application was submitted for the Plants 1 and 3 permit, as well as the Plant 2 permit (95OPAD108). The requested emission limits and calculation methodologies were the same for each permit and the appropriate requirements for the tank degassing thermal oxidizer were included in the February 22, 2018 revised permit for Plants 1 and 3.

The methods for estimating emissions from tank degassing included in the current
Plants 1/3 permit (last revised February 22, 2018) are based on methods in AP-42,
Section 7.1, dated November 2006, however, Section 7.1 was revised in November
2019 (and again in March and June 2020). The AP-42 revisions included specific
calculation methodologies for tank cleaning operations. During processing of the Plant 2
permit, the Division asked the source to revise the calculation methodology for tank
degassing to rely on the specific methods in AP-42 for tank cleaning operations.
Therefore, in order to be consistent with the Plant 2 permit, the Division asked Suncor to
submit an APEN to revise the emission limit for the tank degassing thermal oxidizer, so
that the Division could revise the permit to reflect the calculation methodologies relied
upon in the Plant 2 permit.

The provisions in the current permit (last revised February 22, 2018) apply only to the
tanks degassed at Plants 1 and 3. VOC emission using the tank cleaning methods
include in the 2019 revisions to AP-42 were higher than the methods previously relied
upon to estimate emissions from tank cleaning and degassing. Based on the higher
estimated VOC emissions (17.2 tpy vs 5.0 tpy) and the lower significance level (25 tpy)
due to the serious nonattainment area classification, the source will be required to
include emissions from all tanks in assessing compliance with the limit, although only
emissions from Plants 1 and 3 tank degassings are to be included on the Plants 1 and 3
APEN. The following describes the changes to the calculation methodology.

Similar to the previous calculation methodology, the revised calculations rely on the
largest tank storing the highest vapor pressure material (gasoline RVP 15) and a control
efficiency of 95% for the thermal oxidizer. The methodology is based on five steps
involved in tank cleaning and degassing, as discussed below:

- Floating Roof Landings: Section 7.1.3.3.1 of AP-42 indicates that once the roof is
  landed, a breather vent is actuated to prevent the formation of a vacuum from liquid
  removal, which could result in damage to the tank. Suncor indicated that they
  remove vapors during the liquid removal by introducing a vapor extraction hose into
  the vapor space and routing the vapors to a thermal oxidizer. Emission calculations
  utilize equation 3-7. The equation relies on the number of days and the source
  assumed that the roof landing emissions account for one (1) day of operation.

- Vapor Space Purge: The vapor space purge includes the first air change out upon
  startup of forced ventilation and emission calculations utilize equation 4-2 from
  Section 7.1.3.4. These vapors are routed to the thermal oxidizer.

- Stock Removal (Continued Forced Ventilation): Forced ventilation refers to the
  removal of vapors from a tank by means of eductors, fans, or blowers. As long as
  volatile material remains in the tank, some portion of the volatile material will
  evaporate into the air being moved through the tank. Emissions from continued
  forced ventilation are estimated using equation 4-10 (continued forced ventilation) in
  Section 7.1.3.4. The equation utilizes the number of days and the source assumed
  three (3) days may be necessary to ensure liquid is removed from the tank.

- Diesel Flush (Continued Forced Ventilation): Remaining liquids or sludge may be
  removed from a storage tank bottom by flushing the area with diesel. Emissions from

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3    Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

this step are estimated using equation 4-10 (continued forced ventilation) in Section 7.1.3.4. Note equation 4-10 uses the average vapor concentration in the vapor space (which may be reported as a percent of the lower explosive limit (LEL)) and depending on the residual liquid in the tank, the diesel flush serves to lower the LEL of the tank vapor space by lowering the vapor pressure of the residual liquid. As a result, emissions from this step are lower than for the stock removal step, although emissions are still routed to the thermal oxidizer during this step. This process may be repeated for a number of days and the source assumed four (4) days for this step.

- Sludge Removal (Continued Forced Ventilation may be used): The final step is to remove sludge from the tanks once the tank is safe to access. The source indicates that forced ventilation may be used in this step but vapors from the tank are not routed to the thermal oxidizer during this step. The June 25, 2020 analysis for this step presumed continued forced ventilation for one (1) day for this step. Therefore emissions from this activity are uncontrolled.

VOC emissions from tank cleaning and degassing operations from this modification are as follows:

| Activity | VOC Emissions (tons/yr) | | | |
|---|---|---|---|---|
| | Uncontrolled | | Requested/Controlled | |
| | One Tank | Ten (10) Tanks | One Tank | Ten (10) Tanks |
| Roof Landing | 3.48 | 34.8 | 0.17 | 1.70 |
| Vapor Space Purge | 4.88 | 48.8 | 0.24 | 2.40 |
| Stock Removal | 21.9 | 219 | 1.10 | 11.0 |
| Diesel Flush | 0.62 | 6.2 | 0.03 | 0.3 |
| Sludge Removal | 0.15 | 1.50 | 0.15 | 1.50 |
| Combustion Emissions (see table below) | N/A | 0.21 | N/A | 0.21 |
| Total | 31.04 | 310.51 | 1.69 | 17.11 |

Requested emissions of criteria pollutants from combustion of propane in the thermal oxidizer are based on the design rate of the thermal oxidizer (20 MMBtu/hr) and eight (8) days of operation per tank and ten (10) tank degassings per year (1,920 hours per year of operation) as indicated in the tables below:

| Pollutant | Emission Factor[1] | Emissions (tons/yr)[2, 3] | |
|---|---|---|---|
| | | At 1,920 hours per year | At 8760 hours per year |
| PM/PM$_{10}$/PM$_{2.5}$ | 0.7 lb/1000 gal | 0.15 | 0.67 |
| SO$_2$ | 0.09S lb/1000 gal (0.018 lb/1000 gal) | $3.78 \times 10^{-3}$ | 0.02 |
| NO$_X$ | 13 lb/1000 gal | 2.73 | 12.4 |
| VOC | 1 lb/1000 gal | 0.21 | 0.96 |
| CO | 7.5 lb/1000 gal | 1.57 | 7.2 |

[1]From AP-42, Section 1.5 (dated 7/08), Table. 1.5-1. S= sulfur content in gr/100 ft$^3$ and S was assumed to be 0.2 gr/100 ft$^3$.

[2]Emissions are based on a heat content of propane assumed to be 91.5 MMBtu/1000 gal per footnote a, for fuel rate of 218.6 gal/hr of propane.

[3]Requested (permitted) emissions are based on 1,920 hour per year. Emissions at 8760 hours per year are presented to show emissions at maximum operating time.

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3   Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

Since emissions of PM, $PM_{10}$, $PM_{2.5}$, and $SO_2$ are below the APEN de minimis level at the requested throughput (38,400 MMBtu/yr), limits for those pollutants will not be included in the permit. However, emissions must be calculated and reported on APENs.

The current permit only requires that the thermal oxidizer be used to degas tanks containing liquids with a true vapor pressure greater than or equal to 0.75 psia. During processing of the February 22, 2018 modification, Suncor submitted information indicating that emissions from degassing these tanks were well below 1 ton/yr. The source has not conducted a similar evaluation using the revised emission calculation methods for tanks storing liquids with a TVP less than 0.75 psia, so the permit will be revised to require the thermal oxidizer be used in all tank degassings.

The change in permitted emissions associated with the new emission calculation methodology is shown in the table below:

| | Emissions (tons/yr) | | | | |
|---|---|---|---|---|---|
| | PM/$PM_{10}$/$PM_{2.5}$ | $SO_2$ | $NO_X$ | VOC | CO |
| Requested | 0.15 | 3.77E-03 | 2.73 | 17.2 | 1.57 |
| Current Permitted | 0.04 | 9.80E-04 | 0.71 | 5 | 0.41 |
| | | | | | |
| Change in Emissions | 0.11 | 8.79E-03 | 2.02 | 12.2 | 1.16 |
| PSD/NANSR Significance Level (T5 Minor Mod Level)[1] | 25/15/10 | 40 | 25 | 25 | 100 |

[1]Indicates the NANSR significance level for a serious ozone nonattainment area. The area was classified as a serious ozone nonattainment area on January 27, 2020.

CAM Applicability

As discussed in Section II.5 of this document, CAM applicability is triggered if an emission unit relies on a control device to meet an emission limit and has potential pre-control emissions above the major source level. As discussed in Section II.5, the major source level for VOC emissions is expected to be lowered to 25 tpy, when the area in which this source is reclassified as severe ozone nonattainment area. It is anticipated that the reclassification will occur prior to permit issuance, therefore, the Division is including CAM for emission units that trigger CAM based on the reclassification. To that end, uncontrolled VOC emissions from one tank degassing exceeds the 25 tpy threshold, therefore, CAM applies to the thermal oxidizer. CAM will be monitoring temperature in the combustion zone.

Revisions to Permit

The following changes were made to the permit to address the information submitted:

Section II. – General Activities and Summary

• Revised the description in the table in Condition 5.1 that indicates that the TO is only used for degassing or cleaning tanks containing liquids with a TVP > 0.075 psia.

Section II.70 – Tank Degassing

• Revised the title of this section and removed language specifying different requirements for tanks with a TVP < 0.75 psia.

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3   Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

- Added a footnote to the summary table to indicate the NSPS J limit is consistent with 162 ppmv $H_2S$. This is consistent with the footnotes in other summary tables for the NSPS J limit.

- Revised the VOC emission limit in Condition 70.1, as well as the emission calculation methodology, and added emission limits for $NO_X$ and CO since they are above the significance level.

- Condition 70.1 was also revised to require emission calculations for PM, $PM_{10}$ and $SO_2$ for purposes of APEN reporting.

- The language in Condition 70.2 was revised to reflect that emissions from all tank cleaning and degassing events will be routed to a thermal oxidizer.

- In addition, Condition 70.2.2 was revised to refer to the temperature monitoring required by the CAM plan.

- Included the Reg 1 $SO_2$ limit for refineries as "new" Condition 70.2, conditions that follow were renumbered.

- Revised the RACT requirements in Condition 70.3 since emissions from all tank cleaning and degassing events are required to be routed to the thermal oxidizer.

- Revised the LPG/propane throughput limit in Condition 70.4. The language in this condition was revised to be more consistent with the requirements in the Plant 2 permit.

- Condition 70.7 (VOC emissions from tanks with TVP < 0.75 psia) was removed and replaced with "new" Condition 70.8 to include restrictions on relaxing emissions from thermal oxidizer.

- Added "new" Condition 70.9 for CAM requirements.

Appendices

- Included the CAM plan for the TO in "new" Appendix M

## 1.26   March 18, 2022 Additional Information Submittal – Remediation Systems

In their September 16, 2016 renewal application, the source addressed CAM applicability for the remediation equipment. However, as discussed in Section II.5 of this document, the major source level for $NO_X$ and VOC has changed due to the reclassification of the area in which the source is located as a serious ozone non-attainment area, which is expected to be reclassified in the near future to a severe ozone non-attainment area. Therefore, the Division asked the source to address the CAM applicability for the remediation equipment to address the lower level for the serious reclassification (50 tons/yr), as well as the pending severe reclassification (25 tons/yr).

The source's response was received on February 25, 2022. As remediation activities have progressed, the VOC concentration levels in the vapors extracted from soil, thus the source opted to reduce permitted emissions from the AIRS pt 606, 618 and 626 so

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3   Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

that potential uncontrolled emissions are below 25 tons/yr of VOC and CAM would no longer apply. Requested emissions from AIRS pts

| AIRS pt | Control Device | # of blowers | VOC Emissions (tons/yr) | | |
|---|---|---|---|---|---|
| | | | Requested (Controlled) | Total Uncontrolled | Uncontrolled per Blower |
| 606 | Carbon Canisters | 1 | 0.49 | 24.71 | 24.71 |
| 618 | | 2 | 0.49 | 24.71 | 12.36 |
| 625 | | 1 | 0.49 | 24.71 | 24.71 |

The source provided information with the February 25, 2022 submittal indicating the inlet VOC concentration is well below the VOC concentration level at which these units were originally permitted and well below the level requested for this application as indicated in the table below

| | Inlet VOC Concentration (ppmv) | | |
|---|---|---|---|
| AIRS Pt | Current Permitted | Requested Permit | Maximum Test Result[1] |
| 606 | 2,300 | 700 | 7.70 |
| 618 | 1,500 | 350 | 31.7 |
| 625 | 2,300 | 700 | 7.0 |

[1]Test result period is January 2019 – February 2022 for AIRS pts 606 and 625. AIRS pt 618 was not operated during that period, so the test result period is October 2013 – April 2017.

The change in permitted emissions from this submittal is shown in the table below:

| | VOC Emissions (tons/yr) | | | |
|---|---|---|---|---|
| | AIRS pt 606 | AIRS pt 618 | AIRS pt 625 | Total |
| Requested Emissions | 0.49 | 0.49 | 0.49 | 1.47 |
| Current Permitted | 1.62 | 2.1 | 1.62 | 5.34 |
| Change in Permitted Emissions | | | | -3.87 |

Revisions to Permit

The following changes were made to the permit to address the information submitted:

Section II.67 – Sand Creek Remediation Project – AS/SVE and AS Systems

- Revised the emission limits for AIRS pts 606, 618 and 625.

- Revised Conditions 67.10.2 and 67.10.3 to indicate that the temperature shall be monitored in accordance with the CAM plan and CAM requirements. In addition, the temperature valued in Condition 67.10.2 was revised to reflect the minimum temperature value that is monitored and recorded. Previously, the permit included the temperature set point, not the temperature monitored.

- Included the CAM requirements as "new" Condition 67.12.

Section II.69 – Sand Creek Remediation Project – Project Wide Requirements

- Revised the VOC emission limit for insignificant activities in Condition 69.1 to take into account changes to permitted VOC emissions.

    The insignificant activity limit is based on 39.9 tons/yr minus permitted VOC emissions from remediation equipment.

- Revised the table in Condition 69.2 to reflect current permitted VOC emissions of

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3    Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

24.3 tpy of VOC.

Appendices

• Included the CAM plans in Appendix M.

## 1.27   Modification Summary

As noted in the table beginning on page 1 of this document, 26 applications (NOT including the renewal application) to modify this permit and 1 permitting evaluation have been submitted since the current permit was issued on February 22, 2018. The applications addressed in this TRD were submitted as individual modifications. Modification applications have been received from May 2017 through November 2021, a period of approximately 4 ½ years. The Division evaluated each application submitted to ensure that the applications were in fact individual projects and not related or necessary for other applications submitted for either this permit or the Plant 2 permit (95OPAD108). Given the number of applications and the fact that some submittals may have been submitted within a short-time frame, this summary is intended to provide general information regarding the modifications and discuss whether the modifications were appropriately addressed for purposes of major stationary source permit requirements (PSD and NANSR).

All of the 26 modification applications were minor modifications for purposes of PSD and/or NANSR. One of the modification applications was technically not a permit modification, since no permit revisions were necessary. The permitting evaluation submittal was not a modification application (no permit revisions necessary) but an applicability analysis that demonstrated the project would not result in a significant increase in actual emissions and is discussed in the technical review document.

Two of the 26 modification applications were replaced by other applications and the Division is not processing one of the modification applications, as a result there are only 23 modification applications and one permitting evaluation addressed in the renewal permit. Eight of the applications were submitted to meet regulatory requirements for either air emissions equipment or fuel standards. Several modifications did not result in any increase in permitted emissions, a few modifications resulted in decreases in permitted emissions.

It should be noted that, except for the truck rack sump (which replaced existing tanks), the modifications did not involve the installation of new equipment, other than piping components such as valves, flanges and connectors which can leak and result in emissions. Some of the increases in permitted emissions associated with these modifications are due to changes in the emission calculation methodology, without a corresponding increase in the process rate of the equipment or the result of emission limits included for equipment that did not previously have emission limits (e.g. truck rack and $H_2$ plant drains).

There were two modifications that addressed the truck rack, three modifications that addressed the rail rack and two modifications that addressed the GBR flare.

The two modifications to the truck rack were unrelated and were separated by approximately 4 years. The first modification was to make upgrades to wastewater

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3   Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

handling and install controls for BWON, while the second modification was to replace the flare tip and revise the emission calculation methodology for the flare. There was no increase in the throughput limits for materials loaded with either modification and as a result of the second modification, the VOC emission limit was reduced, although there was an increase in allowable $NO_x$ and CO emissions.

The three modifications to the rail rack were to replace the loading rack flare with a VCU and revise the emission calculation methodology, address ethanol unloading and include the VCU operating parameter in the permit. The last modification did not affect emissions. The first and third modifications were related. The second project was to address ethanol unloading at the rail rack, which had been occurring for some time but was not properly addressed and is not considered to be related to the other two modification. It should be noted that permitted emissions from the rail rack are below the significance level.

The two modifications to the GBR flare are discussed together in this document and are considered related. The emissions increases associated with these projects were below the significance level.

The remaining modifications address individual emission units, none of which appear to be related to or dependent upon each other. Therefore, the Division concludes that the applications were appropriately addressed as separate minor modifications for major stationary source permitting purposes (PSD and NANSR).

A summary of the change in permitted (requested) emissions from all of the modifications covered in this permit revision can be found starting on page 186 of this document.

## 2.    <u>Other Modifications</u>

In addition to the requested modifications made by the source, the Division used this opportunity to include changes to make the permit more consistent with recently issued permits, include comments made by EPA on other Operating Permits, as well as correct errors or omissions identified during inspections and/or discrepancies identified during review of this modification.

The Division has made the following revisions, based on recent internal permit processing decisions and EPA comments on other permits, to the Suncor Plants 1 and 3 (West Plant and Asphalt Unit) Operating Permit with the source's requested modifications. These changes are as follows:

<u>"New" State-Only Requirements</u>

The Colorado legislature has taken action in recent years to address emissions from air toxics. Some of this action affects operations at the refinery. In the 2020 legislative session, the legislature passed House Bill 20-1265 (HB20-1265) which addressed notification of air quality incidents for facilities that emitted and had reported certain amounts of three pollutants: hydrogen cyanide, hydrogen sulfide and benzene. Sources were required to implement the emergency notification service within six (6) months of the effective date of this section (HB-20-1265 was signed on July 2, 2020). The statutory language does not require that the emergency notification requirements be

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3   Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

included in an air permit for covered facilities.

In the 2021 legislative session, the legislature passed HB21-1189, which somewhat revised the emergency notification requirements set forth in HB20-1265 and also required fenceline monitoring of benzene, hydrogen sulfide and hydrogen cyanide for covered facilities. Under those provisions, refineries were required to begin fenceline monitoring January 1, 2023. The statute included an approval process for the fenceline monitoring plan which has begun for this facility. The fenceline monitoring plan is required to be approved by August 27, 2022. The statutory language in HB21-1189 requires the fenceline monitoring requirements be included in the facility's operating permit. Thus the fenceline monitoring requirements will be included in the permit. The notification levels have not been determined yet but will be included in the permit when the fenceline monitoring plan is approved. It is expected that the fenceline monitoring plan will be approved prior to permit issuance.

Although not required, the Division will include the emergency notification requirements in the permit, in addition to the fenceline monitoring requirements. Neither of these requirements meet the definition of an applicable requirement in Colorado Regulation No. 3, Part A, Section I.B.9, therefore, the requirements will be included as state-only requirements.

These requirements will be included in "new" Section II.38 – Facility Wide Requirements as discussed below. Note that in the current permit (last revised February 22, 2018), Section II.38 includes Sulfur Dioxide Emission Limits.

- For the emergency notification requirements, C.R.S. § 125-7-141.(4)(a), (b) and (b.5) – paragraphs (c) (implement 6 months after July 2, 2020) and (d) (pay all cost) were not included as the deadline for implementing the system has passed. In addition, the definitions of incident and notification threshold in § 125-7-141.(2)(f) and (j) were also included.

- For the fenceline monitoring requirements, the Division included C.R.S. § 125-7-141.(5)(a)(I) and (III), as well as (5)(h). Note that the Division has not established notification thresholds for the covered pollutants as of the date of this document, but they will be included prior to permit issuance.

<u>Colorado Department of Public Health and Environment (CDPHE) Changes</u>

After consideration of the public outreach and comments that CDPHE received on the Plant 2 renewal permit, CDPHE made the decision to include additional reporting requirements in the Plant 2 renewal permit. In order to be consistent with the Plant 2 permit, these same requirements will be included in the Plants 1 and 3 renewal permit.

CDPHE determined that these requirements are justified for a number of reasons, including: the nature of this facility (a refinery), its location, particularly with regard to its impacts on disproportionately impacted communities, its compliance history, and the surrounding community's concerns about compliance and public health impacts. For these reasons, CDPHE determined special reporting requirements are warranted. CDPHE has the authority to impose these additional requirements pursuant to 5 Colo. Code Regs. § 1001-5, Part C, Section V.C. The Air Pollution Control Division (Division)

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3    Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

may or may not impose these special reporting requirements on other facilities in the future.

CDPHE is imposing the following additional reporting requirements in the Plants 1 and 3 permit:

- Disseminate continuous emissions monitoring data to the public via a web-based system.

- Submit an annual emissions report detailing total actual emissions from the facility and the amount of emissions that occurred as a result of exceedances of any permit limit.

- Submit a quarterly community compliance report that will identify in an easy -to-understand format any emissions violations at the facility during the previous quarter.

These additional requirements will be included as State-only in "new" Section II.38 – Facility Wide Requirements. Note that in the current permit (last revised February 22, 2018, Section II.38 includes Sulfur Dioxide Emission Limits.

Page following cover page

- Monitoring and compliance periods and report and certification due dates are shown as examples. The appropriate monitoring and compliance periods and report and certification due dates will be filled in after permit issuance and will be based on permit issuance date. Note that the source may request to keep the same monitoring and compliance periods and report and certification due dates as were provided in the previous permit. However, it should be noted that with this option, depending on the permit issuance date, the first monitoring period and compliance period may be short (i.e. less than 6 months and less than 1 year).

- Revised the Responsible Official's authorized representative to be consistent with the Plant 2 permit.

Section I – General Activities and Summary

- A sentence was added to the third paragraph in Condition 1.1 to indicate that 8-hr ozone control area has been classified as a serious non-attainment area and will be reclassified as severe in late 2022.

- Condition 1.3 was revised to include the construction permit numbers for Boiler 4 and fugitive VOC associated with the Boiler 4 fuel gas filter-coalescer.

- Condition 1.4 was revised to list new state-only requirements, specifically the "new" state-only requirements and CDPHE directed changes discussed above and the RH requirements.

- Added a statement to Condition 1.5 indicating that either electronic or hard copy records are acceptable.

- Revised the major stationary source threshold for NANSR in Condition 3.1 to 50 tons/yr year. The threshold was lowered when the area was re-classified as a serious non-attainment area.

- The following changes were made to the table in Condition 5.1:
  - Added language to the description of the FCCU regenerator (P103) to indicate when the third stage separator was installed, that it operates in full burn mode, uses palladium combustion promoters and is equipped with a waste heater boiler that provide steam to the refinery.
  - Added the individual heater sizes for the reformer heaters (H-28, H-29 and H-30).
  - Revised the description of the main plant (F1) and asphalt unit (F2) flares.
  - Added language to the table to indicate installation of ULNB on Boiler 4 and revised the construction permit number.
  - Included the piping components associated with the fuel gas filter-coalescer for Boiler 4 (F207).
  - Included the fuel rate (gal/hr) for the three emergency fire pump engines.
  - Included the fuel rate in gal/hr for the pipeline receipt station emergency generator. The fuel rate was calculated using the heat input rate (1.57 MMBtu/hr) and a propane heat content of 91.5 MMBtu/1000 gal (from AP-42, Section 1.5 (dated 7/08), Table 1.5-1, footnote a)
  - Added industrial solvent cleaning operations.
  - Included footnotes for APEN exempt emission units (pressurized tanks and actual, uncontrolled emissions below the APEN de minimis level) and reordered the footnotes to be sequential as they occur.
- The following changes were made to the table in Condition 5.2:
  - Revised the blower descriptions in the table in Condition 5.2 to clarify the blower capacity is scfm (table currently indicates cfm).
- Condition 6.1 (CAM requirements) was revised to list the additional emission units subject to CAM and to revise the CAM condition number.

<u>Section II – General</u>

*General*

- Minor language and format changes were made to a number of permit conditions (both in the table and text) in order to more clearly indicate the monitoring or underlying requirement.

*Process Heaters and Boilers*

- Added language to clarify that fuel use limits, in units of Btu, are based on the higher heating value.

- Added a statement that compliance with the NSPS J or Ja fuel gas limit would be monitored using the $H_2S$ continuous monitoring system.

*Consent Decree Requirements*

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3    Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

For conditions which reference the Consent Decree but not a construction permit, the Division added language to indicate that they were incorporated via the provisions in Section I, Condition 1.3 and Colorado Regulation No. 3 requirements, for those requirements which are supposed to live on after the Consent Decree is terminated.

*Appendix H – SO₂ Emissions Calculation Methodology*

The provisions of Appendix H – $SO_2$ Emissions Calculation Methodology have been incorporated into the relevant locations in Section II of the permit. The Division considers that including the $SO_2$ emission calculation method in the relevant sections of the permit will make it easier for the source, inspector and/or others to follow to determine applicable requirements.

*Regulation No. 7 Citation Changes and Version Dates*

As discussed previously, the AQCC adopted revisions to Colorado Regulation No. 7 on December 19, 2019 (effective February 14, 2020) and these revisions included reorganizing these requirements into various parts. This means that various sections are renumbered and assigned to a part (e.g. Part B) of the regulation. Therefore Regulation No. 7 citations throughout the permit were revised.

In addition, a paragraph was added to indicate the version date for each Section that includes Regulation No. 7 Requirements, specifically Sections II.39 through II.44, II.72 and II.73.

Section II.1 – Tanks for which Construction Permits are not Required

- In order to be consistent with the Plant 2 permit, Condition 1.1 was revised  to require the use of TankESP to estimate emissions, rather than EPA's TANKS program.

Section II.4 – Tanks with Unique Requirements, Subject to MACT CC (group 1 and 2)

- Revised Condition 4.9 (table and text) to indicate that Tank T-52 stores sour water with a floating layer of diesel. The current description (diesel and/or products with a with a RVP 0f 0.022 psia or lower) is not accurate.

Section II.6 – Tank T-7208

Condition 6.8 limits throughput for Tank T-7208 to organic liquids to organic liquids with a TVP less than or equal to 0.619 psia at 60°F. The initial construction permit (88AD240) limited throughput to ethanol and then was later revised to permit other organic liquids. If the Division had intended to allow the storage of petroleum liquids that met the TVP requirements, the throughput limits would have indicated that, as was done for throughput limits for other tanks. Therefore, the Division interprets that this limit clearly doesn't allow the storage of gasoline or other petroleum liquids without a permit revision. As a result of this, the permit was revised as follows:

- Revised the header to remove "40 CFR 63 Subpart R" and added "storing organic liquids."

- Revised Condition 6.2 to include the requirements in Regulation No. 7, Section III.B (not Regulation No. 7, Part B, Section I.B), since this tank does not store petroleum liquids.

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3    Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

- Removed Conditions 6.3 through 6.5 (Reg 7, Section VI requirements) since this tank does not store petroleum liquids

- Removed Condition 6.7 (40 CFR Part 63 Subpart R), since these requirements only apply to tanks storing gasoline.

Section II.8 – Stationary internal combustion engines

- Included the unit id numbers listed in the Table in Section I, Condition 5.1 in the table headers.

- Revised the notes under the tables for the three emergency fire pump engines and emergency generator and the pipeline receipt station emergency generator to indicate the number of hours of operation that would trigger an APEN.

- Included the Reg 1 $SO_2$ emission limit for refineries (Reg 1, Section VI.B.4.e) as "new" Condition 8.3 and a requirement to record fuel consumption daily as "new" Condition 8.4. These requirements apply to all engines.

    Compliance with the $SO_2$ limit is based on daily calculations, so requirements were added to record daily fuel consumption for the engines (based on hours of operation and the maximum hourly fuel consumption rate) and to calculate daily $SO_2$ emissions for use in monitoring compliance with the refinery $SO_2$ limit. This is consistent with the Plant 2 renewal permit, which requires that daily $SO_2$ emissions from engines to be included in assessing compliance with the limit.

    Note that in the current permit (last revised February 22, 2018), Conditions 8.3 and 8.4 included $NO_x$ emission and throughput limits for the emergency air compressor engines. As discussed in Section III.1.1.16, these requirements were removed as the new emergency air compressor engines have lower emissions.

- The following changes were made to the MACT ZZZZ requirements in Condition 8.1:

    o Revised the date of the MACT ZZZZ requirements that are included in the permit. Condition 8.1.3 was revised to replace "80.510(b)" with "1090.305" to due to the December 4, 2020 revisions.

    o Added language under Condition 8.1 to address the vacatur of certain requirements and potential future revisions to MACT ZZZZ to address the vacatur.

- The following changes were made to the NSPS IIII requirements (Condition 8.7):

    o Revised the date of the NSPS IIII requirements that are included in the permit. Conditions 8.7.1 (3rd paragraph), 8.7.3 and 8.7.6.3 were revised to reflect revisions to the requirements.

    o Removed the paragraph noting proposed revisions.

    o Removed bold references to the emergency air compressor engines, as these are the only engines subject to NSPS IIII.

    o Added language under Condition 8.7 to address the vacatur of certain requirements and potential future revisions to NSPS IIII to address the vacatur. The vacated requirements apply to the use of emergency generators for demand

response. The emergency fire pump is an emergency engine but not a generator
so the demand response requirements were not included. Nevertheless, the
statement regarding vacated requirements was included.

- The following changes were made to the NSPS JJJJ requirements (Condition 8.9):

  o Revised the date of the NSPS JJJJ requirements that are included in the permit.
    Conditions 8.9.7 and 8.9.8.3 were revised to reflect revisions to the requirements.

  o Added language under Condition 8.9 to address the vacatur of certain
    requirements and potential future revisions to NSPS JJJJ to address the vacatur.

  o Corrected the citations in Conditions 8.9.2 and 8.9.5 and added clarifying
    language to the citations in Conditions 8.9.1 (second paragraph) and 8.9.9.

Section II.9 – Cold Cleaner Solvent Degreasers

- Revised the title of this section to "Solvent Usage," and included Unit ID numbers in
  the table headers.

- The language and requirements for the cold cleaner solvent degreasers was revised
  to be consistent with the language in the Plant 2 permit.

As discussed previously, revisions to Colorado Regulation No. 7 were adopted on
November 17, 2016 (effective January 14, 2017) and included EPA's CTG for industrial
solvent cleaning operations. These requirements apply to facilities with actual,
uncontrolled VOC emissions from solvent cleaning operations at or above 3 tons on a
calendar year basis. The Division considers that these requirements may apply to the
facility in some years. Therefore, the requirements in Reg 7, Section X.E (now Reg 7,
Part C, Section II.E). were included in the permit.

Section II.11 – Process Heater H-6

- Added the design heat input rate of the heater to the title of this section.

- Minor language and formatting changes were made to various conditions to clarify
  the requirements.

- Added a note to Condition 11.1 to indicate that PM, $PM_{10}$ and VOC emissions are to
  be calculated for purposes of APEN reporting even though there are no permit limits
  for these pollutants.

- Added language to condition 11.4 to refer to $SO_2$ emission calculations in Condition
  11.1.

- Added language to Condition 11.6 to refer to the opacity monitoring requirements.

- Added more info to the summary table for Condition 11.7 (MACT DDDD
  requirements) to indicate the specific MACT requirements.

Since permitted $NO_X$ emissions are less than 5 tons/yr neither the $NO_X$ emission limits
for heaters nor the combustion process adjustment requirements in Regulation No. 7,
Part E, Section II.A (formerly Regulation No. 7, Section XVI.D) apply and therefore have
not been included. Note that the Division will add language to Condition 72 (Reg 7,

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3    Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

Section XVI.D (now Part E, Section II.A)) to indicate that recordkeeping requirements for the exemption are met by complying with Condition 11.1.

<u>Section II.12 – Process heaters and boilers without annual emission limitations</u>

- Added the design heat input rates of the heaters to the title of this section.

- Minor language and formatting changes were made to various conditions to clarify the requirements.

- In the summary table removed footnote 1, which stipulated that a Btu correction factor could be applied.

- Moved Boiler B-4 from this section to "new" Section II.19, since it now has emission limitations. Note that in the current permit (last revised February 22, 2018). Section II.19 includes requirements for heater and boilers.

- Condition 12.1 was revised to remove the note regarding use of the Btu correction. In addition, the last sentence in the first paragraph (re maintaining records) was removed since recordkeeping is required under the general conditions (Section IV, Condition 22.b and c) and it is not necessary.

- Revised Condition 12.4 to refer to $SO_2$ emission calculations in Condition 12.1.

- Added more info to the summary table for Condition 12.7 (MACT DDDDD requirements) to indicate the specific MACT requirements.

- Added language to Condition 12.6 to refer to the opacity monitoring requirements.

- Added "new" Conditions 12.9 and 12.10 for the Reg 7 $NO_X$ limits and combustion process adjustment requirements in Section XVI.D (now Part E, Section II.A).

   Note that the Section XVI.D requirements related to the $NO_X$ emission limitations, as well as the compliance demonstration, recordkeeping and reporting requirements are included in "new" Condition 72. See discussion under "new" condition 72 regarding the requirements that have been included in the permit.

   Note that the Section XVI.D requirements associated with combustion process adjustments are included in "new" Condition 73.

- Added "new" Condition 12.11 for the RH requirements in Regulation No. 23. This is a State-only requirement until approved by EPA into Colorado's Round 2 Regional Haze SIP.

   Note that Regulation No. 23, Section IV.F.4 indicates that sources must comply with the RH requirements "as expeditiously as practicable, but in no event later than five years after EPA approval of Colorado's Round 2 SIP for regional haze." Since Suncor does not have to install controls or monitoring systems, the Division considers that "as expeditiously as practicable" is upon the effective date of revisions to Regulation No. 23 that included these requirements, which was January 30, 2022, so Section IV.F.4 was not included in the permit.

<u>Section II.13 – Boilers B4 and B6</u>

- Added the design heat input rates of the boilers to the title of this section.

- Minor language and formatting changes were made to various conditions to clarify the requirements.

- Revised Condition 13.4 to refer to $SO_2$ emission calculations in Condition 13.1.4.

- Added the CO limit during turndown to the summary table for Condition 13.8 and added additional language to the citation in the text portion of Condition 13.8.

- Added more specific information indicating how $NO_X$ and CO mass emissions are monitored using the CEMS.

- Added language to Condition 13.6 to refer to the opacity monitoring requirements.

- Added more info to the summary table for Condition 13.9 (MACT DDDDD requirements) to indicate the specific MACT requirements.

- Added "new" Conditions 13.11 and 13.12 for the Reg 7 $NO_X$ limit and combustion process adjustment requirements in Section XVI.D (now Part E, Section II.A).

Note that the Section XVI.D requirements related to the $NO_X$ emission limitations, as well as the compliance demonstration, recordkeeping and reporting requirements are included in "new" Condition 72. See discussion under "new" condition 72 regarding the requirements that have been included in the permit.

Note that the Section XVI.D requirements associated with combustion process adjustments are included in "new" Condition 73.

Section II.14 – Process Heaters H-13 and H-17

- Added the design heat input rates to the title of this section.

- Minor language and formatting changes were made to various conditions to clarify the requirements.

- Added a note to Condition 14.1 to indicate that PM, $PM_{10}$ and VOC emissions are to be calculated for heater H-13 for purposes of APEN reporting, even though there are no permit limits for those pollutants.

- Heater H-17 is subject to a $NO_X$ emission limit for RH, therefore, Condition 14.1 was revised to cite Regulation No. 23 and to indicate the Regulation No. 23 requires the use of the $NO_X$ emission factor included in the permit.

Note that even though the RH $NO_X$ emission limit is the same as the construction permit limit, the RH limit was not streamlined but included in the citation because the RH emission limit cannot be revised without revising the SIP. The construction permit limit was not streamlined since the RH limit is state-only enforceable until approved by EPA into Colorado's Round 2 Regional Haze SIP. Thus both the CP and RH are cited. The monitoring requirements in Regulation No. 23, Section V.A.2.e.(i) were streamlined in favor of the monitoring in the current permit (last revised February 22, 2018) and the draft renewal permit. Streamlined conditions are included in the permit shield for streamlined conditions (Section III.3).Note that the draft renewal permit indicates the emission factor is specified in Regulation No. 23, since the emission factor cannot be changed without revising the SIP.

- Revised Condition 14.4 to refer to $SO_2$ emission calculations in Condition 14.1.

- Revised Condition 14.6 to refer to the opacity monitoring requirements.

- Added more info to the summary table for Condition 14.7 (MACT DDDDD requirements) to indicate the specific MACT requirements.

- Added "new" Conditions 14.9 and 14.10 for the Reg 7 $NO_X$ limits and combustion process adjustment requirements in Section XVI.D (now Part E, Section II.A).

  Note that the Section XVI.D requirements related to the $NO_X$ emission limitations, as well as the compliance demonstration, recordkeeping and reporting requirements are included in "new" Condition 72. See discussion under "new" condition 72 regarding the requirements that have been included in the permit.

  Note that the Section XVI.D requirements associated with combustion process adjustments are included in "new" Condition 73.

Section II.15 - Process Heater H-19

- Added the design heat input rate to the title of this section.

- Minor language and formatting changes were made to various conditions to clarify the requirements.

- Added a note to Condition 15.1 to indicate that emissions of VOC are to be calculated for purposes of APEN reporting, even though there is no permit limit.

- Revised Condition 15.4 to refer to $SO_2$ emission calculations in Condition 15.1.

- Revised Condition 15.6 to refer to the opacity monitoring requirements.

- Added more info to the summary table for Condition 15.7 (MACT DDDDD requirements) to indicate the specific MACT requirements.

- Added "new" Conditions 15.9 and 15.10 for the Reg 7 $NO_X$ limits and combustion process adjustment requirements in Section XVI.D (now Part E, Section II.A).

  Note that the Section XVI.D requirements related to the $NO_X$ emission limitations, as well as the compliance demonstration, recordkeeping and reporting requirements are included in "new" Condition 72. See discussion under "new" condition 72 regarding the requirements that have been included in the permit.

  Note that the Section XVI.D requirements associated with combustion process adjustments are included in "new" Condition 73.

Section II.16 – Process Heaters H-28, H-29 and H-30 and Catalytic Reforming Unit

- Added the design heat input rate to the title of this section.

- Minor language and formatting changes were made to various conditions to clarify the requirements.

- The heaters are subject to a combined $NO_X$ emission limit for RH, therefore, Condition 16.1 was revised to cite Regulation No. 23 and to indicate the Regulation No. 23 requires the use of the $NO_X$ emission factor included in the permit.

See discussion on page 148 for explanation for why both Regulation No. 23 and the construction permit are cited, and the permit notes the emission factor is from Regulation No. 23. The monitoring requirements in Regulation No. 23, Section V.A.2.e.(i) were streamlined in favor of the monitoring in the current permit (last revised February 22, 2018) and the draft renewal permit.

- Revised Condition 16.4 to refer to $SO_2$ emission calculations in Condition 16.1.

- Revised Condition 16.6 to refer to the opacity monitoring requirements.

- Added more info to the summary table for Conditions 16.7 (MACT UUU) and 16.9 (MACT DDDDD requirements) to indicate the specific MACT requirements.

- Added "new" Conditions 16.10 and 16.11 for the Reg 7 $NO_X$ limits and combustion process adjustment requirements in Section XVI.D (now Part E, Section II.A).

  Note that the Section XVI.D requirements related to the $NO_X$ emission limitations, as well as the compliance demonstration, recordkeeping and reporting requirements are included in "new" Condition 72. See discussion under "new" condition 72 regarding the requirements that have been included in the permit.

  Note that the Section XVI.D requirements associated with combustion process adjustments are included in "new" Condition 73.

Section II.17 – Process Heaters H-31 and H-32

- Added the design heat input rate to the title of this section.

- Minor language and formatting changes were made to various conditions to clarify the requirements.

- Added a note to Condition 17.1 to indicate that emissions of VOC are to be calculated for purposes of APEN reporting, even though there is no permit limit.

- Revised Condition 17.4 to refer to $SO_2$ emission calculations in Condition 17.1.

- Revised Condition 17.6 to refer to the opacity monitoring requirements.

- Added more info to the summary table for Condition 17.7 (MACT DDDDD requirements) to indicate the specific MACT requirements.

- Added "new" Conditions 17.9 and 17.10 for the Reg 7 $NO_X$ limits and combustion process adjustment requirements in Section XVI.D (now Part E, Section II.A).

  Note that the Section XVI.D requirements related to the $NO_X$ emission limitations, as well as the compliance demonstration, recordkeeping and reporting requirements are included in "new" Condition 72. See discussion under "new" condition 72 regarding the requirements that have been included in the permit.

  Note that the Section XVI.D requirements associated with combustion process adjustments are included in "new" Condition 73.

Section II.18 – Process Heaters H-33 and H-37

- Added the design heat input rate to the title of this section.

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3   Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

- Minor language and formatting changes were made to various conditions to clarify the requirements.

- Heater H-37 is subject to a $NO_X$ emission limit for RH, therefore, Condition 18.1 was revised to cite Regulation No. 23 and to indicate the Regulation No. 23 requires the use of the $NO_X$ emission factor included in the permit.

   See discussion on page 148 for explanation for why both Regulation No. 23 and the construction permit are cited, and the permit notes the emission factor is from Regulation No. 23. The monitoring requirements in Regulation No. 23, Section V.A.2.e.(i) were streamlined in favor of the monitoring in the current permit (last revised February 22, 2018) and the draft renewal permit.

- As part of a modification application received on October 13, 2020 (discussed in Section III.1.1.21 of this document), the source installed ULNB on H-37. For the October 13, 2020 modification, the Division included in the draft permit, a $NO_X$ limit that took effect upon installation of the ULNB in Condition 18.1. Since the ULNB were installed in April/May 2021 the Division removed the previous limit (the $NO_X$ limit in the current permit (last revised February 22, 2018).

- Added a note to Condition 18.1 to indicate that PM, $PM_{10}$ and VOC emissions are to be calculated for heater H-33 for purposes of APEN reporting, even though there are no permit limits for those pollutants.

- Revised Condition 18.4 to refer to $SO_2$ emission calculations in Condition 18.1.

- Revised Condition 18.6 to refer to the opacity monitoring requirements.

- Added more info to the summary table for Condition 18.7 (MACT DDDDD requirements) to indicate the specific MACT requirements.

- The draft permit included with the October 13, 2020 modification application (discussed in Section III.1.1.21 of this document), included a performance test to demonstrate compliance with the $NO_X$ limit for H-37 after installation of ULNB. The performance test was conducted on October 14, 2021, with the results in the table below. Since the results of the performance test are less than 50% of the tpy limit, the Division considers that no further testing is necessary. The combustion process adjustment requirements in Reg 7, Part E, Section II.A.6 will be sufficient to assure compliance with the annual $NO_X$ emission limit.

| | Test Result | Permit Limit | % of Permit Limit |
|---|---|---|---|
| Mass Emissions (tpy) | 4.94 | 10.41 | 47.5% |
| Emission factor (lb/MMBtu) | 0.022 | 0.042 | 52.3% |

- Added "new" Conditions 18.9 and 18.10 for the Reg 7 $NO_X$ limits and combustion process adjustment requirements in Section XVI.D (now Part E, Section II.A).

   Since permitted emissions for H-33 are below 5 tpy of $NO_X$, the Reg 7 $NO_X$ limits and combustion process adjustment requirements only apply to H-37. Note that the Division will add language to Condition 72 (Reg 7, Section XVI.D (now Part E, Section II.A)) to indicate that recordkeeping requirements for the exemption are met by complying with Condition 18.1.

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3    Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

Note that the Section XVI.D requirements related to the $NO_X$ emission limitations, as well as the compliance demonstration, recordkeeping and reporting requirements are included in "new" Condition 72. See discussion under "new" condition 72 regarding the requirements that have been included in the permit.

Note that the Section XVI.D requirements associated with combustion process adjustments are included in "new" Condition 73

Section II.19 – Requirements for Heater and Boilers

- These requirements are from Consent Decree (CD) H-01-4430) and were moved to "new" Section II.38 for Facility Wide Requirements. This is consistent with the location of similar requirements in the Plant 2 permit.

"New" Section II.19 – Boiler B4

Boiler B4 was moved into "new" Condition II.19 since it is now subject to emission limitations. Construction permits 20AD0714 and 20AD0715 were issued on November 23, 2020 for Boiler 4 and fugitive emissions from piping components installed for the fuel gas filter-coalescer for Boiler 4. The appropriate applicable requirements from 20AD0714 will be included in the permit for Boiler 4 in this Section II.19. Provisions for the piping components will be discussed under Section II.34 later in this document.

- The following conditions have not been included in the permit because they have been completed: Conditions 1 (self-certification), 2 (commence construction), 3, (complete initial testing/sampling), 4 (mark permit number on equipment), and 23 (permit number must be marked on equipment).

Most of these conditions are requirements to self-certify for final approval. The startup notice was submitted on October 19, 2021 and the self-certification was submitted on March 17, 2022.

- Emission limits (Condition 5) and throughput limit (Condition 6) are included in Conditions 19.1 and 19.5.

- Conditions 7 (Reg 1 20%/30% opacity), 8 (Reg 1 PM), 9 (Reg 1 $SO_2$) and 17 (MACT CC) are included in the current permit (last revised February 22, 2018) for Boiler 4 (in Section II.12) and were moved to this Section II.19.

- Conditions 11 (Reg 6, Part B, Section II) and 12 (Reg 6, Part B, Section IV.C.2) will not be include. The Reg 6, Part B, Section IV.C.2 requirement has already been streamlined and while the Reg 6, Part B, Section II requirements newly apply to this unit, the PM limit will be streamlined as it is the same as the Reg 1 PM limit but the 20% opacity limit will be included with the Reg 1 opacity limits. Streamlined conditions are included in the permit shield for streamlined conditions (Section III.3).

- The requirements in Condition 10 (odor) and 24 (APEN reporting) have not been included in the permit as specific conditions applicable to specific emission units in Section II of the permit. The odor and APEN reporting requirements are included in Section IV (General Conditions) of the permit, Conditions 14 and 22.e.

- Conditions 13 (NSPS Subpart A), 14 (NSPS Subpart Ja) and 15 (NSPS Subpart Db) newly apply to this emission unit and will be included in the permit as Conditions

19.9, 19.4, and 19.5, respectively.

Note that some of the CEMS and/or reporting requirements from NSPS Subparts A (Condition 13) and Db (Condition 15) were included in "new" Section II.59 with the CEMS requirements. In addition some of the relevant requirements in NSPS Subpart A are included in the CEMS section also.

Note that Conditions 13.a, 13.b, 13.e, 15.k and 15.l were not included in the permit as these are one-time requirements that were completed.

- The Reg 7, Part E, Section II.A (formerly Section XVI.D) combustion process adjustment requirements in Condition will be included in the permit as "new" Condition 19.10. However, as discussed below, the $NO_X$ emission limit, compliance demonstration, recordkeeping and reporting requirements will be streamlined. Streamlined conditions are included in the permit shield for streamlined conditions (Section III.3).

Since the boiler has a design rating greater than 100 MMBtu/hr, it is  subject to the $NO_X$ emission limits in Section II.A.4.a.(i) – $NO_X$ shall not exceed 0.2 lb/MMBtu or 165 ppmv corrected to 3% $O_2$. Compliance with the $NO_X$ limit must be demonstrated by October 1, 2021, using a continuous monitoring system (averaging time is a 30-day rolling average). The continuous emission monitoring system (CEMS) requirements specify that sources equipped with a $NO_X$ CEMS for purposes of demonstrating compliance with an applicable subpart of 40 CFR Part 60 shall use the definition of operating day, data averaging methodology and data validation requirements of the applicable subpart. The boiler is subject to $NO_X$ emission limits in 40 CFR Part 60 Subpart Db, which includes a $NO_X$ emission limit of 0.2 lb/MMBtu, on a 30-day rolling average and requires that a $NO_X$ CEMS be installed. Therefore, the emission limitation (II.A.4.a.(i)), the October 1, 2021 compliance date (II.A.5.a.(i)) as well as the compliance demonstration requirements (II.A.5.b.(i)(A) and II.A.5.b.(i)(A)(2) will be streamlined in favor of the NSPS Db requirements.

Note that the requirements in Sections II.A.5.c.(i)(A)(1) and (3) (including (3)(a) and (3)(b)) do not apply, as there are options for sources that are not required to have a $NO_X$ CEMS to meet the requirements of a Subpart under 40 CFR Part 60. In addition, the requirements in Sections II.A.5.b.(i)(A)(4) (sources with a common stack), II.A.5.b.(ii) (performance testing), II.A.5.b.(iii) (sources with production or output based limits) and II.A.5.b.(iv) (flow monitor) do not apply and were not included in the permit since the unit does not share a stack, uses $NO_X$ CEMS rather than performance tests, does not have output or production based emission limits and Method 19 can be used to determine $NO_X$ emission rates in terms of lb/MMBtu.

The Division considers that the recordkeeping requirements in Sections II.A.7.c (record type and amount of fuel used), II.A.7.d (annual capacity factor - calendar year), and II.A.7.e (retain records to comply with reporting requirements) and the reporting requirements in Section II.A.8.a and a.(i) will be streamlined. The requirements in Sections II.A.7.a (limits for units burning multiple fuels) and II.A.7.b (units using CERMS) do not apply and were not included in the permit since the units only burn gaseous fuel and do not rely on CERMS.

This boiler would qualify for an exemption under Section II.A.2.a f, however, that exemption does not apply until approval of the requirements adopted by the AQCC on December 17, 2021 into Regulation No. 23 (effective January 30, 2022) are approved into Colorado's Round 2 Regional Haze SIP. Therefore, the recordkeeping requirements in Sections II.A.2 (exemptions).and II.A.7.g (sources qualifying for an exemption) don't apply yet.

- Conditions 18 (Reg 3 RACT requirements), 20 (NSPS Ja initial test) and 21 (NSPS Db) were not included as they either redundant or refer to other requirements.

- Condition 19 (source not required to follow and O & M plan), 22 (no periodic testing required) and 25 (equipment covered by existing T permit must comply with T5 permit) have not been included because they include no actionable requirements.

- Condition 26 (submit T5 permit application) was not included as the provisions in this construction permit are being incorporated into the draft renewal permit.

- The General Terms and Conditions (Conditions 27 through 29) have not been included. Section V of the Title V permit includes the relevant general conditions.

- Although not identified in Colorado Construction Permit 20AD0714, the boiler is also subject to RH requirements in Regulation No. 23, Section IV.F.3 ($NO_X$ not to exceed 0.06 lb/MMBtu on a 30-day rolling average). The RH requirements will be included in Condition 19.11.

  Note that Regulation No. 23, Section IV.F.4 indicates that sources must comply with the RH requirements "as expeditiously as practicable, but in no event later than five years after EPA approval of Colorado's Round 2 SIP for regional haze." Since Suncor does not have to install controls or monitoring systems, the Division considers that "as expeditiously as practicable" is upon the effective date of revisions to Regulation No. 23 that included these requirements, which was January 30, 2022, so Section IV.F.4 was not included in the permit.

  Note that the recordkeeping requirements in Sections V.C.1 and V.C.2, as well as the reporting requirements in Section V.D (first paragraph) were streamlined in favor of the Title V recordkeeping requirements and the reporting requirements in 60.7(c). Streamlined conditions are included in the permit shield for streamlined conditions (Section III.3).

## Section II.20 – Sulfur Recovery Units with Tail Gas Unit (TGU) and TGU Incinerator

- Minor language and formatting changes were made to various conditions to clarify the requirements.

- The requirement to install and operate an $SO_2$ CEMS in Condition 20.1 was moved to "new" Condition 20.13. Note that the phrase indicating that the CEMS shall be operated and maintained in accordance with the Division-approved CEMS plan was removed. The CEMS will be operated in accordance with the CEMS requirements in "new" Condition 59, which includes Part 60 requirements for CEMS.

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3   Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

- The SRU is subject to an annual $SO_2$ emission limit for RH, therefore, Condition 20.1 was revised to cite Regulation No. 23 and to revise "new" Condition 20.13 to indicate that Regulation No. 23 requires the use of the $SO_2$ CEMS.

  See discussion on page 148 for explanation for why both Regulation No. 23 and the construction permit are cited. The monitoring requirements in Regulation No. 23, Sections V.A.1.d, V.A.1.d.(i)(A) and V.A.1.d.(i)(B) were streamlined in favor of the monitoring in the current permit (last revised February 22, 2018) and the draft renewal permit. It should be noted that the requirements in Section V.A.1.d.(i)(a) stipulate that the source must demonstrate compliance with the RH limit through the procedures in 40 CFR Part 60 Subparts A and J, as well as 63.1568 and these were streamlined in favor of the requirements in 40 CFR Part 60, Subpart J and Part 63, Subpart UUU, which the source is subject to. In addition, the recordkeeping requirements in Sections V.C.1 and V.C.2, as well as the reporting requirements in Section V.D (first paragraph) were also streamlined. Note that the draft renewal permit indicates that use of a $SO_2$ CEMS is specified in Regulation No. 23, since the requirement to use a $SO_2$ CEMS cannot be changed without revising the SIP

  The monitoring requirements in Regulation No. 23, Section V.A.2.e.(i) were streamlined in favor of the monitoring in the current permit (last revised February 22, 2018) and the draft renewal permit.

- The PM limit in Condition 20.3 was removed. Conditions that follow are renumbered. The Division considers that the Reg 1 PM limit for fuel burning equipment does not apply to the tail gas incinerator. This is consistent with the Plant 2 permit which does not include the Reg 1 fuel burning PM limit for the SRU incinerator.

- Revised Condition 20.4 to refer to $SO_2$ emission calculations in Condition 20.1.2.

- Revised the language in Condition 20.7 to account for determining the quantities of tail gas consumption.

  Note that the Btu content of the tail gas is presumed to be the same as the Btu content for the Plant 2 tail gas (27.86 Btu/scf (HHV)), unless sampling of the tail gas is conducted for the SRUs. The Plant 2 tail gas Btu content is based on sampling done in July 2021. The source has indicated that it is conservative to rely on the Plant 2 tail gas Btu content, since the Plant 2 SRUs are equipped with a tail gas unit, and the Plant 2 SRU is not. The source noted that treatment of the tail gas through a TGU is expected to reduce the calorific value of the stream, based on process chemistry for removal of sulfur compounds.

- Added more info to the summary table for Condition 20.10 (MACT UUU requirements) to indicate the specific MACT requirements.

- Revised Condition 20.12 to refer to the opacity monitoring requirements.

Section II.21 – Process Heaters H-1716 and H-1717

- Added the design heat input rates to the title of this section.

- Minor language and formatting changes were made to various conditions to clarify the requirements.

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3   Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

- Revised Condition 21.3 to indicate how compliance with the NSPS Ja $NO_X$ limit for H-1716 will be monitored.

- Revised Condition 21.4 to refer to $SO_2$ emission calculations in Condition 21.1.

- Included as "new" Condition 21.5 the $NO_X$ emission limits in paragraph 220(a) of the Consent Decree. Compliance with the $NO_X$ emission limits will be monitoring using the $NO_X$ CEMS for H-1716 and by conducting performance tests for H-1717. Conditions that follow are renumbered.

   These heaters were permitted in 2004 as part of the Clean Fuels Project. The Consent Decree for Plants 1 and 3 (Conoco Consent Decree H-01-4430) set restrictions on the use of emission reductions required by the Consent Decree for purposes of netting. Since the source used emission reductions required by the Consent Decree, any new or modified heaters were required to be permitted with $NO_X$ limits of 0.04 lb/MMBtu, on a 3-hr rolling average. The construction permit for these heaters only included annual (tons/yr) $NO_X$ limits, therefore, the Division is correcting the underlying construction permit to include the appropriate $NO_X$ limits for these heaters.

- Added more info to the summary table for Condition 21.6 (MACT DDDDD requirements) to indicate the specific MACT requirements.

- Added language to Condition 21.7 (RACT) to state that in the absence of credible evidence to the contrary, compliance with the RACT requirements are met provided the requirements in Conditions 21.8 (NSPS general provisions) and 21.13 (Reg 7 combustion process adjustment requirements) are met.

- Revised Condition 21.9 to refer to the opacity monitoring requirements.

- Added "new" Conditions 21.12 and 21.13 for the Reg 7 $NO_X$ limits and combustion process adjustment requirements in Section XVI.D (now Part E, Section II.A).

   Note that the Section XVI.D requirements related to the $NO_X$ emission limitations, as well as the compliance demonstration, recordkeeping and reporting requirements are included in "new" Condition 72. See discussion under "new" condition 72 regarding the requirements that have been included in the permit.

   Note that the Section XVI.D requirements associated with combustion process adjustments are included in "new" Condition 73.

Section II.22 – FCCU

- Minor language and formatting changes were made to various conditions and this section title to clarify the equipment and requirements.

- Condition 20.1 was revised to include sub-conditions (e.g. 20.1.1) and to include more specific information regarding how the $SO_2$, $NO_X$ and CO CEMS would be used to determine annual emissions.

- The RH PM limit in Regulation No. 23 was included as "new" Condition 20.1.1. This is a State-only requirement until approved by EPA into Colorado's Round 2 Regional Haze SIP.

Note that Regulation No. 23, Section IV.F.4 indicates that sources must comply with the RH requirements "as expeditiously as practicable, but in no event later than five years after EPA approval of Colorado's Round 2 SIP for regional haze." Since Suncor does not have to install controls or monitoring systems, the Division considers that "as expeditiously as practicable" is upon the effective date of revisions to Regulation No. 23 that included these requirements, which was January 30, 2022, so Section IV.F.4 was not included in the permit. The PM monitoring required by Section V.B.4.e.(ii) was also included but the monitoring required by Section V.B.4.e.(i) was streamlined in favor of the NSPS J and MACT UUU requirements.

Note that in addition to the monitoring required by Regulation No. 23, the Division will also rely on the performance tests required by Condition 22.9 and the CAM requirements. Since the source relies on a control device (third stage separator) to comply with the RH tons/yr limit and pre-control PM emissions are above the major source level (100 tpy), CAM also applies with respect to the RH limit.

- This FCCU is subject to a $SO_2$ and $NO_X$ emission limits for RH (both on 365-day rolling averages), therefore, Conditions 22.2 and 22.4 were revised to cite Regulation No. 23 and to note that Regulation No. 23 requires the use of the $NO_X$ CEMS.

  Note that even though the RH $SO_2$ and $NO_X$ emission limits are the same as Consent Decree limits, the RH limit was not streamlined but included in the citation because the RH emission limit cannot be revised without revising the SIP. The Consent Decree limit was not streamlined since the RH limit is state-only enforceable until approved by EPA into Colorado's Round 2 Regional Haze SIP. Thus both the Consent Decree and RH are cited. The monitoring requirements in Regulation No. 23, Sections V.A.1.e, V.A.1.e.(i)(A) and V.A.1.e.(i)(B) were streamlined in favor of the monitoring in the current permit (last revised February 22, 2018) and the draft renewal permit. In addition, the recordkeeping requirements in Sections V.C.1 and V.C.2, as well as the reporting requirements in Section V.D (first paragraph) were also streamlined. Note that the draft renewal permit indicates that use of $SO_2$ and $NO_X$ CEMS is specified in Regulation No. 23, since the requirement to use $SO_2$ and $NO_X$ CEMS cannot be changed without revising the SIP.

- Language was added to Conditions 22.2 and 22.4 to provide more information regarding calculation of emissions from the $SO_2$ and $NO_X$ CEMS and to clarify that the permit limits were included under a Title V minor modification. The following other changes were made to Conditions 22.2 and 22.4:

  o Removed Condition 22.2.1 and 22.4.2 as these paragraphs just list the requirement from the Consent Decree to include emission limits in the permit and this action was completed.

  o Added language to Conditions 22.2.3.and 22.4.3 add more language describing emission calculations and to reference Conditions 22.8.1 and 22.8.2 which includes hours that are not included in the 7-day averages.

- Removed the NSPS J and MACT UUU opacity limits from Condition 22.7, as these are addressed in Conditions 22.11 and 22.12, respectively. In addition added

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3    Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

language to refer to the opacity monitoring requirements in Condition 35. Note that the summary table for Condition 22.7 was revised to indicate that frequency of Method 9 observations for catalyst loading and unloading was changed to quarterly.

- Added more info to the summary table for Conditions 22.11(NSPS J) and 22.12 (MACT UUU requirements) to indicate the specific MACT requirements.

- Added language to Condition 22.12 to indicate compliance with the PM limits is presumed provided the monitoring in Condition 22.9 indicated compliance with the PM limit in that condition (which is the same). This is consistent with the Plant 2 permit.

- The CAM requirements in Condition 22.13 were moved to "new" Condition 60, since more emission units than just the FCCU are subject to CAM. Condition 22.13 includes a reference to the CAM requirements in Condition 60.

Section II.23 – Plant 1 Wastewater Treatment System (WWTS)

- The following revisions were made to Condition 23.1.3:

  o  Added language to require daily $SO_2$ emissions be calculated for purposes of monitoring compliance with the Reg 1 $SO_2$ limit for refineries.

  o  Removed the paragraph under the $VOC_{cc}$ calculation equation regarding the centrifuge.

  o  Added to the $VOC_{cc\text{-}cent}$ to the VOC emission calculations to address periods when the centrifuge is down and emissions are routed to carbon canisters.

- Added a "new" Condition 23.9.1 to indicate that breakthrough for the API headworks shall be monitored in accordance with the CAM plan and the CAM requirements. Conditions that follow are renumbered.

- Condition 23.11.4 was revised as follows:

  o  Removed the initial performance test requirement.

  o  Replaced "performance test" with "compliance test"

  o  Added "unless otherwise approved by the Division in writing" after the sentence discussing EPA tests methods.

  o  Revised the paragraph regarding the test protocol.

  o  Added language to indicate that during each test, a new CAM indicator range (combustion zone temperature) will be set and to submit a minor permit modification to change the indicator.

- Revised Condition 23.11.6 to indicate that the temperature shall be monitored in accordance with the CAM plan and the CAM requirements and to revise the minimum temperature to reflect the temperature monitored and recorded.

- Included the CAM requirements as "new" Condition 23.13.

- Added "new" Condition 23.14 to include the Reg 1 $SO_2$ emission limit. Upon further review, the Division considers that emissions from the RTO should be included in assessing compliance with the $SO_2$ limit for the refinery.

Section II.24 – Rail Loading Rack and Enclosed VCU (R101)

- Minor language and formatting changes were made to various conditions to clarify the requirements.

- Revised Condition 24.1 to include PM and $PM_{10}$ emission factors and language to require the source to calculate PM, $PM_{10}$ and $SO_2$ emissions for purposes of APEN reporting.

- Included daily emission calculations for $SO_2$ in Condition 24.3.

- Revised Condition 24.6 (throughput limits) to require that throughput be monitored daily for use in daily $SO_2$ emission calculations.

- Included the CAM requirements as "new" Condition 24.13.

Section II.25 – Truck Loading Rack and Flare (R102)

- Minor language and formatting changes were made to various conditions to clarify the requirements.

- Revised Condition 25.1 to include PM and $PM_{10}$ emission factors and language to require the source to calculate PM, $PM_{10}$ and $SO_2$ emissions for purposes of APEN reporting.

- Included daily emission calculations for $SO_2$ in Condition 25.2.

- Revised Condition 25.5 (throughput limits) to require that throughput be monitored daily for use in daily $SO_2$ emission calculations.

- Revised Condition 25.6 to include the Reg 1 opacity limit for flares and indicate how compliance with the opacity limit is monitored.

- Included the CAM requirements as "new" Condition 25.17.

Section II.27 – Process Heater H-2101

- Added the design heat input rate to the title of this section.

- Minor language and formatting changes were made to various conditions to clarify the requirements.

- The continuous emission monitoring system requirements in Condition 27.1 of the current permit were included in "new" Condition 27.11 as a separate condition. In addition, Condition 27.1 was separated into sub-conditions by pollutant(s) for emission calculations. More information was included regarding how the $NO_X$ and CO CEMS would be used to monitor emissions.

- This heater is subject to a $NO_X$ emission limit for RH, therefore, Condition 27.1 was revised to cite Regulation No. 23 and "new" Condition 27.11 notes that Regulation No. 23 requires the use of the $NO_X$ CEMS.

  Note that Regulation No. 23, Section IV.F.3 lists the H-2101 ton/yr limit as on a 365-day rolling total but the monitoring in Section V.A.1.b.(i) for units with a 365-day rolling average (Section V.A.1.b.(i)(B)) applies to lb/hr or lb/MMBtu RH limits, thus

the Division considers that the monitoring in Section V.A.1.b.(i)(D) is the appropriate monitoring (ton/yr limits on a 12-month rolling average).

See discussion on page 148 for explanation for why both Regulation No. 23 and the construction permit are cited. The monitoring requirements in Regulation No. 23, Sections V.A.1.b, V.A.1.b.(i) and V.A.1.b.(i)(D) were streamlined in favor of the monitoring in the current permit (last revised February 22, 2018) and the draft renewal permit. In addition, the recordkeeping requirements in Sections V.C.1 and V.C.2, as well as the reporting requirements in Section V.D (first paragraph) were also streamlined. Note that the draft renewal permit indicates that use of a $NO_X$ CEMS is specified in Regulation No. 23, since the requirement to use a $NO_X$ CEMS cannot be changed without revising the SIP.

- Revised Condition 27.4 to refer to $SO_2$ emission calculations in Condition 27.1.

- Included as "new" Condition 27.5 the $NO_X$ emission limit in paragraph 220(a) of the Consent Decree. Compliance with the $NO_X$ emission limits will be monitoring using the $NO_X$ CEMS after completion of the schedule of compliance. Conditions that follow are renumbered.

  This heater was permitted in 2004 as part of the Clean Fuels Project. The Consent Decree for Plants 1 and 3 (Conoco Consent Decree H-01-4430) set restrictions on the use of emission reductions required by the Consent Decree for purposes of netting. Since the source used emission reductions required by the Consent Decree, any new or modified heaters were required to be permitted with $NO_X$ limits of 0.04 lb/MMBtu, on a 3-hr rolling average. The construction permit for this heater only included an annual (tons/yr) $NO_X$ limit, therefore, the Division is correcting the underlying construction permit to include the appropriate $NO_X$ limit for this heater.

  Unfortunately, the Division has data indicating that H-2101 cannot comply with the $NO_X$ limit in paragraph 220(a) of the Consent Decree, therefore, the source submitted a schedule of compliance on April 5, 2022 to address the non-compliance issue. The provisions in the schedule of compliance have been included in the draft permit. Upon completion of the schedule of compliance, the permit will require the source to monitor compliance with the $NO_X$ limit using the $NO_X$ CEMs.

- Revised Condition 27.6 to refer to the opacity monitoring requirements.

- .Added more info to the summary table for Condition 27.7 (MACT DDDDD requirements) to indicate the specific MACT requirements.

- Added language to Condition 27.8 (RACT) to state that in the absence of credible evidence to the contrary, compliance with the RACT requirements are met provided the requirements in Conditions 27.9 (NSPS general provisions) and 27.14 (Reg 7 combustion process adjustment requirements) are met.

- Added "new" Conditions 27.13 and 27.14 for the Reg 7 $NO_X$ limit and combustion process adjustment requirements in Section XVI.D (now Part E, Section II.A).

  Note that the Section XVI.D requirements related to the $NO_X$ emission limitations, as well as the compliance demonstration, recordkeeping and reporting requirements

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3   Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

are included in "new" Condition 72. See discussion under "new" condition 72 regarding the requirements that have been included in the permit.

Note that the Section XVI.D requirements associated with combustion process adjustments are included in "new" Condition 73.

## Section II.28 – Process Heater H-2410

- Added the design heat input rate to the title of this section.

- Minor language and formatting changes were made to various conditions to clarify the requirements.

- Added a note to Condition 28.1 to indicate that PM and $PM_{10}$ emissions are to be calculated for purposes of APEN reporting, even though there are no permit limits for those pollutants.

- Revised Condition 28.3 to indicate how compliance with the NSPS Ja $NO_X$ limit will be monitored.

- Revised Condition 28.4 to refer to $SO_2$ emission calculations in Condition 28.2.

- Revised Condition 28.6 to refer to the opacity monitoring requirements.

- Added more info to the summary table for Condition 28.7 (MACT DDDDD requirements) to indicate the specific MACT requirements.

- Added language to Condition 28.8 (RACT) to state that in the absence of credible evidence to the contrary, compliance with the RACT requirements are met provided the requirements in Conditions 28.9 (NSPS general provisions) and 28.13 (Reg 7 combustion process adjustment requirements) are met.

- Added "new" Conditions 28.12 and 28.13 for the Reg 7 $NO_X$ limit and combustion process adjustment requirements in Section XVI.D (now Part E, Section II.A).

Note that the Section XVI.D requirements related to the $NO_X$ emission limitations, as well as the compliance demonstration, recordkeeping and reporting requirements are included in "new" Condition 72. See discussion under "new" condition 72 regarding the requirements that have been included in the permit.

Note that the Section XVI.D requirements associated with combustion process adjustments are included in "new" Condition 73.

## Section II.29 – Plant 1 Main Plant (MP) Flare

- Revised the description of the flare in the table header (Condition 29).

- Language was added to Condition 29.1 to require that VOC emissions be calculated assuming 0% control for any 15-minute block periods with the Btu content of gases in the combustion zone do not meet the limit or any 15-minute block period during which there was at least one minute when waste gases are routed to the flare and no pilot flame is present.

- Revised the monitoring language in the summary table for Condition 29.6 (Reg 1 opacity limit for flares) to indicate a video surveillance camera will be used. In

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3   Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

addition, language was added to Condition 29.6 to include the Reg 1 opacity limit for flares and indicate how compliance with the opacity limit is monitored.

- The Plant 1 Main Plant Flare is subject to a RH limit of 162 ppmv $H_2S$, on a 3-hour rolling average in Colorado Regulation No. 23, Section IV.F.3. Regulation No. 23, Section V.A.2.e.(ii) specified that compliance with the $H_2S$ limit shall be demonstrated through the methodologies and procedures in NSPS Ja. Since the RH limit is the same as the NSPS Ja limit and the RH monitoring relies on NSPS Ja, the RH limits will be streamlined in favor of the NSPS Ja requirements. Streamlined conditions are included in the permit shield for streamlined conditions (Section III.3).

Section II.30 – Plant 3 Asphalt Unit (AU) Flare

- Revised the description of the flare in the table header (Condition 30).

- Language was added to Condition 30.1 to require that VOC emissions be calculated assuming 0% control for any 15-minute block periods with the Btu content of gases in the combustion zone do not meet the limit or any 15-minute block period during which there was at least one minute when waste gases are routed to the flare and no pilot flame is present.

- Revised the monitoring language in the summary table for Condition 30.5 (Reg 1 opacity limit for flares) to indicate a video surveillance camera will be used. In addition, language was added to Condition 30.5 to include the Reg 1 opacity limit for flares and indicate how compliance with the opacity limit is monitored.

- Included CAM requirements as "new" Condition 30.11.

Section II.31 – GBR Unit Flare

- Language was added to Condition 30.1 to require that VOC emissions be calculated assuming 0% control for any 15-minute block periods with the Btu content of gases in the combustion zone do not meet the limit or any 15-minute block period during which there was at least one minute when waste gases are routed to the flare and no pilot flame is present.

- Revised the monitoring language in the summary table for Condition 30.5 (Reg 1 opacity limit for flares) to indicate a video surveillance camera will be used. In addition, language was added to Condition 30.5 to include the Reg 1 opacity limit for flares and indicate how compliance with the opacity limit is monitored.

- Included CAM requirements as "new" Condition 31.12.

Section II.33 – Fugitive VOC Equipment Leaks without Permitted Emission Limits

- Revised the language in Condition 33.2 to reflect revisions to the MACT CC overlap requirements for sources subject to NSPS GGGa, which specifies that pressure relief devices must comply with 63.648(j) (MACT CC pressure relief device requirements).

Section II.34 – Fugitive VOC Equipment Leaks with Permitted Emission Limits

- Revised the language in Condition 34.2 to more clearly indicate the MACT CC overlap requirements with respect to GGGa and to reflect revisions to those overlap

requirements that specify that pressure relief devices must comply with 63.648(j) (MACT CC pressure relief device requirements).

As previously mentioned, construction permit 20AD0715 was issued on November 23, 2020 for piping components associated with the fuel gas filter coalescer for Boiler 4. The appropriate applicable requirements from that construction permit have been addressed as follows:

- The following conditions have not been included in the permit because they have been completed: Conditions 1 (startup notice), 2 (self-certification), 3, (commence construction), 4 (complete initial testing/sampling) and 12 (conduct hard component count).

  Most of these conditions are requirements to self-certify for final approval. The startup notice was submitted on October 19, 2021 and the self-certification was submitted on March 17, 2022.

  The hard count was submitted with the self-certification on March 17, 2022 and the number of components and service type (e.g. light liquid service) are within the estimates included in the initial application.

- Emission limits (Condition 5) are included in Condition 34.1.

- The requirements in Condition 6 (odor) and 15 (APEN reporting) have not been included in the permit as specific conditions applicable to specific emission units in Section II of the permit. The odor and APEN reporting requirements are included in Section IV (General Conditions) of the permit, Conditions 14 and 22.e.

- Condition 11 (not required to follow an O & M plan) has not been included because it includes no requirements.

- Equipment leak requirements in Reg 7, Part B, Section IV.C (Condition 7) are included in Condition 34.7.

- Equipment leak requirements in NSPS Subparts A and GGGa (Condition 8) are included in Conditions 34.2 (NSPS GGGa) and 24.8 (NSPS Subpart A).

- Equipment leak requirements in MACT CC (Condition 9) was included in Condition 34.2.

- Conditions 10 (Reg 3 RACT requirements), 13 (LDAR requirements in NSPS GGGa) and 14 (relief valve requirements in MACT CC) were not included as they are either redundant or refer to other requirements.

- Condition 18 (submit T5 permit application) was not included as the provisions in this construction permit are being incorporated into the draft renewal permit.

- The General Terms and Conditions (Conditions 17 through 19) have not been included. Section V of the Title V permit includes the relevant general conditions.

Section II.35 – Opacity Limits

- Removed Condition 35.3 (Reg 1 flare opacity requirement). The Reg 1 opacity limit, along with the monitoring, is included in the flare specific sections in Section II.

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3   Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

- The format of Condition 35.4 (Reg 6, Part B opacity) was revised.

- Removed the phrase "during daylight hours" in Condition 35.6.1.

- In order to be consistent with the language in the Plant 2 permit, the following changes were made:

  o Added language to Condition 35.6.1 to indicate that monthly visible emission observations shall be separated by at least one (1) week.

  o Revised Condition 35.7.3.2 to require quarterly opacity observations and to add language indicating that quarterly opacity observations shall be separated by at least one month. This is consistent with the language in the Plant 2 permit.

  o Added a condition under 35.7.3 (FCCU catalyst loading/unloading) to require that records be kept of the date and time of catalyst loading/unloading.

  o Revised Condition 35.10.1.2 to indicate that Method 9s shall be conducted each time reformer catalyst is loaded and/or unloaded. Since reformer catalyst is replaced infrequently this should not significantly increase monitoring for this activity. With this the language in Condition 35.10.1.5 is not necessary and was removed.

  o Added as "new" Condition 35.10.1.5 requirements to record the date and time of each reformer catalyst loading/unloading event.

- Removed Condition 35.9 (monitoring for flares).  As noted above the opacity limit and monitoring requirements are included in the flare specific sections in Section II.

Section II.38 – SO$_2$ Emission Limitations

- Revised the title for this section to be "Facility Wide Requirements". As noted later in this document the NSPS J SO$_2$ limit for fuel gas combustion devices was included in Section II.45 with the NSPS J requirements for other equipment.

- The facility access requirements in Section II.60 were included as "new" Condition 38.3.

Section II.39 – Colorado Regulation No. 7, Section III Requirements

- Included the requirements in Section III.B (now Part B, Section I.B) since these requirements apply to Tank 7208.

Section II.40 – Colorado Regulation No. 7, Section IV Requirements

- The paragraphs under Condition 40.1 were numbered and minor language changes were made to Condition 40.2.

Section II.41 – Colorado Regulation No. 7, Section VI Requirements

- The last paragraph in Condition 41.3.4 was revised.

- Minor revisions were made to the language in Condition 41.6.1 to reflect revisions to this section of Regulation No. 7.

Section II.42 – Colorado Regulation No. 7, Section VII Requirements

- This section was revised to actually include the language in Regulation No. 7, Section VII (now Regulation No. 7, Part B, Section V) even though it relies on language in other parts of Regulation No. 7.

Section II.43 – Colorado Regulation No. 7, Section VIII Requirements

- Revisions to the summary table were made to include control device requirements and to revise the language for vacuum producing systems.

- Revised the language in Condition 43.1.1 to more appropriately reflect language in the regulation.

- Formatting changes were made to list requirements in Section VIII.B (now Part B, Section VI), which includes Conditions 43.2 through 43.7, to group these requirements under Condition 43.2.

- Revised the language in Conditions 43.3 and 43.6 to indicate that flares meeting the requirements in MACT CC, rather that 60.18 are presumed to be in compliance with those requirements. A similar paragraph to the one in Conditions 43.3 and 43.6 regarding flares was added to Condition 43.7.

- Revised the language in Condition 43.8.6 (monitoring for equipment leaks) to more consistent with the language in the regulation.

Section II.44 – Colorado Regulation No. 7, Section XV Requirements

- Included the requirements in XV.B.1.d (now Part B, VII.B.1.d) as "new" Condition 44.1.4.

Section II.45 – 40 CFR Part 60 Subpart J Requirements (NSPS J)

- The requirements for fuel gas combustion devices were moved from Section II.38 to this section. This is consistent with how they are addressed in the Plant 2 permit.

- Removed the summary tables for the FCCU and SRU and included requirements in the order they appear in the regulation, as opposed to by emission unit.

- Removed Conditions 45.6 (60.107(b)), 45.7 (60.107(c) and (d)) and 45.10 (60.108(d)), since they apply to units subject to the FCCU $SO_2$ provisions in 60.104(b). The NSPS J $SO_2$ provisions were streamlined in favor of the $SO_2$ requirements in the CD. Streamlined conditions are included in the permit shield for streamlined conditions (Section III.3).

- The header above Condition 45.11 (annual PM performance tests) was revised to say "subsequent performance test requirements" since the annual PM tests are not required under the NSPS J provisions but are required by the CD.

Section II.47 – 40 CFR Part 60 Subpart GGGa (NSPS GGGa)

- Added F207 (from construction permit 20AD0175 - equipment leaks associated with the fuel gas filter-coalescer for Boiler 4) to the list of sources subject to these requirements.

Section II.48 – 40 CFR Part 60 Subpart Kb Requirements (NSPS Kb)

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3   Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

- Revised the version date for the applicable requirements. The January 19, 2021 revisions allowed source to choose to comply with the provisions in 40 CFR Part 63 Subpart WW as an alternative instead of complying with the requirements in NSPS Kb. No revisions to existing permit language is necessary to reflect the January 19, 2021 revisions.

- In order to be consistent with the Plant 2 permit, the provisions in 60.110b(e)(5) was included. These provisions allow sources to comply with the provisions in 40 CFR Part 63 Subpart WW as an alternative.

- Added the citations to Conditions 48.8 thru 48.10.

Section II.49 – 40 CFR Part 60 Subpart UU (NSPS UU)

- Included the version date of the NSPS requirements included in the permit.

  Note that revisions were made to NSPS UU since the permit was last revised but no revisions to the permit were necessary.

Section II.50 – 40 CFR Part 60 Subpart XX Requirements (NSPS XX)

- Included the version date of the NSPS requirements included in the permit.

- Corrected the citation in Condition 50.10.

Section II.51 – 40 CFR Part 60 Subpart QQQ Requirements (NSPS QQQ)

- Included the version date of the NSPS requirements included in the permit.

Section II.52 – 40 CFR Part 63 Subpart R Requirements (MACT R)

- Included the version date of the NSPS requirements included in the permit.

  Note that revisions were made to MACT R since the permit was last revised but the revisions to MACT R affected the definitions and Table 1 (general provisions applicability), so no changes to permit language were necessary due to these revisions.

- Removed Tank 7208 as a source applicable to these requirements. Tank 7208 stores either ethanol or toluene, thus these requirements do not apply.

- Corrected citation in Conditions 52.1.

- Made minor formatting changes.

- Removed Condition 52.11 to be consistent with the Plant 2 permit.

- Revised the language in the conditions under "Continuous Monitoring (63.427)" and Reporting and Recordkeeping (63.428)" to be more consistent with reg language.

- Included the following provisions: 63.427(a)(3) (continuous monitoring for thermal oxidation systems); 63.427(a)(3) (continuous monitoring flares); 63.428(g)(3) and 63.428(h)(4) (equipment leaks not repaired within specified time frame); and 63.428(k) (alternative to keeping records) since these apply or provide an alternative.

Section II.53 – 40 CFR Part 63 Subpart CC Requirements (MACT CC)

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3   Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

- Revised the version date for these requirements and removed the paragraph indicating proposed revisions to MACT CC.

  Revisions were made to the MACT CC requirements on November 26, 2018, February 4, 2020 and November 19, 2020 and those revisions were included in the permit.

- Revised Condition 53.29 to revise the version date of the MACT G requirements. Revisions were made to MACT G on November 19, 2020 but these revisions did not result in any changes to permit language.

- Noted in Condition 53.43.2 that equipment leaks associated with construction permit 20AD0715 (F207 – equipment leaks associated with the fuel gas filter-coalescer for Boiler 4) fall under the overlap provisions for equipment leaks in 63.640(p)(2) (sources subject to NSPS GGGa only have to comply with NSPS GGGa).

- The following changes were made to the requirements in § 63.670 to indicate the monitoring options the source is relying on:

  o Removed 63.670(i)(2) thru (4) and (6). The source is using flow monitors for all but the Plant 3 flare assist air,

  o Removed 63.670(j)(1), (2) and (6). The source installed calorimeters to monitor the Btu content of waste gas and the Plant 1 flare is equipped with a $H_2$ monitor (63.670(j)(4) applies).

  o Removed the requirements in 63.670(k)(2)(ii), since the source uses flow monitors for vent gas.

  o Removed 63.670(l)(1) and (6) as they don't apply.

  o Removed 63.670(m)(1) as it does not apply.

Section II.55 – 40 CFR Part 63 Subpart VVa Requirements (NSPS VVa)

- Included more requirements from NSPS VV to be more consistent with the Plant 2 renewal permit. This included added the following:

  o Added 60.482-2a(e)(1) thru (e)(3).

  o Added 60.482-7a(f)(1) thru (f)(3), 60.482-7a(g(1) and (g)( 2) and 60.482-7a(h)(1) thru (h)(3).

  o Added 60.482-10a)(j)(1) and (j)(2) and 60.482-10a(k)(1) thru (k)(3)

  o Added 60.483-2a(a)(2)

Section II.57 – Flare Requirements

- Removed the paragraphs under Condition 57 addressing 40 CFR Part 63 Subpart CC prior to January 31, 2019 as this is no longer relevant.

- Conditions 57.2 was revised to include the monitoring device for pilot flame.

- Condition 57.3 were revised to be consistent with the language in 60.18(c)(3)(ii).

- Revised Condition 57.9.1 to indicate that the visible emission observations shall last a minimum of 6 minutes to be consistent with requirements in the Plant 2 permit.

- Added "new" Condition 57.9.5 to include recordkeeping requirements consist with

those in the Plant 2 permit.

Section II.58 – Fuel Monitoring

- Added language to clarify that the gross (higher) heating value of the fuel shall be used in emission calculations and to determine heat input (fuel use) for fired equipment.

Section II.59 – Continuous Emissions Monitors (Consent Decree (H-01-4430)

- This section was revised to more fully address the requirements for continuous emissions monitoring systems and continuous opacity monitoring systems as was done in the Plant 2 renewal permit. Note that existing paragraph 59.1 is included in "new" Condition 59.1.1.4.

Section II.60 – Facility Access Requirements

- These requirements were moved to "new" Section II.38 for Facility Wide Requirements.

"New" Section II.60 – Compliance Assurance Monitoring (CAM) Requirements

- The CAM requirements were moved from Section II, Condition 2.13 to this "new" section, since CAM applies to more emission units than just the FCCU.

Section II.61 – Consent Decree General Recordkeeping, Record Retention and Reporting

- These requirements are from the Consent Decree (CD) H-01-4430) and were moved to "new" Section II.38 for Facility Wide Requirements. This section is labeled as "reserved."

Section II.62 – Emission Factors

- This condition provides information on emission factors. Since this condition doesn't include any applicable requirements, the Division considers that this condition is not necessary and it was removed. This section is labeled as "reserved."

Section II.63 – 40 CRF Part 63 Subpart DDDDD Requirements (MACT DDDDD)

- Revised the version date of the requirements that are included in the permit. Note that revisions were made on November 19 and December 28, 2020. The revisions only affected Condition 63.21.

- Added a note under Condition 63 to indicate that revisions to the requirements have been proposed.

Section II.64 – 40 CFR Part 63 Subpart VV Requirements (NSPS VV)

- Included the version date of the NSPS requirements included in the permit.

- Added a paragraph at the beginning of this section regarding requirements that have been stayed.

- Minor formatting changes were made.

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3    Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

- Included more requirements from NSPS VV to be more consistent with the Plant 2 renewal permit. This included added the following:
  - Added 60.482-1(a) thru (c).
  - Added 60.482-10(k)(1) thru (3)
  - Included 60.483-1, 60.483-2, 60.485, 60.586 and 60.487.

Section II.66 – 40 CFR Part 63 Subpart GGGGG Requirements (MACT GGGGG)

- Included the version date of the MACT requirements included in the permit.

Section II.67 – Sand Creek Remediation Project – AS/SVE and AS Systems

- Added language to Condition 67.3 to indicate that monthly natural gas throughput will be divided by the number of days TO-SUN-2 is operated to get daily throughput.

- Corrected the references in Condition 67.5.2 and 67.5.3.

- Included the Reg 1 $SO_2$ requirements for refineries as "new" Condition 67.13.

  The current permit (last revised February 22, 2018) does not require $SO_2$ emissions from the remediation project to be included in assessing compliance with this limit. However, the Division considers that to be consistent with the Plant 2 permit even de minimis sources of $SO_2$ emissions should be included in assessing compliance with the Reg 1 $SO_2$ limit, so this requirement was included. Only emissions from TO-SUN-2 need to be included in the calculation as that is the only fuel-burning source in this section.

  Testing done to get an exemption from $H_2S$ monitoring in NSPS Ja indicated that all 14 daily samples indicated $H_2S$ emissions below the detection level (0.2 ppm). Based on the detection level (0.2 ppm $H_2S$ level) and the flow rate of the blowers for AIRS Pt 615 (which routed to TO-SUN-2), $SO_2$ emissions would be 4.0 x $10^{-3}$ lb/hr. Emissions from natural gas consumption shall be estimated using the AP-42 emission factor in Section 1.4 (dated 7/98), Table 1.4-2.

"New" Section II.72 - Reg 7, Section XVI.D Requirements NO$_X$ Emission Limits for Boilers and Process Heaters)

- Boiler B4, B6 and B8 are subject to the NO$_X$ limit in Section XVI.D.4.a.(i) (now Part E, Section II.A.4.a.(i)).

  Boilers B6 and B8 are subject to NO$_X$ emission limitations (both annual (tons/yr) and 365-day rolling limits). In the current permit (last revised February 22, 2018) Boiler B4 is not subject to any NO$_X$ limitations. Although the 365-day rolling limits (0.04 lb/MMBtu) for Boilers B-6 and B-8,are well below the NO$_X$ limit in Section XVI.D.4.a.(i) (0.20 lb/MMBtu), since there is a difference in averaging time, the Reg 7 NO$_X$ limit cannot be streamlined.

  Although it is not anticipated that Boilers B-6 and B-8 will meet the exemption criteria, the potentially relevant exemptions in Section XVI.D.2.a.(i) and d were included.

  CEMS are required for boilers subject to the emission limitations in Section XVI.D.4 per Section XVI.D.5.a.(i)(A). Since the boilers are not subject to either the Acid Rain

(40 CFR Part 75) or NSPS (40 CFR Part 60) requirements, the provisions in Section XVI.D.5.a.(i)(A)(3) were included. Note that the Plant 1 boilers have separate stacks so the requirements in Section XVI.D.5.a.(i)(A)(4) were not included. In addition, the requirements in Section XVI.D.5.a.(iv) (fuel flow meters) were included.

Requirements for output or production-based limits in Section XVI.D.5.a.(iii) and performance testing in Sections XVI.D.5.a.(ii) and XVI.D.8.b were not included as these do not apply.

As noted above, CEMS are required for boilers, so the requirements for CERMS in Section XVI.D.7.b were not included. In addition, since the boilers burn only gaseous fuels, the requirements in Section XVI.D.7.a were not included.

Note that on December 17, 2021, the AQCC adopted RH requirements that apply to Boiler B-4, thus the exemption in Section XVI.D.2.f (now Part E, Section II.A.2.f) would apply. This exemption applies to "any stationary combustion equipment subject to a federally enforceable work practice or emission control requirement contained in this Regulation 7, Section XIX.A.-D or Regulation 3, Part F (now Regulation No. 23)". Therefore, the exemption does not apply until EPA approves the December 17, 2021 revisions into Colorado's Round 2 Regional Haze SIP.

- Process heaters $\geq$ 5 MMBtu/hr are subject to a $NO_X$ emission limit of 0.1 lb/MMBtu, unless an exemption applies. These limits were included in the permit as discussed in the individual equipment sections.

  Note that as discussed above the exemption in Section XVI.D.2.f (now Part E, Section II.A.2.f) applies to any heater subject to the RH requirements but only after EPA approves the December 17, 2021 revisions into Colorado's Round 2 Regional Haze SIP.

"New" Section II.73 - Reg 7, Section XVI.D Combustion Process Adjustment Requirements

- The combustion process adjustment requirements and associated recordkeeping requirements in Reg 7, Section XVI.D.6 and XVI.D.7.f were included in this section, except as discussed below. Note that in the relevant equipment specific sections, conditions have been added to refer to this condition.

  Section XVI.D.7.f.(i)(F) was not included as the process heaters only burn gaseous fuel.

Section III – Permit Shield

- Removed the requirements in 40 CFR Part 60 Subpart Db from the table in Section III.1 (specific non-applicable requirements) since it applies to Boiler B4.

- The following changes were made to the permit shield for streamlined conditions (Section III.3):

  o Removed references to Boiler B4 in Regulation No. 6, Part B, Section I (NSPS general provisions) and Section II.C.2 (PM limits for fuel burning equipment).

  o Included the emission limit in Regulation No. 23, Section IV.F.3 for the Plant 1 flare (162 ppmv $H_2S$, on a 3-hr rolling average).

- o   Included the requirements in Regulation No. 23, Section V.A.2.e.(i), with respect to heaters H-17, H-28, H-29, H-30 and H-37.
- o   Included the requirements in Regulation No. 23, Section V.A.2.e.(ii) (Plant 1 flare monitoring).
- o   Included the requirements in Regulation No. 23, Sections V.A.1.b, V.A.1.b.(i) and V.B.A.1.b.(i)(D) with respect to heater H-2101.
- o   Included the requirements in Regulation No. 23, Sections V.C.1, V.C.2 and V.D (1st paragraph) with respect to H-2101 and Boiler B-4.
- o   Included the requirements in Regulation No. 23, Sections V.A.1.d, V.A.1.d.(i)(A) and V.A.1.d.(i)(B) with respect to the SRUs.
- o   Included the requirements in Regulation No. 23, Sections V.A.1.e, V.A.1.e.(i)(A) and V.A.1.e.(i)(B) with respect to the FCCU.
- o   Included the requirements in Regulation No. 23, Section V.B.4.e.(i) (use the methodologies in 40 CFR Part 60 Subparts A and J and 40 CFR 63.1564 for FCCU PM limit).
- o   Included the requirements in Regulation No. 7, Part E, Sections II.A.4.a.(i) (NO$_X$ limit), II.A.5.a.(i) (comply by October 1, 2021), II.A.5.b.(i)(A) (use NO$_X$ CEMS) and II.A.5.b.(i)(A)(2) (NO$_X$ CEMS to meet Part 60) with respect to Boiler B4.
- o   The requirements in Regulation No. 7, Part E, Sections II.A.7.c (keep records of type and amount of fuel used), II.A.7.d (keep records of annual capacity factor), II.A.7.e (maintain records generated for reports for 5 years) and II.A.8.a and a.(i) (sources using a CEMS submit either quarterly or semi-annual excess emission reports).

Section IV – General Conditions

- Revised the version date.

- Revised General Condition 12 to include requirements in Reg 3, Part D.

- Corrected the citation in Condition 18 (changed from "CCR 1001-17" to "CCR 1001-19").

- Revised Condition 22.e to add a reference to Regulation No. 3, Part A, § II.A.2 and revised the language to indicate a revised APEN shall be filed once per year for control equipment changes at condensate storage tanks subject to the provisions in Regulation No. 3, Part D, Section I.

- Added major stationary source monitoring, recordkeeping and reporting requirements in "new" Condition 24. Conditions that follow are renumbered.

- Revised Condition 30 to correct the citation, revised the introductory paragraph to indicate the areas in which the requirements apply and note state-only requirements, corrected the language in paragraph c, corrected the Reg 7 citations in paragraphs a & d and made a minor change to paragraph e (changed "PSIA" to "psia").

Appendices

- The following were added to the insignificant activity list in Appendix A

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3    Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

- o 3,000 gallon diesel additive storage tank (T7006)
- o Ethanol unloading at the truck dock (VOC emissions below 1 tpy VOC)
- o Two (2) fire training materials storage tanks (T-4701 and T4702)
- o LPG loading (emissions below 1 tpy VOCs).

- The following were added to the tables in Appendices B and C.
  - o Included the piping components associated with the fuel gas filter-coalescer for Boiler 4 (F207).
  - o Included Industrial solvent cleaning in the table

- Revised Appendix D to add a version date, correct EPA information, clarify permit mods sent to EPA and replace "Matt Burgett" with "Title V Unit Supervisor".

- Cleared the information from the table in Appendix F.

- Included the FCCU CAM plan in Appendix H. Note that in the current permit (last revised February 22, 2018), Appendix H included the $SO_2$ emission calculation methodology.

- Included the Plant 1 WWTS CAM plans in Appendix M.

- Included the CAM plans for the Plant 1 truck and rail racks and the Plants 3 and GBR flares in Appendix N.

### 3.  Regarding Ozone NAAQS Compliance Demonstration for Included Modifications

During the public comment period for this permit action, a comment was received indicating that this technical review document was insufficient with regard to its justification as to why none of the included modifications required modeling to demonstrate compliance with the ozone NAAQS. The following discussion intends to clarify this decision.

In April, 2023, the Division released the revised "Colorado Minor[2] NSR Source Modeling Guideline for Air Quality Permits." Included in this document is a robust discussion regarding modeled emission rates for precursors (MERPs), in Appendix D. MERPs modeling is the current standard to characterize emissions of NAAQS pollutants which are not emitted directly, but which form as a result of emissions of other pollutants; specifically, this includes $PM_{2.5}$ and ozone. Because ozone is not directly emitted, but is photochemically created through an interaction between NOx, VOCs, and ultraviolet light (i.e., sunlight), the precursors of note are NOx and VOC emissions.

---

2 It should be noted that even though Suncor is a major source, as defined in
Colorado Regulation No. 3, the included modifications are considered minor
NSR permit actions; i.e., none of the modifications would be considered major
modifications for the purposes of PSD/NANSR subject to the requirements of
Regulation No. 3, Part D, which contain separate and distinct modeling
requirements from those contained in this document.

The Division's Permit Modeling Unit "used the air quality modeling results for hypothetical sources summarized in the EPA MERPs View Qlik application to derive MERPs for the hypothetical sources located in Colorado using the EPA recommended SILs for ozone (1 ppb), 24-hour PM2.5 (1.2 µg/m3) and annual PM2.5 (0.2 µg/m3). The worst-case derived MERPs for the hypothetical Colorado sources are presented below in Table C-1." For the 8-hour ozone NAAQS, precursor emissions of 235 tpy NOx, and 2,221 tpy VOC were identified. Given that both of these precursors are considered for ozone formation, their combined contributions are also considered. If the combined contribution is in excess of the projected significant impact level (SIL), then cumulative analysis may be required; however, if a project's emissions are below that level, MERPs modeling is not required.

None of the modifications in this permit issuance have combined contributions of NOx and VOC in excess of these values, and as such, ozone modeling was not required.

## 4. Changes Made to Draft Permit and/or Technical Review Document Based on Comments Received During the Public Comment Period

The modifications in this section were made based on comments that were received during the public comment period and/or errors found after posting the draft permit and in reviewing and addressing public comments. The official public comment period began on May 9, 2022 and ran through July 8, 2022. Public Comment Hearings were held on July 9 and 13, 2022. Additionally, the Division relies on and reincorporates the significant discussion in its responses to comments into this TRD for purposes of how the comments relate to issues in this TRD and how the Division addressed issues raised by EPA in its July 31, 2023 order on the Suncor Plant 2 Title V permit.

Note that this Section does not include administrative-type corrections such as typographical errors that the Division found and made following the release of the draft permit for public comment.

In this Section, the discussion related to modifications is with respect to the draft revised permit that went through public comment. In addition, please be aware that unless otherwise specified changes noted in Sections 1 (Source Requested Modifications) and 2 (Other Modifications) were not changed, as a result there may be some inconsistencies between the permit changes noted in those sections and the changes noted in this section.

Section I – General Activities and Summary

- Replaced "TBD" with "171" for F209 - equipment leaks associated the RFG Project in the table in Condition 5.1. The AIRS point number was not available prior to posting the permit for public comment.

- Note that where appropriate throughout the permit, former references to Colorado Regulation No. 7 were updated to the revised Colorado Regulations Nos. 7, 24, 25 and 26.

Section II.1.1, 25.1.5 & 70.1.1.2 – Use of TankESP to Calculate Emissions

- The draft permit included a calculation methodology that was not sufficiently prescriptive to calculate emissions using TankESP. The requirement was clarified to include that TankESP based on the June 2020, AP-42, Chapter 7.1 be used, and that if an update to Chapter 7.1 is published, Suncor may need to modify this calculation methodology to incorporate applicable changes.

Section II.2.3, 4.3, 5.3, 25.11, 23.3.1, 68.2.1

- Reference to Colorado Regulation No. 24, Part B, Section IV.A.1 was removed from these conditions because the associated tanks do not have pumps or compressors.

Section II.31 – GBR Flare SO2 Limitation

- The annual SO2 emission limitation was removed because the emissions were below APEN reporting thresholds under Colorado Regulation No. 1, Part A. Suncor must still maintain records to show that these emissions are below this threshold, for Division inspection upon request, although this requirement does not appear in the permit directly.

Section II.38.6.3 & 38.7.1 – Fenceline Monitoring Notification Thresholds

- The notification thresholds for HCN, H2S and benzene have been added to these conditions following the February 1, 2024 finalization of the fenceline monitoring plan.

Section II.38.8 – Annual Emissions Reporting

- The report date was changed from May 1 to June 30 to align with other annual reporting requirements at the facility.

Section II.45 – 40 CFR Part 60 Subpart J Requirements (NSPS J)

- Removed the language in parenthesis from the title of this condition. As discussed on page 165, the requirements for fuel gas combustion devices were included in this section.

Suncor Commerce City Refinery – Third-party Root Cause Investigation, Final Report, April 12, 2021 (Kearney Report)

The following requirements (as identified by "Kearney" in the heading) were added by the Division based on recommendations from the Kearney report, as a response to comments taking issue with historical, repeated noncompliance at the facility.

Section II.22.15 – FCCU Automated Shutdown System Operations & Maintenance Plan (Kearney)

- The Division evaluated the recommendations from the Kearney report, which was mentioned repeatedly in public comments, and added Condition 22.15 to the permit. The Division agreed with commenters that it was necessary to explore novel requirements to help prevent future emissions exceedances from the FCCU. The added requirements include the development and implementation of an O&M plan for the FCCU automatic shutdown system.
- The FCCU regenerator is subject to 40 CFR Part 63, Subpart UUU and thus the

General Duty obligation under §63.1570(c) applies. The Division believes that the
requirements in this condition will improve Suncor operation of the FCCU in
accordance with good air pollution control practices for minimizing emissions,
particularly given historic issues of noncompliance.

Section II.38.13 – Enhanced Training and Tools (Kearney)

- The requirement to compile all environmental operating limits (EOLs), add them
  to process unit operating manuals and/or maintenance and inspection
  procedures, and train relevant staff was added to address another
  recommendation of the Kearney report. While this is a novel requirement, the
  regulatory basis for this condition is the underlying regulatory and/or construction
  permit conditions for each emission unit; i.e., that this is additional monitoring,
  recordkeeping, and reporting to ensure compliance with the underlying applicable
  requirements.
- Additional training and tool requirements were added as a result of Kearney
  report recommendations. The regulatory basis for these conditions is the General
  Duty obligations under relevant NSPS (40 CFR Part 60, Subpart A, §60.11(d)) or
  NESHAP (e.g., 40 CFR Part 63, Subparts UUU and CC at §63.1570(c) and
  §63.642(n)):
    - Creation of a training department which focuses on preventing deviations
      from Title V operating permit requirements; this training should reduce
      emissions exceedance events;
    - Creation of Operator Response Action lists which are to be available to
      relevant staff to assist in process operation when equipment drifts from
      normal operating parameters; these lists should reduce emissions
      exceedance events; and
    - Creation of a training simulator for the FCCU so operators can learn to
      respond to unique operating scenarios; this simulator should reduce
      emission exceedance events.
- Given the unique and novel nature of these requirements, the Division has added
  some general recommendations and expectations for each; however, the
  Division has not been completely prescriptive due to uncertainty with
  implementation considerations. The Division may reevaluate these requirements
  in the future.

Section II.38.14 – Procedures in Digital Format and Procedure Implementation
(Kearney)

- Similar to the enhanced training and tools requirements discussed above, the
  digitization and implementation of Suncor's procedures was identified as a way to
  address recommendations from the Kearney report. The underlying regulatory
  basis is the same as well: General Duty obligations under relevant NSPS or
  NESHAP.
- The Division believes that digital, accessible procedures will assist operators in
  times of abnormal operation, and may prevent emissions exceedances.
  Additionally, the requirement to update these procedures when there is a
  deviation was added to ensure continuous improvements to their systems; ideally

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3    Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

preventing emissions exceedances that occur as the result of a particular operational issue repeatedly.

Section II.38.10 – Dissemination of CEMS Data to a Public-Facing Website

- The Division changed the number of days that Suncor is required to submit a proposed plan to the Division from 180 days to 60 days. This change was made because an identical condition exists in the Plant 2 permit, and the Division assumes that the provided plan for Plants 1 and 3 will be nearly identical to that for the Plant 2 permit, thus it should not take as long to develop and provide the plan to the Division.
- Similarly, the Division changed the number of days that Suncor has to implement the CEMS data sharing plan from 180 days to 60 days.

Section II.38.11 & 12 – Dissemination of Real-Time Data to the Division & Community-Based Monitoring System Upgrades

- In accordance with the new Colorado House Bill 24-1338, the requirements of C.R.S. §25-7-146 were added to the permit, as written in the statute.
- Community-based monitoring station locations and the alternative monitoring location protocol were added to the permit to clarify which stations are relevant to the statute.

Section II.72 & 73 – Updates to Colorado Regulation No. 26

- In accordance with updates to Regulation No. 26 requirements published on December 15, 2023, several changes have been made to the permit that are responsive to Suncor's process heaters. Notably the requirement for process heaters using refinery fuel gas to have a NOx limit of 0.1 lb/MMBtu was removed from the regulation, and so several changes were made to the permit as a result of this removal, as follows. The Division notes that it is currently working with EPA on setting a new RACT limit for process heaters following the 2023 disapproval. The Division will make appropriate updates to RACT limits in this permit once that action is complete and approved by EPA.
- The applicable and effective dates were updated in Condition 72 and 73.
- Citations were updated in Conditions 72.3.3.5, 72.3.4.1, 72.3.4.2, 72.3.4.3, 72.3.4.4, 72.3.4.5, 72.5.1.1, 73.1.2.3, 73.1.2.4.c, 73.1.2.4.d, and dates were changed in Conditions 73.1.3.2 and 73.2.1.3 to match the updated regulations.

Section IV – General Permit Conditions

This section was updated to include the most up-to-date version of the Title V program's general permit conditions. This was in response to a comment indicating deficiencies with the included affirmative defense provisions. Updating to the May 17, 2023 version of these conditions resulted in several changes below.

- Condition 3: Minor language changes were made to paragraph 3.d.(ix), the first two paragraphs after 3.d.(x), paragraph 3.g.(viii), and the first two paragraphs after 3.g.(viii); and noted Conditions 3.d and 3.g will be state-only as of June 1, 2024.
- Condition 8: revised the citation to include Regulation No. 3 and added the major

stationary fee provisions in Regulation No. 3, Part A, Section VI.E.

- Condition 22: revised paragraph e to remove the phrase that begins with "as provided for" in the first sentence and corrected the Reg 7 citation in the second to the last sentence; added a "new" paragraph (e)(i) to include the certification requirements in Regulation No. 3, Part A, Section II.A.3 and added a "new" paragraph "(f)" for the new GHG APEN reporting requirements in Regulation No. 3, Part A, Section II.A.2.
- Condition 30:  revised the citation, made slight revisions to introductory paragraph and replaced Regulation No.7 with Regulation No. 24.

Appendices

- As discussed in the CAM section above, during the public comment period it was identified that the Division had erroneously relied upon the definition of "presumptively acceptable monitoring" under 40 CFR §64.4(b).
- For four CAM plans (FCCU regenerator, P1 wastewater treatment system RTO and API headworks carbon canisters, rail loading rack and enclosed vapor combustion unit, truck loading rack and flare), the Division has updated the CAM justifications to no longer indicate either a reliance on "presumptively acceptable monitoring," as defined in 40 CFR §64.4(b).
- The P3 & GBR Flares CAM Plan was extensively updated to included additional monitoring parameters to qualify for the definition of "presumptively acceptable monitoring" under 40 CFR §64.4(b). This included the addition of three indicators to bring the total indicators to five, to mirror the monitoring requirements under MACT CC. The new indicators are for visible emissions, flare tip velocity, and net heating value. This has been discussed in the CAM section in more detail in this TRD, above.

TRD-only Changes

- A statement was added to modification 1.16 indicating that a NAAQS compliance demonstration via modeling was not required.
- Commenced construction dates were added to the modification summary table at the end of this TRD for increased information and ease of analysis for questions related to major NSR project aggregation under Colorado Regulation No. 3, Part D.
- Note that wherein the permit the Division has referenced future versions of state and federal regulations for which Suncor may have future requirements, the Division is not incorporating future requirements by reference into the permit; instead, the Division includes these notes as informational to reflect the current version of the rule which was included in the permit, and to indicate that Suncor may need to comply with updates to those rules in the future, regardless of whether they have yet been incorporated into the permit.
- A discussion regarding the ozone NAAQS and MERPS modeling was added to section 3.

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3   Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

## Suncor Plants 1 (West) and 3 (Asphalt Unit) – Potential to Emit

| Emission Unit | AIRS pt no. | PM/PM$_{10}$ | PM$_{2.5}$ | SO$_2$ | NO$_X$ | CO | VOC | HCN |
|---|---|---|---|---|---|---|---|---|
| **Tanks** | | | | | | | | |
| T1 | 050 | | | | | | 13.60 | |
| T2 | 094 | | | | | | 3.70 | |
| T3 | 090 | | | | | | 3.70 | |
| T34 | 092 | | | | | | 9.60 | |
| T52 | 141 | | | | | | 0.11 | |
| T55 | 028 | | | | | | 4.26 | |
| T58 | 065 | | | | | | 4.17 | |
| T62 | 080 | | | | | | 0.13 | |
| T67 | 043 | | | | | | 2.10 | |
| T70 | 049 | | | | | | 3.19 | |
| T74 | 031 | | | | | | 0.50 | |
| T75 | 056 | | | | | | 2.68 | |
| T77 | 046 | | | | | | 5.52 | |
| T78 | 045 | | | | | | 7.38 | |
| T80 | 057 | | | | | | 4.52 | |
| T94 | 015 | | | | | | 1.48 | |
| T96* | 059 | | | | | | 6.72 | |
| T97* | 066 | | | | | | | |
| T116 | 072 | | | | | | 7.10 | |
| T774 | 104 | | | | | | 0.54 | |
| T775 | 042 | | | | | | 7.10 | |
| T776 | 061 | | | | | | 2.54 | |
| T777 | 105 | | | | | | 2.75 | |
| T778 | 037 | | | | | | 3.54 | |
| T2006 | 088 | | | | | | 0.20 | |
| T2010 | 089 | | | | | | 4.98 | |
| T3201 | 093 | | | | | | 2.80 | |
| T3801 | 129 | | | | | | 2.19 | |
| T7208 | 070 | | | | | | 0.39 | |
| **Fired Sources** | | | | | | | | |
| H-6 | 004 | 0.47 | 0.47 | 1.87 | 3.09 | 5.17 | 0.34 | |
| H-10 | 007 | 1.11 | 1.11 | 3.89 | 14.61 | 12.27 | 0.80 | |
| H-11 | 009 | 0.97 | 0.97 | 3.40 | 12.78 | 10.73 | 0.70 | |
| H-13 | 014 | 0.22 | 0.22 | 0.87 | 2.89 | 2.43 | 0.16 | |
| H-16 | 052 | 0.20 | 0.20 | 0.69 | 2.58 | 2.16 | 0.14 | |
| H-17 | 013 | 1.89 | 1.89 | 7.45 | 24.83 | 20.86 | 1.37 | |
| H-18 | 051 | 0.20 | 0.20 | 0.69 | 2.58 | 2.16 | 0.14 | |
| H-19 | 016 | 0.96 | 0.96 | 3.44 | 15.34 | 10.54 | 0.69 | |
| H-20 | 017 | 0.46 | 0.46 | 1.60 | 6.01 | 5.05 | 0.33 | |
| H-22 | 018 | 1.95 | 1.95 | 6.83 | 25.66 | 21.56 | 1.41 | |
| H-27 | 054 | 2.50 | 2.50 | 8.74 | 32.84 | 27.59 | 1.81 | |
| H-28,29,30 | 078 | 3.10 | 3.10 | 10.50 | 20.40 | 34.20 | 2.20 | |

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3   Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

| Emission Unit | AIRS pt no. | PM/PM$_{10}$ | PM$_{2.5}$ | SO$_2$ | NO$_X$ | CO | VOC | HCN |
|---|---|---|---|---|---|---|---|---|
| H-31* | 002 | 3.68 | 3.68 | 7.66 | 32.25 | 16.39 | 1.45 | |
| H-32* | 003 | | | | | | | |
| H-33 | 010 | 0.25 | 0.25 | 0.37 | 1.72 | 2.76 | 0.18 | |
| H-37 | 012 | 1.87 | 1.87 | 7.45 | 10.41 | 20.56 | 1.35 | |
| H-1716* | 097 | 3.15 | 3.15 | 10.30 | 12.70 | 16.92 | 2.28 | |
| H-1717* | 098 | | | | | | | |
| H-2101 | 096 | 10.70 | 10.70 | 10.20 | 52.19 | 57.99 | 7.74 | |
| H-2410 | 137 | 1.68 | 1.68 | 2.75 | 9.50 | 9.02 | 1.24 | |
| B-4 | 019 | 4.98 | 4.98 | 6.54 | 34.20 | 55.10 | 3.61 | |
| B-6 | 021 | 3.59 | 3.59 | 12.70 | 19.45 | 19.45 | 2.60 | |
| B-8 | 023 | 5.20 | 5.20 | 18.40 | 28.21 | 28.21 | 3.77 | |
| **Process Units / Miscellaneous** | | | | | | | | |
| P101, P102 & H-25 - No. 1 and No. 2 SRUs with TGU and Incinerator (H-25) | 100 | 0.48 | 0.48 | 59.70 | 1.97 | 2.63 | 0.35 | |
| P103 - FCCU | 025 | 85.40 | 85.40 | 31.32 | 67.32 | 15.36 | 28.67 | 12.80 |
| **F201 - Plant 1 Waste Water Treatment System** | | | | | | | | |
| T-4501 | 095 | | | | | | 4.64 | |
| uncontrolled sources & sumps | 149 | | | | | | 5.27 | |
| controlled sources | 146 | | | 6.60 | 1.80 | 14.30 | 15.70 | |
| R101 - Rail Rack | 067 | 0.24 | 0.24 | 0.01 | 5.53 | 15.10 | 12.50 | |
| **R102 - Truck Rack** | | | | | | | | |
| truck rack & flare | 069 | 0.56 | 0.56 | 0.01 | 5.10 | 23.30 | 26.60 | |
| truck rack drains | 162 | | | | | | 3.90 | |
| truck rack sump | 163 | | | | | | 0.04 | |
| A1 - Air Strippers | 079 | | | | | | 9.90 | |
| F1 - Main Plant Flare | 073 | 1.61 | 1.61 | 60.48 | 14.64 | 66.48 | 59.04 | |
| F2 – Plant 3 (Asphalt Unit) Flare | 074 | 0.20 | 0.20 | 16.90 | 1.60 | 7.20 | 8.60 | |
| F3 - GBR Unit Flare | 139 | 1.60 | 1.60 | 0.18 | 14.20 | 60.50 | 27.10 | |
| F101 - Asphalt Unit (Plant 3) Waste Water Treatment System | 085 | | | | | | 5.44 | |
| **Fugitive VOC Emission Sources** | | | | | | | | |
| F102 - Asphalt Processing Unit | 020 | | | | | | 9.13 | |
| F103 - No. 3 HDS | 008 | | | | | | 23.82 | |
| F104 - Cryogenic Vapor Recovery Unit | 071 | | | | | | 10.06 | |
| F105 - No. 2 HDS | 024 | | | | | | 1.81 | |
| F106 - LSR Distillate Tower | 083 | | | | | | 4.50 | |
| F107 – Plant wide Fugitive VOCs - Unpermitted | 075 | | | | | | 23.88 | |

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3   Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

| Emission Unit | AIRS pt no. | PM/PM$_{10}$ | PM$_{2.5}$ | SO$_2$ | NO$_X$ | CO | VOC | HCN |
|---|---|---|---|---|---|---|---|---|
| F108 - Vapor Recovery Unit Debutanizer | 091 | | | | | | 6.80 | |
| F109 - No. 4 HDS | 099 | | | | | | 9.68 | |
| F110 - TGU Amine System | 101 | | | | | | 1.27 | |
| F111 - Sour Water Stripper | 102 | | | | | | 0.12 | |
| F112 - Modified Tank Farm | 103 | | | | | | 5.27 | |
| F113 - No. 1 Catalytic Reforming Unit Modifications | 143 | | | | | | 4.50 | |
| F114 - GBR Unit Fugitive | 138 | | | | | | 9.24 | |
| F115 - Bio-Diesel Fugitive | 144 | | | | | | 3.38 | |
| F116 - Relief Valve Project | 157 | | | | | | 3.61 | |
| F200 - Pipeline Receipt Station | 153 | | | | | | 1.84 | |
| F202 - MPV Project | 161 | | | | | | 3.71 | |
| F204 - H$_2$ Plant Drain Systems | 164 | | | | | | 5.20 | |
| F205 - Rail Rack RSR Project | 167 | | | | | | 2.13 | |
| F206 - No. 2 HDS Tier 2 ULSD Project | 168 | | | | | | 1.14 | |
| F207 - Boiler B-4 Fuel Gas Filter Coalescer | 169 | | | | | | 2.66 | |
| F208 - Main Plant (P1) Flare Isolation Valve Project | 170 | | | | | | 1.14 | |
| F209 - RFG Project | TBD | | | | | | 0.81 | |
| F210 - P3 Flare RSR Project | 165 | | | | | | 0.11 | |
| Plant 1 Cooling Towers | | | | | | | | |
| Y1 | 154 | 13.50 | 0.27 | | | | 34.60 | |
| Y3 | 156 | 0.53 | 0.01 | | | | 2.20 | |
| Y4 | 155 | 0.50 | 0.01 | | | | 1.85 | |
| Plant 3 (Y3) Cooling Tower | 158 | 4.90 | 0.10 | | | | 12.40 | |
| Sand Creek Remediation Project | | | | | | | | |
| All AS/SVEs | | | | | 2.30 | 5.65 | 22.69 | |
| LO-1 | 628 | | | | | | 1.50 | |
| D-20 | 631 | | | | | | 0.10 | |
| | | | | | | | | |
| Total | | 158.65 | 139.61 | 301.54 | 478.70 | 591.64 | 560.71 | 12.80 |

Notes:

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3   Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

*Units have combined emission limits.

1. Tanks D-811, D-812, D-813, D-814, T81, T82, T90, T91, T92, & T400 not included. These tanks are pressurized tanks with no emissions.

2. Tanks T33, T57, T59, T64, T65, T66, T68, T69, T71, T72, T76, T105, T112, T140, T142, T144, T145, T146, T147, T182, T191, T192, T193 & T194 not included. These tanks have very low emissions. APENs were filed for these tanks because they are subject to MACT CC requirements (APENS files prior to the removal of the "catch-all" in Regulation No. 3, Part A.

3. The catalytic reforming unit (P104) was not included.  This unit is not a source of emissions. It has been included in the permit because it is subject to MACT UUU requirements.

4. The soil vapor extraction equipment (RSI Engine, SV1) was not included.  The engine is not a stationary source (it's a non-road engine)

5. The following APEN exempt equipment/activities were not included: pipeline receipt station sump in Section II.1, emergency engines in Section II.8, solvent usage (cold cleaner solvent degreaser and industrial solvent cleaning) in Section II.9, Heater H-21 in Section II.12 and Tanks 16675 & 20529 (Sand Creek Remediation Project equipment).

6. All AS/SVEs from the Sand Creek Remediation system include AIRS pts 606, 615, 616, 617, 618, 623, 624, 625, 634, 635, 636, 637, 638 and 639.  $NO_X$ and CO emissions are from AIRS pt 615 and 617 which are controlled by a thermal oxidizer and electric catalytic oxidizer.

7. Tank cleaning and degassing thermal oxidizer (TO) in Section II.70 was not included since this was included in the Plant 2 total. The limit is a refinery-wide limit.

8. The miscellaneous process vents (MPVs) in Section II.71 were not included, as MPVs vent to flares.

9. Potential to emit is based on the following:

    a. permitted emission limits.

    b. For heaters without permit limits, the emission factors in the permit (AP-42, Section 1.4, dated 3/98) converted to lbs/MMBtu by dividing by 1020 Btu/scf per footnote a, design rate of the unit (MMBtu/hr) and 8760 hrs/yr of operation. $SO_2$ emissions were calculated using design rate of the unit (MMBtu/hr), 8760 hrs/yr of operation and an emission factor of 0.0261 lb/MMBtu based on the NSPS J $H_2S$ limit and an assumed fuel gas heat content of 640 Btu/scf (per clean fuels project application).

    c. For tanks T67, T70, T74, T75, T77, T78, T80 & T776 from most recent actuals plus 20%..

    d. For the Main Plant Flare PTE is based on 2019 actual emissions plus 20%.

    e. For the FCCU PTE is based on maximum actual annual emissions from 2018-2020 plus 20% for $SO_2$, $NO_X$ and CO. For PM PTE is based on the RH limit and for VOC PTE is based on design rate (21,000 bbl/day) and the emission factor in the permit (7.48 lb/Mbbl).

    f. For plant wide fugitive VOCs unpermitted (F107), PTE is based on 2 x maximum actuals from 2018 - 2020.

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3   Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

## Stationary Sources Program PS Memo 10-01

COLORADO DEPARTMENT OF PUBLIC HEALTH AND ENVIRONMENT
Stationary Sources Program / Air Pollution Control Division

### INTER-OFFICE COMMUNICATION

**PS Memo 10-01**

TO:             Stationary Sources Staff, Local Agencies, Regulated Community

FROM:       Kirsten King and Roland C. Hea

DATE:        September 20, 2010

RE:             Permit Modeling Requirements for the 1-Hour $NO_2$ and $SO_2$ NAAQS

The Division is establishing this guidance for use by minor stationary sources of nitrogen dioxide ($NO_2$) and sulfur dioxide ($SO_2$) in evaluating whether modeling is necessary for permitting purposes to determine whether a permit applicant's emissions will comply with the new 1-hour $NO_2$ and/or the new 1-hour $SO_2$ National Ambient Air Quality Standard (NAAQS). The United States Environmental Protection Agency (EPA) published implementation guidance on June 28, 2010 and August 23, 2010 regarding demonstrating compliance with the new standards for Prevention of Significant Deterioration (PSD) sources.[1] The Division finds it useful to publish this supplemental state guidance to ensure that minor sources are addressed in a manner consistent with the EPA guidance for PSD sources.

Under federal rules, an ambient air quality impact analysis is required for each pollutant that a PSD source has the potential to emit in significant amounts. Such analysis includes modeling. The metric used by EPA to measure significant amounts is the significant emissions rate (SER). Federal rules currently define the SER for $NO_X$ and $SO_2$ as 40 tons per year (tpy). (40 CFR 52.21(b)(23)(i); 40 CFR 51.166(b)(23)(i)). EPA recently evaluated and decided to apply on an interim basis the 40 tpy SER to major source permitting compliance demonstrations for the hourly $NO_2$ and $SO_2$ standards. EPA concludes and states that an ambient air quality impact analysis is not necessary for PSD sources with projected $NO_2$ or $SO_2$ emissions rates below the SER. (Wood Memoranda at p.11 and p.4)

---

[1] See June 28, 2010, Anna Marie Wood, Acting Director, Air Quality Policy Division, Office of Air Quality Planning and Standards Memorandum "General Guidance for Implementing the 1-hour $NO_2$ National Ambient Air Quality Standard in Prevention of Significant Deterioration Permits, Including an Interim 1-hour $NO_2$ Significant Impact Level" and August 23, 2010 Memorandum "General Guidance for Implementing the 1-hour $SO_2$ National Ambient Air Quality Standard in Prevention of Significant Deterioration Permits, Including an Interim 1-hour $SO_2$ Significant Impact Level" ("Wood Memoranda").

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3   Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

The Division has evaluated EPA's rationale for establishing $NO_2$ and $SO_2$ SERs for modeling the 1-hour $NO_2$ and $SO_2$ standards. The Wood Memoranda guidance set forth EPA's reasoning that its SER for $SO_2$ (a pollutant with shorter-term 3-hour and 24-hour averaging times) is 40 tpy, and, for this pollutant, ambient air quality impact analyses have not been necessary at levels below the SER. EPA has concluded that this reasoning applies to the one-hour $NO_2$ and $SO_2$ standards on an interim basis. EPA states it intends to conduct an evaluation of screening tools available to permitting agencies. In the interim, it recommends the continued use of the existing SER for $NO_x$ and $SO_2$ emissions with respect to the 1-hour $NO_2$ and $SO_2$ standards, and thus ambient air quality impact analyses are not necessary for either $NO_2$ or $SO_2$ emissions below the 40 tpy SER.

EPA's Wood Memoranda guidance address PSD sources. The Division believes that the same principles apply to minor sources, in part, to ensure consistency of treatment in permitting and to ensure that it is not imposing different requirements on minor sources than those to which PSD sources are subject. The Division is aware of no factual basis to impose more stringent requirements on minor sources than EPA would impose on the largest air pollution sources. Therefore, the Division will apply EPA's SERs for $NO_x$ and $SO_2$ to the 1-hour $NO_2$ and 1-hour $SO_2$ standards for all stationary source permitting activities, including determining when ambient air quality impact analyses are necessary for permitting, pending the consideration of any further guidance issued by EPA on this subject.

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3    Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal



Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3   Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

## Hydrogen Cyanide (HCN) Modeling Results

### annual basis



Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3                    Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

### Change in Permitted (Requested) Emissions Associated with Modifications/Submittals Processed with this Permit Revision

| Modification | Permitted Emissions Increase (tons/yr) | | | | | | Comments | Commenced Construction Date |
|---|---|---|---|---|---|---|---|---|
| | PM/PM$_{10}$/ PM$_{2.5}$ | SO$_2$ | NO$_X$ | VOC | CO | HCN | | |
| 1.2 May 30, 2017 (Tank T62) | | | | 0.04 | | | This minor modification involved changes to Title V permit limits only and did not involve physical construction. The purpose of this request was to enable other jet fuel tanks to be taken out of service for routine inspection and maintenance. | N/A |
| 1.3 June 23, 2017 (new sump & BWON controls for truck rack) | | | | 3.94 | | | The purpose of this project was to voluntarily control equipment for purposes of BWON. Limits for controlled drains and a new sump (replaced two receiving tanks and an existing above ground tank) were included in the permit. The permit did not previously include emission limits for drains and the existing tanks. The purpose of the project is to reduce VOC emissions but since existing equipment did not have permitted emission limits, this appears as an increase. | September 2017 |

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3                    Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

| Modification | Permitted Emissions Increase (tons/yr) | | | | | | Comments | Commenced Construction Date |
|---|---|---|---|---|---|---|---|---|
| | PM/PM$_{10}$/ PM$_{2.5}$ | SO$_2$ | NO$_X$ | VOC | CO | HCN | | |
| 1.4 July 31, 2017 (upgrade H$_2$ plant sewers to meet NSPS QQQ) | | | | 1.15 | | | The purpose of this project was to control drain systems associated with the H$_2$ plant in order to comply with NSPS QQQ requirements. The drains are not new, nor were emissions limits for the drains previously included in the permit. In order to maintain the change in emissions from the Clean Fuels Project (CFP) below the significance level, as part of this project the source requested a reduction in the emission limit for the Y-3 cooling tower. The change in permitted emissions includes the increase for the H$_2$ plant drains (VOC = 5.2 tpy) and the decrease in permitted emissions from the Y-3 cooling tower (VOC = 1.85 - 5.9 = -4.05 tpy). | August 2017 |
| 1.5 September 12, 2017 (upgrade P3 (AU) flare to meet MACT CC requirements) | 0.07 | 0 | 0.4 | -2.89 | 1.77 | | | December 2017 |
| 1.6 February 6, 2018 (upgrade GBR flare to meet MACT CC requirements) | | | | | | | The change in permitted emissions for the GBR flare is reflected in the September 12 and November 1, 2019 application to re-permit the GBR flare. | July 2018 |

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3                     Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

| Modification | Permitted Emissions Increase (tons/yr) | | | | | | Comments | Commenced Construction Date |
|---|---|---|---|---|---|---|---|---|
| | PM/PM$_{10}$/ PM$_{2.5}$ | SO$_2$ | NO$_X$ | VOC | CO | HCN | | |
| 1.7 March 6, 2018 (upgrade P1 flare to meet MACT CC requirements) | | | | | | | No change in permitted emissions since the P1 flare is not subject to emission or throughput limits. | July 2018 |
| 1.8 March 28, 2018 (revise NO$_X$ emission factor for B4) | | | | | | | No change in permitted emissions since B4 is not subject to emission or throughput limits. Note that this change was superseded by Construction Permit 20AD0714, which was issued for Boiler B4 on November 23, 2020 and was incorporated into the renewal permit. | N/A |
| 1.9 June 14, 2018 (replace P1 rail rack flare with vapor combustion unit) | | | 2.63 | 16.42 | 4.68 | | Includes fugitive VOC emissions from new piping components (2.13 tpy). Note that the rail rack flare did not previously have emission limits for PM, PM$_{10}$, PM$_{2.5}$ and SO$_2$ because emissions were below the significance level and will not have emissions limits in the revised permit. So no change in permitted emissions are shown for those pollutants. | September 2018 |
| 1.11 November 5, 2018 (No. 2 HDS tier 3 ultra-low sulfur gasoline (ULSG) project) | | | | 1.14 | | | | October 2019 |

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3                    Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

| Modification | Permitted Emissions Increase (tons/yr) | | | | | | Comments | Commenced Construction Date |
|---|---|---|---|---|---|---|---|---|
| | PM/PM$_{10}$/ PM$_{2.5}$ | SO$_2$ | NO$_X$ | VOC | CO | HCN | | |
| 1.12 December 11, 2018 (FCCU resid jumper project) | | | | | | | No modifications to the permit were necessary. Projected emission changes are changes to "actual" emissions, not permitted and VOCs from new piping components (0.03 tpy) were less than the APEN de minimis level (1 tpy). | October 2018 |
| 1.13 February 20 and October 2, 2019 (replace blowers for AIRS pt 634, zones 3 & 4) | | | | | | | No change in permitted emissions was necessary for the AIRS pt 634 blower replacements. | AIRS 634 Zone 4 blower: February 2019 & August 2020 AIRS 634 Zone 3 blower: October 2019 AIRS 615 blower: September 2019 |
| 1.14 May 30, 2019 (new Sand Creek AS/SVE system (East Burlington Ditch)) | | | | 0.41 | | | This value includes the removal of AS/SVEs for AIRS pts 621 and 622. New SVE (VOC = 0.61 tpy), AIRS pt 621 (0.1 tpy) and AIRS pt 622 (0.1 tpy), change = 0.61 - 0.1 - 0.1  = 0.41 tpy | August 2019 |
| 1.15 June 4, 2019 (ethanol unloading at P1 rail rack) | -0.01 | -0.01 | 0.93 | -8.39 | -0.3 | | This includes fugitive VOC emissions from new piping components (0.41 tpy).  Since emissions from the new piping components are below the APEN de minimis level (1 tpy), a limit will not be included in the permit for them. | September 2019 |

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3                                    Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

| Modification | Permitted Emissions Increase (tons/yr) | | | | | | Comments | Commenced Construction Date |
|---|---|---|---|---|---|---|---|---|
| | PM/PM$_{10}$/ PM$_{2.5}$ | SO$_2$ | NO$_X$ | VOC | CO | HCN | | |
| 1.6 September 12 and November 1, 2019 (re-permit GBR flare due to flow meter replacement) | 1.29 | -0.03 | 11.3 | 1.2 | 49.4 | | The application submitted on September 12, 2019 did not qualify as a minor modification. The source submitted a revised APEN on November 1, 2019 to request lower emission and throughput levels and based on that information the application qualified as a minor modification. | July 2018 |
| 1.16 October 2, 2019 (replace emergency air compressor engines) | | | -2.7 | | | | At 500 hrs/yr of operation emissions from each engine are below the APEN de mimimis level so no emission limits were included for these replacement engines.  The previous engines had a combined NO$_X$ emission limit of 2.7 tons/yr, thus the change in emissions is shown as -2.7 tons/yr. | January 2020 |
| 1.17 October 8, 2019 (include P1 rail rack VCU operating parameter in permit) | | | | | | | No change emissions were associated with this mod application. | N/A |
| 1.18 January 22, 2020 (Tank T-4501) | | | | 1.89 | | | This minor modification involved changes to Title V permit limits only and did not involve physical construction. The purpose of this request was to enable other tanks to be taken out of service for routine inspection and maintenance. | N/A |
| 1.19 March 31, 2020 (new Sand Creek AS/SVE system (West of Burlington Ditch)) | | | | 0.47 | | | This system was never installed. Suncor will file an APEN cancellation request for AIRS 639. | N/A |

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3                    Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

| Modification | Permitted Emissions Increase (tons/yr) | | | | | | Comments | Commenced Construction Date |
|---|---|---|---|---|---|---|---|---|
| | $PM/PM_{10}/$ $PM_{2.5}$ | $SO_2$ | $NO_X$ | VOC | CO | HCN | | |
| 1.20 September 25, 2020 (P1 Flare Isolation Valve Project) | | | | 1.14 | | | | February 2021 |
| 1.21 October 13, 2020 (H-33 and H-37 Stack Replacement Project) | | | -14.15 | | | | No change in emission limits were requested for this project, except for $NO_X$ from H-37. ULNB was installed on H-37 as part of this project, hence the reduction in $NO_X$ emissions. | April 2021 |
| 1.23 August 4, 2021 (Plant 1 truck rack (Denver Terminal) flare tip replacement) | 0.56 | 5.31E-03 | 3 | -9.5 | 12 | | PM, $PM_{10}$, $PM_{2.5}$ and $SO_2$ emissions are at "requested" levels and don't reflect the change in emissions. Since overall emissions of these pollutants are below the APEN de minimis level, limits will not be included in the permit. | December 2021 |
| 1.24 November 30, 2021 (Reformulated gasoline (RFG) Project) | | | | 0.81 | | | This application affects both this permit and the Plant 2 permit (95OPAD108), changes to permitted emissions for Plant 2 are not shown in this table. | March 2022 |

Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plants 1 & 3                                      Operating Permit No. 96OPAD120
Technical Review Document – Second Renewal

| Modification | Permitted Emissions Increase (tons/yr) | | | | | | Comments | Commenced Construction Date |
|---|---|---|---|---|---|---|---|---|
| | PM/PM$_{10}$/PM$_{2.5}$ | SO$_2$ | NO$_X$ | VOC | CO | HCN | | |
| February 25, 2022 Additional Information Submittal (Tank degassing thermal oxidizer) | 0.11 | 8.79E-03 | 2.02 | 12.2 | 1.16 | | At the request of the Division, the source submitted an APEN to revise the emission limits and calculation methodology to be consistent with the Plant 2 renewal permit. Note that PM, PM$_{10}$, PM$_{2.5}$, and SO$_2$ emissions were below the APEN de minimis level thus permit limits were not included. It should be noted that the limit represents a refinery-wide limit and emissions from the thermal oxidizer were included in assessing the increase in emissions for the Plant 2 renewal permit. | N/A |
| March 18, 2022 Additional Information Submittal (Remediation Equipment) | | | | -3.87 | | | In response to a request from the Division to submit CAM Plans for remediation equipment, the source submitted APENs to revise the emission limits for AIRS pts 606, 618 and 625. The changes in emissions are as follows: (606 = 0.49 - 1.62 = -1.13, 618 = 0.49 - 2.1 = -1.61 and (625 = 0.49 - 1.62 = -1.13). | N/A |
| | | | | | | | | |
| Total | 2.02 | -0.03 | 3.43 | 16.16 | 68.71 | 0.00 | | |